```
DEBRA W. YANG
United States Attorney
JACKIE CHOOLJIAN
Assistant United States Attorney
Chief, Criminal Division
STEPHEN G. WOLFE
Assistant United States Attorney
California Bar Number: 116400
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7408
     Facsimile: (213) 894-3713

Attorneys for Plaintiff
United States of America
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BARRY BYRON MILLS, et al.,<br><br>Defendants. | ) No. CR 02-938-GHK<br>)<br>) GOVERNMENT'S OPPOSITION TO<br>) DEFENDANT TERFLINGER'S MOTION<br>) FOR DISCOVERY RELEVANT TO<br>) AUTHORIZATION TO SEEK THE DEATH<br>) PENALTY<br>)<br>) Date: None specified by movant<br>)<br>) |

Plaintiff United States of America hereby opposes defendant Richard Terflinger's Motion for Discovery Relevant to Authorization to Seek the Death Penalty.

Dated: February 21, 2003        Respectfully submitted,

                                DEBRA W. YANG
                                United States Attorney
                                JACKIE CHOOLJIAN
                                Assistant United States Attorney
                                Chief, Criminal Division

                                /s/ Stephen S. Wolfe
                                _____
                                STEPHEN G. WOLFE
                                Assistant United States Attorney
                                     Attorneys for Plaintiff
                                     United States of America

1 | <u>GOVERNMENT'S OPPOSITION TO MOTION FOR PREAUTHORIZATION DISCOVERY</u>

2 | I. <u>Introduction</u>

3 | Defendant Richard Terflinger has been charged in the pending
4 | indictment with conspiring to conduct and participate in the
5 | affairs of an enterprise through a pattern of racketeering
6 | activity (count two), participating in the murder of Arthur Ruffo
7 | (count four), and participating in the murder of Aaron Marsh
8 | (count five).  The indictment alleges that defendant Terflinger
9 | is one of the leaders and a member of the governing Commission of
10 | the California faction of the Aryan Brotherhood prison gang.
11 | Defendant Terflinger is eligible for the death penalty if
12 | convicted of ordering the murder of Ruffo or Marsh, although the
13 | Attorney General has not yet determined whether the government
14 | will seek the death penalty against defendant Terflinger under
15 | either count.

16 |      Defendant Terflinger has filed a Motion for Discovery
17 | Relevant to Authorization to Seek the Death Penalty, seeking
18 | immediate discovery of 29 categories of information which are
19 | claimed to be necessary to presentation of his information in
20 | mitigation of a possible capital sentence.  For eight of the
21 | categories, the motion requests that the government create or
22 | compile lists, descriptions, or statements of information that
23 | defendant Terflinger is interested in.

24 |      Defendant Terflinger's motion is largely duplicative of the
25 | familiar categories of discovery which are required to be
26 | produced by Rule 16 of the Federal Rules of Criminal Procedure

27

28                                    1

1  ("FRCP"), and the Brady, Giglio, and Jencks doctrines. The
2  government began disclosure of this information months ago, and
3  provides more every week, as rapidly as the material can be
4  reviewed to assure that no information which threatens the safety
5  of any person is revealed. All the requested material which is
6  discoverable has been or will be provided to defendant
7  Terflinger, and all other defendants, as soon as practicable.
8  Defendant Terflinger's requests for this material should be
9  denied as moot, since the government is already obliged to
10 provide such material, agrees to provide all such material, and
11 is doing so now.
12      Defendant Terflinger's requests that are not merely
13 duplicative are, in every case, not discoverable, because (1) the
14 requested information is not yet known or does not yet even
15 exist, or (2) the law does not authorize defendants, even capital
16 defendants, to obtain the requested information. Defendant
17 Terflinger rests his motion on several legal and policy grounds.
18 None of them are accepted in case or statutory law, and defendant
19 Terflinger misstates the law relevant to some of them entirely.
20 Moreover, defendant Terflinger asks for immediate discovery in
21 aid of a mitigation submission which he is not likely to submit
22 for 5-6 months. For these reasons, defendant Terflinger's motion
23 should be denied in all respects.
24 II.  Argument
25      The most basic defect in defendant Terflinger's motion is
26 that he bases his discovery requests on the sentencing procedures
27
28                                2

of the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591-3593 (Def. Mtn at 3, 17-21), and the Justice Department's internal procedures, which lead to the Attorney General's decision whether to seek the death penalty against any eligible defendant. (Def. Mtn at 9-10, 12, 14-17). Defendant Terflinger misunderstands or misstates the law on whether these two bases actually provide him any new or additional rights to discovery relevant to authorization to seek the death penalty.

