```
 1 │ DEBRA W. YANG
   │ United States Attorney
 2 │ STEVEN D. CLYMER
   │ Special Assistant United States Attorney
 3 │ Chief, Criminal Division
   │ GREGORY W. JESSNER (Cal. Bar No. 121920)
 4 │ Assistant United States Attorney
   │ 1400 United States Courthouse
 5 │ 312 North Spring Street
   │ Los Angeles, California 90012
 6 │ Telephone: (213) 894-0511
   │ Facsimile: (213) 894-0142
 7 │
   │ Attorneys for Plaintiff
 8 │ United States of America
 9 │              UNITED STATES DISTRICT COURT
10 │           FOR THE CENTRAL DISTRICT OF CALIFORNIA
11 │ UNITED STATES OF AMERICA,  )   No. CR 02-938-GHK
   │                            )
12 │         Plaintiff,          )   GOVERNMENT'S OPPOSITION TO
   │                            )   DEFENDANT'S MOTION IN SUPPORT
13 │      v.                     )   OF PRETRIAL RELEASE; MEMORANDUM
   │                            )   OF POINTS AND AUTHORITIES
14 │ MARTY LAINE FOAKES,         )
   │                            )
15 │         Defendant.          )
   │ _____)
16 │
17 │
   │      Plaintiff United States of America hereby responds to and
18 │
   │ opposes the motion in support of pretrial release filed by
19 │
   │ defendant Mary Laine Foakes.  The government's opposition is
20 │ //
21 │ //
22 │ //
23 │ //
24 │ //
25 │ //
26 │ //
27 │ //
28 │
```

1  based upon the attached memorandum of points and authorities and
2  the files and records of this case.
3       DATED: October 22, 2003
4                           Respectfully Submitted,
5                           DEBRA W. YANG
                            United States Attorney
6
                            STEVEN D. CLYMER
7                           Special Assistant United States Attorney
                            Chief, Criminal Division
8
9                           [signature]
10                          GREGORY W. JESSNER
                            Assistant United States Attorney
11
                            Attorneys for Plaintiff
12                          United States of America

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

**A. Procedural History**

On August 28, 2002, a grand jury indicted defendant and 39 codefendants on racketeering and murder charges. Defendant is charged in count two of the indictment with racketeering influenced and corrupt organizations conspiracy, in violation of 18 U.S.C. § 1962(d). On October 17, 2002, federal agents attempted to serve an arrest warrant at defendant's home in Rodeo, California, but defendant was not there. Defendant remained a fugitive until she was arrested in Petaluma, California, on September 2, 2003.

On October 3, 2003, a detention hearing took place in the Oakland Division of the United States District Court for the Northern District of California. At that hearing, a United States Magistrate Judge set an appearance bond of $1,500,000, with $1,200,000 to be secured by deeding of property.

On the same day, the government filed an application with this Court for review of the out-of-district bail order. On October 3, 2003, the Court granted a stay of the bail order and ordered the parties to participate in a status conference on October 6, 2003. At that status conference, after learning that defendant had already been removed to this district, the Court set a detention hearing for October 24, 2003, although the Court later changed the date of the hearing to October 23, 2003, at the

request of defense counsel.

B. <u>Defendant's Motion</u>

On October 21, 2003, defendant filed a motion in support of pretrial release in which she argued that (a) in light of her roots in the community, she should not be held without bail; (b) the length of the likely period of pretrial detention in this case raises an issue of constitutional due process; and (c) this Court should uphold the findings of the magistrate judge because they are not clearly erroneous and should be given deference.[1]

All of these arguments are without merit. The government will present evidence that defendant is both an extreme flight risk and an extreme danger to the community. Furthermore, defendant's due process objection is both premature and without factual underpinning. Finally, this Court reviews the out-of-district bail order de novo, meaning that this Court need not show deference to the magistrate judge's findings and the government need not show that those findings are clearly erroneous.

II

ARGUMENT

A. <u>Defendant Is Both an Extreme Flight Risk and an Extreme Danger to the Community</u>

1. <u>The Government's Proffer</u>

At the detention hearing on October 23, 2003, the government

---

[1] Defendant served government counsel by overnight mail, meaning that government counsel did not receive defendant's motion until the afternoon of October 22, 2003.

