```
 1 | DEBRA WONG YANG
   | United States Attorney
 2 | THOMAS P. O'BRIEN
   | Assistant United States Attorney
 3 | Chief, Criminal Division
   | JOEY L. BLANCH (Cal. Bar No. 186487)
 4 | Assistant United States Attorney
   |     1500 United States Courthouse
 5 |     312 North Spring Street
   |     Los Angeles, California 90012
 6 |     Telephone: (213) 894-3315
   |     Facsimile: (213) 894-3713
 7 |     E-mail: Joey.Blanch@usdoj.gov

 8 | Attorneys for Plaintiff
   | United States of America
 9
```

FILED 2006 SEP 22 PM 3:52

                    UNITED STATES DISTRICT COURT

                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 02-938-R |
|---|---|---|
| Plaintiff, | ) | Trial Stipulation Re: Proposed Testimony of William Halpin |
| v. | ) | |
| STEVE LOREN SCOTT, | ) | Date: September 26, 2006 |
| Defendant. | ) | Time: 9:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, and defendant Steve Loren Scott, individually and through his counsel of record, Amy Jacks, hereby AGREE AND STIPULATE AS FOLLOWS:

Because of a medical condition, correctional officer William Halpin is unavailable to testify in this proceeding. If William Halpin were called to testify, he would testify consistent with his testimony in United States v. Barry Byron Mills, et. al., United States District Court, Central District of California,

DOCKETED ON CM  OCT 3 2006  BY 017  3880

1 | Case No. 02-938-DOC, on May 11, 2006. The parties agree that Mr.
2 | Halpin's testimony, as attached hereto as Exhibit 1, may be read
3 | into the record, in lieu of calling Mr. Halpin to testify.
4 |
5 | IT IS SO STIPULATED.
On Behalf of Plaintiff United States of America:
6 | DEBRA WONG YANG
United States Attorney
7 |
8 | _____    9-22-06
JOEY L. BLANCH                      Date
Assistant United States Attorney
9 |
10 |
11 | On Behalf of Defendant Steve Loren Scott:
12 | Steve Loren Scott                  9-18-06
STEVE LOREN SCOTT                    Date
13 | Defendant
14 | _____    9/21/06
AMY JACKS                            Date
15 | Counsel for Steve Loren Scott
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION AT SANTA ANA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

**CERTIFIED COPY**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | CR NO. 02-938-DOC |
| ) | DAY 26, VOLUME III |
| ) | |
| BARRY BYRON MILLS, TYLER DAVIS ) | |
| BINGHAM, CHRISTOPHER OVERTON ) | |
| GIBSON, AND EDGAR WESLEY HEVLE, ) | |
| ) | |
| DEFENDANTS. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

THURSDAY, MAY 11, 2006

1:15 P.M.

DEBORAH D. PARKER, CSR 10342
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
411 WEST FOURTH STREET
SUITE 1-053
SANTA ANA, CALIFORNIA 92701
(714) 542-8409
D.PARKER@IX.NETCOM.COM
DEBORAH D. PARKER, U.S. COURT REPORTER

Deborah D. Parker, Official Court Reporter

Page 18

[blank]

Page 19

19  MR. WOLFE: Your Honor, the government calls
20  William Halpin.
21  THE COURT: Thank you very much. William Halpin.
22  (Pause.)
23  THE COURT: Thank you, sir.
24  Mr. Halpin, if you'd be kind enough to step
25  between the double doors. And now, sir, would you be kind

Page 20

1  enough to raise your right hand, or your left is fine, it
2  doesn't matter. Well, it does. Right hand is fine.
3  Kristee, if you would swear Mr. Halpin.
4  WILLIAM HALPIN, PLAINTIFF'S WITNESS, SWORN
5  THE WITNESS: I do.
6  THE COURT: Thank you.
7  Mr. Halpin, you can come on either side of the
8  table, it doesn't matter. But if you'd be kind enough to be
9  seated in the witness box just to my right, sir.
10  (Pause.)
11  THE COURT: Mr. Halpin, would you be kind enough
12  to state your full name for the jurors.
13  THE WITNESS: William David Halpin.
14  THE COURT: And would you spell your last name,
15  sir?
16  THE WITNESS: H-A-L-P-I-N.
17  THE COURT: Slide the microphone a little closer
18  to you.
19  This would be Mr. Wolfe on direct examination on
20  behalf of the government.
21  MR. WOLFE: Thank you, your Honor.
22  DIRECT EXAMINATION
23  BY MR. WOLFE:
24  Q. Mr. Halpin, do you work for the Bureau of Prisons
25  today?

