**ORIGINAL**

Bernard J. Rosen/S.B. No. 41538
1717 4th St., Suite 300
Santa Monica, CA. 90401
Tel. (310) 451-4577
Fax: (310) 451-6079
e-mail: bernardrosenlaw@aol.com

Donald J. Calabria/ S.B. No. 44935
16133 Ventura Blvd., Suite 600
Encino, CA 91436
Tel. (818) 990-0110
Fax: (818) 990-7630
e-mail: donaldjcalabria@msn.com

Attorneys for Defendant
EDGAR WESLEY HEVLE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>BARRY BYRON MILLS, et al,<br><br>Defendants. | No. CR 02-938-DOC<br><br>**Reply of Defendant Hevle to the Government's Opposition to His Motion for Judgment of Acquittal after Jury Verdict** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES OF AMERICA AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that defendant Edgar Wesley Hevle hereby files a document entitled Reply of Defendant Hevle to the Government's Opposition to His Motion for Judgment of Acquittal after Jury Verdict

Dated: Sept 27, 2006

Respectfully submitted,

BERNARD J. ROSEN
Attorney for Defendant
EDGAR WESLEY HEVLE

DOCKETED ON CM
OCT 4 2006
BY _____ 172

3901

## MEMORANDUM OF POINTS AND AUTHORITIES

The Government has filed its Opposition to defendant's Motion for Judgment of Acquittal after Jury Verdict arguing, in part, that he fundamentally misunderstands the jury's verdict against him and, as a consequence, has misread the cases upon which he relies. (Opposition, 1:3-6.) His argument, the government contends, "is all but frivolous." (Id, 1:6.) Hmmn!

The government's bottom line is that "[a]ll the cases relied upon by defendant Hevle involve substantive crimes which were not the goals or objects of the relevant conspiracy." (Id., 4:2-4.) Ergo, argues the government, since the counts which defendant attacks by his motion are two counts of murder, and since he was also convicted of a count of conspiracy, one of the objects of which was the commission of murder, Hevle is guilty of murder "under Pinkerton," and nothing more need be said! (Id., 4:26-5:3.) Perhaps not.

The government's argument is a simple one, but like many simplistic arguments it tends to overstate one side of the issue and understate the other. Certainly Alvarez[1] fits the government's description of a case "involv[ing] substantive crimes which were not the goals or objects of the relevant conspiracy." But defendant Hevle cited Alvarez, not because it was necessarily factually on point, but because it is the first appellate case discussing the issue of Due Process limits on Pinkerton liability at any length (id., at 850) and because it expressly rejected prosecutorial "whim" as an adequate substitute. (Id., at 850, fn. 25.) It should also be noteworthy that in the twenty years Alvarez has been on the books, its influence appears to be growing. Several other circuits -- at least the Fourth, Fifth, Seventh, Ninth, and the Tenth[2] -- have agreed with, or at least acknowledged, the concerns expressed therein, while no circuit, and certainly not the Supreme Court, has yet

---

[1] United States v. Alvarez, 755 F.2d 830 (11th Cir. 1985).

[2] The cases are cited either in defendant's Supplemental Memorandum in support of his motion or in United States v. Castaneda, 9 F.3d 761, 766 (9th Cir. 1993)

1 found reason to criticize or reject it!

2 The government's argument, it is submitted, also misperceives and, thus, misdescribes one of the more significant cases following *Alvarez*, the Ninth Circuit's own -- *United States v. Castaneda, supra*. That is not a case, it is submitted, that is accurately described as sitting squarely outside what the government calls "the goals or objects of the relevant conspiracy." (Opposition, 4:3-4.)

