DEBRA WONG YANG
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No. 162684)
MARK AVEIS (Cal. Bar No. 107881)
Assistant United States Attorneys
Organized Crime and Terrorism Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4477
Facsimile: (213) 894-0142
E-Mail: Mark.Aveis@usdoj.gov
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                )   No. CR 02-938-RGK
                                         )
        Plaintiff,                       )   GOVERNMENT'S RESPONSE TO
                                         )   DEFENDANT GRIFFIN'S
        v.                               )   SUPPLEMENTAL OBJECTIONS TO
                                         )   GOVERNMENT'S EXHIBITS UNDER
ROBERT GRIFFIN, et al.,                  )   FED. R. EVID. 403
                                         )
        Defendants.                      )   Date: November 3, 2006
                                         )   Time: 1:30 p.m.

Plaintiff United States of America hereby responds to defendant Griffin's supplemental objections to the government's exhibits which the government intends to display during its opening statement.

I.  SUMMARY

Defendant has attempted to sanitize this case by objecting to six (6) of the exhibits which the government intends to display to the jury during the government's opening statement, namely five photographs (Exhibits 21A, 503A, 800A 1400B, 1503H), attached hereto, and one video (Exhibit 1500). Defendant claims that each of the images is more prejudicial than probative



because the "gruesome" images of murder victims can be obviated by the government's other witnesses, including prison guards, "medical witnesses to testify concerning the cause of death," and the murderers. Motion, 4:21-23.

It should be noted that defendant has not objected to the relevancy of the images; only that the images should be excluded under Fed. R. Evid. 403. The government submits that each of the six images is relevant to proof of a specific series of charged conspiratorial overt acts alleging murder and/or the two substantive murder counts (Counts Four and Five). Namely, among other things, the images show wounds suffered by the victims at the hands of the killers which prove intentional killing, rebut arguments about self-infliction, accidental death, or alibi, and provide an important image of the killing relevant to proof of planning by the defendants in furtherance of the Aryan Brotherhood's racketeering conspiracy.

The subject exhibits are also relevant to proof of victim identity and to corroborate the testimony of several cooperating defendants, including the killers of two of the victims, whose credibility will most certainly be challenged by defendants.

For example, the photographs of victims Stephen Clark (Exhibit 21A), Thomas Lamb (Exhibit 800A), Arthur Ruffo (Exhibit 1400B), and Aaron Marsh (1503H) show the face of the victim and, thus, critical for witnesses to identify these victims and will aid the jury in distinguishing one victim from another. Additionally, the photograph of Thomas Lamb (Exhibit 800A)

2

demonstrates that Mr. Lamb possessed an Aryan Brotherhood tattoo, namely a Shamrock with "6 6 6," evidencing that Mr. Lamb was a member of the Aryan Brotherhood, a critical fact to the government's theory of Mr. Lamb's murder.

The photograph of Richard Barnes (Exhibit 503A) is evidence that Mr. Barnes was killed in the bedroom of his house in Temple City, California, execution style. This evidence is critical for the government to establish that Mr. Barnes was killed in retaliation for the testimony of his son, Aryan Brotherhood drop-out, Stephen Barnes, against the Aryan Brotherhood and defendants Robert Griffin and John Stinson. Also, the photo of Mr. Richard Barnes (Exhibit 503A), demonstrates that the murder location was relatively undisturbed (including the presence of a Samurai sword), refuting an argument that Mr. Barnes died during a botched robbery.

The video of the extraction of Aaron Marsh (Exhibit 1500) from his cell is highly relevant because a noose was found at the murder scene while Mr. Marsh was being extracted, demonstrating that Marsh was, in fact, murdered by strangulation at the hands of his cell mate, Aryan Brotherhood member, Gary Littrell.

Furthermore, defendants have refused to stipulate to cause of death and the images will certainly be relevant and material to the testimony of the government's medical expert regarding cause of death.

Case law clearly supports the introduction of visual images of murder victims in cases of murder, as more probative than

3

prejudicial to support the government's obligation to prove cause of death, victim identity, elements of the offenses, and to corroborate witness testimony. Defendant's sole authority is inapposite and, if anything, supports the introduction of the proffered images.

II. THE PROFFERED IMAGES

A. <u>Crime Scene Close-up of Five Different Victims</u>

Five of the six (6) exhibits are distinct from each of the other approximately 36 exhibits and distinct from each other. Namely, each of the five exhibits depicts the crime scene showing the body of a different murder victim identified in the indictment as having been killed in furtherance of the Aryan Brotherhood's racketeering conspiracy. See Indictment, Overt Acts, ¶¶ 69-74 (murder of Stephen Clark, Exhibit 21A); ¶¶ 54-63 (murder of Richard Barnes, Exhibit 503A); ¶¶ 64-68 (murder of Thomas Lamb, Exhibit 800A); ¶¶ 135-140 (murder of Arthur Ruffo); and ¶¶ 309-313 (murder of Aaron Marsh).

