MICHAEL M. CRAIN, California State Bar No. 45083
P.O. Box 3730
Santa Monica, California 90408
Telephone: (310) 571-3324; Facsimile: (310) 571-3354
E-mail: Michaelmcrain@aol.com

JOSEPH F. WALSH, California State Bar No. 67930
316 West Second Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 627-1793; Facsimile: (213) 489-4700
email: attyjoewalsh@aol.com

Co-counsel for Defendant Robert Lee Griffin

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> JOHN STINSON, ROBERT LEE GRIFFIN, and DAVID ALLEN CHANCE, <br> Defendants | USDC Case No. CR-02-938-RGK <br> (Central District of California - Hon. R. GARY KLAUSNER <br><br> DEFENDANT ROBERT LEE GRIFFIN'S OPPOSITION TO GOVERNMENT'S NOTICE OF MOTION AND MOTION TO TERMINATE APPOINTMENT OF CAPITAL COUNSEL FOR DEFENDANT'S JOHN STINSON AND ROBERT GRIFFIN <br><br> Date: 11/3/06 <br> Time: 1:30 p.m. <br> Ctrm: 850 <br><br> <u>DEATH PENALTY CASE</u> |

MICHAEL M. CRAIN, California State Bar No. 45083
P.O. Box 3730
Santa Monica, California 90408
Telephone: (310) 571-3324; Facsimile: (310) 571-3354
E-mail: Michaelmcrain@aol.com

JOSEPH F. WALSH, California State Bar No. 67930
316 West Second Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 627-1793; Facsimile: (213) 489-4700
email: attyjoewalsh@aol.com

Co-counsel for Defendant Robert Lee Griffin

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN STINSON, ROBERT LEE GRIFFIN, and DAVID ALLEN CHANCE,<br><br>Defendants | USDC Case No. CR-02-938-RGK<br>(Central District of California - Hon. R. Gary Klausner)<br><br>DEATH PENALTY CASE<br><br>DEFENDANT ROBERT LEE GRIFFIN'S OPPOSITION TO GOVERNMENT'S NOTICE OF MOTION AND MOTION TO TERMINATE APPOINTMENT OF CAPITAL COUNSEL FOR DEFENDANT'S JOHN STINSON AND ROBERT GRIFFIN<br><br>Date:       11/3/06<br>Time:      1:30 p.m.<br>Ctrm:      850<br><br>DEATH PENALTY CASE |

TO THE HONORABLE R. GARY KLAUSNER, UNITED STATES DISTRICT

COURT JUDGE:

    Defendant Robert Lee Griffin, through his counsel Michael M. Crain and

Joseph F. Walsh, hereby replies to and opposes the Government's Notice of Motion

1 | and Motion to Terminate Appointment of Capital Counsel for Defendants John
2 | Stinson and Robert Griffin.
3 |     Mr. Griffin's Opposition is based on the attached Memorandum of Points and
4 | Authorities, the Court file, and on such other evidence and argument as the Court
5 | may consider.
6 |
7 |     Respectfully submitted,
8 |
9 | DATED: November 2, 2006
10 | *[signature]*
    MICHAEL M. CRAIN, co-counsel
    for defendant ROBERT LEE GRIFFIN

POINTS AND AUTHORITIES

INTRODUCTION

I.

On November 2, 2006 at 2:40 p.m counsel for the government sent an email to counsel for defendant Robert Lee Griffin with an attached motion entitled Government's Notice of Motion and Motion to Terminate Appointment of Capital Counsel for Defendant's John Stinson and Robert Griffin. It states that a hearing on the Motion is to be held less than 24 hours later at 1:30 p.m. on November 3, 2006. Counsel for Mr. Griffin became aware of this email and attached motion at 4:10 p.m. on November 2, 2006. The government's motion should be denied on a number of grounds.[1]

II.

THE GOVERNMENT'S MOTION IS UNTIMELY

The government has filed a motion to discharge two of its opposing counsel, Terrence Bennett and Michael M. Crain. Although the government does not acknowledge this fact in its pleading, the motion raises serious constitutional and other legal issues involving the right to counsel and the due process right to a fair trial.

