1  GEORGE S. CARDONA
   Acting United States Attorney
2  WAYNE R. GROSS
   Assistant United States Attorney
3  Chief, Southern Division
   TERRI K. FLYNN (204932)
4  BRETT A. SAGEL (243918)
   Assistant United States Attorneys
5  Ronald Reagan Federal Building
   411 West Fourth Street, Suite 8000
6  Santa Ana, California
   Telephone: (714) 338-3592
7  Facsimile: (714) 338-3561
   Email: Terri.K.Flynn@usdoj.gov
8
   Attorneys for Plaintiff
9  United States of America

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,    )   No. ~~SA~~ CR 02-938-DOC
                                 )
14            Plaintiff,         )   GOVERNMENT'S RESPONSE TO THE
                                 )   MOTIONS TO SEVER BY DEFENDANTS
15        v.                     )   WAYNE BRIDGEWATER, HENRY
                                 )   MICHAEL HOUSTON AND RONALD BOYD
16  RONALD BOYD SLOCUM,          )   SLOCUM
    WAYNE BRIDGEWATER and        )
17  HENRY MICHAEL HOUSTON,       )   Hearing Date: December 19, 2006
                                 )   Hearing Time: 8:00 a.m.
18            Defendants.        )
                                 )
19                               )
                                 )
20  ─────────────────────────────)

21

22       Plaintiff United States of America hereby opposes the Motion

23  to Sever filed by defendants Wayne Bridgewater and Henry Michael

24  Houston and the Motion to Sever filed by defendant Ronald Boyd

25  Slocum.  The government files this one opposition because the

26  defendants raise the same issues in both Motions to Sever.  This

27  opposition is based on the attached memorandum of points and

28

FILED
FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC 11 2006
3:20

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

DEC 12 2006
BY

1 | authorities, the files and records in this case, and any argument

2 | or evidence offered at any hearing on this matter.

3 | DATED: December 11, 2006

4

5                         Respectfully submitted,

6                         GEORGE S. CARDONA
                        Acting United States Attorney

7

8                         WAYNE R. GROSS
                        Assistant United States Attorney
                        Chief, Southern Division

9

10

11                         TERRI K. FLYNN
                        Assistant United States Attorney

12

13                             Attorneys for Plaintiff
                        UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                    -ii-

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Defendants Have The Burden of Proving
          That A Severance Is Required . . . . . . . . . 3

     B.   The Presumption Is That Co-Defendants
          Should Be Tried Jointly For Reasons of
          Judicial Economy and Efficiency, And To
          Avoid Inconsistent Verdicts . . . . . . . . . 3

     C.   To Overcome This Presumption, Defendants
          Bear a Heavy Burden and Must Articulate
          Specific Instances Of Prejudice Caused
          By a Joint Trial . . . . . . . . . . . . . . . 5

     D.   Defendants Have Failed To Prove Clear,
          Manifest or Undue Prejudice That Would
          Warrant A Severance . . . . . . . . . . . . . 7

          1.   Defendants' Defenses Are Merely
               Inconsistent Or Antagonistic, Not
               Irreconcilable As Might Raise A
               Severance Concern . . . . . . . . . . . . 7

          2.   There Is No Constitutional
               Prejudice From Joining The Capital
               and Non-Capital Defendants . . . . . . . 16

          3.   Spillover Evidence . . . . . . . . . . . 21

          4.   Judicial Economy Does Not Favor a
               Severance . . . . . . . . . . . . . . . 24

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

Blumenthal v. United States,
   332 U.S. 539 (1947) .................................. 5

Buchanan v. Kentucky ,
   483 U.S. 402 (1987) ................................. 16

Lockhart v. McCree,
   476 U.S. 162 (1986) ............................. 16, 17

Marshall v. Lonberger,
   459 U.S. 422 (1983) ................................ 20

Richardson v. Marsh,
   481 U.S. 200 (1987) ............................. 4, 20

Salinas v. United States,
   522 U.S. 52 (1997) ................................ 22

Shannon v. United States,
   512 U.S. 573 (1994) ............................... 20

Zafiro v. United States,
   506 U.S. 534 (1993) ........................... passim

United States v. Adler,
   879 F.2d 491 (9th Cir. 1988) ....................... 6

United States v. Aiken,
   76 F. Supp. 2d 1346 (S.D. Fla. 1999) ............ 18, 19

United States v. Alvarez,
   358 F.3 (9th Cir. 2004) ............................ 6

United States v. Armstrong,
   621 F.2d 951 (9th Cir. 1980) ....................... 3

United States v. Brashier,
   548 F.2d 1315 (9th Cir. 1976) ...................... 6

United States v. Brown,
   16 F.3d 423 (D.C. Cir. 1994) ............... 11, 12, 14

United States v. Caporale,
   806 F.2d 1487 (11th Cir. 1986) ..................... 5

United States v. Causey,
   185 F.3d 407 (5th Cir. 1999) .................. 19, 24

ii

**TABLE OF AUTHORITIES - (cont'd)**

PAGE

United States v. Cawenberghe,
    827 F.2d 424 (9th Cir. 1987) ........................... 3

United States v. DiNome,
    954 F.2d 839 (2d Cir. 1992) ........................... 23

United States v. Doe,
    655 F.2d 920 (9th Cir. 1980) ......................... 6

United States v. Duran,
    189 F.3d 1071 (9th Cir. 1999) .................... 21, 22

United States v. Fernandez,
    388  F.3d 1199 (9th Cir. 2004) .................... passim

United States v. Gaines,
    563 F.2d 1352 (9th Cir. 1977) ......................... 4

United States v. Gilliam,
    167 F.3d 628 (D.C. Cir. 1999) ....................... 11

United States v. Ianniello,
    621 F. Supp. 1455 (S.D.N.Y. 1985) ................... 5

United States v. Jackson,
    726 F.2d 1466 (9th Cir. 1984) ....................... 9

United States v. Joetzki,
    952 F.2d 1090 (9th Cir. 1991) ...................... 22

United States v. Kaplan,
    895 F.2d 618 (9th Cir. 1990) ......................... 4

United States v. Lane,
    474 U.S. 438 (1986) ................................. 25

United States v. Leach,
    613 F.2d 1295 (5th Cir. 1980) ....................... 5

