Michael V. White, State Bar No. 58620
LAW OFFICES OF MICHAEL V. WHITE
1717 Fourth Street, Third Floor
Santa Monica, California 90401
(310) 576-6242

William S. Harris, State Bar No. 90341
LAW OFFICES OF WILLIAM S. HARRIS
1499 Huntington Drive
Suite 403
South Pasadena, CA 91030
(626) 441-9300

Attorneys for Defendant
WAYNE BRIDGEWATER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>WAYNE BRIDGEWATER,<br><br>　　　　Defendant. | Case No. CR 02-938(E)-DOC<br><br>NOTICE OF MOTION AND MOTION OF WAYNE BRIDGEWATER TO PRECLUDE IMPOSITION OF THE DEATH PENALTY; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>DATE:　February 5, 2007<br>TIME:　2:00 p.m.<br>DEPT.:　Courtroom 9D |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE BE ADVISED that on February 5, 2007, at 2:00 p.m. or as soon thereafter as counsel may be heard, in the courtroom of the Hon. David O. Carter, U. S. District Judge, 411 West Fourth Street, Courtroom 9D, Santa Ana, California 92701, Defendant Wayne Bridgewater will, and hereby does, move the court for an order precluding imposition of the death penalty in this case and for other appropriate relief.

The motion is made on the ground that imposition of the death penalty under the Federal Death Penalty Act in all circumstances constitutes cruel and unusual punishment under the Eighth Amendment, and a due process violation under the Fifth Amendment. The Federal Death

Penalty Act, therefore, is unconstitutional facially and as applied to Mr. Bridgewater.

The motion is based on the attached memorandum of points and authorities, the complete files and records in this case, and such additional evidence and argument as may be presented at the hearing on this motion.

DATED: January ____, 2007

Respectfully submitted,

**LAW OFFICES OF WILLIAM S. HARRIS**

By_____
William S. Harris
**Attorneys for Defendant**
**WAYNE BRIDGEWATER**

Wsh\5561\Notofmotion2preclude

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.   INTRODUCTION**

On November 16, 2006 the government served a Notice of Intent to Seek the Death Penalty Against Defendant Bridgewater. Mr. Bridgewater is mindful that every present member of the U. S. Supreme Court accepts the proposition that the death penalty, under some circumstances, is constitutional.

Nevertheless, Justices Stevens and Souter have expressed doubts regarding the constitutionality of the death penalty. In <u>Herrera v. Collins</u>, 506 U. S. 390 (1993), Justices Stevens and Souter joined with Justice Blackmun and voiced "disappointment over this Court's obvious eagerness to do away with any restriction on the States' power to execute whomever and however they please," and they further expressed "doubts about whether, in the absence of such restrictions, capital punishment remains constitutional at all." 506 U.S. at 446. (Blackmun, J., dissenting). Justice Blackmun described the execution sanctioned by the Court in <u>Herrera</u> as "perilously close to simple murder." *Ibid*.

The proposition that the death penalty under some circumstances is constitutional is the rule of law in this nation for now. Nevertheless, Mr. Bridgewater contends that imposition of the death penalty under the FDPA should be declared unconstitutional under the Eighth and Fifth Amendments in all cases, and as applied to him, for the following reasons.

**2.   THE DEATH PENALTY HAS IN THE PAST, AND INEVITABLY WILL IN THE FUTURE, LEAD TO THE EXECUTION OF INNOCENT PERSONS.**

In a much-publicized case, an Illinois judge ordered the dismissal of all charges against Rolando Cruz, a young man who twice had been wrongfully convicted and sentenced to death.

A highly-publicized 1997 report noted that at least 69 persons had been released from death row since 1973 after evidence of their innocence emerged. Richard C. Dieter, *Innocence and the Death Penalty: The Increasing Danger of Executing the Innocent*, July 1997 (sequel to a 1993 Staff Report of the Subcommittee on a Civil and Constitutional Rights, Judiciary Committee, U. S. House of Representatives); s*ee also* Michael Radelet, Hugo Adam Bedau, and Constance Putnam, *In Spite of Innocence: The Ordeal of 400 Americans Wrongly Convicted of*

*Crimes Punishable by Death* (Boston, Northeastern Univ. Press, 1992).  The 1997 Dieter report concludes that "the current emphasis on faster executions, less resources for the defense, and an expansion in the number of death cases means that the execution of innocent people is inevitable."  Dieter, *supra*, at 27.  *See also* Bedau and Radelet, "Miscarriages of Justice in Potentially Capital Cases," 40 Stan.L.Rev. 21 (1987) (more than 350 innocent persons convicted in the United States since 1900 of potentially capital crimes; 23 were actually executed).

