Mark H. Donatelli
Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP
1215 Paseo de Peralta
P.O. Box 8180
Santa Fe, New Mexico 87504-8180
Phone: (505) 988-8004 Fax: (505) 982-0307

Mark F. Fleming  SBN 165770
433 G Street, Ste. 202
San Diego, California  92101
Phone: (619) 652-9970 Fax: (619) 652-9964


Attorneys for Defendant
HENRY MICHAEL HOUSTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR-02-938-DOC |
| Plaintiff, | ) |
| | ) DEFENDANT HOUSTON'S NOTICE OF MOTION |
| v. | ) AND MOTION TO: |
| | ) |
| HENRY MICHAEL HOUSTON, et. al. | ) DECLARE THE FDPA UNCONSTITUTIONAL, |
| Defendants. | ) AND PRECLUDE THE GOVERNMENT FROM |
| | ) SEEKING THE DEATH PENALTY, BASED ON |
| | ) A VIOLATION OF THE GRAND JURY |
| | ) PROCESS UNDER THE FIFTH AND SIXTH |
| | ) AMENDMENTS AND *RING V. ARIZONA*. |
| | ) |

DATE:         February 5, 2007
TIME:         2:00 p.m.
PLACE:        Courtroom 9D


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on February 5, 2007, at 2:00 p.m. or as soon thereafter as counsel may be heard, in the courtroom of the Hon. David O. Carter, U.S. District Judge, 411 West Fourth Street, Courtroom 9D, Santa Ana, California, 92701, the defendant, HENRY MICHAEL HOUSTON, by and through his attorneys, Mark Donatelli and Mark F. Fleming, moves to dismiss the death penalty allegations against him.

This motion is filed pursuant to the Fifth and  Sixth Amendments to the United States Constitution, Fed. R. Crim. P.  8, 12, 14 and 26.  Mr. Houston hereby moves this Court for an order declaring the FDPA unconstitutional, dismissing the

government's Notice to Seek the Death Penalty against Defendant Houston dated November 14, 2007, and precluding the government from seeking a punishment of death, based on a violation of the Grand Jury process under the Fifth and Sixth Amendments and the Supreme Court's ruling in *Ring v. Arizona*.

The motion is based upon the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,

January 15, 2007                    _____

Mark Donatelli
Mark F. Fleming
Counsel for Defendant Houston

**MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT
UNCONSTITUTIONAL, TO DISMISS THE "SPECIAL FINDINGS" FROM
THE INDICTMENT, AND TO STRIKE THE NOTICE OF INTENT TO
SEEK THE DEATH PENALTY**

The government has obtained an indictment, and filed a Notice to Seek the

Death Penalty, that charges Mr. Houston with two death-eligible offenses and alleges

"special findings" that fail to comply with the Fifth Amendment consequences of *Ring v.*

*Arizona*, 536 U.S. 584 (2002).  Mr. Houston, through his attorneys, hereby requests

that the Court declare the Federal Death Penalty Act unconstitutional for failure to

comply with *Ring*, strike the "special findings" from the indictment, and dismiss the

death notice, because the government interfered with the grand jury's performance of

its Fifth Amendment duties and responsibilities.

In support of these requests, Mr. Houston sets forth the following:

**A. THE FEDERAL DEATH PENALTY FAILS TO MEET THE SIXTH AMENDMENT
REQUIREMENTS OF *RING V. ARIZONA***

**i.    The Operation of the Federal Death Penalty Act**

Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591-3599,

if the government believes that the circumstances of an offense justify a death

sentence, it may, at a "reasonable time" before trial, serve on the defendant a notice

stating that death will be sought and "setting forth the aggravating factor or factors that

the government, if the defendant is convicted, proposes to prove as justifying a

sentence of death."   18 U.S.C. § 3593(a).  Before a sentence of death may be

imposed, the defendant must first be convicted of an offense for which death is a

prescribed sentence.  18 U.S. C. § 3593(b).  Upon conviction of such an offense, a

separate sentencing hearing must then be held.  *Id.*[1]  At that hearing, the government

may present evidence in support of the aggravating factors for which it has given

notice, and the defendant may present evidence of mitigating factors.  18 U.S.C. §

