Michael R. Belter, Esq.
600 Playhouse Alley, Suite 402
Pasadena, CA 91101
Telephone: (626) 405-4911
Facsimile: (626) 405-4913
E-Mail: mbelteresq@sbcglobal.net

Attorney for Defendant
Ronald B. Slocum

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR-02-938-DOC |
| | ) | |
| Plaintiff, | ) | DEFENDANT SLOCUM'S MOTION |
| | ) | TO EXCLUDE HEARSAY |
| v. | ) | STATEMENTS OF GOVERNMENT |
| | ) | WITNESSES UNDER *CRAWFORD* |
| RONALD BOYD SLOCUM, | ) | AND FRE 801(d)(2)(E), (403), and |
| | ) | (805); MOTION FOR DISCOVERY OF |
| Defendant. | ) | CO-CONSPIRATOR'S STATEMENTS |
| | ) | AND REQUEST FOR PRE-TRIAL |
| | ) | HEARING |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the defendant, RONALD BOYD SLOCUM, by and through his attorney, Michael R. Belter, hereby moves to exclude any and all hearsay statements of government witnesses under *Crawford v. Washington*, 541 U.S. 36 (2004) and Federal Rules of Evidence 801 (d)(2)(E), 403 and 805. Mr. Slocum herein moves to suppress all impermissible hearsay. In the alternative, and in anticipation of the government's response, Mr. Slocum seeks an evidentiary hearing to establish whether the out-of-court statements are admissible. Where additional discovery is necessary to determine the specific source of the indirect statement, Mr. Slocum moves for production of the location and date of when each alleged statement was made and the source of each statement.

1

## INTRODUCTION TO EXCLUSION OF HEARSAY MOTION

During court proceedings held on January 3, 2007, the government disclosed it's general theory and the inmate witnesses it intends to call for each murder and attempted murder charged against Mr. Slocum.  It is clear the government's case will rely heavily on out-of-court statements from cooperating inmate witnesses. These statements include "direct" statements which the testifying witness will claim he heard directly from Mr. Slocum, and "indirect" statements which the testifying witness will claim he heard from another source. While both groups present hearsay concerns, the "direct statements" are  less controversial for the defense. Mr. Slocum as a general rule, concedes there is no *Crawford* confrontation issue, with regard to the link between Mr. Slocum and the testifying witness, since the witness who claims to have heard the statement will be on the witness stand and subject to cross-examination.  However, the statement might well be inadmissible on other grounds.[1]

---

[1]        For example, assume the statement attributed to Mr. Slocum is that Slocum heard about the murder of victim X from inmate B and is passing along the information. The statement Slocum attributes to inmate B, if offered for the truth, must satisfy both the *Crawford* "testimonial" test as well as the requirements of FRE 801(d)(2)(E) and 104.  (*See* FRE 805).  Moreover, if the probative value of the  statement, either from inmate B to Slocum or Slocum to  the testifying witness, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury the statement may be excluded  even if relevant.  (FRE 403).  Given many inmates penchant for repeating rumors, exaggeration, outright lying and proclivity to scuttlebutt, issues of undue prejudice under FRE 403 are of heightened concern in this case

The "indirect" statements present a greater concern where the primary source of the out-of-court statement is unknown, the source is a second government witness or the source is deceased or otherwise unavailable. In such an instance, Mr. Slocum takes the position that every "indirect" out-of-court statement runs afoul of the Confrontation Clause and thus is inadmissible.

As seen, infra, there are three different types of "indirect" statements. The first, where a government witness heard the statement indirectly from another government witness. The second, where a government witness heard the statement indirectly from another named co-defendant. The third where the government witness heard the statement indirectly from a now deceased, or otherwise unavailable witness. [2]

All three types of "indirect" statements raise Sixth Amendment confrontation issues. As seen in the trial of United States v. Barry Mills, the government proffered countless "indirect" hearsay statements under FRE 801(d)(2)(E) as *co-conspirator* statements. As discussed infra, prior to their anticipated proffer, the court should make specific findings that a fact specific conspiracy existed, that it included Mr. Slocum, and that each of the statements offered was in the course of and in furtherance of that conspiracy. *United States v. Peralta*, 941 F.2d 1003, 1005 (9th Cir. 1991*)*; *Bourjaily, v. US* 483 U.S. 171, at 175. Moreover, while co-conspirator statements are generally admissible under FRE 801(d)(2)(E), all statements between members of the same alleged enterprise are not automatically admissible against one another. *United States v. Bellomo*, 176 F.3d 580 (2nd

---

[2]    These forms of "indirect statement" involve a minimum of three people in the hearsay chain. For example, government witness A testifies he heard from government witness, inmate B that he heard that Slocum was the man on the streets or was involved in drug distribution or passed messages to and from the California and Federal factions of the AB.   As discussed *infra*, the statement from B to inmate A   must satisfy the non-testimonial requirement for admissibility under *Crawford* and the requirements of the Federal Rules of Evidence.   It is likely that in some cases the hearsay chain  will stretch beyond three people.  No matter, every link in the chain must be examined independently of the others.  *See Crawford* and FRE 805.

Cir. 1999)[3]   Therefore,  it is necessary to address confrontation concerns regarding any "co-conspirator statements"  in light of *Crawford v. Washington*,  FRE 801(d)(2)(E), and FRE 403 as well as Rule 104 and 805.

**The Confrontation Clause, *Crawford v. Washington* and the Exclusion of "Testimonial" Hearsay**

In March of 2004, the Supreme Court issued its landmark decision, *Crawford v. Washington*, 541 U.S. 36 (2004), in which it overruled twenty-four years of precedent, holding that; "where testimonial evidence is at issue...the Sixth Amendment demands what the common law required, unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.  Prior to *Crawford*, "hearsay-type" evidence was admissible if it fell within a "firmly-rooted" hearsay exception or bore particularized guarantees of reliability. *See id; see also Ohio v. Roberts*, 448 U.S. 66 (1980).

The new mode of analysis raises an additional hurdle for purposes of the Confrontation Clause[4] inquiry.  Whether or not a statement falls within a hearsay exception is no longer relevant because the new test is whether evidence sought to be introduced is or is not "testimonial." *Id*. at 61 ("Where testimonial statements are involved, we do not think the framers meant  to leave the Sixth Amendment's protection to the vagaries of the rules of evidence...") *see also id.*  at 69 (Where testimonial  statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").

---

3       The Court in *U.S. v. Bellomo*, held that in order to comply with the Rule of Evidence permitting the admission testimony of a coconspirator under the hearsay exception, the district court in each instance must find the existence of a specific criminal conspiracy beyond the general existence of the Mafia.