### A. The FDPA Creates No New Discovery Rights for Defendant

Defendant Terflinger argues that: "The FDPA (18 U.S.C. sections 3591-3598) established procedures <u>for the exercise of prosecutorial discretion in the decision to seek the death penalty</u> and conducting the sentencing phase of a capital trial." (Def. Mtn at 20 *emphasis in original*). This assertion is simply mistaken. A mere reading shows that the FDPA deals in considerable detail with death penalty sentencing procedures, but has nothing to do with the exercise of prosecutorial discretion in determining when to seek the death penalty.

The FDPA's sole reference to the decision whether to seek the death penalty is that: "If. . . the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall" file and serve a prescribed notice. 18 U.S.C. § 3593(a). "The death penalty statute gives the

3

prosecutorial discretion to the United States Attorney.[1]  The only legislative guidance is that he shall consider whether the `circumstances of the offense' justifies a sentence of death. There is no other direction." Nichols v. Reno, 931 F. Supp 748, 752 (D. Colo. 1996), aff'd on the reasoning of the district court, 124 F.3d 1376 (10th Cir. 1997).

    Nor does the FDPA address discovery anywhere in its terms. Of course, once the Attorney General has decided to seek the death penalty for any individual defendant, and the required notice had been filed and served, information about the aggravating factors listed in that notice would be discoverable under the general rules concerning criminal discovery.  It is equally clear that discovery about aggravating or mitigating factors is premature when the Attorney General's decision could be not to seek the death penalty, and no sentencing factors have yet been determined. United States v. Roman, 931 F. Supp. 960, 963 (D.R.I. 1996) (denying motion for discovery about aggravating factors as premature where Attorney General had not yet made decision on seeking death penalty).  In short, defendant's reliance on the FDPA for discovery rights is premature at this time, and adds nothing to the familiar rules of criminal discovery in any event.

---

[1] Of course, it is the policy of the Justice Department that the Attorney General make this decision in all federal cases.

    B.   <u>Justice Department Procedures for Determining Whether to Seek the Death Penalty Create No New Discovery Rights for Defendant</u>

Defendant Terflinger discusses at some length the Justice Department's procedures, set out in the United States Attorneys' Manual ("USAM"), for reaching the Attorney General's decision on whether to seek the death penalty against a defendant. (Def. Mtn at 9-10, 12, 14-17)[2]. Defendant points out that those procedures allow defendant's counsel an opportunity to submit information in opposition to seeking the death penalty against defendant. (Def. Mtn at 9-10, 16-17). Defendant Terflinger appears either unaware or unwilling to inform the court that the Ninth Circuit has already ruled on whether the USAM creates any discovery rights for defendants in his circumstances. "To begin, it is clear that the USAM does not create any substantive or procedural rights, including discovery rights." <u>United States v. Fernandez</u>, 231 F.3d 1240, 1246 (9th Cir. 2000) (citing cases from the Ninth and Second Circuits). <u>Accord</u>, <u>United States v. Lee</u>, 274 F.3d 485, 493 (8th Cir. 2001)(citing cases from the Tenth and First Circuits), <u>cert. denied</u>, 123 S. Ct. 513 (2002).

In short, defendant Terflinger's references to the USAM add nothing to the familiar rules of criminal discovery.

    C.   <u>Defendant Terflinger's Other Arguments Create No New Discovery Rights for Him</u>

Defendant Terflinger also argues that he is entitled to the

---

[2] The usefulness of this discussion is somewhat diminished because it refers to the procedures used in the prior administration, rather than those in use since June 2001.

requested discovery because his attorney's presentation in mitigation to the Attorney General's Review Committee is a "critical stage" of the proceedings against defendant Terflinger that implicates his Sixth Amendment right to counsel. (Def. Mtn at 10). The Ninth Circuit declined to address this question in Fernandez, assuming for the purpose of argument that it is a critical stage without deciding the issue. 231 F.3d at 1248. One decision of this Court has previously held that the death penalty authorization process is not such a "critical stage" after a lengthy discussion of the relevant cases. United States v. Furrow, 100 F. Supp. 2d 1170, 1175-77 (C.D. Cal. 2000).

Defendant Terflinger also adverts to the traditional adage that "death is different." (Def. Mtn at 19). This adage is as true as ever with respect to sentencing procedures. Nevertheless, none of the discovery claims defendant advances in his motion have found acceptance in case law despite being raised repeatedly in the context of capital litigation. The FDPA changes many procedural aspects of capital sentencing, but neither it nor any of the other arguments advanced by defendant change familiar discovery rules.

Defendant Terflinger claims that he has been denied the discovery he must have to contribute a significant argument in mitigation of a potential death penalty authorization. "In essence, the discovery provided so far by the government gives no indication why defendant has been charged with these murders or what was his purported role in the homicides." (Def. Mtn at 8).