4

will proffer the testimony of Bureau of Alcohol, Tobacco and Firearms Special Agent Michael Halualani to the following effect:

Following her indictment, defendant on two occasions failed to turn herself in after promising to do so. Federal agents tried to serve an arrest warrant at defendant's house in Rodeo, California, on October 17, 2002, as part of a nationwide takedown, but defendant was not home. The agents did search defendant's home pursuant to a search warrant.

Defendant apparently learned of the arrest warrant, because her attorney, Hugo Torbet, spoke later that day to Special Agent Halualani and agreed to have defendant surrender to the United States Marshals Service in Oakland. Defendant did not appear at the appointed time.

Mr. Torbet later made arrangements with the United States Attorney's Office in Los Angeles for defendant to turn herself in to the United States Marshals Service in Los Angeles on October 21, 2002. Once again, at the appointed hour, defendant failed to appear. Later on October 21, 2002, Mr. Torbet apologized to government counsel, said that he had been unable to prevail upon defendant to turn herself in, and said that she had elected to flee rather than to turn herself in.

Defendant was a fugitive for nearly a year. She was finally arrested on September 2, 2003, by the Petaluma Police Department in Petaluma, California. When defendant was stopped by the police, she told the officers that her name was Jeri Lee Phillips and gave the officers a false driver's license in that name in an

effort to convince them that she was not Marty Laine Foakes (the government notes that, in light of this conduct, defendant can be charged in state court with giving false information to a police officer).

Defendant had been living and working in the Petaluma area since at least late May of 2003. At that time, defendant got a job at a tanning salon in Petaluma. To get that job, she used the false name Jeri Lee Phillips. She received paychecks in the false name and cashed them at local banks using false identification (the government notes that, in light of this conduct, defendant can be charged in either state or federal court with bank fraud).

At the time of defendant's arrest, she had in her purse a medical appointment card bearing the name of a doctor in Napa, California. The doctor's card states that he is a specialist in plastic and reconstructive surgery, suggesting that defendant was planning to alter her appearance in an effort to evade capture.

During the search of defendant's residence last October, agents found a number of items indicating defendant's involvement in criminal activity. They found approximately 190 rounds of ammunition in defendant's bedroom, including 70 rounds corresponding to a .357 magnum and 120 rounds of ammunition for a shotgun and two types of handguns. Defendant also had a bulletproof vest. Because of defendant's possession of the ammunition and the fact that defendant has been convicted of two felonies, ATF agents in Oakland are planning to seek an

1 indictment of defendant on felon in possession of ammunition
2 charges.
3 　　　In addition to the ammunition and bulletproof vest,
4 defendant had both methamphetamine and marijuana in her bedroom.
5 There was approximately 80 grams of methamphetamine in the
6 bedroom, which is vastly more than the amount that would be
7 possessed for personal use. Based upon defendant's possession of
8 distribution-level amounts of methamphetamine, ATF agents in
9 Oakland are also planning to charge her with possession of
10 methamphetamine with intent to distribute. Depending on the
11 purity of the methamphetamine, and in view of defendant's prior
12 drug trafficking felony, defendant faces a mandatory minimum
13 sentence of either ten years or 20 years.
14 　　　Defendant also possessed letters from Barry Mills and Tyler
15 Bingham, who are the two lead defendants in this case, as well as
16 from Nicodemo Scarfo, who is the incarcerated leader of the Bruno
17 organized crime family on the East Coast. The letters are
18 significant because many confidential informants have told
19 Special Agent Halualani that defendant is a go-between for Mills
20 and Bingham, passing messages to other Aryan Brotherhood members
21 and members of other criminal organizations, including La Cosa
22 Nostra, the Hells Angels, and the Chicago-based organized crime
23 group the El Rukns. The government is in possession of letters
24 where defendant is serving as a go-between for Mills and the
25 incarcerated leader of the El Rukns.
26 　　　In addition to acting as a go-between for the Aryan
27
28

7

Brotherhood, a number of confidential informants have told Special Agent Halualani that defendant is a long-time associate of both the Aryan Brotherhood and the Hells Angels. Defendant's ex-husband is either the current or the former president of the Sonoma chapter of the Hells Angels and is best known for initiating a war with the Mongols motorcycle gang that led to a well-publicized series of murders in Laughlin, Nevada, at a motorcycle gang gathering. Defendant had a great deal of Hells Angels paraphernalia at her home, including a Hells Angels membership list.