Page 21

1  A. Yes.
2  Q. And, sir, for how long have you worked for the Bureau
3  of Prisons?
4  A. Since April 1991.
5  Q. Sir, what is your job duty today with the Bureau of
6  Prisons?
7  A. Special Investigation Section Technician.
8  Q. And I would like to call your attention, Mr. Halpin, to
9  January of 1992. What institution were you working at?
10  A. USP Leavenworth.
11  Q. And USP Leavenworth is in Leavenworth, Kansas, is it?
12  A. Yes.
13  Q. What was your job title at that time, January of 1992,
14  at the penitentiary in Leavenworth?
15  A. Correctional officer.
16  Q. Mr. Halpin, I call your attention to January 4th of
17  1992 about 3:40 in the afternoon. Were you on duty at the
18  United States Penitentiary in Leavenworth at that time of
19  day?
20  A. Yes.
21  Q. Were you on duty in the B-Upper Cellhouse?
22  A. Yes.
23  Q. Would you please tell the jury first what B-Cellhouse
24  represents and, second, what B-Upper represents?
25  A. "B" stands for just an identification of a particular

Page 22

1 cellhouse. The B-Cellhouse is divided into a lower section
2 and an upper section. So B-Upper would be B-Cellhouse in
3 the upper portion.
4 Q. And how many floors, if that's a reasonable term, of
5 cells are there in B-Cellhouse at USP Leavenworth in January
6 of 1992?
7 A. There's two on the bottom and three on the top. Two in
8 B-Lower, three in B-Upper.
9 Q. Are the ones in B-Upper 3, 4, and 5?
10 A. Yes.
11 Q. Sir, on the afternoon of January 4th, 1992, while you
12 were on duty in B-Upper Cellhouse, did you see part of an
13 assault between inmates?
14 A. Yes.
15 Q. Would you please describe for the jury what first drew
16 your notice and what you saw.
17 A. I saw two inmates running down the stairwell, one
18 behind the other. The one behind had a knife in his hand
19 striking the one in front.
20 Q. Officer Halpin, where were you standing when you saw
21 these two inmates, one chasing the other with a knife?
22 A. On the flat of 3 by the mailbox.
23 Q. Officer Halpin, when you say you were on the flat at 3,
24 would you tell the jury just what you mean by "on the flat"?
25 A. B-Cellhouse, the cells are in the center of the block

Page 23

1 so the flat is considered the outside.
2 Q. And am I right that you said 3, 4, and 5, there are
3 three floors of cells, the cells are in the middle, back to
4 back, facing out in each direction, and then there's a
5 walkway around each side so that one can walk along the
6 walkway, step into a cell if the door is open; is that a
7 fair description?
8 A. Yes. Yes.
9 Q. When you saw from the flat on the third level the two
10 inmates running, where did you see them?
11 A. Coming off of 5 down to 4 on the steps.
12 Q. Did you recognize either of those inmates?
13 A. No.
14 Q. How much were you able to see by way of description of
15 the inmate who had the knife in his hand?
16 A. His clothing, basically.
17 Q. And what did you see of his clothing?
18 A. He had a watch cap on, green fatigue shirt, khaki
19 pants.
20 Q. Was a green fatigue shirt a common article of clothing
21 in B-Cellhouse at the penitentiary at Leavenworth in January
22 of 1992?
23 A. Yes.
24 Q. Were khaki pants a common article of clothing in
25 B-Cellhouse at the penitentiary in Leavenworth in January of