7 The goal or object of the *Castaneda* conspiracy was, of course, the distribution of cocaine and heroin in violation of 21 U.S.C. § 846 (*United States v. Castaneda, supra*, 9 F.3d at 764) and each of the defendants, including Leticia Castaneda, was convicted of the charge. (*Ibid.*) Each defendant, including Leticia, was also convicted of firearms possession; several counts of firearms possession, in fact, (*ibid.*), one count as it related to the conspiracy itself and other counts related to several "possession with intent to distribute offenses involving other defendants." (*Ibid.*) But are these firearms offenses truly, as the government would have the Court conclude, "substantive crimes which were not the goals or objects of the relevant conspiracy"? (Opposition, 4:3-4.) Is it enough, in other words, as the government inferentially argues, that *Castaneda* is distinguishable -- and defendant's attack on his convictions for counts Six and Seven thereby "render[ed] ... frivolous" (*id.*, 3:27-4:1) -- solely because the indictment didn't allege, there, that firearms possession was also a "goal[] or object[]" of the conspiracy? Defendant Hevle thinks not.

21 The firearms convictions, of course, were for violation of 18 U.S.C. § 924(c). (*United States v. Castaneda, supra*, 9 F.3d at 764.) It may not have been alleged that firearms possession was a "goal" or an "object" of the drug trafficking conspiracy, but it was alleged, indeed, it <u>had to be</u> alleged, that the firearms possession was "during and in relation to" the drug trafficking offenses charged. "[D]uring and in relation to" drug trafficking was one of the elements of the crime! (*Id.*, at 765.) No drug trafficking crime "during" which and "relat[ed]" to which the firearm possession occurred -- no federal crime!! They went together, in other words, like,

3

well ... love and marriage, a horse and carriage.[3] Or, in the oft-quoted words of the Second Circuit,

> "Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment."
> (*United States v. Wiener*, 534 F.2d 15, 18 [1976]).

Indeed, isn't that what is meant when the Ninth Circuit acknowledged in *Castaneda* that "courts recognize the nexus between drugs and firearms...." (*United States v. Castaneda, supra*, 9 F.3d at 767.) Isn't, thus, a 924(c) count a kind of hybrid situation -- not, perhaps, necessarily an express "goal" or "object" of a drug trafficking conspiracy but, nevertheless, so closely connected as to be a "tool of the trade?"

Murder, of course, is a substantive crime which is <u>not</u> usually the goal or object of a drug trafficking conspiracy; nevertheless, under certain circumstances, e.g., *Alvarez*, it is foreseeable and thus *Pinkerton* liability attaches. But no court, not even the *Alvarez* jurists, suggested that murder was as common as a "tool of the trade" of drug trafficking.

On the other hand, during its discussion of the *Pinkerton* doctrine, and the possible limits thereto, if any, *Alvarez* expressly noted that one of two types of "typical *Pinkerton* case[s]" is one "in which the substantive crime is not a primary goal of the alleged conspiracy, *but directly facilitates the achievement of one of the primary goals*" -- and cited the case of a narcotics conspiracy and the substantive crime of possession of a firearm during commission of a felony as an example thereof! (755 F.2d *supra*, at 850, fn. 24; emphasis added.) The Eleventh Circuit then went on to conclude that in that type of case, "*Pinkerton* liability can be imposed on all conspirators because the substantive crime is *squarely within* the intended scope of the conspiracy." (*Ibid.*; emphasis added.)

---

[3]With, of course, due credit to Jimmy Van Heusen and Sammy Cahn -- not to mention ol' blue eyes.

4

It appears, it is submitted, that if the *Mills* indictment had been filed in the Southern District of Florida, the government might be right, defendant Hevle's argument might be frivolous. Of course, that conclusion was pure dictum, and who knows how the Eleventh Circuit might view defendant Hevle's position vis-a-vis counts Six and Seven today.

What is known, however, is that when the Ninth Circuit was faced with a case calling for application of *Pinkerton* liability to that very "second category" factual situation -- a situation to which the *Alvarez* court mused that *Pinkerton* liability "can be imposed ..." (*ibid.*) -- the Ninth Circuit balked. Rather said the Ninth Circuit:

> "Where a defendant has little or no connection to the predicate drug offense, another conspirator's use of a firearm in relation to the predicate drug offense may, in some fact situations, be unforeseeable. *In those cases, it would violate due process to find the defendant vicariously liable for the firearm's use under § 924(c). Leticia's situation is a paradigm example of such an unforeseeable use.*"
> (*United States v. Castaneda, supra,* 9 F.3d at 767; emphasis added.)