Furthermore, the photos of Arthur Ruffo and Aaron Marsh relate specifically to the two Violent Crimes in Aid of Racketeering ("VICAR") counts for which the defendants face the death penalty. See Indictment, Count Four (murder of Arthur Ruffo, Exhibit 1400B); Count Five (murder of Aaron Marsh, Exhibit 1503H).

As to victim Clark (Exhibit 21A), the photo shows the multiple stab wounds inflicted with a knife which the government will prove was provided by the AB as part of its conspiratorial

4

decision to "hit" (murder) Clark. The multiple stab wounds are consistent with the government's expected proof that Clark's brutal killing was intended to send a message to other would-be AB enemies.

As to victim Barnes (Exhibit 503A), the photo shows Barnes lying on his bed in his bedroom after suffering three close-range shots to the back of his head. The photo selected for use in the government's opening could have been far more graphic, such as depicting a close-up of the bullet wounds. The position and location of Barnes' body is consistent with the government's evidence that he was murdered in his home upon an AB conspiratorial "hit" order which was intended to send a message to Barnes' son and others not to testify against the AB.

As to victim Lamb (Exhibit 800A), the photo depicts Lamb's head and torso, with Lamb's name ("Thomas") tattooed on his chest next to a "Shamrock" tattoo. The Shamrock tattoo is, of course, well know to the defendants as the symbol of the AB. Thus, the photo shows more than just a dead body; it shows a dead AB member identified by the AB's own symbol. Furthermore, the government will prove that Lamb was killed in furtherance of orders specifically written by defendants Stinson and Griffin, as identified in government's Exhibit one. <u>Defendants did not object to the use of government's Exhibit One in the government's opening statement</u>.

As to victim Ruffo (Exhibit 1400B), the photo shows Ruffo in a way that cannot be described in words. He was a large figure

and killing him was both risky and difficult. The photo thus shows more than the lifeless body of the murder victim. It depicts the result of planning and carrying out the order of the AB to kill an AB enemy.

As to victim Marsh (Exhibit 1503H), the photo shows strangulation marks caused by a "garrotte," or cord with knots, specifically created to kill. The government will introduce evidence that the cord was created as part of the AB's plan to kill Marsh, another AB enemy.

B.  Video Excerpt of Cell "Extraction" of Marsh

The sixth (6th) proposed exhibit is a short (less than three-minute) excerpt of a videotape showing the "extraction" or removal from the cell of Aaron Marsh within minutes of his murder (Exhibit 1500). The video differs from the photo of Marsh (Exhibit 1503H) because it depicts the interior of the jail cell where the crime occurred, rather than being limited to a depiction of the wounds relevant to cause of death. The video tells more than the story of Marsh's death. It provides a unique depiction of the inside of a cell that no juror has likely ever scene. Life behind bars is relevant to both the government's and the defense case. And, the way by which Marsh was killed cannot completely be explained without regard to the location because of the close proximity to certain other inmates and certain items in the cell. Again, two nooses are scene in the video

Finally, each of the images was carefully selected for use in the opening statement. Other, more graphic images, such as

1 | autopsy photos relevant to proof of cause of death, were left
2 | out. Thus, it cannot reasonably be stated that the government is
3 | attempting to inflame or prejudice the jury merely for the sake
4 | of doing so. The images are relevant to proof of specific
5 | counts, motive, and conspiratorial connection.
6 | III. LEGAL AUTHORITY
7 |     The government acknowledges that the subject images are
8 | unpleasant. Nonetheless, courts routinely permit introduction of
9 | such images as within the discretion of the court. See, e.g.,
10 | Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986) (on
11 | habeas review of introduction of crime scene and autopsy photos,
12 | court found not "fundamentally unfair" to permit display of vivid
13 | but "unpleasant" photos); United States v. Velazquez, 246 F.3d
14 | 204 (2d Cir. 2000) (graphic nature alone not grounds for
15 | exclusion under Rule 403). The government does not believe that
16 | any of the subject images is particularly graphic or gruesome.
17 | Nonetheless, a general rule for admissibility of murder
18 | photographs, which includes "gruesome" photos, adopted in
19 | California State courts, which is instructive here, was set forth
20 | in People v. Seastone, 3 Cal. App. 3d 60, 82 Cal. Rptr. 907
21 | (1969). There, the California Court of Appeal held that if the
22 | principal effect of demonstrative evidence such as photographs is
23 | to arouse the passions of the jury and inflame them against the
24 | defendant because of the horror of the crime, the evidence must
25 | of course be excluded. On the other hand, if the evidence has
26 | probative value with respect to a fact in issue that outweighs

the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidentally arouse the passions of the jury. Id. at 909 (quotation omitted).