The government asks that its motion be heard less than 24 hours after it was emailed to defense counsel. The government has not asked to shorten time. The

---

[1] Counsel for Mr. Griffin is filing this Opposition without having had adequate time to research and write it and therefore can only outline their opposition. Counsel is filing this motion, written on the evening of November 2, 2006 and filed on the morning of November 3, 2006, because the trial is ongoing and opening statements are scheduled for the next court date following November 3, 2006, that is, November 7, 2006.

government's motion is in violation of Local Rule 6-1, which requires that a motion served by mail shall be served not later than 24 days before the motion day designated in the motion. Because the motion is untimely, it should be summarily denied.

III.

### THE GOVERNMENT HAS NO STANDING TO RAISE ANY ISSUE CONCERNING MR. GRIFFIN'S REPRESENTATION BY COUNSEL

Initially, the recent history of this case should be briefly examined. The government itself has described this case as "extremely complex." Proposed Findings and Order Regarding Excludable Time Periods Under Speedy Trial Act, p. 5, filed on or about June 16, 2004.

Mr. Griffin was indicted in October 2002. Since that time, he has had two counsel representing him and working diligently toward preparing for trial. Counsel is prepared to reveal *in camera* the amount of work Mr. Griffin's two counsel have done in connection with preparing for his trial and the division of labor between them.

Although not mentioned in the government's pleading, trial in this case commenced with jury selection on October 4, 2006. The case has been in trial since then. Additional jury selection occurred on October 25, 26, and 27, 2006. The jury and alternates were sworn on October 27, 2006.

On October 18, 2006, the Court held a status conference. At the conference, the government did not apprise the Court or defense counsel that the government was then considering reconsideration of its death penalty authorization as to the defendants. Late on the following day, October 19, 2006, the government sent a letter to this Court advising it that it was reconsidering its authorization of the death penalty

1  as to the defendants and requesting a ten day continuance of renewed jury selection
2  which was to commence on October 25, 2006. The Court denied the request to
3  continue.
4      Although opening statements and presentation of evidence were originally
5  scheduled to begin on October 31, 2006, these matters were deferred upon agreement
6  of the parties until November 7, 2006.
7      At 11:38 a.m. on November 2, 2006, the government sent an email to counsel
8  for Mr. Griffin stating that it intended to move to dismiss the two death penalty
9  counts (Counts IV and V). At about noon on November 2, 2006, Michael M. Crain,
10 co-counsel for Mr. Griffin, had a telephone conversation with AUSA Mark Childs
11 concerning the email. Mr. Childs did not apprise Mr. Crain of the fact that
12 approximately four hours later, the government would be filing its motion to have Mr.
13 Bennett and Mr. Crain removed from the case.
14     In its motion, the government cites no authority that it has standing to ask the
15 Court to remove one of Mr. Griffin's counsel. It cites no authority for the proposition
16 that it has standing to seek the removal of opposing counsel in what it has called a
17 "highly complex" case, the trial of which began almost a month ago to the day. The
18 reason the government cites no authority is that none exists.
19     The government's actions in this case have a certain transparency. First, the
20 government waited four years to reconsider its original death penalty authorization as
21 to Mr. Griffin. It waited until this "highly complex case" was in trial before deciding
22 longer to seek the death penalty. This decision came after the government obtained
23 the advantage of having a death qualified jury selected in what is now a non-capital
24 case. As a result, a large number of jurors who were completely qualified to judge
25 whether or not Mr. Griffin is guilty of the charges were excused because of their
26 attitudes about the death penalty.
27     Now, having obtained a death qualified jury in this manner, the government
28 has taken the death penalty off the table and now argues that the Court should

discharge one of Mr. Griffin's counsel while the trial is in progress on the ground that the case is no longer a capital one[2]. The government urges the Court to relieve one of Mr. Griffin's attorneys, aware that he has had a most substantial role in preparing all aspects of Mr. Griffin's defense. The government, itself represented by two counsel, not one, appears to believe that it has a right to weaken Mr. Griffin's representation by having the Court discharge half of Mr. Griffin's defense team. It also appears to believe that it can hand-pick its opposing counsel.