United States v. Lewis,
    787 F.2d 1318 (9th Cir. 1986) ....................... 7

United States v. Mayfield,
    189 F.3d 895 (9th Cir. 1999) .................... 14, 15

United States v. Nelson,
    137 F.3d 1094 (9th Cir. 1998) ................... 7, 24

# TABLE OF AUTHORITIES - (cont'd)

PAGE

United States v. Nersesian,
    824 F.2d 1294 (2d Cir. 1987) ........................... 5

United States v. Patterson,
    819 F.2d 1495 (9th Cir. 1987) .......................... 6

United States v. Peterson,
    483 F.2d 1222 (D.C. Cir. 1973) ........................ 10

United States v. Persico,
    621 F. Supp. 842 (S.D.N.Y. 1985) ...................... 5

United States v. Polizzi,
    801 F.2d 1543 (9th Cir. 1986) ........................ 3, 6

United States v. Rollack,
    64 F. Supp. 2d 255 (S.D.N.Y. 1999) ................... 20

United States v. Sanchez,
    75 F.3d 603 (10th Cir. 1996) ......................... 18

United States v. Throckmorton,
    87 F.3d 1069 (9th 1996) ............................. 7, 8

United States v. Tootick,
    952 F.2d 1078 (9th Cir. 1991) .................... passim

United States v. Wagner,
    834 F.2d 1474 (9th Cir. 1987) ...................... 9, 10

United States v. Wyatt,
    807 F.2d 1480 (9th Cir. 1987) ......................... 6

**FEDERAL STATUTES**

18 U.S.C. § 1111 ......................................... 2

18 U.S.C. § 1959(a)(1) ................................... 2

18 U.S.C. § 1962 ......................................... 2

18 U.S.C. § 1962(c) ..................................... 22

18 U.S.C. §1962(d) .................................... 2, 22

MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION

Defendants Bridgewater and Houston have jointly moved to sever themselves from defendant Slocum for trial.  Defendant Slocum has likewise moved to sever himself from defendants Bridgewater and Houston.  All defendants claim they have antagonistic defenses such that they would suffer undue prejudice from a joint trial.  Further, defendant Slocum argues that he will be prejudiced being tried as a non-capital defendant with defendants Bridgewater and Houston who are capital defendants. In support of their motions, defendants Bridgewater and Houston argue that they will suffer undue prejudice due to the spillover effect of evidence offered by the government against defendant Slocum.  Defendants Bridgewater and Houston also argue that a severance will save judicial resources.

Despite their many arguments, defendants motions should be denied because the defendants have not overcome the presumption in favor of a joint trial with co-defendants charged in the same case, particularly when charged in the same conspiracy.  The defendants have failed to show any cognizable prejudice sufficient to overcome the public interest in a joint trial, and therefore their motions should be denied.

## II.

### FACTS

At the heart of the indictment is the government's allegation that the Aryan Brotherhood is a criminal enterprise. Defendants are each alleged to be a member or associate of the

1

1  Aryan Brotherhood, to have committed criminal acts on the Aryan

2  Brotherhood's behalf, and to have conspired to conduct the Aryan

3  Brotherhood's affairs.  Count one charges defendants with

4  participating in the conduct of the Aryan Brotherhood's affairs

5  through a "pattern of racketeering activity," in violation of 18

6  U.S.C. § 1962©, the RICO statute.  Count two charges defendants

7  with conspiring to conduct, participate in, and promote the

8  affairs of the Aryan Brotherhood, in violation of 18 U.S.C. §

9  1962(d), the RICO conspiracy statute.  Counts six and seven

10  charge defendants with the murders of Frank Joyner and Abdul

11  Salaam, respectively, in violation of 18 U.S.C. § 1959(a)(1), the

12  VICAR statute.  Counts nine and ten charge defendant Slocum with

13  the murders of Arva Lee Ray and William McKinney, respectively,

14  in violation of 18 U.S.C. § 1111, the federal murder statute.[1]

15      At trial, the government expects to present evidence that

16  will establish the following facts, among others, in connection

17  with the charges in the indictment:

18      The Aryan Brotherhood criminal enterprise has been in

19  existence continuously since the 1960's.  The goals of the

20  enterprise are to establish dominance of the inmate population

21  through the use of violence and intimidation; to earn money

22  through narcotics trafficking, extortion, contract murders, and

23  gambling; to enhance its reputation as a powerful criminal

24  organization; and to avoid detection and punishment by law

25

26      _____

27      [1]  Count eight charges defendants with the murder of Terry
Walker, in violation of 18 U.S.C. § 1959(a)(1), the VICAR
28  statute. On December 8, 2006, the government filed a motion to
dismiss count eight without prejudice as to all defendants.

enforcement.   Defendants, as well as co-conspirators, have committed multiple crimes in support of this enterprise.

### III.

### **ARGUMENT**

A.   Defendants Have The Burden Of Proving That A Severance Is Required

Defendants, as the parties seeking severance, bear the burden of establishing the need for separate trials.   See United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980). Severance is permissible only where a defendant is prejudiced by a joinder and the court finds that justice requires severance, as opposed to some other form of relief.   Rule 14 of the Federal Rules of Criminal Procedure governs the severance of defendants. Rule 14 states in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires . . . .

Fed. R. Crim. Proc. 14.   Severance is disfavored and the defendants bear a heavy burden to prove that severance is required.   United States v. Tootick, 952 F.2d 1078, 1079 (9th Cir. 1991).

B.   The Presumption Is That Co-Defendants Should be Tried Jointly For Reasons of Judicial Economy and Efficiency, And To Avoid Inconsistent Verdicts

The Ninth Circuit repeatedly has held that, _ordinarily_, defendants jointly charged should be jointly tried.   See, e.g., United States v. Cawenberghe, 827 F.2d 424, 431 (9th Cir. 1987); United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986).

3

1  A joint trial of jointly charged defendants is the *rule*, not the

2  exception.  See <u>United States v. Kaplan</u>, 895 F.2d 618, 621 (9th

3  Cir. 1990).  The Ninth Circuit has adopted this general rule

4  because it "expedites the administration of justice, reduces the

5  congestion of trial dockets, conserves judicial time, lessens the

6  burden upon citizens to sacrifice time and money to serve on

7  juries, and avoids the necessity of recalling witnesses who would

8  otherwise be called upon to testify only once." <u>United States v.</u>

9  <u>Gaines</u>, 563 F.2d 1352, 1355 (9th Cir. 1977).