Given the near-surety that innocent persons have been executed in this country, and the grave risk that more innocent persons will be executed, the government should be precluded from seeking to execute Mr. Bridgewater.  The inherent, systemic risk of executing the innocent renders the death penalty unconstitutional under the due process clause of the Fifth Amendment and the cruel and unusual punishment clause of the Eighth Amendment.

**3.     THE RISK OF EXECUTING INNOCENT PERSONS IS PARTICULARLY ACUTE IN SNITCH-DRIVEN CASES SUCH AS THIS CASE.**

The Aryan Brotherhood prosecutions are snitch-driven cases.  The systemic risk of wrongful execution is greatly increased in snitch-driven cases.

A study published recently by the Northwestern University School of Law Center on Wrongful Convictions found that false testimony from jailhouse snitches accounted for nearly 46% of the 111 death-row exonerations since the 1970s, making it the leading cause of wrongful convictions in capital cases.  Rob Warden, *The Snitch System: How Snitch Testimony Sent Randy Steidl and Other Innocent Americans to Death Row* (Center on Wrongful Convictions, Northwestern University School of Law, 2004).

The Northwestern study concluded:

> "In all, there have been 111 death row exonerations since capital punishment was resumed in the 1970s.  The snitch cases account for 45.9% of those.  That makes snitches the leading cause of wrongful convictions in U. S. capital cases – followed by erroneous eyewitness identification testimony in 25.2% of the cases, false confessions in 14.4%, and false or misleading scientific evidence in 9.9%."

The Northwestern study enumerated a "national roster of death row snitch victims" as follows:

-4-

- **Randall Dale Adams.** Sentenced to death in 1977 for the murder of a police officer during a traffic stop in Dallas. Snitch: the actual killer who received immunity from prosecution in exchange for testifying. Exonerated by: killer's recantation. Years lost: 13.
- **Joseph Amrine.** Sentenced to death in 1986 for the murder of a fellow prisoner in Missouri. Snitches: two prisoners who claimed they saw Amrine kill the victim and a third who claimed Amrine admitted it. Exonerated by: recantations by all three prisoners and exculpatory affidavits from two others. Years lost: 10.
- **Gary Beeman.** Sentenced to death in 1976 for a murder in Ohio. Snitch: a prison escapee, who claimed he saw Beeman with the victim around the time of the crime and later with blood on his clothes. Exonerated by: five witnesses who testified the snitch told them Beeman had nothing to do with the crime. Years lost: 4.
- **Dan L. Bright.** Sentenced to death in 1996 for a murder in New Orleans. Snitch: a felon who testified in anticipation of leniency. Exonerated by: disclosure of a suppressed FBI report indicating someone else committed the crime. Years lost: 8.
- **Anthony Siliah Brown.** Sentenced to death in 1983 in Florida. Snitch: the actual killer, who testified against Brown in exchange for leniency. Exonerated by: killer's recantation at Brown's retrial. Years lost: 3.
- **Shabaka Brown.** Sentenced to death in 1974 for a robbery and murder in Florida. Snitch: a criminal who testified that he waited outside in a car while, unbeknownst to him, Brown committed the crime. Exonerated by: the snitch's admission that he fabricated the testimony in exchange for a previously undisclosed promise of leniency. Year's lost: 14.
- **Willie A. Brown and Larry Troy.** Sentenced to death in 1984 for the murder of a fellow prisoner in Florida. Snitch: a prisoner who testified that he saw Brown and Troy leave the victim's cell shortly before his body was discovered.

Exonerated by: a surreptitiously recorded admission from the snitch that he had lied about the two men's involvement. Years lost: none.

- **Albert Ronnie Burrell and Michael Ray Graham, Jr.** Sentenced to death in 1987 for a double murder in Louisiana. Snitch: a prisoner who claimed Graham admitted committing the crime with Burrell. Exonerated by: prosecution's admission that the snitch lied. Years lost: 13 (each).
- **Joseph Burrows.** Sentenced to death in 1989 for the robbery and murder of an elderly farmer in Illinois. Snitch: the actual killer. Exonerated by: killer's confession. Years lost: 6.
- **Earl Patrick Charles.** Sentenced to death in 1975 for a double murder in Georgia. Snitch: a jailhouse informant. Exonerated by: proof that Charles had been at work when the crime occurred. Years lost: 4.
- **Perry Cobb and Darby Tillis.** Sentenced to death in 1979 for a double murder in Chicago. Snitch: a woman who portrayed herself as an unwitting accomplice. Exonerated by: a prosecutor's testimony that the snitch had told him that her boyfriend committed the crime. Years lost: 10 (each).
- **James Creamer.** Sentenced to death in 1973 for a double murder in Georgia. Snitch: a purported accomplice granted immunity from prosecution. Exonerated by: discovery of tapes withheld at the trial showing that the snitch alone had committed the crime. Years lost: 3.
- **Robert Charles Cruz.** Sentenced to death in 1981 for a double murder in Arizona. Snitch: a convicted burglar given immunity in exchange for his testimony. Exonerated by: acquittal upon retrial. Years lost; 14.
- **Rolando Cruz and Alejandro Hernandez.** Sentenced to death in 1985 for the kidnapping, rape and murder of a little girl in Illinois. Snitches: six informants, four of whom claimed Cruz admitted the crime and two of whom claimed Hernandez did. Exonerated by: DNA indicating the killer was a man who confessed that he alone committed the crime. Years lost: 12 (each).