3593(c).  To impose a death sentence at the conclusion of this hearing, the jury must

make three findings.  First, the jury must find that a defendant convicted of a crime

punishable by death acted with the requisite intent.  18 U.S.C. § 3591(a)(2).  Second,

the jury must find that at least one statutory aggravating factor, enumerated under 18

U.S.C. § 3592(c), exists.   18 U.S.C. § 3593(c), (d).  Third, the jury must find that:

> all the aggravating factor or factors found to exist sufficiently outweigh all
> the mitigating factor or factors found to exist to justify a sentence of death
> or, in the absence of a mitigating factor, whether the aggravating factor or
> factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e) (emphasis supplied).  Then, "[b]ased upon this consideration,"

> the jury by unanimous vote ... shall recommend whether the defendant
> should be sentenced to death, to life imprisonment without possibility of
> release or some other lesser sentence.

*Id.*  The FDPA requires the first and second findings to be made beyond a reasonable

doubt.  It does not require the third, "weighing," finding to be made beyond a

reasonable doubt.

### ii.    The FDPA fails to meet the requirements of the Sixth Amendment

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), holds that once the legislature

has chosen to make particular factual findings the prerequisite for an increased

maximum sentence – regardless of the substantive content of the findings or how the

statutory scheme itself characterizes them – those findings are, "for constitutional

---

[1]This hearing is held before the jury that determined guilt, before a separate jury

*(Footnote cont'd on next page)*

CR-02-938-DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

analysis," "elements of the crime."  *Harris v. United States*, 536 U.S. 545, 567 (2002).

Certain procedural requirements follow as a matter of federal constitutional law.  In a

federal prosecution, those procedural requirements include that the prerequisite fact

must be "charged in the indictment, submitted to a jury, and proven by the Government

beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 251-52 (1999).

*Ring v. Arizona*, 536 U.S. 584 (2002), applied the rule of *Apprendi* and *Jones* to death

penalty cases.

In this context, therefore, any "fact[] necessary to impose the maximum

[punishment]," *Harris v. United States*, 536 U.S. at 566, must be treated as an element.

Under the FDPA, there are three facts that must be found before a death sentence may

be imposed: (1) that the defendant acted with the requisite intent, (2) that there is at

least one statutory aggravating factor, and (3) that the aggravating factors outweigh

mitigating factors sufficiently to justify a sentence of death (or, in the absence of

mitigating factors, that the aggravating factors in themselves are sufficient to justify a

sentence of death).

There is agreement among the federal courts that the finding of the requisite

mental state and the finding of at least one statutory aggravating factor are findings

that, under *Ring*, must be treated as elements.  Accordingly, they must be "charged in

the indictment, submitted to a jury, and proven by the Government beyond a

reasonable doubt." *Jones, supra.  See United States v. Allen*, 406 F.3d 940, 943 (8th

Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir.), *cert. denied*, 543

*(Footnote cont'd from previous page.)*

under certain  circumstances, or before the judge.  18 U.S.C. § 3593(b).

- 5 -

CR-02-938-DOC

U.S. 1005 (2004); *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004); *United States v. Quinones*, 313 F.3d 49, 53 n.1 (2nd Cir. 2002), *cert. denied*, 540 U.S. 1051 (2003).  However, very few courts have addressed whether the third finding must be treated as an element.

Under state statutes that require similar "weighing" findings, four state courts have held, in light of *Ring*, that this finding must be treated as an element.  The Missouri Supreme Court rejected the argument that such a jury determination "merely calls for the jury to offer its subjective and discretionary opinion rather than to make a factual finding."  *Whitfield v. State*, 107 S.W.2d 253, 259 (Mo. 2003).  The *Whitfield* court surveyed the views of several other state supreme courts to consider the question, and ultimately adopted their reasoning that, under *Ring*, a statutorily required finding that aggravation outweighs mitigation must be proved by the prosecution beyond a reasonable doubt to the satisfaction of a jury.  107 S.W.3d at 259-261 (citing *Woldt v. People*, 64 P.3d 256, 265 (Colo. 2003); *Johnson v. State*, 59 P.3d 450, 460 (Nev. 2002); and *State v. Ring*, 65 P.3d 915, 943 (Ariz. 2003) (on remand from the United States Supreme Court)).  *See also*, Note, *The Evolving Meaning of the Fifth and Sixth Amendments: Sentencing Effects of Aggravating Factors as Elements of the Crime*, 80 NOTRE DAME L. REV. 403, 436-37 (November 2004) (any time a jury must determine "that the aggravating factors outweigh the mitigating factors" before the defendant may be sentenced to death, "the weighing determination acts as the functional equivalent of an element," and under *Ring* the jury would "have to agree, *beyond a reasonable doubt*, that the totality of the aggravating circumstances outweighs the totality of the mitigating circumstances") (emphasis supplied).