4       The Sixth Amendment Confrontation Clause guarantees all criminal defendants the right to confront and cross examine witnesses at trial. The right to cross examine a witness includes the ability to expose a witness's motivation for testifying. *Davis v. Alaska*, 415 U.S. 308, 316 (1974)

*Crawford* requires confrontation in order to admit "testimonial" statements into evidence and it broadly defined such testimony as typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51. The Court declined to spell out a more comprehensive definition of "testimonial."  Instead it gave some examples, noting that, at a minimum, it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.* at 68.  The Court further stated that: "*ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony, confessions or statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" were testimonial. *Id.*

The Supreme Court in *Crawford* did not proclaim *all* statements made by "co-conspirators" to be non-testimonial, thus exempt from confrontation.  To the contrary, *Crawford* demands that each out of court statement be subject to rigorous pretrial examination to determine whether or not the statement is "testimonial" regardless of the label affixed to it by the government. In fact, the Supreme Court addressed this issue head on by declaring "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability'...Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation...the [Confrontation] Clause...commands, not that the evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford* at 61.

Although *some* statements made by co-conspirators in furtherance of a conspiracy might be non-testimonial, clearly not *all* statements made by co-conspirators are by definition non-testimonial. Post *Crawford*, the question for admission of any out-of-court statement, regardless of the label, remains: Is the statement testimonial?  If the answer is yes, then the statement is barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness, regardless of whether the statement is deemed reliable by the court. *Id.* at 54.  If the answer is no, then the statement *may* be admissible, if not otherwise barred by the Federal Rules of Evidence.

When deciding whether the admission of an out-of-court statements violates the Confrontation Clause, courts should independently review whether the government's proffer satisfy the demands of the Clause. *Lilly v. Virginia*, 527 U.S. 116 (1999). Specifically, before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), "a court must be satisfied...that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'during the course and in furtherance of the conspiracy'...[T]he existence of a conspiracy and [petitioner's] involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court." *United States v. Peralta*, 941 F.2d 1003, 1005 (9th Cir. 1991)(*quoting United States v. Bourjaily*, 483 U.S. 171, 175 (1987)).

Moreover, where the government has given notice of multiple "indirect" statements passed along by other government witnesses and or named codefendants, each link in the chain from person to person must independently satisfy the Confrontation Clause demands of *Crawford* and the Federal Rules of Evidence. (*See* FRE 805 - hearsay within hearsay is admissible only if each part of the combined statement conforms with an exception to the hearsay rule).

Federal Rules of Evidence 801(d)(2)(E) provides one of these exceptions for admitting testimony of co-conspirators. In order to establish a given statement falls within the co-conspirator exception, the government must prove: 1) that a conspiracy existed; 2) that an identified hearsay declarant and the defendant had knowledge of and participated in the conspiracy; 3) that the statement was made in the course of the conspiracy; and 4) and that the statement was made in furtherance of the conspiracy. *Bourjaily v. U.S., 483 U.S. 171, 175 (1987)*[5]

---

[5]    See, Fed R Evid. Advisory committee's note discussing the 1997 Amendment to 801 d 1 c, in response to the three issues raised by *U.S. v. Bourjaily*, the court should examine "the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement. In essence, prior to admission, the court must be convinced there exixts independent corroboration of a conspiracy and the defendant's participation in it.

**Existence of Conspiracy & Membership**

As a necessary safeguard, before considering the admissibility of a hearsay statement under the co-conspirator exception, the government must establish by a preponderance of the evidence[6] that a conspiracy existed *AND* that the defendant and the declarant were members of the conspiracy. *Bourjaily v. U.S., 483 U.S. 171, 175 (1987); United States v. Silverman, 861 F.2d 571, 578 (9th Cir. 1988)*

The government must show that Mr. Slocum and the declarant knew of the conspiracy and intended to associate themselves with the criminal scheme. *United States v. Stephenson* 53 F.3d 836, 843 see also *United States v. Taylor* 328 F. Supp. 2d 9217. The co-conspirator's statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in the conspiracy. Thus, for the prosecution to meet its initial burden, the co-conspirator statements must be corroborated by "fairly incriminating" independent evidence showing the defendant's knowledge of *AND* participation in the conspiracy. *Id. at 578.*

Where independent evidence is provided, the court must scrutinize the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement. *Bourjaily v. U.S., 483 U.S. at 156.* Evidence of innocuous conduct that is consistent with defendant's unawareness of the conspiracy does nothing to corroborate the co-conspirator's statement. Where the prosecution shows no additional proof of defendant's knowledge of and participation in the conspiracy, the statement must be excluded from evidence. *United States v. Silverman, 861 F.2d at 578.*

In making this assessment, the court must consider that while out of court statements are presumptively unreliable, out of court co-conspirator statements are "doubly suspect." *United States v. Silverman, 861 F.2d at 578.* [7] Given this presumptive unreliability, "a co-conspirator's statement

---

6    See the 11th Circuit has required "substantial evidence" , not slight evidence or slight connection, to connect the defendant to the on-going conspiracy, citing due process concerns. *United States v. Toler*, 144 F.3d 1423, 1427-28 (11th Cir. 1998)

7    "[C]o-conspirator statements ...often have been considered to be somewhat unreliable. It Has long been understood that such statements in some cases may constitute, at best, nothing more than ' idle

implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence. Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence." *United States v. Silverman, 861 F.2d at 571.*

### During the Course and in Furtherance of the Conspiracy

Hearsay declarations of co-conspirators cannot be received into evidence under the co-conspirator exception of Rule 801(d)(2)(E) unless the declarations were (1) made during the pendency of the conspiracy, and (2) made in furtherance of the conspiracy. *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979) citing *United States v. Snow*, 521 F.2d 730, 733 (9th Cir. 1975). Rule 801(d)(2)(E) is designed to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence. From *United States v. Layton*, 720 F.2d 548, 556-7 (9th Cir. 1983) *cert denied*, 465 U.S. 1069 (1984). citing to Dorn 561 F.2d 1252, 1256. In response, the federal courts have scrupulously observed the requirements of the Rule. ( *Krulewitch v. United States*, 336 U.S. 440, 443-44 (1949).

The general rule, as set forth by the Supreme Court in *Krulewitch v. United States*, is that extra-judicial statements are not admissible against the non-declarant if made after the chief objective of the conspiracy has ended either in success or failure. *Krulewitch v. United States*, 336

---

chatter' of a declarant or worst, malicious gossip." Bourjaily, 107 S. Ct. At 2790 accord Wong Sun v. United States, 371 U.S. 471, 490 n. 17 (1963), quoting Williams, The Proof of Guilt 135 (1958) See also Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: Functional Analysis, 85 Harv.L.Rev. 1378, 1386-87 (1972) ( statements made by a co-conspirator prior to termination of the conspiracy "may...suffer from the same kinds of exclusively self serving motives and possibly faulty memories that allegedly infect many post termination statements"); Levie, Hearsay and Conspiracy: A Reexamination of the Co-Conspirators' Exception to the Hearsay Rule, 52 Mich. L.Rev. 1159, 1165-66 (1954) ("The coconspirator's interest is likely to lie in misleading the listener into believing the conspiracy stronger with more members (and different members) and other aims that in fact it has.") *United States v. Silverman, 861 F.2d at 571.*

1    U.S. 440, 442 (1949).  Furthermore, the Court in *Krulewitch* disapproved of extending completed

2    conspiracies by finding implicit agreements to conceal the crime.  Id. at 443-444.  As a result, there

3    has been a clear policy of restraint in labeling crimes as continuing because otherwise courts would

4    be inferring a subsidiary objective in every conspiracy. Id.  Therefore, where the central purpose of

5    the purported conspiracy has been completed, any declarations made after the completion of the

6    offense should not be admitted under the co-conspirator hearsay exception.