This claim is made despite the text of the pending indictment.

> "In or about August 1995, defendants JOHN WILLIAM STINSON, RICHARD LLOYD TERFLINGER, and DAVID ALLEN CHANCE ordered Brian Healy to murder Arthur Ruffo." [Indictment, Ct. 2, overt act 137]. "On or about February 5, 1996, defendant RICHARD LLOYD TERFLINGER sent a message to Brian Healy ordering him to murder Arthur Ruffo." [Indictment, Ct. 2, overt act 138]. "On or about February 7, 1996, Brian Healy murdered Arthur Ruffo by strangling him to death." [Indictment, Ct. 2, overt act 139].

This is the murder charged in count four.

The indictment is equally clear as to defendant Terflinger's involvement in the murder charged in count five.

> "In or before March 1997, the members of the California Commission, including defendants JOHN WILLIAM STINSON, RICHARD LLOYD TERFLINGER, ROBERT LEE GRIFFIN, and DAVID ALLEN CHANCE, decided to order that Aryan Brotherhood member Aaron Marsh be murdered for failure to carry out an order to murder another inmate." [Indictment, Ct. 2, overt act 309]. "In or before March 1997, defendant RICHARD LLOYD TERFLINGER sent a message to Aryan Brotherhood member Brian Healy saying that Aaron Marsh was to be murdered." [Indictment, Ct. 2, overt act 310]. Healy then passed the word to defendant ELLIOT SCOTT GRIZZLE, who passed the word to defendant GARY JOE LITTRELL, who strangled Aaron Marsh to death. [Indictment, Ct. 2, overt acts 311-13].

The government submits that it is plain from a reading of the indictment "why defendant was charged with these murders [and] what was his purported role in the homicides." It is even plain what one of the potential statutory mitigating factors is for defendant Terflinger for count four. It is apparent from the indictment that Brian Healy, who murdered Arthur Ruffo on defendant Terflinger's orders, is not facing the death penalty in this indictment (or in any other charge of which the government is aware). That suggests the possible existence of the statutory mitigating factor in 18 U.S.C. § 3592(a)(4), the sole potential

mitigating factor with respect to defendant Terflinger so far as the government's present information goes.

Perhaps the best summary of the fundamental failing of defendant Terflinger's claim he lacks information sufficient to prepare his mitigation submission was provided by defendant in a statement made in his motion, unconscious of its obvious irony. Defendant claimed that: "The government is certainly aware of defendant's personal involvement, if any, in the charges alleged." (Def. Mtn at 19). Of course, <u>defendant</u> is certainly aware of defendant's personal involvement, if any, in the charges alleged. Moreover, defendant is also aware of whether he operated under duress, disturbance, impaired capacity, or any other statutory or nonstatutory mitigating factor. In short, defendant is sufficiently informed at this moment to carry out whatever investigation he believes will be most fruitful in presenting information in mitigation to this Office and to the Attorney General. Obviously, the death penalty authorization process and defendant's mitigation submission <u>assume that defendant is found guilty</u>. If he is not, the sentencing procedures do not come into play. Defendant's discovery requests suggest that they have less to do with mitigation, assuming defendant is found guilty, and more to do with efforts to avoid that assumption.

Defendant is entitled under ordinary discovery rules to much of the requested discovery he seeks in his motion, and it has been or will be provided. But he is not entitled to other parts

of it; he is not entitled to have the government create work product for him to his specification in the form of the eight lists, descriptions, and statements he asks be created for him; and he is not entitled to go to the front of the line and receive ordinary discovery immediately in the guise of preparing for a mitigation submission which he is likely not to submit for 5-6 months.

III.  Conclusion

Attached as Exhibit A is a short response to each of defendant's individual discovery requests. For all the foregoing reasons, defendant's motion should be denied in all respects.

## RESPONSE TO INDIVIDUAL DISCOVERY REQUESTS

The government hereby responds to each of defendant Terflinger's individual discovery requests, by the number or letter of defendant's request, and by a brief description for his unnumbered requests.

Req. 1, 3, 5 - No such information is now known. Any obtained will be provided.

Req. 2 - This request is unclear. If it refers to the counts in which defendant is charged, it has been or will be provided. If it refers to other crimes, it is not discoverable, since it is not relevant to defendant's guilt or sentence. The FDPA limits proof of mitigation to "the defendant's background, record, or character or any other circumstance of the offense." 18 U.S.C. § 3592(A)(8).

Req. 4, 6, 7 - These requests include material which is not discoverable, by referring to persons who "may be called" as witnesses. Giglio material will be provided at the time required for trial witnesses. The government does not plan to provide early discovery of material which would identify witnesses who would be in danger of retaliation for their testimony.