Beyond that, the government is in possession of evidence that defendant was involved in at least one Aryan Brotherhood murder plot. The government has a copy of a letter from an incarcerated Aryan Brotherhood member to his wife on the outside. The letter, using coded language, asks the wife to tell defendant to tell Mills that the incarcerated member and another Aryan Brotherhood member are ready to kill black inmates on Mills' command, and that they await word from Mills. This letter was sent during a race war between the Aryan Brotherhood and the DC Blacks, a black prison gang, and a number of allegations relating to the race war are set forth in the indictment. Shortly after the letter was sent, Aryan Brotherhood members murdered two black inmates and attempted to murder five others, all in one coordinated assault. There were a number of other attempted murders of black inmates around the same time. Again, this letter is consistent with what numerous informants have told

Special Agent Halualani about defendant, that is, that she is a trusted Aryan Brotherhood associate who coordinates affairs on the outside for Mills.

### 2. Defendant Should Be Detained

As is clear from Special Agent Halualani's proffer, defendant is both an extreme flight risk and an extreme danger to the community. Defendant twice failed to turn herself in as agreed, and then fled, remaining a fugitive for almost a year. While a fugitive, defendant took on a false identity, worked and procured identification under a false name, and even attempted to fool police officers using her false identity. It appears that defendant even contemplated changing her appearance to evade capture. It is difficult to imagine what else defendant could have done to demonstrate that she is likely to flee if released on bail.[2]

Beyond that, defendant has a very strong incentive to flee. If convicted, she faces a potential Sentencing Guidelines offense level of 43, meaning that she faces the prospect of spending the rest of her life in prison.

As for danger to the community, defendant already has two felony convictions and stands indicted in an extraordinarily serious case in which she is accused of giving aid to a murderous prison gang. As part of her actions on behalf of that gang,

---

[2] Defendant's contention that her roots in the community would keep her from fleeing does not make sense. Defendant already fled, amply demonstrating that her community ties are inadequate to secure her presence.

defendant passed messages to members of a number of criminal organizations, and even participated in a murder plot.

In addition to her criminal conduct relating to the Aryan Brotherhood, the evidence shows that defendant is a drug trafficker, that she is a felon who possessed ammunition, that she defrauded banks, and that she gave false information to a police officer. Beyond that, she is a close associate of at least two criminal organizations.

All of these factors lead unequivocally to the conclusion that defendant is an extreme danger to the community.

B.  It Is Not a Due Process Violation to Order that Defendant Be Detained Pending Trial

Defendant argues that the likely duration of her pretrial detention raises the prospect that defendant's right to due process will be violated. For this proposition, defendant relies on cases from other circuits that have recognized such a possibility. Defendant misunderstands the import of those cases, however.

Defendant relies primarily on the Second Circuit's decisions in United States v. Claudio, 806 F.2d 334 (2d Cir. 1986), and United States v. El-Hage, 213 F.3d 74 (2d Cir. 2000). In those cases, the court noted the possibility that under some circumstances, extended pretrial detention could raise the specter of a due process violation. Claudio, 806 F.2d at 339-40; El-Hage, 213 F.3d at 79. What defendant fails to recognize, however, is that the Second Circuit has held that an objection on

10

due process grounds made at the outset of a defendant's incarceration is premature. <u>United States v. Colombo</u>, 777 F.2d 96, 100 (2d Cir. 1985); <u>see also</u> <u>United States v. Portes</u>, 786 F.2d 758, 768 (7th Cir. 1986). Thus, it is only after extended pretrial detention that a defendant may rightfully complain of a due process violation. <u>See</u> <u>United States v. Acetturo</u>, 783 F.2d 383, 388 (3d Cir. 1986) ("<u>at some point</u> due process may require a release from pretrial detention") (emphasis added).

Even if defendant's argument were not premature, it would still be unavailing. As defendant recognizes, the court in <u>El-Hage</u> set forth four factors to weigh in determining whether a pretrial delay has resulted in a due process violation: "(1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence on which detention was based, i.e., the evidence of risk of flight and dangerousness." 213 F.3d at 79. None of these factors weigh in favor of defendant's release.