Page 24

1 1992?
2 A. Yes.
3 Q. How about watch caps?
4 A. Yes.
5 Q. Were you able to see anything of the size or hair
6 coloring or eye coloring or skin coloring of the man who had
7 the knife?
8 A. No. Not that I can recall. Other than he was an
9 African/American.
10 Q. Do you know whether the man with the knife was wearing
11 gloves?
12 A. I don't recall.
13 Q. Do you recall which hand the man had the knife in?
14 A. His right hand.
15 Q. When you first saw them, you said, I believe, they were
16 coming down the stairs from the fifth floor to the fourth.
17 Tell us where you saw them go next.
18 A. When I saw what was happening, I did a radio assist
19 call, officer needs assistance, and made the announcements
20 on the radio, and then I went up after them. They took off
21 towards the back of 4 Gallery, the assailant did. I don't
22 know where the victim was going.
23 Q. So when you said the assailant went off to the back of
24 4 Gallery, what do you mean by "the back"?
25 A. Rather than the front to the exit of the cellhouse, to

Page 25

1 the rear of it.
2 Q. And did you see any more of the victim of the assault?
3 A. Not that I recall.
4 Q. Did the assailant do anything, apart from running away
5 from you, as he was leaving?
6 A. He untied the weapon from his hand and threw it over
7 the railing.
8 Q. Would you describe for the jury how it is that you can
9 speak of the assailant untying the weapon from his hand?
10 A. As I was behind him catching him, I could see his right
11 hand coming out and he was untying, quite obviously, and
12 when he threw, it was clear that he was untying something
13 from his wrist, and it turned out to be the weapon.
14 Q. Were you able to see what the assailant did with the
15 weapon after he untied it from his hands?
16 A. Yes, sir. He threw it over the railing.
17 Q. Were you able to see where it went after he threw it?
18 A. Officers up above pointed out where it was on the
19 floor, and the lieutenant and I went down and picked it up.
20 Q. After the assailant threw the knife away, what did you
21 do next?
22 A. I'm not 100-percent sure. It's been a long time. I'm
23 not sure if I stopped right then and looked for the weapon
24 or pursued after it.
25 Q. Either way, you said eventually there came a time when

Page 26

1  someone else called out the location of the weapon; is that
2  right?
3  A. Yes.
4  Q. Please describe that for the jury, what you heard said,
5  what you did after you heard it said.
6  A. It came from above. Another officer said, "There it is
7  down on 3." I looked over the railing, went down to 3, and
8  that's where the weapon was.
9  Q. When you went down to 3, did you see the weapon on the
10 third floor of the cellhouse?
11 A. Yes.
12 Q. Was there anyone else present when you saw the weapon
13 there?
14 A. Lieutenant Carr, I believe.
15 Q. And what happened after you and Lieutenant Carr saw the
16 weapon on the third floor of the cellhouse?
17 A. Carr secured it.
18 Q. What happened next after the weapon had been secured by
19 Lieutenant Carr?
20 A. Myself and two, three other officers were detailed out
21 to do cell-by-cell upper body searches to look for anyone
22 who might have been involved.
23 Q. Officer Halpin, will you tell the jury what you mean by
24 doing cell-by-cell upper body searches?
25 A. We would go cell to cell, have the inmates -- first

Page 27

1  we'd look at their clothing, have them strip down and look
2  for injuries or blood, any signs that would indicate that
3  they were near or part of the perpetrators.
4  Q. Did -- during your cell-by-cell upper body search that
5  day, did you find anything of note?
6  A. Some of the inmates had blood on their clothes and that
7  sort of thing. I think there was two, three, four of them,
8  something like that.
9  Q. Do you recall with any more detail what you found
10 during the search?
11 A. No, sir.
12 Q. Do you recall seeing the blood yourself, as you sit
13 here today?
14 A. I don't recall. No, no.
15 Q. After the -- making the findings during the
16 cell-by-cell search, what was done with those inmates?
17 A. I don't recall specifically what was done with them.
18      MR. WOLFE: Your Honor, nothing further for
19 Officer Halpin.

Page 28

Page 29

## CERTIFICATE OF SERVICE

I, Tonia L. Johnson, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**TRIAL STIPULATION RE: PROPOSED TESTIMONY OF WILLIAM HALPIN**
service was:

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[X] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

**AMY E. JACKS**
**1717 FOURTH STREET, STE 300**
**SANTA MONICA, CA 90401**

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

This Certificate is executed on **September 22, 2006**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

*(signature)*
TONIA L. JOHNSON