The Ninth Circuit has, thus, imposed Due Process limits on one category of "absolutely typical cases for application of the <u>Pinkerton</u> doctrine"! (Opposition, 4:18-20.) What is so sacrosanct, "in some fact situations" (*United States v. Castaneda, supra,* 9 F.3d at 767), about the other?

In its written Order denying admission of the Illinois *Sahakian* indictment (defendant Hevle's proffered exhibit 3005), this Court observed, amongst other things, that the indictment before it, the *Mills* indictment, alleged a conspiracy "broader" than the conspiracy alleged in the *Sahakian* indictment. (Order, 3:23-4:2.) Viewed in slightly different terms, can a conspiracy indictment be too broad? Can a defendant's role in a broadly alleged conspiracy be so minor -- e.g., amongst other things, the Ninth Circuit found, as to Leticia Castaneda, that "[t]he evidence does not show ... that she ever had more than a marginal role in the conspiracy" (*United States v. Castaneda, supra,* 9 F.3d at 767) -- that Due Process might be held to apply to both categories of *Pinkerton* liability cases? If the word "categories" is removed from

5

consideration, isn't that exactly what *Castaneda* stands for?

This Court has already found that "the myriad intervening facts between Hevle's message and the Lewisburg murders render the murders too remote to be plausibly considered within the natural and probable consequences of Hevle's having sent the message, even drawing every plausible inference in favor of the government." (Order *supra*, 6:26-7:2.) That factual finding remains. It might also be recalled that Al Benton, whether remembering he had said it before or not, agreed that it should be said of defendant Hevle, "He can't get along with people *which kept him out of the loop on a lot of things.*" (Reporters transcript, 5/30, v. II, 86:17-87:6; emphasis added.) Being "out of the loop" and a crime being "too remote to be plausibly considered within the natural and probable consequences of" a conspirator's actions, is a "fact situation[]" (*United States v. Castaneda, supra*, 9 F.3d at 767), it is submitted, remarkably similar, if not absolutely identical, to that of Leticia Castaneda. In both instances, it is submitted, "the liability of such 'minor' participants [should] rest on a more substantial foundation than the mere whim of the prosecutor." (*United States v. Alvarez, supra*, 755 F.2d at 850, fn. 25.) How about upon Due Process? (*United States v. Castaneda, supra*.)

## CONCLUSION

Defendant Hevle respectfully submits that his convictions for counts Six and Seven are another "paradigm example" (*id.*, at 767) of *Pinkerton* liability extended too far. This Court can, and, he submits, should, grant his renewed motion for judgment of acquittal as to those counts.

Respectfully submitted,

BERNARD J. ROSEN
Attorney for Defendant
EDGAR WESLEY HEVLE

| | |
|---|---|
| 1 | PROOF OF SERVICE |
| 2 | |

3  STATE OF CALIFORNIA
4  COUNTY OF LOS ANGELES

6  I am an active member of the State Bar of California and not a party to the within action. My business address is 1717 4th St., Suite 300, Santa Monica, CA. 90401.

On Sept 27, 2006, I served the foregoing document:

**Reply of Defendant Hevle to the Government's Opposition to His Motion for Judgment of Acquittal after Jury Verdict**

on the parties interested in this action by:

___ personally delivering a true copy thereof to their address as follows:

___ delivering a true copy thereof by messenger to their address as follows:

___ delivering a true copy thereof by telefax to their address as follows:

X depositing it in the United States mail in a sealed envelope with postage fully prepaid to their address as follows:

Stephen G. Wolfe
Asst. United States Attorney
1500 United States Courthouse
312 N. Spring St.
Los Angeles, CA 90012

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of Sept, 2006, at Santa Monica, California.