Still and video images of gruesome murders, including of decapitations and vicious stabbings, appear to have been routinely allowed in murder cases in the court's discretion, over Rule 403 objections, in order to prove elements of the charged offenses, the cause of death, and to corroborate witness testimony. See, e.g., United States v. Yahweh, 792 F.Supp. 104, 106 (S.D. Fla. 1992); see also Government of the V.I. v. Albert, 244 F.3d 301 (3rd Cir. 2001) (images and videotape allowed over 403 objection, showing victim's naked body spread on bed, washcloth stuffed in mouth, multiple stab wounds and blunt force trauma); United States v. Naranjo, 710 F.2d 1465 (10th Cir. 1983) (photos of victim showing shots to face, entry and exit wounds to lip, body lying on bed allowed over 403 objection).

As stated above, each of the subject images is related to a fact, if not more than one fact, at issue. Causes of death, identity of victims, means of inflicting wounds, and witness testimony in need of corroboration are all facts at issue, which clearly outweigh any possible prejudice. As to the latter point, given the nature of the allegations and the jury's familiarity with the subject matter through voir dire and the stipulated reading of the proposed charges, it cannot reasonable be said that the prejudice outweighs the probative value of introducing any of these images in the government's opening statement.

Finally, defendant's single case authority is not on point. McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993) was a case on habeas review where the court considered whether evidence of battered child syndrome could properly have been admitted at trial over objections that there was no evidence connecting defendant to the murder of a child. Here, of course, there is no such theory such as battered inmate syndrome, nor is there a lack of evidence connecting defendants to the overt acts to which the subject images relate.

## IV. CONCLUSION

Based on the foregoing, the government should be permitted to refer to and display each of the subject images during its opening statement, and the motion should be denied.

DATED: November 1, 2006

        Respectfully submitted,

        DEBRA WONG YANG
        United States Attorney

        THOMAS P. O'BRIEN
        Assistant United States Attorney
        Chief, Criminal Division

        J. MARK CHILDS
        MARK AVEIS
        Assistant United States Attorney
        Attorneys for Plaintiff
        UNITED STATES OF AMERICA





EXHIBIT 503A





EXHIBIT 800A





## CERTIFICATE OF SERVICE

I, **NETTIE RAFEE** declare:

That I am a citizen of the United States and resident or employed in Los Angeles, County, California; that my business address is Office of United States Attorney, Federal Courthouse 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on November 1, 2006, I deposited in the United States mail, at the U.S. Courthouse, in the above-entitled action, in an envelope bearing the requisite postage,

a copy of: **GOVERNMENT'S RESPONSE TO DEFENDANT GRIFFIN'S SUPPLEMENTAL OBJECTIONS TO GOVERNMENT'S EXHIBITS UNDER FED. R. EVID. 403**
was:

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By hand delivery addressed as follows:

[x] By facsimile as follows:

[ ] By messenger as follows:   [ ] By federal express as follows:

SEE ATTACHMENT

at their last known address, at which place there is a delivery service by United States mail.

This Certificate is executed on **November 1, 2006**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

Nettie Rafee

<u>U.S. v. ROBERT LEE GRIFFIN, ET AL.</u>,
CR NO. 02-938-RGK (9/25/06)


Joseph F. Walsh, Esq. (ROBERT GRIFFIN)
316 West Second Street, Suite 1200
Los Angeles, CA 90012
Tel: 213-627-1793
Fax: 213-489-4700
Email: Attyjoewalsh@aol.com

Michael M. Crain, Esq. (ROBERT GRIFFIN)
P.O. Box 3730
Santa Monica, CA 90408
**Fed EX or Mail Address:**
**968 S. Carmelina**
**Los Angeles, CA 90049**
Tel: 310-571-3324
Fax: 310-571-3354
Email: Michaelmcrain@aol.com

Knut Johnson, Esq. (DAVID CHANCE)
1010 Second Avenue, Suite 1850
San Diego, CA 92101
Email: knut@knutjohnson.com
(619) 232-7080
Fax (619) 232-6052

John Cotsirilos, Esq. (DAVID CHANCE)
2442 Fourth Avenue
San Diego, CA 92101
Email: Mccabeatty@aol.com
(619) 232-6022
Fax (619) 232-6052

Paul Potter, Esq. (JOHN STINSON)
Potter, Cohen & Samulon
3852 East Colorado Blvd.
Pasadena, CA 91107
(626) 795-0681
Fax: (626) 795-0725
Email: pepsquire@earthlink.net

Terrence Bennett, Esq. (JOHN STINSON)
P.O. Box 709
Pasadena, CA 91102-0709
(626) 798-6675
Email: benedictus@earthlink.net
FAX (626) 798-6663