The government's attempt to meddle in Mr. Griffin's representation in this case constitutes an interference with his right to counsel. The decision with regard to whether Mr. Griffin will continue to be represented by two attorneys or whether one of his attorneys will be relieved is a decision for the Court to make. That decision should in no way be influenced by the government's unwarranted attempt to play a role in it.

## IV.
## THE GOVERNMENT DEMONSTRATES THAT IT HAS NO UNDERSTANDING OF THE ROLE OF DEFENSE COUNSEL

In its motion, p. 4, the government makes the preposterous statement that "capital counsel's role is that of an overseer only where a defendant is facing the death penalty."

Counsel for Mr. Griffin is unaware of what, if any, capital case experience the government's attorneys in this case have. They certainly do not have any capital experience as defense attorneys, and their comment, quoted in the preceding

---

[2] As previously stated, Mr. Griffin's counsel requests the opportunity to demonstrate to the Court *in camera* the extensive role that Mr. Griffin's capital case has played in connection with preparing Mr. Griffin's defense during the past four years. Also, counsel for Mr. Griffin requests that Mr. Griffin himself be allowed to address the Court *in camera* with regard to his views concerning his representation.

paragraph, demonstrates this. The role of capital counsel is hardly that of an "overseer." Rather, in enacting 18 U.S.C. §3005, which provides for two counsel in capital cases, Congress recognized the seriousness and complexity of capital litigation and required that the district court guarantee that "at least" one of the accused's appointed counsel be "learned in the law applicable to capital cases."

Counsel for the government presume to understand how defense counsel should undertake the preparation of a capital case where one counsel is "capital" within the meaning of 18 U.S.C. §3005 and the other is "non-capital." Counsel for the government appear to believe that in such a case the non-capital attorney prepares the guilt phase while the capital attorney, apparently largely ignorant of the facts of the case as they relate to issues of guilt, stands by until he can produce to produce a psychiatrist, the defendant's tearful mother or some other mitigating evidence in the event of a penalty phase. This is not the way it works in capital litigation.

Capital counsel for Mr. Griffin has experience in trying capital cases and handling capital cases on habeas corpus. This experience extends to the state and federal courts. Capital counsel for Mr. Griffin has been involved in a number of capital murder trials. These include United States v. Mario Castillo, CR 99-83(DOC) [Mexican Mafia triple murder RICO/VICAR case], People v. Eddie Nash and Gregory Diles, A974949 [Laurel Canyon murders case], People v. Jeffrey Purcell, A578252 [double murder of parents], People v. Darrell Williams, BA003684 [contract killing of wife for insurance proceeds, and People v. William James [A393643]. In each of these cases, he was one of two counsel representing the defendant. I know from these cases and others I have been involved in that the government's belief as to the "overseer" role of capital counsel is completely misinformed. The role of counsel in a criminal case is to learn all aspects of the case from the ground up. Although there are divisions of labor and ultimately assignments to handle particular witnesses, no competent trial counsel will handle the case by telling the other "you take care of the guilt phase and I'll do the penalty." In fact, in

United States v. Mario Castillo, the Mexican Mafia case referred to above, at the guilt phase(the case did not go to a penalty because the defendant was acquitted of all charges) Mr. Griffin's capital counsel made the opening statement, examined every witness, and made the final argument.

In addition to capital trials, Mr. Griffin's capital counsel has represented habeas corpus petitioners in capital post-trial proceedings. As a result of this experience, his views concerning the proper role of trial counsel in a capital case, as previously expressed, have been reinforced. Among these cases are Mayfield v. Woodford, 270 F.3d 915 (9th Cir. 2001) [Ninth Circuit, sitting en banc, reversed district court's denial of habeas corpus petition and ordered new penalty trial on ground of ineffective assistance of counsel at Petitioner's capital trial]; In Re John Brown, 17 Cal.4th 873 (1998) [writ of habeas corpus granted in death penalty case due to prosecution's Brady violation at guilt phase]]; Carpenter v. Ayers, C 98-2444 (MJJ) and C 00-3706 (MJJ) [pending petitions for writs of habeas corpus in United States District Court for the Northern District of California; "Trailside Murders" capital case; Petitioner is under death sentences from two separate trials].