10  The United States Supreme Court, in addition to recognizing

11  this preference for joint trials of co-defendants for purposes of

12  judicial economy and efficiency, also has held that joint trials

13  are preferred because it avoids the potential for inconsistent

14  verdicts:

15  > There is a preference in the federal system of joint
   > trials of defendants who are indicted together.  Joint
16  > trials play a vital role in the criminal justice
   > system.  They promote efficiency and serve the
17  > interests of justice by avoiding the scandal and
   > inequity of inconsistent verdicts.
18

19  <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993)(citations

20  omitted).  Joint trials "play a vital role in the criminal

21  justice system." <u>Richardson v. Marsh</u>, 481 U.S. 200, 209 (1987).

22  In conspiracy cases, the presumption of a joint trial is

23  even greater.  The Ninth Circuit has held that "a joint trial is

24  particularly appropriate where the co-defendants are charged with

25  conspiracy, because the concern for judicial efficiency is less

26  likely to be outweighed by possible prejudice to the defendants

27  when much of the same evidence would be admissible against each

28  of them in separate trials." <u>United States v. Fernandez</u>, 388

4

1   F.3d 1199, 1242 (9th Cir. 2004).  This principle applies equally

2   in racketeering prosecutions, as in the instant case, where the

3   defendants are not charged in every predicate racketeering act.

4   See United States v. Caporale, 806 F.2d 1487, 1510 (11th Cir.

5   1986); United States v. Persico, 621 F. Supp 842, 850-55

6   (S.D.N.Y. 1985).  Nor is severance appropriate simply because all

7   the conspirators did not participate in all phases of the

8   conspiracy, or because one defendant's role in the conspiracy was

9   smaller or less significant than that of another.  Blumenthal v.

10  United States, 332 U.S. 539, 553-57 (1947); United States v.

11  Nersesian, 824 F.2d 1294, 1304 (2d Cir. 1987); United States v.

12  Leach, 613 F.2d 1295, 1299 (5th Cir. 1980).  See, e.g., United

13  States v. Ianniello, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985)

14  (the district court noted in denying a motion for severance that

15  the jurors could segregate the evidence as to each defendant and

16  the fact that a defendant plays minor role in RICO conspiracy

17  does not entitle him to severance).

18  C.   To Overcome This Presumption, Defendants Bear a Heavy Burden
         and Must Articulate Specific Instances Of Prejudice Caused
19       By a Joint Trial

20       The test for severance is not simply prejudice because "Rule

21  14 does not require severance even if prejudice is shown."

22  Zafiro, 506 U.S. at 539-40.  Some prejudice is inherent in any

23  joinder of defendants and if only some prejudice is all that need

24  be shown, few, if any, multiple defendant trials could be held.

25  Less drastic measures will often be sufficient to cure any

26  possible prejudice, such as limiting instructions.  Id. at 539.

27  Furthermore, "defendants are not entitled to severance merely

28

                                    5

because they may have a better chance of acquittal in separate

trials." Id. at 540.  Rather,

> [W]hen defendants properly have been joined under Rule
> 8(b),[2] a district court should grant a severance under
> Rule 14 only if there is a serious risk that a joint
> trial would compromise a specific trial right of one of
> the defendants, or prevent the jury from making a
> reliable judgment about guilt or innocence.

Id. (emphasis added).  See also United States v. Adler, 879 F.2d

491, 497 (9th Cir. 1988)(showing a comparative advantage in

separate trials, absent a showing of manifest prejudice, does not

entitle a co-conspirator to severance).

Accordingly, a defendant seeking severance must "articulate

specific instances of prejudice." Zafiro, 506 U.S. at 539.  The

defendant must show clear, manifest, or undue prejudice to

justify severance.  United States v. Alvarez, 358 F.3 1194, 1206

(9th Cir. 2004); Tootick, 952 F.2d at 1080: United States v.

Patterson, 819 F.2d 1495, 1502 (9th Cir. 1987); Polizzi, 801 F.2d

at 1554.  Indeed, the test for whether a court abused its

discretion by requiring a joint trial is whether a joint trial

was so manifestly prejudicial that it outweighed the dominant

concern with judicial economy and compelled the court to exercise

its discretion in but one way, by ordering a separate trial.

United States v. Wyatt, 807 F.2d 1480, 1482 (9th Cir. 1987);

United States v. Doe, 655 F.2d 920, 926 (9th Cir. 1980) (quoting

United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976)).

The prejudice must be of such magnitude that the defendant's

---

[2]  Defendants have never claimed that they have been
improperly joined with their respective co-defendants under Rule
8(b).

1  right to a fair trial is abridged. <u>United States v. Lewis</u>, 787

2  F.2d 1318, 1321 (9th Cir. 1986). Establishing manifest prejudice

3  is "a heavy burden." <u>Tootick</u>, 952 F.2d at 1080. Moreover,

4  because juries are presumed to follow a court's admonitions,

5  proper jury instructions generally cure any risk of undue

6  prejudice created through a joint trial. <u>Zafiro</u>, 506 U.S. at

7  540-41; <u>United States v. Nelson</u>, 137 F.3d 1094, 1108 (9th Cir.

8  1998).

9  D.   <u>Defendants Have Failed To Prove Clear, Manifest or Undue
        Prejudice That Would Warrant A Severance</u>

10

11        Defendants have a heavy burden in this case and they have

12  failed to meet it. Despite their many arguments, they fail to

13  show clear, manifest or undue prejudice. Thus, their arguments

14  in support of severance, as detailed below, fail.

15        1.   <u>Defendants' Defenses Are Merely Inconsistent Or
              Antagonistic, Not Irreconcilable As Might Raise A
16            Severance Concern</u>

17        First, all three defendants argue that there are

18  antagonistic defenses in this case that warrant a severance of

19  defendants Bridgewater and Houston from defendant Slocum.

20  Defendants, however, have not shown that these defenses are so

21  irreconcilable that severance is warranted. Any concerns about

22  their inconsistent defenses can be cured with jury instructions.

23        "Antagonism between defenses or the desire of one defendant

24  to exculpate himself by inculpating a co-defendant . . . is

25  insufficient to require severance." <u>United States v.