- **Muneer Deeb.** Sentenced to death in 1985 for the contract murder of a woman in Texas. Snitch: a jailhouse informant who testified that an alleged co-conspirator of Deeb's had admitted the murder-for-hire scheme. Exonerated by: acquittal upon retrial. Years lost: 8.
- **Charles Irvine Fain.** Sentenced to death in 1983 for kidnapping, sexually assaulting, and drowning a 9-year-old girl in Idaho. Snitches: two jailhouse informants. Exonerated by: DNA. Years lost: 18.
- **Neil Ferber.** Sentenced to death in 1982 for a double murder in Philadelphia. Snitch: a jailhouse informant who claimed Ferber had confessed. Exonerated by: informant's recantation and discovery of a police conspiracy to frame Ferber. Years lost: 5.
- **Gary Gauger.** Sentenced to death in 1984 for the murder of his parents in Illinois. Snitch: a jailhouse informant who testified to that Gauger repeatedly admitted the crime. Exonerated by: discovery that a Wisconsin motorcycle gang committed the crime. Years lost: 2.
- **Alan Gell.** Sentenced to death in 1998 for a murder in North Carolina. Snitches: the actual killers who were allowed to plead to second-degree murder in exchange for their "truthful testimony" against Gell. Exonerated by: new alibi evidence. Years lost: 9.
- **Charles Ray Giddens.** Sentenced to death in 1978 for a murder in Oklahoma. Snitch: a man whom police initially had arrested for the crime. Exonerated by: dismissal of charges after Oklahoma Court of Criminal Appeals ordered a new trial. Years lost: 4.
- **Larry Hicks.** Sentenced to death in 1978 for a double murder in Indiana. Snitches: two women who claimed to be eyewitnesses. Exonerated by: the women's recantations. Years lost: 2.
- **Madison Hobley.** Sentenced to death in 1990 for an arson fire that claimed seven lives in Chicago. Snitch: a suspect in another arson fire in the same

neighborhood.  Exonerated by: pardon based on innocence.  Years lost: 13.

- **Verneal Jimerson.**  Sentenced to death in 1985 for a double murder in Illinois.  Snitch: a purported accomplice promised release for testifying.  Exonerated by: DNA and convictions of three actual culprits.  Years lost: 11.
- **Richard Neal Jones.**  Sentenced to death in 1983 for a murder in Oklahoma.  Snitch: one of the actual killers.  Exonerated by: confession of one of the snitch's confederates.  Years lost: 4.
- **Curtis Kyles.**  Sentenced to death in 1984 for a murder in New Orleans.  Snitch: the actual killer.  Exonerated by: evidence that the snitch lied.  Years lost: 14.
- **Fredrico M. Macias.**  Sentenced to death in 1984 for a double murder in Texas.  Snitch: a purported accomplice who testified pursuant to a plea agreement.  Exonerated by: a solid alibi.  Years lost: 10.
- **Steve Manning.**  Sentenced to death in 1993 for a murder and armed robbery in Illinois.  Snitch: a jailhouse informant.  Exonerated by: dismissal of charges.  Years lost: 10.
- **Walter McMillian.**  Sentenced to death in 1988 for a murder in Alabama.  Snitch: the actual killer.  Exonerated by: exculpatory documents withheld at the trial.  Years lost: 10.
- **Juan Roberto Melindez.**  Sentenced to death in 1984 for a murder and armed robbery in Florida.  Snitch: a convicted felon who testified in anticipation of leniency.  Exonerated by: withheld police reports.  Years lost: 18.
- **Adolph H. Munson.**  Sentenced to death in 1984 for a murder in Oklahoma.  Snitch: a prisoner with whom Munson was incarcerated.  Exonerated by: discovery of previously withheld evidence establishing that the killer was white, Munson being black.  Years lost: 11.
- **Larry Osborne.**  Sentenced to death in 1999 for murdering an elderly Kentucky couple.  Snitch: a purported accomplice who died in an accident before the trial but whose grand jury testimony was erroneously admitted against Osborne.