The reasoning of the Supreme Courts of Missouri, Nevada, Colorado, and Arizona on this issue is supported by the Supreme Court's most recent discussion of

the requirements of *Ring*.  In *Booker v. United States*, 543 U.S. 220 (2005), the Court made clear that a defendant has "[a] right to have the jury find the existence of any particular fact *that the law makes essential to his punishment*." *Id.* at 232 (citing *Blakely v. Washington*, 542 U.S. 296, 301 (2004)) (emphasis supplied).  As noted *supra*, under 18 U.S.C. § 3593(e) the jury's determination that the aggravating factors outweigh the mitigating factors is "essential to" imposing a death sentence.  Under *Ring*, this finding was therefore required to be made by the jury *beyond a reasonable doubt* before a death sentence was legally available.  *See also Blakely*, 542 U.S. at 303-04 ("the relevant 'statutory maximum' [for purposes of Ring] is not the maximum sentence a [jury] may impose after finding additional facts, but the maximum [it] may impose *without* any additional findings") (emphasis in original).

Booker and *Blakely* thus make clear that, for Sixth Amendment purposes, whether a defendant is legally exposed to a particular enhanced sentence is a question that depends on whether imposition of that sentence is conditioned on an additional, statutorily-mandated finding of fact.  Under the FDPA, the jury has no legal authority to recommend a death sentence for Mr. Houston unless and until it concludes that the aggravating factors proved by the government outweigh the mitigating factors proved by the defense.  Congress's decision to condition the availability of a death sentence on that factual determination makes it the type of finding governed by *Ring*.

We acknowledge that other courts have reached a different conclusion on the weighing issue, at least prior to *Blakely* and *Booker*.  *See*, *e.g.*, *United States v. Haynes*, 269 F. Supp. 2d 970, 980 (W.D.Tenn. 2003); *Brice v. State*, 15 A.2d 314, 322 (Del. 2003); *Torres v. State*, 58 P.3d 214, 216 (Okla. Crim. App. 2002).  And, at least one court has rejected this argument as to the FDPA since *Booker* and *Blakely*.  *See United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2006) (rejecting the argument

- 7 -

because the weighing finding is not "an elemental fact for which a grand jury must find

probable cause," but rather a "'consideration'").  Nevertheless, these courts have failed

to acknowledge that in the absence of a finding that aggravation outweighs mitigation,

the "default sentence" under the statutory schemes in question – as under the FDPA –

is life imprisonment.

Accordingly, because the finding that aggravation outweighs mitigation is

"essential to" to a death sentence, *see Booker*, the Sixth Amendment requires that it be

proven by the prosecution beyond a reasonable doubt.  The failure of the FDPA to

require that this finding be made beyond a reasonable doubt makes the FDPA

constitutionally defective.

> **B.**    **THE DEATH NOTICE SHOULD BE DISMISSED BECAUSE THE GOVERNMENT HAS NOT OBTAINED AN INDICTMENT CONSISTENT WITH THE REQUIREMENTS OF THE FIFTH AND SIXTH AMENDMENTS.**
>
> **i.    The Indictment of Mr. Houston**

Racketeering Acts 37 - 43 of Count One state that beginning on an

unknown date and continuing until at least November 24, 2000 Mr. Houston and others

conspired to murder black inmates in the institutions of the Federal Bureau of Prisons,

and that a co-conspirator committed an overt act in furtherance of the conspiracy.  The

acts further state that on or about August 28, 1997, Mr. Houston and others

did…willfully participate in the murder(s) of Frank Joyner (RA 38), Abdul Salaam (RA

39),  and the attempted murder(s) of Titus Webster (RA 40), Byron Ball (RA 41), Harold

Roberts (RA 42), and Larry Fortune (RA 43).