7         Even if the court finds the co-conspirator's statements to be made within the temporal course

8    of the conspiracy, the prosecution must still show that they were made with intentions of furthering

9    the goals of the conspiracy.  Statements regarding past conduct are not in furtherance of the

10   conspiracy *United States v. Jordan* 260 F.3d 930, 933 (8th Cir. 2001); *United States v. Cornett*, 195

11   F.3d 776, 783 (5th Cir. 1999)  Therefore mere narratives between co-conspirators or narrative

12   declarations of past events are not admissible as declarations in furtherance of a conspiracy. *United*

13   *States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979).[8]  In fact, the Ninth Circuit in particular has

14   strictly construed the "in furtherance of the conspiracy requirement". *United States v. Nazemian*,

15   948 F.2d 522, 529 (9th Cir. 1991),[9] Therefore, to be "in furtherance" the statements must set in

16

17   _____

     8     In *US v. Eubanks*, the defendant was charged with conspiracy to distribute heroin. The prosecution's

18   star witness, G. Baca who ultimately became a member of the conspiracy, testified at length as to

19   conversations she had with he co-conspirator husband concerning the activities of the conspiracy,

20   including future plans to pick up heroin. The court there found that the declarant's statements were

21   nthing more than a casual admission of culpability to someone he ddecided to trust, as he was not

22   trying to induce Baca to join the conspiracy and his statements did not induce Baca to join the

23   conspiracy and his statements did not assist the coconspirators in achieving their objectives.

24   9     In *US v. Nazemian*, the defendant was alleged to be involved in a conspiracy to possess with intent

25   to distribute heroin. Defendant challenged the admission of statements from a co-conspirator because

26   such statements were not made in furtherance of the conspiracy. The court agreed that the statements

27   the co-conspirator made regarding defendant's prior history of non payment for a drug transaction only

28   served the purpose of background information and did not further the main objective of the conspiracy

     (possession of heroin),even though the declarant was now requiring advance payment as a result of

motion transactions that are an integral part of the conspiracy, so as to assist the conspirators in achieving their objectives. *Eubanks*, 591 F.2d, 520. Furthermore, the focus of the inquiry of whether statements were made "in furtherance of" a conspiracy should be on the declarant's intent in making the statement, not its actual effect of advancing the goals of the conspiracy. [10] *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988).

Even statements made during the existence of a common conspiracy must still be "in furtherance of" the conspiracy under FRE 801 (d)(2)(E). Moreover, mere conversations between co-conspirators, or merely narrative declarations among them, are not made "in furtherance of" that conspiracy. *See e.g.. United States v. Layton*, 720 F.2d 548, 556-7 (9th Cir. 1983) *cert denied*, 465 U.S. 1069 (1984). [11]

---

the defendant's lack of credibility. Furthermore the court opined that although the declarant's policy of requiring advance payment was a result of the defendant's related history, the statements made explaining such policy had no connection or purpose related to the conspiracy, and were purely historical. See also *United States v. Castillo* 615 F.2d 878, 883 (9th Cir. 1980) where a statement made by a co-conspirator that the defendant and the co-conspirator were going to "kill a Mexican" was inadmissible under the co-conspirator exception to hearsay rule because there was no indication that the announcement was in furtherance of a conspiracy. The court there stated that the co-conspirator 'made nothing more than a casual admission to someone he had decided to trust.

[10] A declarant's statement made in furtherance of a criminal act...is not admissible against the defendant under the co-conspirator exception unless the defendant was associated with the declarant in a conspiracy or joint venture *having that criminal act as its objective*. *United States v. Russo*, 302 F.3d 37, 44 (2d. Cir. 2002)(*emphasis* added). "An association between the defendant and the declarant in some other venture – and in particular a general association between them in the Mafia – will not suffice. *Id. See also United States v. Bellomo*, 176 F.3d 580, 586 (2d. Cir. 1999) (recognizing the same rule).

[11] In *United States v, Gigante*, 166 F.3d 65 (2d. Cir. 1999) the district court found that recorded statements between alleged Mafia members were admissible under Rule 801(d)(2)(E) because "there is a general overriding conspiracy among all these alleged Mafia groups." *Id.* at 83. The Second

1    Finally, each out-of-court statement labeled as one made by a co-conspirator must be examined

2    pretrial and pass the rigorous tests of both *Crawford* and the Federal Rules of Evidence. This Court

3    should meticulously observe the requirements of the hearsay exception cited by the government so

4    that the government does not have the windfall of having the jury influenced by evidence proffered

5    against Mr. Slocum which, as a matter of law, they should not consider but which they cannot put

6    out of their minds. *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) Such prejudicial effects

7    will not be overcome by instructions to the jury. *Krulewitch*, 336 U.S. at 453.

8    What follows is a summary of who the defense anticipates will be the "co-conspirator

9    hearsay witnesses" and what Confrontation Clause problems are likely to exist. This summary and

10   the attached Exhibit "A" are based on the disclosures by government counsel during the January

11   3, 2007 status hearing, evidence turned over in discovery, and defense investigation.

12

13   **Murder of Richard Andreasen at Leavenworth, October 6, 1983.**

14   The government disclosed that Roach, Bentley, Harp, "Buzz" Miller, West, Criswell,

15   C.Smith, Healy, Rose and Benton will offer testimony about the Andreasen murder. The

16   government theory is that Andreasen was killed by AB members Criswell and Greschner at the

17   direction of Barry Mills. Ron Slocum is to have delivered a message from the California

18   Commission to Barry Mills, that the California Commission wanted Andreasen killed. The

19   government will not proffer a physical note or kite. The government will not proffer a witness to

20   testify that Slocum has ever admitted a role in this killing. At the time of the Andreasen killing,

21   members of the California Commission were in CDC San Quentin, (Stinson and Terflinger) and

22   CDC Folsom (Griffin).

23   Of the government witnesses, Roach, Bentley, Harp, West and Criswell claim to have

24   heard direct statements from Mills. Roach has given a statement that Greschner killed Andreasen

25   _____

26       Circuit found error, holding that "even in the context of organized crime, there is a limit to the proper

27       use of Rule 801(d)(2)(E) to admit co-conspirator testimony. The district court in each case must find

28       the existence of a specific criminal conspiracy beyond the general existence of the Mafia." *Id*. at 82

         (*emphasis* added).

1  because Slocum could not get anyone else to hit him.  Harp testified before the grand jury in 2000,

2  that Mills sent word to Harp to pass word on to others at Leavenworth to kill Andreasen.  Mills,

3  Harp, and  the others were apparently in different institutions. This is a minimum three person

4  hearsay chain.