Unnumbered request for lists and descriptions of criminal acts and punishments of witnesses (Def. Mtn at 4) - While any of the requested material which amounts to Giglio material is discoverable and will be provided, defendant may not require the government to perform research and compile documents for him.

1

EXHIBIT A

<u>Unnumbered request for "C-file for every inmate witness"</u> - This request is improper because it makes no effort to provide a basis for discovery of the requested material. It is assumed this request is for the inmate file of inmate witnesses. Defendant sets out no basis for the categorical discovery of such files. Any discoverable material found in such a file has been or will be provided. Irrelevant or other nondiscoverable material will not be provided.

<u>Unnumbered request for lists and descriptions of criminal acts and punishments of coconspirators (Def. Mtn at 5)</u> - These requests seem to be garbled. If they use the terms "coconspirator" and "witness" interchangeably, they merely duplicate the nearly identical requests for lists and descriptions concerning witnesses. If they mean to refer to coconspirators who are not witnesses, no apparent reason for disclosure exists. There is no apparent relevance in this case to lists of the uncharged criminal acts of unindicted coconspirators who are not witnesses. Documents on the charged criminal acts of coconspirators indicted in this case would seem discoverable and has been or will be provided.

<u>Unnumbered request for statement of Giglio material (Def. Mtn at 5)</u> - All <u>Giglio</u> material has been or will be provided.

<u>Unnumbered request for a list of all persons and their counsel questioned about defendant Terflinger (Def. Mtn at 5)</u> - There is no basis in law for the discovery of information about persons who will not be witnesses, unless the information would

be Brady material. There is no known Brady material concerning defendant Terflinger.

Req. A, D, E, H, I, J, K, L, M - The discoverable material requested has been or will be provided. Impeachment material for nonwitnesses is not discoverable. No Brady material is known as to defendant Terflinger. The government is not aware of any basis for the discovery of biographical data on persons shown in photo spreads.

Req. B - This material is not discoverable. The FDPA limits proof of mitigation to "the defendant's background, record, or character or any other circumstance of the offense." 18 U.S.C. § 3592(A)(8). The victim's participation is gang activities is not relevant to capital sentencing. The law does not recognize the argument that "the victim needed killing."

Req. C - This material is not discoverable. Relative culpability as a consideration in capital sentencing is limited to the crime charged. See 18 U.S.C. § 3592(A)(4).

Req. F - To the extent witness identities and Giglio material are discoverable for the penalty phase, they will be provided at the required time.

Req. G - None are now known, since the Attorney General has not yet decided whether to seek the death penalty for defendant Terflinger. The views of this Office or individual prosecutors on this question are not discoverable, since they are privileged. United States v. Fernandez, 231 F.3d 1240, 1246-47 (9th Cir. 2000).

CERTIFICATE OF SERVICE BY MAIL

I, Marian Cannon, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this certificate was made, that on February 21, 2003 I deposited in the United States mail in the United States Courthouse at 312 North Spring Street, Los Angeles, California, the above-entitled action, in an envelope bearing the requested postage, a copy of:

**GOVERNMENT'S OPPOSITION TO DEFENDANT TERFLINGER'S MOTION FOR DISCOVERYT RELEVANT TO AUTHORIZATION TO SEEK THE DEATH PENALTY**

addressed to: See Attachment

at their last known address, at which place there is a delivery service by United States mail.

This Certificate is executed on February 21, 2003 Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Marian Cannon*

## ATTACHMENT

Mark Overland, Esq.
Overland & Borenstein LLP
6060 Center Dr. 7FL
Los Angeles, CA 90045

Paul Potter, Esq.
Potter, Cohen & Samulon
3852 East Colorado Blvd.
Pasadena, CA 91107

Robert Ramsey, Esq.
800 Wilshire Boulevard
Suite 950
Los Angeles, CA 90017

Dale Michael Rubin, Esq.
2555 Huntington Drive
Suite A
San Marino, CA 91108

Michael T. Shannon, Esq.
301 East Colorado Blvd.
Suite 200
Pasadena, CA 91101-1922

Errol H. Stambler, Esq.
11400 West Olympic Blvd.
Suite 840
Los Angeles, CA 90064

Chet Taylor, Esq.
3250 Wilshire Boulevard
Suite 1110
Los Angeles, CA 90010

Joseph F. Walsh, Esq.
316 West Second Street
Suite 1200
Los Angeles, CA 90012

## ATTACHMENT

Michael White, Esq.
717 4th St 3FL
Santa Monica, CA 90401

Matthew "Blake" Wilson, Esq.
1532 Sixth Avenue
San Diego, CA 92101