First of all, defendant has been detained only since September 2, 2003 (as noted above, it is inappropriate to consider possible future pretrial detention). Second, the government has done nothing to delay defendant's trial. Third, the charges are extremely grave. Finally, the government has presented overwhelming evidence that defendant is a flight risk and a danger to the community. Accordingly, defendant has utterly failed to show that it would violate her due process rights if the Court were to order her detained.

### C. The Court Makes a De Novo Review of the Magistrate Judge's Findings Concerning Bail

Defendant contends that this Court must defer to the magistrate judge's factual findings unless they are clearly erroneous. Defendant misunderstands the applicable standard of review. The Ninth Circuit has held that a district court reviews a magistrate judge's bail findings de novo. United States v. Koenig, 912 F.2d 1190, 1191-93 (9th Cir. 1990).

Notwithstanding this unambiguous rule, defendant cites United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985), for the proposition that this Court must defer to the magistrate judge's findings unless clearly erroneous. What defendant fails to appreciate is that Motamedi sets forth the standard of review when a court of appeal reviews a district court's findings, rather than when a district court reviews a magistrate judge's findings.[3] In the latter context, a de novo standard of review applies.[4]

---

[3] On page 9 of her motion, defendant altered a quote from Motamedi in a manner that made it appear that the quote refers to the situation where a district judge reviews a magistrate judge's bail-related findings, when, in reality, the quote refers to the situation where a court of appeal reviews a district court's findings. Specifically, defendant substituted the word "magistrate's" for the term "district court's," thereby changing the meaning of the quote. See Motamedi, 767 F.2d at 1406.

[4] Defendant also cites a Northern District of California case, United States v. Harris, 732 F. Supp. 1027 (N.D. Cal. 1990), in support of his argument. To the extent that Harris states that the standard of review is other than de novo, it is no longer good law in light of the Ninth Circuit's decision in United States v. Koenig.

12

## III

## CONCLUSION

For the foregoing reasons, the Court should order defendant detained.

13

## CERTIFICATE OF SERVICE

I, **SANDRA POWELL**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN SUPPORT OF PRETRIAL RELEASE; MEMORANDUM OF POINTS AND AUTHORITIES**

service was:

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[X] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

**SEE ATTACHMENT**

This Certificate is executed on **October 23, 2003**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Sandra Powell*
**SANDRA POWELL**

**ATTACHMENT**
**UNITED STATES v. BARRY BYRON MILLS, et al.**
No. CR 02-938-GHK

Irene P. Ayala (Rafael Gonzalez-Munoz)
P.O. Box 351385
Los Angeles, California 90035

Larry Bakman (Richard Terflinger)
10100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90067

Ellen Barry (Elliott Grizzle)
316 W. Second Street, Suite 1202
Los Angeles, California 90012

Terrence Bennett (John Stinson capital counsel)
P.O. Box 709
Pasadena, CA 91102-0709

Brian Newman (Debra Stinson)
300 Corporate Pointe, Suite 330
Culver City, CA 90230

Jeff Brodey (Steven Hicklin capital counsel)
9777 Wilshire Boulevard, Suite 900
Beverly Hills, California 90212-1902

Michael Burt (Steve Scott capital counsel)
600 Townsend, Suite 329E
San Francisco, CA 94103

Donald Calabria (Edgar Hevle)
16133 Ventura Boulevard, Suite 1270
Encino, CA 91436

Christopher Chaney (Gary Littrell capital counsel)
801 North Brand Boulevard, Suite 930
Glendale, CA 91203

John Cotsirilos (David Chance capital counsel)
2442 4th Avenue
San Diego, CA 92101

Michael M. Crain (Robert Griffin capital counsel)
P.O. Box 3730
Santa Monica, CA 90408

Phillip Deitch (Thomas Hampton)
5919 West Third
Los Angeles, California 90036

1  Alan Eisner (Gary Littrell)
   14401 Sylvan Street, Suite 112
2  Van Nuys, CA 91401

3  Peter Giannini (Edward Burnett capital counsel)
   12304 Santa Monica Boulevard, Suite 105
4  Los Angeles, CA 90025

5  James D. Gregory (Christopher Gibson capital counsel)
   Encino Office Park II
6  Suite 330
   6345 Balboa Blvd.
7  Encino, CA 91316