///
///
///

## V.

## THE COURT HAS THE DISCRETION TO CONTINUE MR. GRIFFIN'S EXISTING REPRESENTATION

The Guidelines for the Administration of the Criminal Justice Act, promulgated by the Judicial Conference of the United States, at §6.02(B)(2) give the Court discretion to maintain two counsel in a case originally punishable by death where the death penalty will no longer be sought. §6.02(B)(2) states that the Court should consider

"(a) the need to avoid disruption of the proceedings;

(b) whether the decision not to seek the death penalty occurred late in the litigation;

©) whether the case is unusually complex; and

(d) any other factors that would interfere with the need to ensure effective representation of the defendant.

In the present case, for four years capital counsel has played a substantial role in the preparation of all aspects of defense of Mr. Griffin. This role can be fully addressed *in camera*, but it includes substantial preparation in what were formerly the guilt phase aspects of the case. Removal of capital counsel would disrupt the proceedings and would interfere with the need to ensure effective representation of Mr. Griffin.

As acknowledged by the government, the case is "extremely complex" and not only did the decision not to seek the death penalty occur late in the litigation, but it occurred one month into the trial.

1  The retention of two counsel in a formerly capital case is hardly unprecedented
2  in this district.
3  <u>United States of America v. Iouri Mikhel, et al.</u>, CR 02-220(DT) is currently in
4  trial before Judge Dickran Tevrizian in this courthouse. In 2003, Judge Nora Manella
5  was presiding over the <u>Mikhel</u> case. The government decided not to seek the death
6  penalty against defendant Natalya Solovyeva. Thereafter, on July 21, 2003, Judge
7  Manella ordered that capital counsel was to remain on the case along with Ms.
8  Solovyeva's other counsel. In doing so, Judge Manella stated in her order the
9  following:

> "After considering §6.02(B)(2) of the Guidelines for the
> Administration of the Criminal Justice Act, the Court determines that the
> interests of justice will be served by having both (counsel) continue to
> represent" the defendant.

15  If this Court does consider the issues raised in the government's untimely and
16  inappropriate motion, it is respectfully submitted that counsel for Mr. Griffin be given
17  an opportunity to be heard after reasonable notice. Following such hearing, it is
18  respectfully submitted that the Court should exercise its discretion as it is authorized
19  to do under §6.02(B)(2) and continue Mr. Griffin's representation by two counsel.[3]

---

[3] Ronald Slocum is a defendant charged in the present Indictment. On May 16, 2006, Judge King removed Michael Belter, Mr. Slocum's capital counsel, because the government provided notice that it was not seeking the death penalty and Judge King found that the appointment of two counsel was not necessary to "ensure effective representation or to avoid disruption of the proceeding." Thereafter on July 10, 2006, Judge King ordered that he would consider appointing Mr. Belter in lieu of co-counsel Kiya Kato upon application by Mr. Slocum. Mr. Slocum made such application and on October 18, 2006 the Court ordered that Mr. Slocum could have Ms. Kato replaced by Mr. Belter and Mr. Belter currently represents Mr. Slocum.

## VI.

## UNDER THE UNUSUAL POSTURE OF THIS CASE, REMOVAL OF ONE OF MR. GRIFFIN'S ATTORNEYS WOULD VIOLATE HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

In its Motion to terminate appointment of capital counsel for Mr. Griffin, the government relies on United States v. Waggoner, 339 U.S. F3d 918 (9th Cir. 2004). All Waggoner stands for is that 18 U.S.C.§3005 creates no right to representation by two counsel when the government elects not to seek the death penalty. That is an issue not involved in this case - counsel for Mr. Griffin is not arguing that he has a statutory right to two counsel or that this Court should somehow overturn Waggoner. In short, Waggoner is irrelevant.

The true issues are first, does the Court have discretion to continue representation by two counsel? The answer, as provided by §6.02(B)(2) of the Guidelines for the Administration for the Criminal Justice Act, is an unqualified "yes." Second, would removal of one of Mr. Griffin's counsel at this juncture violate his Sixth Amendment right to counsel? The answer to this question is also "yes."

Because of the shortness of time occasioned by the government's untimely motion, counsel for Mr. Griffin has not had the opportunity to adequately consider and research this issue and will do so if afforded a reasonable opportunity.