26  Throckmorton</u>, 87 F.3d 1069, 1072 (9th 1996). Where the defenses

27  are simply in conflict or mutually antagonistic, jury

28  instructions and other proactive measures by the court are

                                    7

1  sufficient.  <u>Zafiro</u>, 506 U.S. 535, 538, 541.  Rather, "[t]o be

2  entitled to severance on the basis of mutually antagonistic

3  defenses, a defendant must show that the core of the co-

4  defendant's defense is so irreconcilable with the core of his own

5  defense that the acceptance of the co-defendant's theory by the

6  jury precludes acquittal of the defendant."  <u>Throckmorton</u>, 87

7  F.3d at 1072.

8      Here, defendant Slocum intends to argue at trial that there

9  is "insufficient evidence, or no evidence, that he sent any type

10 of written communication or war message into Lewisburg."  (Memo.

11 re: Antagonistic Defenses at 5.)  Defendants Bridgewater and

12 Houston, on the other hand, intend to argue some sort of self-

13 defense claim whereby admitting that a "war message" with the DC

14 Blacks was received in Lewisburg.  (<u>Id.</u> at 3-5).

15     Although defendants Bridgewater and Houston characterize the

16 message as a "war message," they are really just arguing that a

17 warning was sent in, an argument that was made during the trial

18 of <u>United States v. Mills, et al.</u>  As a result of the message

19 Benton received stating there was an on-going war between the DC

20 Blacks and the AB, Benton, Bridgewater and Houston protected

21 themselves by killing DC Blacks before they were killed.  (Memo

22 re Antagonistic Defenses at 4.)  In order to even attempt to

23 argue self defense based on this message, defendants Bridgewater

24 and Houston will have to establish that the message was not a

25 message telling them to murder DC Blacks, but rather a message

26 that warned them that DC Blacks would kill them because of an on-

27 going war.  If they call the message a "war message" they will

28 most certainly not be able to get a self defense instruction

8

because then they themselves would be guilty of premeditated, first degree murder. Thus, they must argue they received a warning. A warning message is not antagonistic at all to Slocum's defense because if the jury believes defendants Bridgewater and Houston's defense that Slocum sent a warning message into Lewisburg and acquits them, Slocum could also be acquitted on the warning message theory. Defendant Mills and Bingham specifically argued this "warning message" during <u>United States v. Mills, et al.</u> Defendants Bridgewater and Houston's theory is not any different from that of defendants Mills and Bingham. It is simply being characterized in a different manner in order to seek a severance from defendant Slocum. Semantics, however, is not a proper basis for severance.

Additionally, no antagonistic defenses are present here because defendants Bridgewater and Houston will not be able to make out a claim for self defense at trial. Being warned that some unknown person from a rival gang may attack you soon, even very soon, does not mean that killing several people from that gang is self defense. "While the 'merest scintilla of evidence' will not suffice, a self-defense instruction 'must be given if there is evidence upon which the jury could rationally sustain the defense.'" <u>United States v. Wagner</u>, 834 F.2d 1474, 1486 (9th Cir. 1987) (quoting <u>United States v. Jackson</u>, 726 F.2d 1466, 1468 (9th Cir. 1984)). Here, however, defendants Bridgewater and Houston cannot argue self defense because they were the aggressors - they laid in wait, planned and surprised their victims. "'[O]ne who is the aggressor in a conflict culminating in death cannot invoke the necessities of self-preservation.'"

9

1    <u>Wagner</u>, 834 F.2d at 1486 (quoting <u>United States v. Peterson</u>, 483

2    F.2d 1222, 1231 (D.C. Cir. 1973)).

3         In <u>Wagner</u>, the defendant chased his victim, Austin, with a

4    knife and stabbed him to death.  The defendant tried to argue

5    that he feared for his life because he believed Austin was going

6    to throw hot water at him so the defendant grabbed the hot water

7    and threw it at Austin.  The defendant then chased Austin, "a

8    much smaller man, unarmed, and severely burned," as Austin fled

9    for his life.  834 F.2d 1485-86.  The Ninth Circuit found that

10   the trial court did no err in refusing to give a self defense

11   instruction.  <u>Id.</u>

12        The instant case is similar.  Both defendants Bridgewater

13   and Houston entered the cells of unarmed men who were not

14   immediately threatening the defendants.  Defendants Bridgewater

15   and Houston had no knowledge from the message that it was going

16   to be the victims, Frank Joyner or Abdul Salaam, specifically who

17   were going to attack them, nor did they have any information that

18   the attack was imminent.  Frank Joyner, for example, was in his

19   cell playing monopoly with two other inmates when Bridgewater

20   entered and immediately began stabbing Joyner.  Bridgewater was

21   not in "immediate" danger when he killed Joyner.  Houston

22   likewise was not in "immediate" danger when he committed the

23   murders as he was not even a resident in A block at the time of

24   the murders, but snuck into A block specifically to commit the

25   murders.  Neither defendant will be able to make the showing

26   necessary at trial to warrant a self defense instruction.  Their

27   reliance on self defense is speculative and untenable at best.

28   Defendants Bridgewater and Houston can't be allowed to rely on a

                                    10

claim they will not even be able to prove at trial to establish that a severance is necessary. Their showing falls far short of the requirements for a severance.

Moreover, even if defendants Bridgewater and Houston are able to argue some sort of self defense claim based on a warning message and defendant Slocum maintains that he did not send a message into Lewisburg, those defenses are not antagonistic. It is not enough to show the "presence of some hostility among co-defendants," and or that co-defendant strategies are generally antagonistic. <u>United States v. Gilliam</u>, 167 F.3d 628, 635 (D.C. Cir. 1999); <u>United States v. Brown</u>, 16 F.3d 423, 427, 433 (D.C. Cir. 1994) (denial of severance upheld where one defendant claimed no involvement in the charged offense and the second defendant contradicted him by asserting that the contraband in issue in fact belonged to the first defendant). The defenses must be irreconcilable to warrant a severance and the defendants cannot meet this burden.