Exonerated by: acquittal at retrial. Years lot: 4.

- **Aaron Patterson.** Sentenced to death in 1989 for the murder of an elderly couple in Chicago. Snitch: a cousin of an alternative suspect in the case who claimed Patterson admitted the crime. Exonerated by: gubernatorial pardon. Years lost: 14.

- **Alfred Ravera.** Sentenced to death in 1997 for a double murder in North Carolina. Snitches: three informants who received leniency on pending charges. Exonerated by: acquittal at retrial based on a credible alibi. Years lost: 3.

- **James Robison.** Sentenced to death in 1977 for the conspiracy murder of a Phoenix newspaperman. Snitch: a criminal admittedly involved in the murder who received leniency in exchange for testifying. Exonerated by: acquittal at retrial. Years lost: 16.

- **Jeremy Sheets.** Sentenced to death in 1997 for a murder in Nebraska. Snitch: the actual killer, who made a tape-recorded statement accusing Sheets in exchange for promise of leniency. Exonerated by: the snitch's recantation. Years lost: 4.

- **Charles Smith.** Sentenced to death in 1983 for a murder in Indiana. Snitch: a purported accomplice granted immunity from prosecution. Exonerated by: an alibi that the judge did not allow Smith to present because his lawyer failed to file a pretrial notice. Years lost: 8.

- **Steven Smith.** Sentenced to death in 1985 for the murder of an off-duty prison guard in Chicago. Snitch: a cocaine-addled girlfriend of an alternative suspect in the case. Exonerated by: outright reversal by the Illinois Supreme Court. Years lost: 14.

- **Christopher Spicer.** Sentenced to death in 1973 for a murder in North Carolina. Snitch: a jailhouse informant. Exonerated by: discovery that Spicer and the informant did not share a cell. Years lost: 2.

- **Gordon (Randy) Steidl.** Sentenced to death in 1987 for a murder of an Illinois

couple. Snitch: a jailhouse informant and a purported accomplice allowed to plead to lesser charges. Exonerated by: evidence disproving that purported accomplice's testimony. Years lost: 17.

- **John Thompson.** Sentenced to death in 1985 for a murder in New Orleans. Snitch's: a man originally charged with the crime but allowed to plead to lesser charges after implicating Thompson, and a second man who claimed that Thompson had admitted the crime and applied for a $15,000 reward. Exonerated by: exculpatory physical evidence concealed by the prosecution at trial. Years lost: 9.

- **Dennis Williams.** Twice sentenced to death, in 1978 and 1986, for a double murder in Illinois. Snitch's: a jailhouse snitch; at the second, a purported accomplice who testified in exchange for release. Exonerated by: DNA, recantation of the purported accomplice, and convictions of the actual killers. Years lost: 16.

- **Ronald Williamson.** Sentenced to death in 1988 for a rape and murder in Oklahoma. Snitch's: the actual killer and two jailhouse informants. Exonerated by: DNA. Years lost: 16.

- **Nicholas Yarris.** Sentenced to death in 1982 for kidnapping, rape and murder in Pennsylvania. Snitch: a jailhouse informant. Exonerated by: DNA. Years lost: 22.

As this court pointed out, the finality and severity of the death penalty carries a greater need for reliability "to ensure that death is the appropriate penalty." United States v. Mills, 446 F. Supp. 2d 1115, 1140 (C.D. Cal. 2006). That heightened constitutional standard cannot be satisfied in this snitch-driven case in light of the examples and statistics from the Northwestern study.

///

///

///

**4.    THE PROCESS BY WHICH INDIVIDUALS ARE SELECTED FOR CAPITAL PROSECUTION INVESTS AN UNACCEPTABLE LEVEL OF UNREVIEWABLE DISCRETION IN PROSECUTING AUTHORITIES.**

The court may recall the words of Justice Blackmun who, after some 35 years of deciding capital appeals, came to believe that capital punishment was in all cases unconstitutional:

> "From this day forward I no longer shall tinker with the machinery of death. For more than 20 years I have endeavored – indeed, I have struggled – along with a majority of this Court, to develop procedural and substantive rules that would lend more than the mere appearance of fairness to the death penalty endeavor. Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved and the need for regulation eviscerated, I feel morally and intellectually obligated simply to concede that the death penalty experiment has failed." Callins v. Collins, 510 U.S. 1141, 1145 (1994) (Blackmun, J., dissenting from denial of certiorari).