Count Two alleges that Mr. Houston and others participated, directly or

indirectly, in the conduct of the affairs of the (AB) enterprise through a pattern of

racketeering activity.  Mr. Houston is named specifically in Overt Act 31 with becoming

a member of the AB in September 1997 as a reward for participating in the murder of

black inmates at USP  Lewisburg.  Overt Acts 281 – 286 allege that Mr. Houston, after

- 8 –

being informed about the war with the DC Blacks, made plans to murder black inmates on or about August 28, 1997.  The acts allege Mr. Houston snuck into Cellblock A at USP Lewisburg, armed himself with a knife and, along with Allen Benton, stabbed Abdul Salaam to death.

Count Six charges Mr. Houston and others with the premeditated murder of Frank Joyner on or about August 28, 1997.  Count Seven charges Mr. Houston and others with the premeditated murder of Abdul Salaam on or about August 28, 1997.

ii.    **The grand jury was not given the choice of holding Mr. Houston to answer for a capital crime because it was unaware of the consequences of its "special findings."**[2]

The Fifth Amendment provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  As the Supreme Court has explained:

> [T]he grand jury is a central component of the criminal justice process.
> The Fifth Amendment requires the Federal Government to use a grand
> jury to initiate a prosecution....  The grand jury, like the petit jury, 'acts as
> a vital check against the wrongful exercise of power by the State and its
> prosecutors.'  It controls not only the initial decision to indict, but also
> significant decisions such as how many counts to charge and whether to
> charge a greater or lesser offense, *including the important decision to
> charge a capital crime.*

*Campbell v. Louisiana*, 523 U.S. 392, 398 (1998) (citations omitted) (emphasis supplied).   *See also Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (power to charge capital or non-capital offense lies in hands of grand jury); Fed. R. Crim. P. 7(a) ("[a]n offense which may be punished by death shall be prosecuted by indictment").

CR-02-938-DOC

When Congress adopted the Bill of Rights, only the indicting grand jury, by choosing the offense to charge, could make the offense punishable by death.  In 1789 Congress sought to ratify the Fifth Amendment, and also passed the first federal criminal laws.  Those laws that authorized the death penalty mandated it; they left no other sentencing option.  *See generally* Rory Little, *The Federal Death Penalty: History and Some Thoughts About the Department of Justice's Role*, 26 Fordham Urb. L.J. 347, 361-63 and n.65 & 66 (1999).[3]  This practice was consistent with that of the states, which at the time the Bill of Rights was adopted in 1791, "followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses."  *Woodson v. North Carolina*, 428 U.S. 280, 289 (1976).  Thus, the intent of the framers of the Fifth Amendment was that the grand jury retain the power to choose which defendants would receive a sentence of death upon conviction.

The grand jury's historical role in choosing which defendant would receive a death sentence upon conviction is well documented[3].  *See* Wayne R. LaFave, *et al.*, 1 *Criminal Procedure*  1.5(b) (2nd ed.) (noting that grand juries played a critical role in reducing the number of offenses for which capital punishment could be imposed by downgrading charges to non-capital offenses); Andrew Hirsch, *The Rise of the Penitentiary* (1992) ("[a]t the indictment stage, grand juries often refused to charge person with capital crimes.  They simply downgraded indictments to non-capital

_____

*(Footnote cont'd from previous page.)*

[2]This argument is based on an excellent law review article: K. Bren and Tomer, *Ring Around the Grand Jury: Informing Grand Jurors of the Capital Consequences of Aggravating Factors*, 17 Cap. Def. J. 61 (2004).

charges of their own devising..." ).  The Supreme Court has acknowledged this historical role, writing in *Vasquez*, 474 U.S. at 263, that "the Grand Jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not.  *In the hands of a grand jury lies the power to charge* a greater or lesser offense; numerous counts or a single count; and perhaps the most significant of all, *a capital offense or a non-capital offense...."*

In this case, the government presented to the grand jury two of the three elements necessary to make Mr. Houston "death-eligible" for Eighth Amendment purposes – the intent requirements under 18 U.S.C. § 3591(a)(2) and  the alleged statutory aggravating factors under 18 U.S.C. § 3592(c).  On information and belief, however, the government did not inform the grand jury of the consequences of those special findings, *i.e.*, that by returning the indictment, Mr. Houston would be held to answer to an offense punishable by death.  Certainly nothing on the face of the indictment shows that the grand jury was aware that it was being asked to determine if Mr. Houston should be held to answer for a capital offense.[4]  The model grand jury charge of the Administrative Office of the United States Courts indicates that the jury would not have been told that Mr. Houston would face the death penalty upon conviction.  That charge expressly instructs the jury: "When deciding whether or not to

---
*(Footnote cont'd from previous page.)*

[3] An example of one such law provided that "such a person or persons on being thereof convicted [of willful murder] shall suffer death."  An Act for the Punishment of Certain Crimes against the United States, ch. 9,Sec. 3, 1 Stat. 112, 113 (1970).