5      "Buzz" Miller stated he was informed by "AB members" in 1983 that Andreasen was to

6  be killed.  Following the murder, Miller claims he was told by AB member John Greschner that the

7  AB federal commission ordered the murder.  Roach has testified that Mills and he discussed the

8  Andreasen killing and that Mills said that he and Slocum sent word to Leavenworth to have him hit.

9      Each statement is testimonial and  "indirect " and involves a minimum of three  people in

10  the hearsay chain.  Mr. Slocum moves to exclude the aforementioned statements under *Crawford*,

11  FRE 801(d)(2)(E) and 805.

12

13      **Thomas Lamb Murder at Marion on October 15, 1988.**

14      The government disclosed the following witnesses to the Lamb murder: Michael Burns,

15  Meyers, Roach, Bentley, Harp, G. West, S. Griffin and Al Benton.  The government theory is that

16  the California commission ordered the killing of Lamb. Slocum delivered the message to the federal

17  commission, but the government does not know how. Barry Mills ordered Cleo Roy to kill Lamb.

18  The government will not proffer a physical note or kite.  The government will not proffer a witness

19  to testify that Slocum has ever admitted a role in this killing.   Mills is alleged to have made direct

20  statements to Roach and West.  There are no direct Mills statements  made to Burns, Myers, Bentley,

21  Harp and Smith.

22      Myers told ATF agent Halualani in 1999, 2000 and 2004 that after Lamb's murder, "other

23  members of the AB" told him that the "word" was brought from the California AB to the Federal

24  AB to kill Lamb.  Myers claims he was also told by Cleo Roy that Roy helped kill Lamb.

25      West shared a similar account with Halualani during three interviews in 2004.  West also

26  states that Roy said Roy was ordered to murder Lamb by Mills.  West claims he was told this by Roy

27  in 1993, five years after Lamb's murder.   West also states that while at Marion, Mills admitted to

28  him that Mills had Lamb killed. These statements - what  someone told Mills - is hearsay and barred

1   under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of this

2   statement.

3         Bentley has testified before the grand jury that Slocum *possibly* passed the message for

4   Lamb to be killed.  Kevin Roach testified that he had *heard* that Slocum had passed the message to

5   the federal commission from the state commission.

6         Mr. Slocum  moves to exclude all statements attributed to Barry Mills through Roach and

7   West as testimonial hearsay under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum also

8   requests identification of the other members of the AB and federal commission members referred

9   to by Myers. As to the Bentley and Roach testimony, Slocum moves to determine the source of the

10  assertion. Otherwise as to both Bentley and Roach, Slocum moves to exclude as hearsay  under

11  *Crawford* and FRE 801(d)(2)(E) and 805.

12

13              **Arva Lee Ray Murder at Lompoc on August 9, 1989**.

14        The government disclosed the following inmate witnesses: Thomas  Miller, Leroy Crone,

15  Roach, Bentley, Meyers, Richard Bernard, William Kelly,  Robert Mills, Michael Wagner and Glen

16  West.  The theory of Arva Ray's murder  is that AB member Glen Filkins and AB associate Thomas

17  "Buzz" Miller strangled  Ray on orders from the AB commission.   The government will not proffer

18  a physical note or kite.  The government will not proffer a witness to testify that Slocum has ever

19  admitted a role in this killing. At the time of the killing, Mr. Slocum had been released from prison.

20  [See from March 20, 1989 through October 13, 1989]

21        Bentley testified that Mills admitted he ordered the hit and that he used Slocum to pass a

22  message regards the hit.  Leroy Crone and "Buzz" Miller were present at the time Ray was killed.

23  Robert Mills testified before a grand jury that he received a letter from Barry Mills informing him

24  that Ray is going to get hit. Kelly's statement is contained in a ATF agent Halualani report from

25  August, 2004.  Kelly  claims he is a former AB member.  Kelly claims prior to 1989 he was told by

26  other AB members that a message was received from the Federal Commission approving Ray's

27  murder.  Kelly claims he was ordered to be a lookout during an AB meeting to discuss killing Ray.

28  Following the murder, Glen Filkins told Kelly he was going to murder Ray to get into the AB.

1    Kevin Roach testified before the grand jury that Slocum asked Filkens to murder Ray via

2    Glen West at Lompoc, through Barry Mills at Marion. Roach further testified in the U.S. v. Mills trial

3    that Mills advised him that Filkens hit Ray per commission orders after being given a "green light

4    " by Slocum. Roach added that Slocum passed the word for the Ray hit from the Commission to Glen

5    West.  Michael Wagner testified in U.S. v. Mills that he was told by Filkins that the order to hit Ray

6    came from Mills through Slocum. These statements - what  someone told  Mills - are  hearsay and

7    barred under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of

8    this statement.

9

10

11

12

13    **Jeffrey Barnett Attempt Murder at Lompoc in 1990.**

14    The government disclosed the following inmate witnesses: Jeffrey Barnett, Roach, Bentley,

15    Michael Olsen, Michael Manby, Meyers, William Kelly.  The theory is that the AB ordered Barnett

16    killed for refusing to pass drugs into prison.  Roach and Bentley will  testify to direct statements from

17    Mills.   McVey and Olsen are eyewitnesses.  Manby claims to know that Gibson and Hicklin tried

18    to kill Barnett on Slocum's orders.

19    Mr. Slocum concedes there are no *Crawford*-type issues that pertain to Jeffrey Barnett,

20    McVey and Olsen - the victim and two eyewitnesses - provided their testimony does not include out-

21    of-court statements.  The defense has no notice of such statements at this time.  Mr. Slocum does  not

22    have any *Crawford*  objection to Manby's testimony, provided it does not include out-of-court

23    statements and is relevant.

24    The statements of Roach, Bentley, Myers, and Kelly are contained in ATF agent  Halualani

25    reports.  Roach and Bentley claim Mills told them he ordered the murder of Barnett and that the order

26    was passed by Slocum from the California commission.  Roach also claims defendant Gibson

27    confessed to  him that he stabbed Barnett.  Bentley also claims he was told by Steven Hicklin that

28

1 Hicklin and Gibson stabbed Barnett.  Whatever Steve Hicklin told Bentley is hearsay and barred

2 under *Crawford* and FRE 801(d)(2)(E) and 805.

3       Kelly claims in his statement that he (Kelly) told Steven Hicklin that Barnett was to be

4 killed. Bentley states that Hicklin told him that Slocum had told him to hit Barnett.  These statements

5 - what the third party told the witness - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E).

6 Kelly claims he was present when Hicklin called AB member Ron Slocum to advise him that Barnett

7 was to be killed.  That statement is barred under *Crawford* and FRE 801(d)(2(E) for the same reason.

8  Kelly claims he was ordered by "other members of the AB" to kill Barnett.  Whatever unidentified

9 third parties told a witness to do is hearsay and barred by *Crawford* and FRE 801(d)(2)(E) and 805.

10

11       **Joel Burkett Attempt Murder at Marion March 1, 1992.**

12       The government has advised the court that it intends to produce the following inmate

13 witnesses: Kevin Roach, Glen West, Eugene Bentley, and Christopher Risk.  The government theory

14 is Joel Burkett is stabbed on orders from the federal AB commission  for offending California AB

15 members and telling guards where the AB hid knives. The message is brought by David Sahakian.