8  William S. Harris (Tyler Bingham)
   1499 Huntington Drive, Suite 403
9  South Pasadena, CA 91030-5458

10 Knut Johnson (David Chance)
   1010 Second Avenue, Suite 1850
11 San Diego, CA 92101

12 Madelynn Kopple (Elliott Grizzle capital counsel)
   253 26th Street, Suite 285
13 Santa Monica, CA 90402

14 Timothy Lannen (Manuel Jackson)
   880 West First Street, Suite 304
15 Los Angeles, CA 90012

16 Joel Levine (Glen West)
   16000 Ventura Boulevard, Suite 500
17 Encino, CA 91436

18 Jay Lichtman (Edward Burnett)
   3550 Wilshire Boulevard, Suite 2000
19 Los Angeles, CA 90010

20 Michael Mayock (Brenda Riley)
   35 South Raymond Avenue, Suite 400
21 Pasadena, CA 90013

22 FredRicco McCurry (Cleo Roy)
   P.O. Box 3695
23 Van Nuys, CA 91407

24 Michael S. Meza (Mark Nyquist)
   333 City Blvd., West, 17th Floor
25 Orange, CA 92868

26 Kenneth Miller (Jason Lee Schwyhart CJA counsel)
   107 Avenida Miramar, Suite D
27 San Clemente, California 92672

28

```
 1
    Michael Patrick McElhiney (Pro Se Defendant)
 2  #0301343349
    West Valley Detention Center
 3  9500 N. Etiwanda Avenue
    Rancho Cucamonga, CA 91739
 4
    Thomas Nishi (Michael Shepherd)
 5  1000 Wilshire Boulevard, Suite 600
    Los Angeles, CA 90017
 6
    Mark Overland (Barry Mills capital counsel)
 7  Overland & Borenstein LLP
    6060 Center Dr 7FL
 8  Los Angeles, CA 90045

 9  Nancy S. Pemberton (Steve Scott)
    600 Townsend Street, Suite 329E
10  San Francisco, CA 94103

11  Ezekiel P. Perlo (Jason Lee Schwyhart)
    16133 Ventura Blvd., Suite 1270
12  Encino, CA 91436

13  Paul Potter (John Stinson)
    Potter, Cohen & Samulon
14  3852 East Colorado Blvd.
    Pasadena, CA 91107
15
    Robert Ramsey (Joseph Principe)
16  Ramsey & Price
    445 South Figueroa Street, Suite 2640
17  Los Angeles, CA 90017

18  Jeffrey M. Rawitz (Sean Darcy)
    100 Wilshire Boulevard, Suite 700
19  Santa Monica, California 90401

20  Darlene M. Ricker (Michael McElhiney)
    29170 Heathercliff Road, #4
21  Malibu, CA 90265

22  Bernard Rosen (Edgar Hevle capital counsel)
    1717 Fourth Street, Suite 300
23  Santa Monica, CA 90401

24  Alan Rubin (Steven Hicklin)
    11755 Wilshire Boulevard, 15th Floor
25  Los Angeles, CA 90025

26  Dale Michael Rubin (Richard Terflinger capital counsel)
    2275 Huntington Drive, Suite 902
27  San Marino, CA 91108

28
```

```
 1  Julie Ruhlin (Barry Mills)
    6060 Center Drive, 7th Floor
 2  Los Angeles, CA 90045

 3  Michael T. Shannon (Christopher Gibson)
    301 East Colorado Boulevard, Suite 600
 4  Pasadena, CA 91101

 5  Gail Shifman (Lee Ann Martin)
    214 Duboce Avenue
 6  San Francisco, CA 94103

 7  Errol H. Stambler (Glenn Filkins)
    10880 Wilshire Blvd., Suite 1050
 8  Los Angeles, CA 90024

 9  Chet Taylor (Donald Kennedy)
    3250 Wilshire Boulevard, Suite 1110
10  Los Angeles, CA 90010

11  Joseph F. Walsh (Robert Griffin)
    316 West Second Street, Suite 1200
12  Los Angeles, CA 90012

13  William Welch (Marty Foakes)
    506 Broadway
14  San Francisco, California 94133

15  Michael White (Tyler Bingham capital counsel)
    1717 4th St 3FL
16  Santa Monica, CA 90401

17  Matthew Blake Wilson (Joanne Guthrie)
    1532 Sixth Avenue
18  San Diego, CA 92101

19

20

21

22

23

24

25

26

27

28
```