The posture of the case is this: The case is complex. Count II, on which the government intends to proceed, carries a life sentence without the possibility of release. While Mr. Griffin is now imprisoned on a life sentence in the California system, he is currently eligible for parole. Count II involves, among other things, six murders, three attempted murders, and a conspiracy to commit murder, all occurring between 1983 and 1996. The government filed a witness list with over 120 names. Mr. Griffin has a complex defense involving withdrawal from the Aryan Brotherhood conspiracy and the statute of limitations. Counsel for Mr. Griffin have been

Def. Griffin's Opposition to Government Motion To Terminate Capital Counsel                    11

representing him in this case for four years. The trial has been underway since October 4, 2006 and Mr. Griffin's counsel have been introduced to the jurors. As previously stated, counsel for Mr. Griffin can provide details relating to the type of preparation, the division of labor and Mr. Griffin's views concerning his representation provided an opportunity to do so *in camera*. Suffice it to say that Mr. Griffin and his counsel strongly oppose the removal of either of his counsel.

Last term, the United States Supreme Court discussed the significance of the right to counsel, in particular the right of a criminal defendant to select counsel of his choice. In <u>United States v. Gonzalez-Lopez</u>, 548 U.S. ___ (No. 05-352, decided June 26, 2006) the United States Supreme Court held that the district court denied the defendant his right to counsel of choice when it improperly prevented out-of-state counsel from representing him at trial. The Court held that when a trial court erroneously denies a defendant the right to select counsel of his choice the error is structural and therefore reversible *per se*.

Although counsel in <u>Gonzalez-Lopez</u> was retained and Mr. Griffin's counsel is appointed, the same Sixth Amendment principles apply here. In <u>Smith v. Superior Court</u>, 68 Cal.2d 547 (1968) the trial court attempted to remove appointed counsel on the ground that he was "incompetent." The California Supreme Court unanimously held that the defendant's Sixth Amendment right to counsel was violated. The Supreme Court held that it was inconsequential that the defendant was represented by appointed counsel. Although an indigent defendant is not entitled to an attorney of his choice, once counsel is appointed by the trial court, the defendant has a right to enforce that appointment. 68 Cal.2d. at 56. The Court rejected the "superficial response" that because the defendant does not pay his fee, he has no ground to complain as long as his appointed counsel is competent. As the Court put it:

"But the attorney-client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service (citation omitted). It follows that once counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." 68 Cal.2d. at 561-562.

Four years ago, the District Court appointed two counsel to represent Mr. Griffin in this complex case. For four years, counsel have worked long and hard to prepare for trial. The government has assigned two counsel for its side. The case is now in trial. Mr. Griffin has a relationship with his counsel involving trust and confidence between them. He chooses to have his two attorneys remain on the case for the remainder of the trial, just as the government has two attorney on its side. Like the defendants in Gonzalez-Lopez and Smith, supra, he wishes to enforce his right to counsel who, although originally selected by the Court, are Mr. Griffin's counsel of choice.

///

///

///

# VII.

# CONCLUSION

For these reasons, the government's motion should be denied.

Respectfully submitted,

DATED: November 2, 2006

*Michael M. Crain*
MICHAEL M. CRAIN, co-counsel
for defendant ROBERT LEE GRIFFIN

---

Def. Griffin's Opposition to Government Motion To Terminate Capital Counsel       14

# PROOF OF SERVICE

I, Michael M. Crain, declare that I am over the age of eighteen (18), that I am not a party to the within action, that I am not a registered California process server, and that my business address is Law Offices of Michael M. Crain, P.O. Box 3730, Santa Monica, California, 90408.

On March 4th, 2006 I caused a true copy of the foregoing

DEFENDANT ROBERT LEE GRIFFIN'S OPPOSITION TO GOVERNMENT'S NOTICE OF MOTION AND MOTION TO TERMINATE APPOINTMENT OF CAPITAL COUNSEL FOR DEFENDANT'S JOHN STINSON AND ROBERT GRIFFIN

to be served on    Mark Childs, Assistant United States Attorney
1400 United States Courthouse
312 N. Spring Street
Los Angeles, CA 90012

via personal service.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that this declaration is executed at Los Angeles, California.

Dated: November 3, 2006

*/s/ Michael M. Crain*
MICHAEL M. CRAIN