In <u>Throckmorton</u>, for example, the two defendants were caught off-loading more than 1000 kilograms of marijuana from a sailboat and both were charged with conspiracy to import and possess with intent to distribute a controlled substance. Throckmorton argued that the government presented insufficient evidence to establish his guilt, while his co-defendant admitted to the conspiracy between himself and Throckmorton, but argued that he was acting as a DEA informant. The Ninth Circuit held that a motion for severance was properly denied because the defendants' defenses were not irreconcilable, *even though the co-defendant's testimony would be devastating to Throckmorton*:

These defenses are not, at their core, irreconcilable.  If the jury found that [the co-defendant] was working for the DEA, it still could have acquitted Throckmorton for lack of evidence.  Acceptance of [the co-defendant's] defense would not have precluded Throckmorton's acquittal.  [The co-defendant's] testimony was devastating to Throckmorton's defense, but Throckmorton offers nothing to suggest that [the co-defendant's] testimony would not have been available and admissible against him if the trials had been severed.  A fair trial does not include the right to exclude relevant and competent evidence.  A defendant normally would not be entitled to exclude the testimony of a former co-defendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a co-defendant.

Id. at 1072.[3]

This case is similar to Throckmorton.  Here, defendant Slocum intends to argue that he did not pass a message into Lewisburg while defendants Bridgewater and Houston will argue there was a message passed into Lewisburg.  If a jury accepts that Slocum did not pass any message, the jury could still find that defendants Bridgewater and Houston acted in self defense in regards to the killings of Joyner and Salaam.  They could believe that someone else sent the message in, or even, that Benton himself created the message and that defendants Bridgewater and Houston relied on the message in believing they were in danger

---

[3]  Zafiro also is illustrative.  There, four defendants were charged with drug trafficking.  Two defendants were witnessed carrying a box into an apartment where the other defendants were located.  Drugs were found in the box and in a suitcase in the apartment.  The two defendants carrying the box each argued that they did not know it contained drugs.  Similarly, the two defendants in the apartment where the suitcase was located each argued that they did not know the suitcase contained drugs and that it must have been the other who was involved in the drug trafficking.  The Ninth Circuit found that the defendants' defenses were not irreconcilable because, albeit unlikely, a jury could find that all of the defendants lacked knowledge of the drugs.

12

1  due to an on-going war.  Conversely, if a jury accepts that

2  defendants Bridgewater and Houston acted in self defense and a

3  message was in fact sent, the jury could still find that Slocum

4  is not guilty based on a theory that there is insufficient

5  evidence linking Slocum to the murders.  The instant case is not

6  a case in which to believe one defendant's defense you must

7  convict the other.  Rather, defendants have put an unnecessary

8  "spin" on their defenses in order to try to sever themselves from

9  each other.[4]  However, defendants are not entitled to a severance

10 just because they may have a better chance of acquittal in

11 separate trials.  Zafiro, 506 U.S. at 540.

12     This case is clearly distinguishable from cases involving

13 truly irreconcilable defenses of co-defendants, such as Tootick.

14 In Tootick, only the two defendants were present when the victim

15 was stabbed and run over with a car.  Thus, at least one of the

16 two defendants had to be responsible for the assault, and each

17 defendant claimed that the other was the sole responsible party.

18 As a result, defense counsel in each case acted as a "second

19 prosecutor" in relation to the other defendant at trial:

20        Defendants who accuse each other bring the effect of a
           second prosecutor into the case with respect to their co-
21        defendant.  In order to zealously represent his client, each
           co-defendant's counsel must do everything possible to
22        convict the other defendant. . . .  Defendants do not simply
           want to demonstrate their own innocence, they want to do
23        everything possible to convict their co-defendant.

24

25     _____

       [4]    For example, defendants Bridgewater and Houston do not
26 have to argue that it was Slocum specifically who sent the
   message into Lewisburg.  They can simply argue that a message was
27 received and they believed what it said.  Because they can still
   prove up their defense with Slocum in the case, a severance
28 should not be granted.

                                   13

<u>Tootick</u>, 952 F. 2d at 1081.

The "second prosecutor" concern will not be implicated at trial in this case. This case does not involve a scenario where the jury is required to find at least one defendant guilty, resulting in the defendants blaming the other. It seems a stretch for defendants Bridgewater and Houston to claim that Slocum is the sole, responsible party or for defendant Slocum to claim that Bridgewater and Houston are the sole, responsible parties. In sum, defendants do not need to prove the guilt of any other co-defendant to sustain their individual defenses.[5]

Moreover, even if defendants' defenses turn out to be truly irreconcilable, which they are not, any prejudice can be cured with appropriate evidentiary rulings and instructions at trial. "Mutually antagonistic defenses are not prejudicial per se; ...rather it leaves tailoring of the relief to be granted, if any, to the district court's sound discretion." <u>Zafiro</u>, 506 U.S. at 538-39. The Ninth Circuit has held that even in cases where defendants' defenses are truly irreconcilable, such as in the <u>Tootick</u> case and the case of <u>United States v. Mayfield</u>, 189 F.3d 895 (9th Cir. 1999), the prejudice could have been adequately

_____

[5]    Defendants claim that belief by the jury of Bridgewater and Houston's defense necessarily convicts Slocum and that belief of Slocum's defense necessarily convicts Bridgewater and Houston. However, both defenses ignore a third option - that the jury finds neither defense to be completely accurate. Thus, their real concern is the damaging nature of being tried together - Slocum will look bad in the eyes of the jury being tried with two defendants who each stabbed a man to death and Bridgewater and Houston will look bad being tried with a man who passed countless messages that resulted in murders. This, however, is not a sufficient basis to warrant a severance. <u>See, e.g. Brown</u>, 16 F.3d at 433.

14

addressed -- without severance -- with proper rulings on the

admission of evidence and instructions to the jury.  See Tootick,

952 F. 2d at 1083; Mayfield, 189 F. 3d at 905 (quoting Zafiro,

506 U.S. at 538-39).

Here, appropriate evidentiary rulings and instructions can

be given by this Court to address any concerns raised by trying

all defendants together.  For example, the government would

propose the following jury instruction be read to the jury:

> A separate crime is charged against one or more of the
> defendants in each count.  The charges have been
> joined for trial.  You must decide the case of each
> defendant on each crime charged against that defendant
> separately.  Your verdict on any count as to any
> defendant should not control your verdict on any other
> count or as to any other defendant.  All of the
> instructions apply to each defendant and to each
> count.