The words of U. S. Senior Judge Gerald Heaney in announcing his opposition to the death penalty are also noteworthy:

> "Finally, although I am bound to uphold the law, I write separately to add my voice to those who oppose the death penalty as violative of the United States Constitution. My thirty years' experience on this court have compelled me to conclude that the imposition of the death penalty is arbitrary and capricious. At every stage, I believe the decision of who shall live and who shall die for his crime turns less on the nature of the offense and the incorrigibility of the offender and more on inappropriate and indefensible considerations: the political and personal inclinations of prosecutors; the defendant's wealth, race, and intellect; the race and economic status of the victim; the quality of the defendant's counsel; and the resources allocated to defense lawyers. Put simply, this country's unprincipled death penalty selection process in inconsistent with fundamental principles of due process." Singleton v. Norris, 108 F.3d 872, 874-75 (8th Cir. 1997).

The death penalty remains cruel and unusual "in the same way that being struck by lightning is cruel and unusual." Furman v. Georgia, 408 U. S. 238, 309 (1972) (Stewart, J., concurring). While the alleged architects of the Lewisburg homicides will not be punished by death, the carpenters are still threatened. To avoid the arbitrary and capricious application of the death penalty, which is inherent and systemic in the machinery of death, this court should preclude imposition of the death penalty in this case.

5. **EVOLVING STANDARDS IF DECENCY WILL EVENTUALLY CONVINCE THE AMERICAN PUBLIC THAT IT IS SIMPLY WRONG AND IMMORAL TO KILL PEOPLE IN AN EFFORT TO TEACH PEOPLE THAT IT IS WRONG AND IMMORAL TO KILL PEOPLE.**

The Supreme Court's recent death penalty cases have eliminated the death penalty for the mentally retarded and for juveniles. Atkins v. Virginia, 536 U.S. 304 (2002), and Roper v. Simmons, 543 U.S. 551 (2005). Those cases demonstrate that "the evolving standards of decency" mentioned in Trop v. Dulles, 356 U.S. 86, 101 (1958), are moving towards the abolition of the death penalty entirely.

In this regard, the following quotation from Justice Brandeis's dissent in Olmstead v. United States, 277 U.S. 438, 485 (1928) (Brandeis, J. dissenting), is instructive:

> "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously."

Yet, despite every effort of the bench and bar, the death penalty is still inherently arbitrary and thus unconstitutional in its application. This court should follow the trend – from Trop through Atkins through Roper – and preclude imposition of the death penalty against Mr. Bridgewater in this snitch-driven case.

6. **CONCLUSION**

For the reasons stated above, this court should declare the Federal Death Penalty Act unconstitutional, facially and as applied to Mr. Bridgewater, under the Eighth Amendment and

///
///
///
///
///
///
///
///

-12-

under the due process clause of the Fifth Amendment.  On that basis, the court should preclude imposition of the death penalty in this case.

**DATED:  January ____, 2007**          **Respectfully submitted,**

                                                                 **LAW OFFICES OF WILLIAM S. HARRIS**

                                                                  **By**_____
                                                                           **William S. Harris**
                                                                **Attorneys for Defendant**
                                                                **WAYNE BRIDGEWATER**

Wsh\5561\Notofmotion2preclude

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Teresa Mac Millan, am a resident of/employed in the aforesaid county, State of California; I am over the age of 18 and not a party to the within action; my business address is: 1499 Huntington Drive, Suite 403, South Pasadena, California 91030.

On January 9, 2007, I served the foregoing **NOTICE OF MOTION AND MOTION OF WAYNE BRIDGEWATER TO PRECLUDE IMPOSITION OF THE DEATH PENALTY; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

SEE ATTACHED SERVICE LIST

☒ (BY MAIL) I caused such envelope with postage thereon fully paid to be placed in the United States mail at South Pasadena, California.

☒ (FEDERAL) I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 9, 2007

Teresa Mac Millan

**SERVICE LIST**

Terri K. Flynn, Esq.
Assistant U. S. Attorney
411 West Fourth Street, Suite 8000
Santa Ana, California  92701

Mark H. Donatelli, Esq.
ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM,
    SCHOENBURG & BIENVENU, LLP
1215 Paseo De Peralta
P. O. Box 8180
Santa Fe, New Mexico  87504

Mark F. Fleming, Esq.
433 G Street, Suite 202
San Diego, California  92101

Michael V. White, Esq.
1717 Fourth Street, Third Floor
Santa Monica, California  90401

Michael R. Belter, Esq.
600 Playhouse Alley, Suite 402
Pasadena, California  91101