[4]  Mr. Houston seeks discovery of exactly what the Grand Jury was or was not informed of with regard to the aggravating and mitigating factors, and whether the Grand Jury was told that by indicting Mr. Houston, he would be eligible for the death penalty.

CR-02-938-DOC

indict, you should not be concerned about punishment in the event of conviction. Judges alone determine punishment."  *See* Tomer, *Ring Around the Grand Jury*, *supra*.

By not informing the jury that is was returning an indictment charging a capital offense, and misinforming the grand jury about who determines punishment in a federal capital case, the government turned the  proceeding into a sham – one that gave the appearance of complying with the Fifth Amendment, but that deprived Mr. Houston of his constitutional and statutory rights.

The Supreme Court, in a related context, has not countenanced such disregard for the Fifth Amendment.  In *Smith v. United States*, 360 U.S. 1, 9 (1959), the Court reversed a kidnapping conviction initiated by information even though it was a capital offense.  The Court stated:

> [t]he Fifth Amendment made the [grand jury indictment] rule mandatory in federal prosecutions in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings....  [T]o permit the use of informations where ... the charge states a capital offense, would ... make vulnerable to summary treatment those accused of ... our most serious crimes.

*Id.* (citations omitted).  Similarly, to permit the government to obtain from a grand jury an indictment alleging the elements of a capital offense, but not informing the grand jury that by finding those elements it was holding the defendant to answer to a capital crime, makes vulnerable those accused of the most serious crimes.  If the grand jury is not informed of the capital nature of the offense, it cannot express the conscience of the community or perform its constitutionally assigned role as a "barrier ... between the liberties of the people and the prerogative of the [government])."  *Harris v. United States*, 536 U.S. 545, 564 (2002) (grand and petit juries "form a 'strong and two-fold barrier'").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The grand jury's constitutional and historical  role in deciding whether a defendant should face the death penalty is perhaps more critical now than ever.  Few checks exist on the federal government's power to pursue the ultimate punishment against one of its citizens and fewer opportunities exist for the local community to express its desires about the appropriateness of the death penalty in any given case. Prosecutorial decision making in capital cases is centralized at the Department of Justice in Washington, D.C.  Local federal prosecutors have little, if any, control over whether they will seek the death penalty against a defendant.  Instead, the Attorney General makes all such decisions – often overriding the recommendations of local prosecutors and refusing to allow a defendant to plead guilty in exchange for a sentence of life imprisonment without the possibility of release.  *See* Kevin McNally, *Race and the Federal Death Penalty: A Nonexistent Problem Gets Worse*, 53 DePaul L. Rev. 1615, 1631-37 (2004) (of 103 defendants Attorney General Ashcroft approved for federal capital prosecution, 41 (40%) were defendants against whom the local United States Attorney did not request death authorization; Attorney General Ashcroft, unlike Attorney General Reno, rejected plea offers in a significant number of cases). As a result of the unilateral discretion of the Attorney General, local prosecutors have little, if any,  opportunity to truly speak for the community that they serve.  *See United States v. Navarro-Vargas*, 367 F.3d 896, 902 (9th Cir. 2004).   (Kozinski, J., dissenting) ("[a]n independent grand jury – one that interposes the local community's values on prosecutorial decisions that are controlled by policies set in Washington as to the enforcement of laws passed in Washington – seems like an important safeguard that is entirely consistent with the grand jury's traditional function"), *rehearing en banc*, 408 F.3d 1184 (9th Cir. 2005).