16 The order is confirmed by Slocum. The government does not intend top proffer a kite or written note.

17 The government will not proffer a witness to testify that Slocum has ever admitted a role in this

18 assault.  At the time of the assault,  Slocum is out of custody. [January 10, 1992 through October 17,

19 1992]

20       As to Kevin Roach, Bentley, and Glen West, they will testify that they heard statements

21 directly from Mills. Chris Risk is an eyewitness. The statements of Roach, Bentley and Healy are

22 contained in reports by ATF Agent Halualani.  In addition, Roach testified about the Burkett stabbing

23 before a grand jury in June, 2000.  Bentley claims Mills told him he ordered Lawrence Klacker to

24 assault Burkett.   Bentley also claims Mills told him that Burkett had been assaulted by Klacker at

25 the behest of the California AB.  These statements - what  Mills has told another - is hearsay and

26 barred under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of

27 these statements.

28

1    Roach's statement to Halualani - memorialized in a one page summary from three

2    interviews from 1998 and 1999 - is that Mills told him the California AB sent orders to have Burkett

3    murdered and that the order was brought by AB member David Sahakian.  It appears Mr. Mills is

4    repeating statements from other people.  These statements are hearsay and barred by *Crawford* and

5    FRE 801(d)(2)(E) and 805. Roach also claims that AB member Klacker told him he (Klacker) was

6    ordered by Mills to kill Burkett.  Klacker also states that the hit was approved by the federal

7    commission and was verified by Slocum.  Whatever Klacker might have told Roach is hearsay and

8    barred for the same reason.

9    Absent any physical evidence, Roach's statement contains speculation - how Mills got the

10   message out - and hearsay - what Klacker told him Mills ordered Klacker to do.  *Crawford* and the

11   Rules of Evidence  forbid this type of testimony.  Slocum moves to exclude Roach's statements

12   regarding the Burkett assault on this basis.

13

14

15   **William McKinney Murder at Lompoc on December 28, 1992.**

16   The government disclosed the following inmate witnesses: Harp, Roach, Bentley, Benton,

17   William Kelly, West, Donald Kennedy, and Chris Risk.  The government theory is that because

18   McKinney was disrespectful to other AB members and was involved in excessive drug use and

19   homosexuality, AB members at Lompoc sought permission from the AB federal commission to kill

20   him.  Permission was given by the federal AB  commission via a kite sent by Slocum.  The

21   government will not proffer a kite or written note. The government will not proffer a witness to

22   testify that Slocum has ever admitted a role in this killing.  At the time of the killing Slocum was not

23   in custody [January 10, 1992 through October 17, 2002.]

24   William Kelly will testify the murder was sanctioned by the AB  federal commission.  Donald

25   Kennedy will testify he was ordered to kill McKinney by Kirk Smythe and Dallas Scott. Kennedy

26   states that Symthe told him that Symthe had spoken to Slocum who confirmed that the word came

27   from Marion to kill McKinney. Harp, Roach, and Benton claim hearing direct statements from Mills.

28   Bentley, West, Thomas "Buzz" Miller, and Chris Risk did not hear direct statements from Mills.

1   Benton's statement is contained in an undated Halualani report summarizing "numerous

2   occasions" when Halualani interviewed Benton - "1997 and 1999, and September 28, 2001." Benton

3   claims Mr. Mills and Bingham told him that they ordered the murder of McKinney and that Slocum

4   forwarded the message to the appropriate people at Lompoc. These statements - what  Mills and

5   Bingham has told another - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805.

6   Mr. Slocum objects to the introduction of these statements.

7   Roach's statement is that in 1993, he was told by AB member Kirk Smythe and AB

8   associate Donald Kennedy that they received the "green light" to murder McKinney.  Roach's

9   statement is barred by *Crawford*.  A statement by Roach repeating what Smythe and Kennedy were

10  told by an Mills is hearsay.  Mr. Slocum moves to exclude this statement.

11  Bentley's statement is similar to Roach's and is inadmissible for the same reason.  Bentley

12  claims Smythe and Kennedy told him they killed McKinney and that his murder was approved by

13  the AB commission.  Smythe also told Bentley  that he received word from Ron Slocum that Mills

14  and Bingham approved McKinney's murder.  The second statement is barred for the same reason as

15  the first - it is hearsay. For the reasons previously set forth, each link in the hearsay chain must

16  independently satisfy *Crawford* and FRE 801(d)(2)(E) and 805. Both statements fail to do so.

17  Chris Risk's statement is barred for the same reason.  Risk claims Kennedy told him he

18  murdered McKinney.  What Kennedy told Risk is hearsay.  Risk also claims that Kennedy told him

19  Kirk Smythe ordered Kennedy to kill McKinney.  What Smythe told Kennney who then told Risk

20  is double hearsay.  Both statements are barred under *Crawford* and FRE 801(d)(2)(E).

21  Glen West made a statement to Halualani on March 2004. He claims he was "ordered by the

22  AB federal commission to investigate the murder of McKinney." He claims during his investigation,

23  Kennedy told him he killed McKinney after being ordered to do so by Smythe via Slocum. These

24  statements contain multiple levels of hearsay and are barred by *Crawford* and FRE 801(d)(2)(E).

25

26  **Jimmy Lee Inman Attempted Murder at Marion in 1993.**

27  The government disclosed the following witnesses: Roach, Bentley, Jon McGinley, West,

28  Benton and Chris Risk.  The theory is that the California commission sent word to Slocum at Lompoc

that they wanted Inman killed.  Slocum then informed Mills that the California commission wanted Inman killed.  Kurt King  stabbed Inman with assistance from inmate Roger Maynard. The government will not proffer any written kite or note. The government will not proffer a witness to testify that Slocum has ever admitted a role in this assault.  At the time Inman was assaulted Slocum was out of custody [January 10, 1992 through October 17, 1992]

Benton, West, Roach, Bentley claim to have heard direct statements from Mills that the hit was ordered.  Roach claims he is aware of  conversations about Inman's fate between Mills and Sahakian, but does disclose how he learned of  them. Roach also will testify that Mills had Slocum contact the California commission to confirm that Inman was in the hat and was to be killed.  That statement appears to be hearsay and is barred by *Crawford* and FRE 801(d)(2)(E).


**Conspiracy to Murder Frank Ruopoli in June 1998.**

The government disclosed the following witnesses: Ruopoli,  West, Roach, Bentley, Bernard Healy and Chris Risk.  The theory is that Ruopoli was ordered killed for cooperating with the government against AB member John Stinson.  The government theory has Slocum passing a message to the federal AB. The government will not proffer any written note or kite. The government will not proffer a witness to testify that Slocum has ever admitted a role in this conspiracy to murder. At the time of the killing Slocum was out of custody. [January 10, 1992 through October 17, 1992]

Roach claims that Mills and Bingham told him to contact all AB members, find out where Roupoli was, and have him killed. Roach also will testify that Mills told him Slocum has passed a message from the California commission. These statements - what  Mills and Bingham has told another - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of these statements.

Harp claims that in 1986, he was told by "members of the California AB" that Roupoli  was "in the hat."  What undisclosed people told Harp is hearsay and barred under *Crawford*. This statement is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of this statement.