9th Cir. Crim. Jury Instr. 3.14 (2003).  See also Zafiro, 506

U.S. at 541 (similar instruction given and found to have cured

any potential prejudice); Fernandez, 388 F.3d at 1243 (finding

that "combined with its detailed instructions on the law

governing conspiracies, and on substantive RICO violations, the

district court's explanatory and limiting instructions to the

jury were more than sufficient to guard against the possibility

of prejudice to the defendants").  Therefore, even if the

defenses are truly irreconcilable, which the government maintains

they are not, the Court's evidentiary rulings and jury

instructions can adequate address any potential prejudice.

Although mutually antagonistic or irreconcilable defenses

"may be so prejudicial in some circumstances as to mandate

severance ··· the courts have reversed relatively few convictions

for failure to grant a severance on grounds of mutually

15

1   antagonistic or irreconcilable defenses." Zafiro, 506 U.S. at

2   538.  This is not a case in which the defenses are so prejudicial

3   to warrant a departure by the court from the presumption that

4   jointly charged defendants should be jointly tried.  Thus, the

5   motions to sever on the grounds of mutually antagonistic defenses

6   should be denied.

7       2.  There is No Constitutional Prejudice From Joining the
            Capital and Non-Capital Defendants
8

9       In addition to claiming irreconcilable defenses, defendant

10  Slocum argues that he should be severed from defendants

11  Bridgewater and Houston because they are capital defendants and

12  he is not.  Slocum rests this request on the belief that a death

13  qualified jury would be prejudiced against him, the non-capital

14  defendant.  This position is meritless and has in fact been

15  specifically rejected by the Supreme Court.

16      The defendant cites no authority in support of his

17  contention and instead only speculates that he will suffer

18  prejudice at the hands of a "death qualified jury."  The Supreme

19  Court, however, has expressly rejected claims that such juries

20  are either unfair or unrepresentative of the community.  In

21  Buchanan v. Kentucky , 483 U.S. 402 (1987), the Court dismissed

22  an identical contention, and drew upon the reasoning of its

23  predecessor, Lockhart v. McCree, 476 U.S. 162 (1986).

24      McCree holds that death qualification of a jury does not

25  thereby deny the capital defendant a fair guilt phase trial, and

26  discredited the proposition that death qualification itself

27  produces a jury which is "conviction-prone."  476 U.S. at 168-

28  173.  The Court addressed the weaknesses of the defendant's

16

1  statistical and social science data regarding the purported

2  partial nature of death-qualified juries, simply assumed its

3  limited validity, and cast it aside as fragmentary and

4  irrelevant. _Id._ Further, the Court ruled that even assuming

5  _arguendo_ that death qualified jurors are more inclined to

6  convict, the presence on the jury of jurors who are opposed to

7  the death penalty is not mandated by the requirement that the

8  jury be composed of a fair cross-section of the community. _Id._ at

9  174-177.

10     _Buchanan_ tracks _McCree's_ analysis. The case holds that death

11 qualification does not violate the rights of a non-capital

12 defendant tried jointly with a capital defendant. The Court again

13 rejected a fair cross-section challenge, as well as a partiality

14 argument, noting that at the guilt phase of a trial, "the jury's

15 discretion is traditionally more channeled than at a capital-

16 sentencing proceeding." _Id._ at 420. _Buchanan_ also accepted

17 _McCree_'s analysis of the propriety of having a single jury decide

18 all the issues in a joined trial, whether exclusively capital or

19 not. _Id._ at 416-20. The Court found that it was reasonable for

20 the government to proceed upon a joint trial, and to thereby

21 appropriately avoid presenting the same evidence to two juries at

22 two different times. In addition, the Court approved the

23      related interest in promoting the reliability and
24      consistency of [the State's] judicial process, an
         interest that may benefit the noncapital defendant as
25      well. In joint trials, the jury obtains a more com-
         plete view of all the acts underlying the charges than
26      would be possible in separate trials. From such a
         perspective, it may be able to arrive more reliably at
27      its conclusions regarding the guilt or innocence of a
         particular defendant. . . .

28 _Id._ at 418 (citation omitted).

17

1    As established Supreme Court precedents, <u>Buchanan</u> and <u>McCree</u>

2    have been properly applied.    Shortly after <u>Buchanan</u> was decided,

3    the Tenth Circuit affirmed a trial court's discretion in refusing

4    to sever a non-capital defendant from the trial of three co-

5    conspirators who were facing the death penalty, and who attempted

6    the argument ventured in the instant case, that the use of a

7    death-qualified jury would deprive them of their right to an

8    impartial jury.    In <u>United States v. Sanchez</u>, 75 F.3d 603, 604

9    (10th Cir. 1996), the Court summarily dismissed this claim,

10   observing that it had been "foreclosed" and "squarely rejected"

11   by <u>Buchanan</u>.    <u>Id</u>. at 604.    In so doing, the <u>Sanchez</u> Court

12   emphasized pages 419-20 of the <u>Buchanan</u> opinion:

13           Where. . . one of the joined defendants is a
         capital defendant and the capital-sentencing scheme
14       requires the use of the same jury for the guilt and
         penalty phases of the capital defendant's trial, the
15       interest in this scheme, which the Court recognized as
         significant. . ., coupled with the [state's] interest
16       in a joint trial, argues strongly in favor of permit-
         ting "death qualification" of the jury. . . .

17
             [T]he particular concern about the possible effect
18       of an " 'imbalanced jury' " in the "special context of
         capital sentencing," is not present with respect to the
19       guilt and sentencing phases of a noncapital defendant
         in this case.    For, at the guilt phase, the jury's
20       discretion traditionally is more channeled than at a
         capital-sentencing proceeding, and, at the penalty
21       phase, the jury's sentence is limited to specific
         statutory sentences and is subject to review by the
22       judge.

23   <u>Id</u>. at 604 (ellipses inserted, and citations omitted).