CR-02-938-DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nor is the petit jury in a capital case a meaningful barrier between "the liberties of the people and the prerogative of the [government])." *Harris*, 536 U.S. at 564. This is because petit jurors are "death-qualified." Individuals with scruples against the death penalty, no matter how many exist in a given community, have not been permitted to sit in judgment in a capital case. Instead, capital juries consist exclusively of individuals who believe that the death penalty is an appropriate punishment and who express a willingness to impose it. Empirical evidence shows that such "death-qualified" jurors are more prone to believe government witnesses, generally evaluate evidence differently than other jurors, and give little meaning to the presumption of innocence, *i.e.*, death qualified jurors are more conviction prone.[5] The death-qualifying process also tends to exclude women and African-Americans from jury service. *Id.* The net effect of death qualification is that capital jurors do not represent the conscience of the local community or its rich diversity; at best, they represent only those members of the community who share similar views on the death penalty – often white men. Jurors that represent such a small segment of the community are ill-equipped to act as a barrier between the "liberties of the people" and the power of a government, particularly

---

[5]*See* Jesse Nason, *Mandatory Voir Dire Questions in Capital Cases: A Potential Solution to the Biases of Death Qualification*, 10 Roger Williams U. L. Rev. 211, 219 (2004) (summarizing research on how death-qualified jurors may presume guilt, resolve ambiguities against the defendant, more readily accept the government's version of events, distrust defense witnesses, fill evidentiary gaps with their beliefs that defendant committed the crime; and were more likely to infer premeditation). *See also United States v. Green*, 324 F. Supp. 2d 311, 329 (D. Mass. 2004) (citing studies that raise problem with whether death-qualified juries are more conviction prone).

CR-02-938-DOC

a government so centralized that it often forces local prosecutors to take a capital case

to trial against their will.[6]

In conclusion, the Constitution and the Bill of Rights sets up a carefully crafted

system of checks and balance.  Under the Fifth Amendment, the grand jury, like the

petit jury, is supposed to "act[] as a vital check against the wrongful exercise of power

by the State and its prosecutors." *Campbell v. Louisiana*, 523 U.S. 392, 398 (1998)

(citations omitted).  Unless the grand jury is aware of its capital charging power and the

consequences of returning an indictment with "special findings" like those in this case, it

cannot perform its constitutionally assigned function and make " *the important decision*

*to charge a capital crime.* " *Id.*  Because the grand jury did not perform its

constitutionally assigned role of deciding whether Mr. Houston should be held to

answer for a capital crime, the death notice should be dismissed and the indictment's

"special findings" stricken.

### iii.    The government did not obtain an indictment alleging all elements of a capital crime.

Even if the grand jury had been aware that it its "special findings" would hold Mr.

Houston to answer for a capital crime, the indictment should be dismissed because the

---

[6]Public opinion polls "consistently show that opposition to capital punishment runs around 45%  to 55% for black Americans, while for whites it is much lower, ranging from 17% in 1992 to 24% in 2000.  That is opposition to the death penalty is about twice as high among black Americans as among white, and a much larger majority of whites than blacks support the death penalty."  Rory Little, *What Federal*

*(Footnote cont'd on next page)*

CR-02-938-DOC

government did not present the third element necessary for the grand jury to make the

decision as to whether Mr. Houston should be subject to the death penalty, *i.e.*,

whether the aggravating factors outweigh the mitigating factors sufficiently to justify a

sentence of death.  The failure of the grand jury to examine all relevant factors to

determine if the death penalty was justified conflicts with the framers' intent, discussed

above, that the grand jury retain the power to decide which defendants should receive

a sentence of death upon conviction.  Moreover, as we have shown, *supra*, it violates

Mr. Houston's Fifth and Sixth Amendment rights to not have all elements of the crime

submitted to the grand jury for its consideration.  *See  Jones v. United States*, 526 U.S.

at 251-52.

## CONCLUSION

For these reasons, defendant Henry Michael Houston respectfully requests that

the Court grant the above motion.

Dated:   January 11, 2007            Respectfully Submitted,


                                     Mark Donatelli
                                     Mark Fleming
                                     Attorneys for Henry Michael Houston

*(Footnote cont'd from previous page.)*

*Prosecutors Really Think: The Puzzle of Statistical Race Disparity Versus Specific
Guilt, and the Specter of Timothy McVeigh*, 53 DePaul L. Rev. 1591, 1596 (2004).

-16-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CR-02-938-DOC