1    Bentley claims that while at the ADX, he was told by "other members of the AB" that

2    Roupoli was "in the hat."   Bentley's testimony is barred for the same reason as Harp's testimony.

3    Mr. Slocum moves to exclude Bentley's testimony regarding the conspiracy to murder Roupoli.

4    Richard Bernard claims that in 1985, he was told by Al Benton and "other AB members and

5    associates" that a murder contract had been placed on the life of Frank Roupoli.  That  statement is

6    barred for the same reason that applies to the Bentley and Harp statements.  Mr. Slocum  moves to

7    exclude Bernard's testimony regarding the conspiracy to murder Roupoli.

8

9

10    **Conspiracy to Murder Black Inmates at USP Lewisberg**

11    The following witnesses were disclosed by the government: Benton, Bernard, Roach,

12    Bentley, McGinley, Michael Wagner, Scott Martin, Glen West, Ray Oechsle, and Chris Risk.  The

13    theory is that AB leaders at Marion sought permission to begin a race war against black  inmates in

14    retaliation for a number of black inmate on white inmate assaults from 1996 and 1997.  Mills  and

15    Bingham are alleged to have received the request, and approved the war from the ADX.

16    That approval resulted in the death of black inmates Terry Walker (at Marion), Frank

17    Joyner, and Abdul Salaam (at Lewisburg); and the attempted murder of black inmates Titus Webster

18    and Harold Roberts (at Lewisburg).  Ron Slocum is alleged to have been the conduit between

19    Bingham and Mills at the ADX, and AB member Al Benton at Lewisburg.  Benton,  claims the day

20    after receiving the message from Slocum, he and other AB members at his direction, launched a

21    coordinated  assault  on  black  inmates  Joyner,  Salaam,  Webster,  and  Roberts.

22    Bentley is expected to state that Bingham told him that he sent a letter to Benton at USP

23    Lewisberg through Slocum.  Roach has testified that Bingham told him Bingham sent a message

24    through Slocum to Mills regard starting a war with the DC Blacks.  Bernard has testified that the

25    orders to start the war with DC Blacks went through Slocum. These statements are s hearsay and

26    barred under *Crawford* and FRE 801(d)(2)(E) and 805.  Mr. Slocum objects to the introduction of

27    these statements.

28

- 19 -

The following Exhibit "A" references the specific hearsay statements and or prior hearsay testimony which Mr. Slocum seeks to exclude under *Crawford v. Washington*, 541 U.S. 36 (2004) and Federal Rules of Evidence 801 (d)(2)(E), 403 and 805.

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 5/11/99 | Intv of L. Klacker - states hit on Burkett okay'd by Federal Commission & permission was verified by Slocum | 4053-4 054, See 4053 only | This statement - what someone told Klacker - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805, See this statement if repeated by any other goverment witness wuld be double hearsay in that Klacker is unavailable. |
| 7/7/98 | Intv of Kevin Roach - states hit on Burkett okay'd by Federal Commission & permission was verified by Slocum | 4179 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 11/02/9 9 | Intv of Eugene Bentley - states Bingham sent "hit/miss" letter through Slocum to Benton re hit on DC Blacks | 4180, 4757, 5785, 7027 | This statement - what someone told Bentley- is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - states Bingham sent "hit/miss" letter through Slocum to Benton re hit on DC Blacks | 4181-4 182, 4758, 7026 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 7/7/98 | Intv of Kevin Roach - states that through Slocum, CA Commission ordered hit of F. Ruopoli | 4559 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - states that he rec'd $ from M. Bentley & was told by G. Bentley it was for drug trafficking.  Also stated Bentley told him that Mary would contact Slocum when she needed drugs to smuggle into prison or when A. Benton requested her to. | 5118 | These statements - what someone told Roach - are hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 11/02/9 9 | Intv of R. Bernard - states that he was told Slocum was main outside contact, that Slocum passed messages from Federal to State AB & that Slocum provided drugs to be distributed to incarcerated ABs. Also told that released ABs were to contact Slocum when released. | 5181, 5255, 5279, 5734 | These statements - what someone told Bernard - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 5/11/99 | Intv of L. Klacker - states B.Mills told him that Slocum was main contact & relayed messages between Federal & State ABs.  Also states that Mills told him released ABs were given Slocum's telephone no. & address & told to contact him. | 5185 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 4/22/99 | Intv of Brian Healy - states that ABs are directed to contact Slocum or Debra Stinson when released for $$, guns & assignments, that Slocum & Stinson are main | 5250 | These statements - what  someone told Healy - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 11/02/9 9 | Intv of Eugene Bentley - States Slocum is main contact person for Federal & State ABs.  States released ABs are instructed to contact Slocum upon release for guns, money, drugs & assignments. | 5252 | These statements - what  someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 5/11/99 | Intv of L. Klacker - states B.Mills told him that Slocum was main contact & relayed messages between Federal & State ABs.  Also states that Mills told him released ABs were given Slocum's telephone no. & address & told to contact him. | 5253 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 1/28/99 | Intv of Phillip Myers - states he was told that Slocum was main outside contact, that Slocum passed messages from Federal to State AB & that Slocum provided drugs to be distributed to incarcerated ABs | 6911 | These statements - what someone told Meyers - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/21/00 | Intv of Kevin Roach - states order to hit J. Barnett was passed by Slocum from CA Commission, states Mills told him that Slocum passes messages between Federal & State Commissions.  States C. Gibson told him that Slocum told him to hit Barnett. | 6090-6 091 | These statements - what someone told Roach - are hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/17/00 | Intv of Eugene Bentley - states Hicklin told him that Slocum had told him to hit J. Barnett | 6092 | This statement - what someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 5/11/99 | Intv of L. Klacker - states that while in Control Unit at Marion, Hicklin & Gibson told him Slocum told them to hit J. Barnett | 6141 | This statement - what someone told Klacker - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/18/00 | Intv of Eugene Bentley - states he was introduced to Slocum by A. Benton & was told Slocum would be able to provide incarcerated ABs w/drugs | 6356 | This statement - what Benton told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 7/21/00 | Intv of Kevin Roach - states that J. Greschner killed R. Andreason because Slocum couldn't get anyone else to hit him | 6370 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 10/15/01 | Intv of L. Klacker - states that Mills told him he was trying to contact Mac & Sahakian re war w/DC Blacks via Slocum | 7168 | This statement - what Mills told Klacker, if repeated by anyone else, given that Klacker is deceased- is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 10/16/92 | Telephonic intv of unknown re Barnett hit - states Slocum brought the hit on Barnett into Lompoc. Also states that after Barnett was hit, Slocum danced around singing "Monster Mash" song & stated that unknown was his alibi | 54069-54070 | Solcum seeks disclosure of unknown source in order to properly lodge objection |
| 9/28/01 | Intv of Allen Benton, former federal AB Commission member - states that Mills & Bingham told him Slocum forwarded the message to the appropriate people at Lompoc to hit McKinney | 71527 | These statements - what Mills and Bingham told Benton - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 9/12/03 | Intv of Russell Hale - Said that McElhiney & Sahakian told him Slocum provided all the drugs brought into the prison. | 71537 | This statement - what someone told Hale - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 7/7/98 | Intv of Kevin Roach - states Slocum passed message to Benton re DC Black hits in Lewisburg | 78042-78043 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - states Slocum confirmed that CA Commission wanted Burkett hit | 78046 | This statement - what someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - states Bingham sent letter through Slocum to Benton re Lewisburg hits | 78050 | This statement - what Bingham told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - States Mills told him Slocum confirmed CA Commission wanted Inman hit | 78054-78055 | This statement - what Mills told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 7/7/98 | Intv of Kevin Roach - States Bingham & Mills use Slocum to pass messages to AB members & associates in and out of prison.  Also states that Federal AB members & associates are required to contact Slocum upon release. | 78057-78058 | This statement - what Mills and Bingham told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 8/1/00 | Grand Jury Transcript, Brian Healy witness - States people like Slocum help pass the word from Federal to CA ABs and vice versa that someone is transferring in that 's in the hat.  States Slocum works w/Debra Stinson to assign newly paroled members jobs. | 78452- 78489,784 67, 78482 | This statement - what  someone told Healy - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 8/12/98 | Grand Jury Transcript, Brian Healy witness - states Slocum helps confirm people are truly AB when transfering from the State to Federal system.  Names Slocum as a long standing AB from both the Federal & State system who's on the outside.  States Slocum is used to help the State Commission talk to the Federal Commission.  Also says that Debra Stinsons role is similar to that of Slocum's. | 78490- 78523,784 98-99, 78504, 78506-07 | This statement - what  someone told Healy - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 10/03/00 | Grand Jury Transcript, John McGinley witness - Names Slocum as an AB Council whose job was to take paroled members & get them involved in activities that fit them. Says he is one of the main people involved in crimes committed outside prison. Says Slocum was supposed pass message to Benton re DC Blacks hits. | 78524-78572, 78548, 78558 | This statement - what someone told McGinley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 5/26/99 | **Grand Jury Transcript, Kevin Roach witness - Identifies Slocum as a longtime AB Councilor who's the main contact outside prison for paroled members. He gives them their assignments & provides them with gunes, money, drugs, etc. He also provides drugs to brothers in the USPs. Says he's basically the coordinator of everything between incarcerated members and released members as well passing communications between the Federal & State commissions. Says Slocum has as much authority as the commission, he just has to okay what he's done through them, including ordering murders.** | **78573-78600, 78589-91** | **Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain. Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805.** |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 6/20/00 | Grand Jury Transcript, Kevin Roach witness - States Slocum asked Filkins to murder Arva Ray via Glen West at Lompoc, through Barry Mills at Marion.  Also gave Barry Mills a message to hit Frank Ruopoli.  Barry Mills had Slocum contact the Commission to confirm that Burkett and Inman were in the hat.  Slocum passed message from Bingham that AB was at war with the DC Blacks at Lewisburg.  Says Mary Bentley would order drugs from Slocum. | 78601-78635, 78606-08, 78611, 78615, 78619, 78621-23, 78929, 78633 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 12/04/01 | Illinois Grand Jury Transcript, Gene Bentley witness - Identifies Slocum as the one to contact to send messages to other members.  Says Bingham sent "hit or miss" message through Slocum re Lewisburg murders. | 79603-79626; 79603-04, 79619-20 | This statement - what  someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