24   Additionally, in <u>United States v. Aiken</u>, 76 F. Supp. 2d 1346

25   (S.D. Fla. 1999), the Court also easily dispensed with the

26   precise claims advanced in the instant case after reviewing

27   <u>McCree</u> and <u>Buchanan</u> ("For the same reasons [as articulated in

28   <u>McCree</u> and <u>Buchanan</u>] the court rejects the non-capital

18

defendants' similar arguments here).  Id. at 1357.  See also

Furman v. Wood, 190 F.3d 1002 (9th Cir. 1999) (reaffirming that

current federal law finds that death qualification does not

violate the rights of a non-capital defendant tried jointly with

a capital defendant); United States v. Edelin, 118 F. Supp.2d 36,

46-47 (D.D.C. 2000)(denying severance and extending the reasoning

of Buchanan and Furman to the situation where non-capital

defendants seek to be severed from capital defendants); United

States v. Bin Laden, 109 F. Supp.2d 211, 222 (S.D.N.Y.

2000)(relying on Buchanan and McCree in finding that a severance

of capital defendants from non-capital defendants charged with

conspiring to bomb American embassies was not warranted where

there was no serious risk that a specific trial right of a

defendant would be violated);  United States v. Heatley, 1998 WL

671462 at *2 (S.D.N.Y. 1998) (while "in some cases the fact that

the government seeks the death penalty against some defendants

but not others may be reflective of highly disparate culpability

which could increase the risk of prejudice, . . . that is not

necessarily so, nor is it the case here"); United States v.

Causey, 185 F.3d 407, 417 (5th Cir. 1999) (rejecting claim by

non-capital defendant tried with two capital co-defendants that

joint trial violated his right to a fair trial, court held that

there was "no compromise of any specific trial right nor any

danger that the jury was prevented from reaching a reliable

verdict").  In short, no prejudice arises from the mere

19

composition of a death-qualified jury, and defendants have failed to demonstrate anything to the contrary.[6]

Defendant Slocum also argues that because defendants Bridgewater and Houston may face a penalty proceeding, they may seek to enhance the blameworthiness of defendant Slocum by beginning their mitigation case during the guilt phase of the trial. (Slocum Mot. at n.5.) Such concern is far too speculative to qualify as the kind of concrete prejudice necessary to warrant a severance. Besides, jury instructions can easily be styled to cure the supposed ills of which Slocum complains. The Supreme Court, in a variety of settings, has found "no reason to depart from 'the almost invariable assumption of the law that jurors follow their instructions.'" Shannon v. United States, 512 U.S. 573 (1994) (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). This "almost invariable assumption" applies equally in capital cases. See, e.g., Marshall v. Lonberger, 459 U.S. 422, 438 & n.6 (1983). ("[T]he crucial assumption underlying the system of trial by jury is that juries

_____

[6]    Defendant Slocum attempts to rely on United States v. Rollack, 64 F. Supp. 2d 255, 257-58 (S.D.N.Y. 1999) for the proposition that a fair cross section of the community will not be represented if Slocum is tried with a "death qualified" jury. (Slocum Mot. at 5.) However, the court in Rollack relied heavily on factors which are routinely relied on in non-capital cases and concluded that "[i]n this case," "fundamental fairness requires severance." The court noted the possible bias of capital qualified jury and also noted that "many serious crimes . . . are charged only against" capital defendant. Our case is distinguishable. The most serious crimes in this case, counts six and seven, are charged against all defendants, including defendant Slocum. Thus, no prejudice exists as in Rollack where a less-culpable defendant is being tried with more culpable capital defendants.

20

1  will follow the instructions given them by the trial judge.  Were

2  this not so, it would be pointless for a trial court to instruct

3  a jury, and even more pointless for an appellate court to reverse

4  a criminal conviction because a jury was improperly

5  instructed.").

6       In the instant case, both the panel and ultimately the

7  petite jury will be advised at several junctures as to the proper

8  undertaking of deliberations, as well as to the importance of

9  separating considerations of guilt from those of punishment.  In

10 light of the unrebutted presumption that jurors will follow such

11 instructions, defendant Slocum cannot and has not demonstrated

12 the "compelling prejudice" required to force a severance.

13      3.   <u>Spillover Evidence</u>

14      Defendants Bridgewater and Houston claim that they are

15 entitled to severance due to a disparity of evidence and its

16 resultant "spillover" effect in that they would be prejudiced by

17 being tried with defendant Slocum.  (Bridgewater and Houston Mot.

18 at 5-6.)  Defendants suggest that the murders and attempted

19 murders charged against defendant Slocum are unrelated to the

20 allegations against them and thus will merely serve to prejudice

21 the jury against them.  Defendants' however fail to recognize

22 that these other murders and attempted murders constitute direct

23 evidence of the RICO enterprise and conspiracy charges against

24 them and therefore are not prejudicial.

25      Whether the evidence can be easily compartmentalized is of

26 foremost concern in analyzing any "spillover" effect of evidence

27 presented.  <u>United States v. Duran</u>, 189 F.3d 1071, 1081-82 (9th

28 Cir. 1999).  Any prejudice that might result from "spillover'

21

1  evidence can be cured by a limiting instruction given to the jury

2  instructing them to consider the evidence against each defendant

3  and each count separately.  Id. at 1082.  United States v.

4  Catabran, 836 F.2d 453, 461 (9th Cir. 1988) ("Ultimately, the

5  question is whether the jury could follow the court's

6  instructions and appraise the evidence against each defendant

7  separately.") (internal quotations omitted).  To challenge the

8  denial of a severance motion on appeal, the defendant must

9  demonstrate the insufficiency of limiting instructions given by

10 the judge.  United States v. Joetzki, 952 F.2d 1090, 1094 (9th

11 Cir. 1991).  Here, the court will be able to give proper jury

12 instructions and defendants will not be prejudiced.

13     In this case, the allegations defendants Bridgewater and

14 Houston claim prejudice them represent competent evidence

15 concerning the RICO enterprise and conspiracy with which they are

16 both charged.  To establish a violation of 18 U.S.C. § 1962(c),

17 the government must prove, among other things: (1) the existence

18 of an enterprise; (2) the enterprise engaged in, or its

19 activities effect, interstate commerce; and (3) defendant

20 participated in the conduct of the affairs of the enterprise

21 through a pattern of racketeering activity.[7]  See, e.g., Ninth

22 Circuit Model Jury Instruction § 8.130; United States v.

23

24 _____

       [7]  To prove a violation of 18 U.S.C. § 1962(d), the
25 government must demonstrate that defendants agreed to participate
   in the affairs of the enterprise through a pattern of
26 racketeering activity.  Salinas v. United States, 522 U.S. 52
   (1997).  This statute is violated so long as the defendant agreed
27 that a member of the enterprise will commit at least two
   predicate acts, which constitutes a pattern of racketeering
28 activity.  Id.