- 29 -

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 7/17/01 | Grand Jury Transcript, Gene Bentley witness - States Slocum was the outside drug contact.  Says Mary Bentley would contact Slocum who would send heroin to her to smuggle into prison.  Says Slocum was main contact for passing messages between Federal & State AB.  Possibly brought message re Tommy Lamb. | 79967-79998; 79981-83, 79993 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 5/20/04 | Intv of Glen West - States Bentley said he used his wife Mary to contact Slocum to get narcotics into prison. | 80901 | This statement - what Bentley told West - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 8/31/04 | Intv of William Kelly - States he was present when Hicklin called Slocum to confirm Barnett was "in the hat". | 80909 | This statement is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 11/05/91 | Itnv of Michael Manby - States he knows that Gibson & Hicklin tried to kill Monster on Slocum's orders. | 85154-85158; 85156-58 | This statement - what  someone told Manby - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 11/14/02 | Report of Investigation, Donald Kennedy Intv - Report says that Kennedy stated Kirk Symthe told him that he had spoken to Slocum who said the word came from Marion to hit William McKinney. | 97040-97041 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 7/7/98 | Intv of Kevin Roach - states that through Slocum, CA Commission ordered hit of F. Ruopoli | 4559 | This statement - what  someone told Roach - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 11/02/99 | Intv of Gene Bentley - Bingham told him that he sent a letter to Benton at Lewisburg through Slocum. | 95246 | This statement - what Bingham told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 11/05/91 | Intv of Michael Manby - Manby said he knew that Hicklin & Gibson tried to hit Monster on Slocum's orders.  Manby said Slocum came to F-Unit at Lompoc in 1990.  Hicklin told Manby he needed to hit Monster before Slocum got there.  Slocum was mad that Monster had'nt been hit before he arrived because now any attempts could get him in trouble.  Says he was in the yard they day Monster was hit & that Slocum danced around singing the "Monster Mash" song.  Manby said that even after Slocum got out of the hole, they still worked out together. | 102004-102008; 102065-102041; 102039-41 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 5/5/95 | Intv of William Robert Kelly - Spanky called Slocum re problems with McKinney & Slocum told him to deal with it.  Later Spanky told Kelly that he was supposed to him McKinney | 102065-102067 | This statement - what Spanky told Kelly - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 6/12/98 | Intv of Kevin Roach - States that Slocum told Nyquist not to go to the meeting with the Hell's Angels & that Mills was furious over it.  States that Slocum's perceived, at least by Mills, as wanting to put distance between himself & the AB.  Says that Mills did not put a hit out on Slocum for the Hell's Angels meeting, but it won't take much to provoke him.  Bingham sent a letter through Slocum to Lewisburg re hits.  Slocum named as council level AB. | 10252 2-102682; 102580-82, 102631, 102642, 102649 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 3/15/06 | US v. Mills Trial Transcript, Day 3, Vol. 2 (Clifford Smith, witness) - Says that the California AB had sent word that Lamb was in the hat through Slocum, even though he was incarcerated at the time.  Identifies Slocum as being present when he say the report that Andreasen gave to the FBI.  Says that they sent a message through Slocum to the Federal Commission re Andreasen being a rat. | pgs. 10, 19, 23 | These statements - what  someone told Smith - are hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 3/16/06 | US v. Mills Trial Transcript, Day 4, Vol. 1 (Glen West, witness) - States that Helve sent a message to the Commission through Slocum re the McKinney hit. | pg. 33 | This statement - what someone [Helve] said to West - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 3/16/06 | US v. Mills Trial Transcript, Day 4, Vol. 2 (Glen West, witness) - Identifies Slocum as the "right hand of the Commission". States that when released Slocum's role was passing communications between the State & Federal AB & a major drug supplier. Identifies Slocum as an AB Councilor. | pg. 33 | This statement - what  someone told West - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 4/13/06 | US v. Mills Trial Transcript, Day 14, Vol. 3 (Kevin Roach, witness) - States that Greschner told him that Slocum was a liason between the Federal & State AB.  He also states that Greschner told him that Slocum & Mills told him to hit Andreasen. | pg. 40. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 4/13/06 | US v. Mills Trial Transcript, Day 14, Vol. 4 (Kevin Roach, witness) - States he discussed the hit of Andreasen w/Mills & Mills said that he & Slocum sent word to Leavenworth to have him hit. Says Mills checked with Slocum to confirm Inman was to be hit. Says that Mills set up a meeting between Nyquist & the Hell's Angels but Slocum told him not to go. States that he heard that Slocum had passed the message to the Federal Commission from the State Commission that Lamb was to be hit. | pgs. 15-16, 22, 46, 48, 54. | .Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain. Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 4/14/06 | US v. Mills Trial Transcript, Day 15, Vol. 1 (Kevin Roach, witness) - States that Bingham sent a message through Slocum to Mills re war w/DC Blacks. Identifies "Slo" as Slocum. | pgs. 34, 46, 48 | This statement - what  someone [Bingham] told Roach- is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