1    <u>Fernandez</u>, 388 F.3d 1199, 1223 (9th Cir. 2004).  "Proof of these

2    elements may well entail evidence of numerous criminal acts by a

3    variety of persons, and each defendant in a RICO case may

4    reasonably claim no direct participation in some of those acts."

5    <u>United States v. DiNome</u>, 954 F.2d 839, 843 (2d Cir. 1992).

6    "Nevertheless, evidence of those [other criminal acts] is

7    relevant to the RICO charges against each defendant, and the

8    claim that separate trials would eliminate the so-called

9    spillover prejudice is at least overstated if not entirely

10   meritless" in a RICO prosecution.  <u>DiNome</u>, 954 F.2d at 843.

11       For instance, the criminal activities of defendant Slocum

12   tend to establish the existence of the enterprise of which the

13   government alleges defendants Bridgewater and Houston are a

14   members.  Defendant Slocum's role as high ranking member in the

15   1980's and later as the messenger facilitating communication

16   between commission members provides crucial evidence that this

17   gang had a decision-making structure and that its associates

18   functioned as a continuing unit.  In particular, defendant

19   Slocum's many telephone calls and letters tend to establish that

20   the Aryan Brotherhood had a hierarchy indicative of an

21   enterprise.  <u>Fernandez</u>, 388 F.3d at 1223 (setting out elements

22   necessary to establish existence of enterprise).

23       These other murders and attempted murders that defendants

24   Bridgewater and Houston claim prejudice them constitute evidence

25   not just of the enterprise but also of its pattern of

26   racketeering activity.  Indeed, murder and attempted murders form

27   part of the enterprise's pattern of racketeering activity.

28   Because these criminal acts, whether engaged in by defendants or

23

1  not, were committed as part of the criminal enterprise and RICO

2  conspiracy in which he participated, they are relevant to the

3  charges against them.

4      Defendants Bridgewater and Houston have also failed to

5  articulate how proper jury instructions would fail to cure any

6  prejudice that may result from a joint trial with defendant

7  Slocum.  During trials, courts routinely admonish juries that a

8  separate crime is charged in each count of the indictment and

9  that they must consider each count separately.  Defendants have

10  not and cannot show that a jury would be unable to follow such

11  instructions in this case.  Fernandez, 388 F.3d at 1223 (finding

12  that jury could adequately follow instructions in 28-count RICO

13  case).  Indeed, there is nothing particularly difficult or

14  complex concerning the facts of this case that would preclude a

15  jury from understanding and implementing these admonitions.  Id.

16  (stating that lay people could comprehend drug transactions and

17  other predicate activities charged in 28-count RICO case);

18  Nelson, 137 F.3d at 1108.

19      4.  Judicial Economy Does Not Favor a Severance

20      Irrespective of the fact they have utterly failed to

21  demonstrate the "specific and compelling" prejudice against which

22  the trial court would be "unable to afford protection," Causey,

23  185 F.3d at 409, defendants Bridgewater and Houston contend that

24  a severance would serve the interests of judicial economy, but

25  they do not specifically explain how two additional separate

26  trials with virtually the same evidence would achieve that goal.

27  To the contrary, only a joint trial would promote judicial

28  economy, and advance the interests of justice.

24

Even in routine criminal cases, joint trials "promote efficiency" (Zafiro, 506 at 537) by "conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial." United States v. Lane, 474 U.S. 438, 449 (1986) (internal quotations omitted). These ordinary benefits are multiplied in this extraordinary case. This Court knows better than anyone the tremendous financial and administrative costs that even a single trial of this nature entails, much less two or three additional trials. The multi-defendant indictment in this case has already been severed into several different trials due to security restraints in trying the defendants together. It is not in the interest of justice to sever these defendants even further based on no showing of prejudice. Already scare judicial resources would be even further depleted and the risk of inconsistent verdicts would increase.

Given the Court's interest in judicial economy, and the corresponding presumption in favor of joint trials of properly-joined defendants, the Court should not sever the case of defendant Slocum from defendants Bridgewater and Houston.

IV.

**CONCLUSION**

For the foregoing reasons, defendants' motions for severance should be denied.

25

## CERTIFICATE OF SERVICE BY MAIL

I, **STEPHANIE ASCENCIO**, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is Office of United States Attorney, United States Courthouse, Suite 8000, 411 West Fourth Street, Santa Ana, California 92701; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on **December 11, 2006**, I deposited in the United States mail, Santa Ana, California in the above-entitled action, in an envelope bearing the requisite postage, a copy of **GOVERNMENT'S RESPONSE TO THE MOTIONS TO SEVER BY DEFENDANTS WAYNE BRIDGEWATER, HENRY MICHAEL HOUSTON AND RONALD BOYD SLOCUM**

addressed to: **SEE ATTACHMENT**

at **THE** last known address, at which place there is delivery service by United States mail.

This Certificate is executed on **December 11, 2006**, at Santa Ana, California.

I certify under penalty of perjury that the foregoing is true and correct.

_Stephanie Ascencio_

**STEPHANIE ASCENCIO**

## ATTACHMENT

### UNITED STATES v. WAYNE BRIDGEWATER, ET AL.
### No. CR 02-938-DOC

**MICHAEL R. BELTER**
600 PLAYHOUSE ALLEY
SUITE #402
PASADENA, CA 91101
**(COUNSEL FOR RONALD SLOCUM)**

**MICHAEL WHITE**
1717 4TH STREET
3RD FLOOR
SANTA MONICA, CA 90401
**(COUNSEL FOR WAYNE BRIDGEWATER)**

**WILLIAM HARRIS**
1499 HUNTINGTON DRIVE
SUITE #403
SOUTH PASADENA, CA 91030-5458
**(COUNSEL FOR WAYNE BRIDGEWATER)**

**MARK DONATELLI**
P.O. BOX 8180
SANTA FE, NEW MEXICO 87504-8180
**(COUNSEL FOR HENRY MICHAEL HOUSTON)**

**MARK FLEMING**
433 G STREET
SUITE #202
SAN DIEGO, CA 92101
**(COUNSEL FOR HENRY MICHAEL HOUSTON)**