- 35 -

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 4/14/06 | US v. Mills Trial Transcript, Day 15, Vol. 2 (Kevin Roach, witness) - States that Mills & Slocum had Greschner hit Andreasen because Able wouldn't.  States that Filkins hit Arva Ray per commission orders after being give a "green light" by Slocum. Says Slocum passed the word for the Arva Ray hit from the Commission to "Speedy" West.  Says Mills confirmed Inman being "in the hat" through Slocum. States that Mills confirmed with Slocum that Joel Burkett was "in the hat".  Says that Mills got the information that the State AB wanted Ruopoli hit through Slocum. | pgs. 34, 46, 48 | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 4/20/06 | US v. Mills Trial Transcript, Day 18, Vol. 1 (Michael Burns, witness) - States that Slocum was in B unit at Marion on 10/15/88. Says that Slocum put Lamb in the hat and was "rocking him to sleep". | pgs. 35-36. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 4/20/06 | US v. Mills Trial Transcript, Day 18, Vol. 3 (Sidney Griffin, witness) -  Says Cleo Roy told Slocum about a kite he rec'd from Mills re hitting Lamb. Says that he stashed Slocum's knife before & after the Lamb murder.  Says that Slocum told him how the murder had been done.      (Richard Bernard, witness) - Says that he understood that Slocum relayed messages from the State to Federal system.  Says McGinley told him that Slocum relayed the message from "TD to Big Al" re Lewisburg. | pgs. 9-11, 14-16, 86, 95. | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 4/25/06 | US v. Mills Trial Transcript, Day 20, Vol. 1 (Donald Kennedy, witness) - Identifies Michelle Scarborough as Slocum's girlfriend. Says that permission was passed from the Commission for hits through Slocum who was on the outside. | pgs. 36-38, 91. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 4/26/06 | US v. Mills Trial Transcript, Day 21, Vol. 1 (Eugene Bentley, witness) - States that Mills used Slocum to pass the hit on Arva Ray. Says it came from Slocum that J. Barnett was to be hit. Says the message to him McKinney was passed through Slocum. | pgs. 36-38, 91. | This statement - what someone told Bentley- is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 4/26/06 | US v. Mills Trial Transcript, Day 21, Vol. 3 (Eugene Bentley, witness) - States that Bingham said he was going to send a "hit or miss" through Slocum to Lewisburg. | pg. 48. | This statement - what someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 4/27/06 | US v. Mills Trial Transcript, Day 22, Vol. 1 (Eugene Bentley, witness) - Says that Slocum sent the message that J. Barnett should be hit. | pgs. 38-39, 41, 43-44, 48-49. | This statement - what someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |
| 4/27/06 | US v. Mills Trial Transcript, Day 22, Vol. 2 (Eugene Bentley, witness) - Says that Bingham prepared at "hit or miss" letter to send to Slocum to then send to Barry Mills. | pg. 22. | This statement - what someone told Bentley - is hearsay and barred under *Crawford* and FRE 801(d)(2)(E) and 805 |

- 38 -

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 5/11/06 | US v. Mills Trial Transcript, Day 26, Vol. 2 (Jimmy Inman, witness) - Said he had a conversation with Greschner who told him that Slocum was kind of a go-between for the AB and that he was on the outside. | pgs. 9-10. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 5/12/06 | US v. Mills Trial Transcript, Day 27, Vol. 2 (William Kelly, witness) - Confirms testimony that he was present when Hicklin called Slocum to confirm Barnett was "in the hat".  Can't explain how Hicklin could have called Slocum in the time frame indicated since Slocum was in jail at the time.  Stated that Hicklin had no reason to make up the call to Slocum re confirming the Barnett hit.  States that he understood the permission to hit McKinney came from Slocum and that Slocum would get permission from the Commission later. | pgs. 13-18, 20-21, 26-33, 35-36, 58-59, 66, 70-71, 77. | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

| Date of State/ Test | Statement/Testimony and Circumstances Where Ronald Slocum is Named | Bates No. | Hearsay Objection |
|---|---|---|---|
| 5/16/06 | US v. Mills Trial Transcript, Day 28, Vol. 2 (Jonathan McGinley, witness) - States that Bigham was going to contact Slocum to get the word to the prisons re hitting DC Blacks.  Identifies Slocum as an AB member. | pgs. 14, 43. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 5/17/06 | US v. Mills Trial Transcript, Day 29, Vol. 1 (Jonathan McGinley, witness) - Says that Bingham had a way to communicate with Lewisburg through Slocum. | pg. 50. | This statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |
| 5/24/06 | US v. Mills Trial Transcript, Day 33, Vol. 2 (Michael Wagner, witness) - Stated that he was told by Filkins that the order to hit Ray came down from Mills through Slocum. Said he heard that Brigewater & Benton contacted Slocum to confirm message to "move on blacks" from Mills & Bingham. | pgs. 29, 123, 127. | Each statement is testimonial and "indirect " and involves multiple declarants in the hearsay chain.  Should be barred under *Crawford*, FRE 801(d)(2)(E) and 805. |

1

## Conclusion

2          For the above reasons, defendant Ronald B. Slocum asks this court for an order excluding

3    the hearsay as set out above, for the reasons above.

4

5    Dated: January 12, 2007                    Respectfully Submitted,

6

7                                              _____/s/_____

8                                              Michael R. Belter, Esq.
                                               Attorney for Defendant
9                                              Ronald Boyd Slocum

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SERVICE LIST**

2   Terry K. Flynn, Esq.
    Assistant U. S. Attorney
3   1500 United States Courthouse
    312 North Spring Street
4   Los Angeles, California  90012
    Terri.K.Flynn@usdoj.gov
5

6   Mark H. Donatelli, Esq.
    1215 Paseo De Peralta
    P. O. Box 8180
7   Santa Fe, New Mexico  87504

8   Mark Fleming, Esq.
    433 G Street, Suite 202
9   San Diego, California  92101

10  Michael V. White, Esq.
    1717 Fourth Street, Third Floor
11  Santa Monica, California  90401

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28