CR 02-938 DOC - 1/3/2007 - Volume IV



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN - 4 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE DAVID O. CARTER, JUDGE PRESIDING

4                  - - - - - - -

5    UNITED STATES OF AMERICA,        )
                                      )
6              Plaintiff,             )
                                      )
7          vs.                        ) No. CR 02-938 DOC
                                      )    Volume IV
8    RONALD BOYD SLOCUM, WAYNE        )
     BRIDGEWATER, and HENRY MICHAEL   )
9    HOUSTON,                         )
                                      )
10             Defendants.            )
                                      )
11   _____ )

**ORIGINAL**

Debbie Gale, CSR 9472

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             Motions/Status Conference

17              Santa Ana, California

18           Wednesday, January 3, 2007

20   Debbie Gale, CSR 9472, RPR
21   Federal Official Court Reporter
     United States District Court
22   411 West 4th Street, Room 1-053
     Santa Ana, California 92701
23   (714) 558-8141

DOCKETED ON CM

JAN 1 8 2007

BY _____ 199

25   AB2-2007-01-03 V4

4394

1    **APPEARANCES OF COUNSEL:**

2    On behalf of the UNITED STATES OF AMERICA:

3                    DEPARTMENT OF JUSTICE
                     OFFICE OF THE UNITED STATES ATTORNEY
4                    BY:  TERRI FLYNN
                          BRETT SAGEL
5                         Assistant United States Attorneys
                     411 W. Fourth Street
6                    Suite 8000
                     Santa Ana, California 92701
7                    (714) 338-3500

8

9    On behalf of DEFENDANT RONALD BOYD SLOCUM:

10                   LAW OFFICES OF MICHAEL R. BELTER
                     By:  MICHAEL R. BELTER (CJA)
11                        Attorney at Law
                     65 North Raymond Avenue
12                   Suite 320
                     Pasadena, California 91103
13                   (626) 796-2599

14

15   On behalf of DEFENDANT WAYNE BRIDGEWATER:

16

17                   LAW OFFICES OF MICHAEL V. WHITE
                     BY:  MICHAEL V. WHITE
18                        Attorney at Law
                     1717 Fourth Street
                     Third Floor
19                   Santa Monica, California 90401
                     (310) 576-6242
20
                     -AND-
21

22                   STEWART & HARRIS
                     BY:  WILLIAM S. HARRIS
23                        Attorney at Law
                     1499 Huntington Drive
24                   Suite 403
                     South Pasadena, California 91030
25                   (626) 441-9300

CR 02-938 DOC - 1/3/2007 - Volume IV

3

**APPEARANCES (Continued):**

On behalf of DEFENDANT HENRY MICHAEL HOUSTON:

                  LAW OFFICES OF MARK F. FLEMING
                  By:   MARK F. FLEMING
                      Attorney at Law
                  433 "G" Street
                  Suite 202
                  San Diego, California 92101
                  (619) 652-9970

                  -AND-

                  ROTHSTEIN, DONATELLI, HUGHES,
                  DAHLSTROM & SCHOENBURG & FRYE, LLP
                  BY:   MARK H. DONATELLI
                      Attorney at Law
                  P.O. BOX 8180
                  Santa Fe, New Mexico 87504
                  (505) 988-8004

CR 02-938 DOC – 1/3/2007 – Volume IV

4

1                              **I N D E X**

2    **PROCEEDINGS**                                              **PAGE**

3    Discussion re: Severance Motion                        33

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CR 02-938 DOC - 1/3/2007 - Volume IV

5

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, WEDNESDAY, JANUARY 3, 2007** |
| 2 | **Volume IV** |
| 3 | *(3:43 p.m.)* |
| 03:43:04    4 | THE COURT:  We're back on the record.  All counsel |
| 03:43:06    5 | are present.  The parties are present for both sides.  The |
| 03:43:10    6 | defendants, of course, are present. |
| 03:43:11    7 | And in looking at Count Two, beginning at page 41, |
| 03:43:16    8 | what are the agreements or disagreements? |
| 03:43:23    9 | MS. FLYNN:  On Count Two? |
| 03:43:25   10 | THE COURT:  Count Two. |
| 03:43:25   11 | MS. FLYNN:  Is that where we are? |
| 03:43:26   12 | Starting at page 42 -- |
| 03:43:28   13 | THE COURT:  Okay. |
| 03:43:29   14 | MS. FLYNN:  -- line 15, we're taking out "in |
| 03:43:34   15 | violation of Sections 16-4-8 and 16-5-1 of the Official Code |
| 03:43:41   16 | of Georgia," 'cause we took off Marzloff. |
| 03:43:46   17 | We took out, at lines 18 and 19, the reference to |
| 03:43:50   18 | "Colorado Criminal Code Sections" and those two numbers. |
| 03:44:02   19 | THE COURT:  Just a moment. |
| 03:44:02   20 | Thank you. |
| 03:44:05   21 | MS. FLYNN:  And then the line below it, "and |
| 03:44:08   22 | Missouri Revised Statutes Sections 562.041" -- |
| 03:44:11   23 | THE COURT:  I got it.  Delete it also, up to the |
| 03:44:14   24 | semicolon? |
| 03:44:15   25 | MS. FLYNN:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

6

| 03:44:16 | 1 | THE COURT: Okay. |
| 03:44:17 | 2 | MS. FLYNN: And that's it on that page. |
| 03:44:18 | 3 | THE COURT: Okay.  Page 43? |
| 03:44:20 | 4 | MS. FLYNN: Nothing. |
| 03:44:20 | 5 | THE COURT: 44? |
| 03:44:21 | 6 | MS. FLYNN: Nothing. |
| 03:44:21 | 7 | THE COURT: 45? |
| 03:44:22 | 8 | MS. FLYNN: Nothing. |
| 03:44:23 | 9 | THE COURT: 46? |
| 03:44:24 | 10 | MS. FLYNN: Nothing. |
| 03:44:25 | 11 | THE COURT: 105 -- I'm just kidding you.  Okay. |
| 03:44:28 | 12 | 46? |
| 03:44:29 | 13 | MS. FLYNN: Nothing. |
| 03:44:31 | 14 | THE COURT: Nothing? |
| 03:44:32 | 15 | MS. FLYNN: 47, nothing. |
| 03:44:33 | 16 | THE COURT: 47.  Nothing? |
| 03:44:36 | 17 | MS. FLYNN: Nothing. |
| 03:44:36 | 18 | THE COURT: 48? |
| 03:44:37 | 19 | MS. FLYNN: 37 through 39 are out. |
| 03:44:41 | 20 | THE COURT: Just a moment.  Paragraph 37, at |
| 03:44:43 | 21 | line 1, Paragraph 38 is deleted, and Paragraph 39; is that |
| 03:44:53 | 22 | correct? |
| 03:44:54 | 23 | MS. FLYNN: Yes. |
| 03:44:55 | 24 | THE COURT: Okay.  So that would be lines 1 |
| 03:44:58 | 25 | through 10. |

CR 02-938 DOC - 1/3/2007 - Volume IV

7

| | | |
|---|---|---|
| 03:45:00 | 1 | MS. FLYNN:  Yes. |
| 03:45:01 | 2 | THE COURT:  Okay.  Now, when this is retyped, |
| 03:45:03 | 3 | Mr. Harris, would it be acceptable if we just kept the same |
| 03:45:07 | 4 | format; in other words, the same spacing, so the circuit, |
| 03:45:10 | 5 | when they review this, will see what lines we referred to? |
| 03:45:15 | 6 | MR. HARRIS:  Yes. |
| 03:45:15 | 7 | THE COURT:  Okay.  So there will be a blank there. |
| 03:45:17 | 8 | So just keep the same spacing.  In other words, you're |
| 03:45:19 | 9 | keeping Paragraph 40, just leave 40 on line 11. |
| 03:45:24 | 10 | Okay.  49? |
| 03:45:26 | 11 | MS. FLYNN:  Lines 5 through 24. |
| 03:45:29 | 12 | THE COURT:  Okay.  Just a minute. |
| 03:45:49 | 13 | Thank you. |
| 03:45:49 | 14 | MS. FLYNN:  Also lines 25 through 28, all the way |
| 03:45:52 | 15 | through line 5 on the next page.  That's the Hogan murder. |
| 03:46:04 | 16 | THE COURT:  All right.  And then, of course, |
| 03:46:10 | 17 | Richard Barnes |
| 03:46:11 | 18 | MS. FLYNN:  Yes. |
| 03:46:12 | 19 | THE COURT:  Okay. |
| 03:46:12 | 20 | MS. FLYNN:  So all the rest of page 50. |
| 03:46:14 | 21 | THE COURT:  And all the rest of page 51, down to |
| 03:46:17 | 22 | line 24 -- |
| 03:46:18 | 23 | MS. FLYNN:  Yes. |
| 03:46:18 | 24 | THE COURT:  -- is that correct?  Okay. |
| 03:46:29 | 25 | Okay.  "Murder of Thomas Lamb," then, starts at |

CR 02-938 DOC - 1/3/2007 - Volume IV

8

| | | |
|---|---|---|
| 03:46:32 | 1 | Paragraph 64.  Remains? |
| 03:46:34 | 2 | MS. FLYNN:  Yes. |
| 03:46:35 | 3 | THE COURT:  Anything on page 52? |
| 03:46:37 | 4 | MS. FLYNN:  No.  Everything stays. |
| 03:46:39 | 5 | THE COURT:  Okay. |
| 03:46:46 | 6 | MS. FLYNN:  The defense wanted to keep the Stephen |
| 03:46:47 | 7 | Clark because Clifford Smith might possibly testify, and |
| 03:46:51 | 8 | that's who Clifford Smith killed. |
| 03:46:54 | 9 | THE COURT:  Okay.  53? |
| 03:46:57 | 10 | MS. FLYNN:  Nothing. |
| 03:46:59 | 11 | THE COURT:  54? |
| 03:47:00 | 12 | MS. FLYNN:  Nothing. |
| 03:47:01 | 13 | THE COURT:  55? |
| 03:47:02 | 14 | MS. FLYNN:  Lines 8 through 23. |
| 03:47:07 | 15 | THE COURT:  "Murder of Gregory Keefer" -- |
| 03:47:10 | 16 | MS. FLYNN:  Yes. |
| 03:47:10 | 17 | THE COURT:  -- is out?  Okay. |
| 03:47:22 | 18 | Okay.  55, then, you pick up at line 24, |
| 03:47:26 | 19 | "Attempted Murder of Jimmy Lee Inman." |
| 03:47:29 | 20 | MS. FLYNN:  And that stays, yes. |
| 03:47:31 | 21 | THE COURT:  Stays. |
| 03:47:31 | 22 | 56, acceptable? |
| 03:47:32 | 23 | MS. FLYNN:  Yes. |
| 03:47:33 | 24 | THE COURT:  57? |
| 03:47:34 | 25 | MS. FLYNN:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

9

| | | |
|---|---|---|
| 03:47:34 | 1 | THE COURT:  58? |
| 03:47:37 | 2 | MS. FLYNN:  Yes.  I -- oh, I'm sorry.  58, |
| 03:47:38 | 3 | starting at line 20, to the bottom is out. |
| 03:47:41 | 4 | THE COURT:  Oh, the distribution of narcotics at |
| 03:47:44 | 5 | L.A. County Jail? |
| 03:47:46 | 6 | MS. FLYNN:  Yes. |
| 03:47:47 | 7 | THE COURT:  Okay.  And then I assume that all of |
| 03:47:50 | 8 | 59's out. |
| 03:47:51 | 9 | MS. FLYNN:  Yes. |
| 03:47:52 | 10 | THE COURT:  All of 59 deleted.  Okay. |
| 03:48:01 | 11 | MS. FLYNN:  And 60 is out up until line 25. |
| 03:48:04 | 12 | THE COURT:  Thank you.  Okay.  "Murder of Arva Lee |
| 03:48:15 | 13 | Ray," then you would start on line 25, Paragraph 127, |
| 03:48:20 | 14 | page 60. |
| 03:48:21 | 15 | MS. FLYNN:  Yes. |
| 03:48:21 | 16 | THE COURT:  Page 61? |
| 03:48:23 | 17 | MS. FLYNN:  Stays. |
| 03:48:23 | 18 | THE COURT:  Page 62? |
| 03:48:24 | 19 | MS. FLYNN:  Lines 1 through 21 are out -- oh, |
| 03:48:29 | 20 | wait.  That was a question mark. |
| 03:48:31 | 21 | MR. WHITE:  No.  We want that in.  That's the |
| 03:48:33 | 22 | murder. |
| 03:48:33 | 23 | THE COURT:  That's the "Murder of Arthur Ruffo," |
| 03:48:38 | 24 | R-U-F-F-O. |
| 03:48:40 | 25 | MS. FLYNN:  That stays.  So then nothing is out on |

| | | |
|---|---|---|
| 03:48:47 | 1 | 62. |
| 03:48:48 | 2 | THE COURT:  62 remains. |
| 03:48:50 | 3 | 63? |
| 03:48:51 | 4 | MS. FLYNN:  Remains. |
| 03:48:51 | 5 | THE COURT:  64? |
| 03:48:52 | 6 | MS. FLYNN:  Remains. |
| 03:48:54 | 7 | THE COURT:  65? |
| 03:48:54 | 8 | MS. FLYNN:  Remains. |
| 03:48:55 | 9 | THE COURT:  Page 66? |
| 03:48:56 | 10 | MS. FLYNN:  Remains. |
| 03:48:58 | 11 | THE COURT:  Page 67? |
| 03:48:59 | 12 | MS. FLYNN:  Remains. |
| 03:48:59 | 13 | THE COURT:  Page 68? |
| 03:49:00 | 14 | MS. FLYNN:  Remains. |
| 03:49:01 | 15 | THE COURT:  Page 69? |
| 03:49:02 | 16 | MS. FLYNN:  Remains. |
| 03:49:04 | 17 | THE COURT:  Page 70? |
| 03:49:05 | 18 | MS. FLYNN:  Remains. |
| 03:49:06 | 19 | THE COURT:  Page 71? |
| 03:49:07 | 20 | MS. FLYNN:  Remains. |
| 03:49:08 | 21 | THE COURT:  Page 72? |
| 03:49:09 | 22 | MS. FLYNN:  Remains. |
| 03:49:10 | 23 | THE COURT:  Page 73? |
| 03:49:11 | 24 | MS. FLYNN:  Everything remains up until line 27 to |
| 03:49:15 | 25 | 28.  That's out. |

CR 02-938 DOC - 1/3/2007 - Volume IV

11

| | | |
|---|---|---|
| 03:49:18 | 1 | THE COURT:  That's Benitez-Mendez. |
| 03:49:21 | 2 | MS. FLYNN:  Yes. |
| 03:49:22 | 3 | THE COURT:  And that would go, then, over to 74, |
| 03:49:24 | 4 | line 5. |
| 03:49:25 | 5 | MS. FLYNN:  Yes. |
| 03:49:26 | 6 | THE COURT:  Okay.  Then you'd start again -- or |
| 03:49:28 | 7 | I'd start again with the reading on line 6, page 74, "Murder |
| 03:49:31 | 8 | of William McKinney." |
| 03:49:33 | 9 | 74 acceptable? |
| 03:49:36 | 10 | MS. FLYNN:  Yes. |
| 03:49:36 | 11 | THE COURT:  And page 75? |
| 03:49:37 | 12 | MS. FLYNN:  I believe David Newman stays in. |
| 03:49:43 | 13 | THE COURT:  Okay.  Is that correct? |
| 03:49:46 | 14 | MR. HARRIS:  That's correct. |
| 03:49:46 | 15 | THE COURT:  Okay.  And "Conspiracy to Murder Chris |
| 03:49:49 | 16 | Cecil"? |
| 03:49:50 | 17 | MS. FLYNN:  That's out, lines 8 to 28. |
| 03:49:53 | 18 | THE COURT:  All right.  8 to 28. |
| 03:50:01 | 19 | Okay.  The next page, page 76, line 1, of course, |
| 03:50:07 | 20 | would be excluded.  And then we're down to page 76, line 2, |
| 03:50:11 | 21 | "Murder of Charles Leger." |
| 03:50:14 | 22 | MS. FLYNN:  Out. |
| 03:50:15 | 23 | THE COURT:  So the rest of that page, then, would |
| 03:50:17 | 24 | be deleted.  All of page 76 is gone or deleted? |
| 03:50:21 | 25 | MS. FLYNN:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

12

| | | |
|---|---|---|
| 03:50:21 | 1 | THE COURT:  And over to page 77, line 1 would be |
| 03:50:25 | 2 | deleted. |
| 03:50:25 | 3 | MS. FLYNN:  Yes. |
| 03:50:26 | 4 | THE COURT:  And then we would begin again on |
| 03:50:27 | 5 | page 77, line 2, reading "Distribution of Proceeds of |
| 03:50:30 | 6 | Narcotics Trafficking." |
| 03:50:32 | 7 | MS. FLYNN:  Actually, all that's out, Your Honor. |
| 03:50:34 | 8 | THE COURT:  All that's out.  Oh, that's McElhiney, |
| 03:50:37 | 9 | isn't it? |
| 03:50:38 | 10 | MS. FLYNN:  Yes. |
| 03:50:38 | 11 | THE COURT:  Thank you.  Page 77. |
| 03:50:48 | 12 | Then page 78 would be excluded down to -- well, |
| 03:50:48 | 13 | strike that -- also "Conspiracy to Murder Walter Johnson" |
| 03:50:48 | 14 | out? |
| 03:50:48 | 15 | MS. FLYNN:  Would be out. |
| 03:50:48 | 16 | THE COURT:  So all of page 78's deleted. |
| 03:50:52 | 17 | Page 79 would be entirely deleted; is that |
| 03:50:55 | 18 | correct? |
| 03:50:55 | 19 | MS. FLYNN:  Yes. |
| 03:50:56 | 20 | THE COURT:  And page 80, down to line 10 would be |
| 03:51:03 | 21 | deleted. |
| 03:51:05 | 22 | MS. FLYNN:  Yes. |
| 03:51:05 | 23 | THE COURT:  All right.  Then we would commence |
| 03:51:07 | 24 | reading again, "Race War with Black Inmates," line 11, |
| 03:51:10 | 25 | page 80. |

CR 02-938 DOC - 1/3/2007 - Volume IV

13

| | | |
|---|---|---|
| 03:51:12 | 1 | MS. FLYNN:  That remains. |
| 03:51:13 | 2 | THE COURT:  Page 81? |
| 03:51:14 | 3 | MS. FLYNN:  Remains. |
| 03:51:15 | 4 | THE COURT:  Page 82? |
| 03:51:16 | 5 | MS. FLYNN:  Remains. |
| 03:51:17 | 6 | THE COURT:  Page 83? |
| 03:51:18 | 7 | MS. FLYNN:  Remains. |
| 03:51:19 | 8 | THE COURT:  Page 84? |
| 03:51:22 | 9 | MS. FLYNN:  Remains. |
| 03:51:23 | 10 | THE COURT:  Page 85? |
| 03:51:24 | 11 | MS. FLYNN:  Remains. |
| 03:51:25 | 12 | THE COURT:  Page 86? |
| 03:51:26 | 13 | MS. FLYNN:  Remains. |
| 03:51:27 | 14 | THE COURT:  Page 87? |
| 03:51:28 | 15 | MS. FLYNN:  It remains. |
| 03:51:29 | 16 | THE COURT:  Page 88, down to -- |
| 03:51:33 | 17 | MS. FLYNN:  305 through 308 are out. |
| 03:51:36 | 18 | THE COURT:  Okay. |
| 03:51:37 | 19 | MS. FLYNN:  'Cause that's the Walker murder. |
| 03:51:40 | 20 | THE COURT:  305 through 308 are deleted.  And then |
| 03:51:48 | 21 | the "Murder of Aaron Marsh"? |
| 03:51:52 | 22 | MS. FLYNN:  Deleted. |
| 03:51:53 | 23 | THE COURT:  Deleted.  So on page 88, we would read |
| 03:51:58 | 24 | down to line 11. |
| 03:51:59 | 25 | Page 89, "Attempted Murder of Michael Nevergall"? |

CR 02-938 DOC - 1/3/2007 - Volume IV

14

| | | |
|---|---|---|
| 03:52:03 | 1 | MS. FLYNN:  Out. |
| 03:52:03 | 2 | THE COURT:  Okay.  So page 89, line 13, "Attempted |
| 03:52:07 | 3 | Murder of Michael Nevergall," deleted. |
| 03:52:13 | 4 | Page 90, deleted from line 1 through 4, correct? |
| 03:52:17 | 5 | MS. FLYNN:  *(No audible response.)* |
| 03:52:19 | 6 | THE COURT:  Now, "Murder of Mark Kulikov." |
| 03:52:22 | 7 | MS. FLYNN:  Out. |
| 03:52:22 | 8 | THE COURT:  Okay.  So that would be |
| 03:52:24 | 9 | lines 5 through 12 deleted. |
| 03:52:28 | 10 | "Solicitation to Murder Jason Butler." |
| 03:52:31 | 11 | MS. FLYNN:  Out. |
| 03:52:32 | 12 | THE COURT:  Okay.  That would be lines 13 through |
| 03:52:34 | 13 | 22 on page 90. |
| 03:52:35 | 14 | "Use of the Mail"? |
| 03:52:37 | 15 | MS. FLYNN:  Line 23, just "Use of Mail" stays, but |
| 03:52:40 | 16 | Paragraph 323 is out. |
| 03:52:42 | 17 | THE COURT:  "Use of Mail" remains, but |
| 03:52:44 | 18 | Paragraph 323 is deleted on page 90. |
| 03:52:47 | 19 | And page 91, what? |
| 03:52:51 | 20 | MS. FLYNN:  324 is out. |
| 03:52:52 | 21 | THE COURT:  Okay. |
| 03:52:53 | 22 | MS. FLYNN:  326 is out. |
| 03:52:56 | 23 | And 329 is out. |
| 03:53:09 | 24 | THE COURT:  Okay.  Anything else on page 92? |
| 03:53:14 | 25 | MS. FLYNN:  On 92, no. |

CR 02-938 DOC - 1/3/2007 - Volume IV

15

| | | |
|---|---|---|
| 03:53:15 | 1 | THE COURT:  Okay.  So on 92, lines 1 through 4, |
| 03:53:18 | 2 | which is the continuation of Paragraph 329, from page 91, is |
| 03:53:23 | 3 | deleted? |
| 03:53:24 | 4 | MS. FLYNN:  Yes. |
| 03:53:25 | 5 | THE COURT:  Rest of 92 remains? |
| 03:53:26 | 6 | MS. FLYNN:  Yes. |
| 03:53:27 | 7 | THE COURT:  93? |
| 03:53:27 | 8 | MS. FLYNN:  Paragraphs 334 and 335 are out, and |
| 03:53:31 | 9 | 337 and 338. |
| 03:53:35 | 10 | THE COURT:  334, 335, 337 and 338, correct? |
| 03:53:45 | 11 | MS. FLYNN:  Yes. |
| 03:53:48 | 12 | THE COURT:  Page 94. |
| 03:53:50 | 13 | MS. FLYNN:  The only paragraph that remains is |
| 03:53:52 | 14 | 343. |
| 03:53:53 | 15 | THE COURT:  343 remains.  Everything else is |
| 03:53:56 | 16 | deleted? |
| 03:53:57 | 17 | MS. FLYNN:  Yes. |
| 03:53:58 | 18 | THE COURT:  Okay.  Page 95, then, the rest -- |
| 03:54:13 | 19 | lines 1 through 3, of course.  Anything else on 95? |
| 03:54:17 | 20 | MS. FLYNN:  345 is out. |
| 03:54:18 | 21 | THE COURT:  345 is deleted. |
| 03:54:20 | 22 | MS. FLYNN:  And 347. |
| 03:54:22 | 23 | THE COURT:  And 347 is deleted also.  Okay. |
| 03:54:32 | 24 | And then 348 remains? |
| 03:54:34 | 25 | MS. FLYNN:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

16

| | | |
|---|---|---|
| 03:54:35 | 1 | THE COURT:  Okay.  Page 96? |
| 03:54:36 | 2 | MS. FLYNN:  The only thing that remains is |
| 03:54:38 | 3 | Paragraph 351. |
| 03:54:40 | 4 | THE COURT:  351.  Everything else from |
| 03:54:44 | 5 | Paragraph 349 -- |
| 03:54:45 | 6 | MS. FLYNN:  Yes. |
| 03:54:45 | 7 | THE COURT:  -- through Paragraph 350 is deleted? |
| 03:54:48 | 8 | MS. FLYNN:  Yes. |
| 03:54:54 | 9 | THE COURT:  And 353 is deleted. |
| 03:54:58 | 10 | MS. FLYNN:  Yes. |
| 03:54:59 | 11 | THE COURT:  I'm sorry.  351 remains? |
| 03:55:03 | 12 | MS. FLYNN:  Yes. |
| 03:55:03 | 13 | THE COURT:  Does 352? |
| 03:55:05 | 14 | MS. FLYNN:  No. |
| 03:55:05 | 15 | THE COURT:  352 is deleted, also. |
| 03:55:07 | 16 | 353? |
| 03:55:08 | 17 | MS. FLYNN:  That is deleted. |
| 03:55:10 | 18 | THE COURT:  Deleted?  Deleted? |
| 03:55:12 | 19 | MS. FLYNN:  Yes. |
| 03:55:13 | 20 | THE COURT:  Okay.  354? |
| 03:55:15 | 21 | MS. FLYNN:  Deleted. |
| 03:55:16 | 22 | THE COURT:  Okay.  Now, on page 97, starting with |
| 03:55:24 | 23 | 355. |
| 03:55:28 | 24 | MS. FLYNN:  Deleted all the way down to 359. |
| 03:55:30 | 25 | THE COURT:  So 355, 356, 357, and Paragraph 358 |

CR 02-938 DOC - 1/3/2007 - Volume IV

17

| | | |
|---|---|---|
| 03:55:38 | 1 | are deleted? |
| 03:55:39 | 2 | MS. FLYNN:  Yes. |
| 03:55:47 | 3 | THE COURT:  Okay.  Page 98? |
| 03:55:49 | 4 | MS. FLYNN:  360 is deleted and 362 and 363. |
| 03:56:11 | 5 | THE COURT:  And 363 is deleted, also. |
| 03:56:14 | 6 | MS. FLYNN:  Yes. |
| 03:56:14 | 7 | THE COURT:  Then we're on page 99.  And we'll |
| 03:56:16 | 8 | continue reading at Paragraph 364. |
| 03:56:21 | 9 | MS. FLYNN:  364 and 366 are in question right now. |
| 03:56:24 | 10 | THE COURT:  Okay.  Question by each of those. |
| 03:56:27 | 11 | MS. FLYNN:  The defense wants them out.  I think |
| 03:56:29 | 12 | they should remain, but I may cave. |
| 03:56:34 | 13 | THE COURT:  Okay. |
| 03:56:35 | 14 | MS. FLYNN:  I just would like to think about it a |
| 03:56:37 | 15 | little while longer. |
| 03:56:38 | 16 | THE COURT:  Okay.  Paragraph 365?  Out? |
| 03:56:41 | 17 | MS. FLYNN:  Out. |
| 03:56:42 | 18 | THE COURT:  Okay.  So right now still in |
| 03:56:44 | 19 | contention is 364, 366, which I have question marks by. |
| 03:56:48 | 20 | Now, we're at 367. |
| 03:56:50 | 21 | MS. FLYNN:  Out. |
| 03:56:53 | 22 | THE COURT:  And 368? |
| 03:57:07 | 23 | MS. FLYNN:  Out. |
| 03:57:09 | 24 | THE COURT:  369? |
| 03:57:10 | 25 | MS. FLYNN:  Out. |

CR 02-938 DOC - 1/3/2007 - Volume IV

18

| | | |
|---|---|---|
| 03:57:10 | 1 | THE COURT:  Okay.  Page 100? |
| 03:57:12 | 2 | MS. FLYNN:  Only 373 remains. |
| 03:57:15 | 3 | THE COURT:  So I can take out Paragraph 370, 371. |
| 03:57:18 | 4 | I can take out 372. |
| 03:57:21 | 5 | MS. FLYNN:  Yes. |
| 03:57:26 | 6 | THE COURT:  And 373 remains on page 100 over to |
| 03:57:30 | 7 | page 101 "Use of Telephone." |
| 03:57:32 | 8 | MS. FLYNN:  That remains. |
| 03:57:33 | 9 | THE COURT:  Okay. |
| 03:57:34 | 10 | MS. FLYNN:  375 is the only paragraph stricken on |
| 03:57:36 | 11 | this page. |
| 03:57:38 | 12 | THE COURT:  Okay.  375 is deleted.  All the other |
| 03:57:41 | 13 | paragraphs remain. |
| 03:57:42 | 14 | Page 102? |
| 03:57:46 | 15 | MS. FLYNN:  379 is the only paragraph that |
| 03:57:48 | 16 | remains. |
| 03:57:49 | 17 | THE COURT:  Okay.  So, just a moment.  Let me make |
| 03:57:52 | 18 | sure.  So I'm going to read Paragraph 376, 377, 378, 379. |
| 03:58:01 | 19 | But 380-on is deleted -- |
| 03:58:05 | 20 | MS. FLYNN:  Yes. |
| 03:58:05 | 21 | THE COURT:  -- through the entirety of the page? |
| 03:58:08 | 22 | Including 384, at the bottom? |
| 03:58:17 | 23 | MS. FLYNN:  Yes. |
| 03:58:22 | 24 | THE COURT:  Page 103? |
| 03:58:25 | 25 | MS. FLYNN:  385, 386 and 387 are out. |

CR 02-938 DOC - 1/3/2007 - Volume IV

19

| | | |
|---|---|---|
| 03:58:38 | 1 | THE COURT: Okay. |
| 03:58:39 | 2 | MS. FLYNN: The rest remain. |
| 03:58:40 | 3 | THE COURT: 388, 389, 390 remain. |
| 03:58:45 | 4 | And over to page 104? |
| 03:58:58 | 5 | MS. FLYNN: 391 and 392 are out. |
| 03:59:01 | 6 | THE COURT: Okay. |
| 03:59:07 | 7 | Okay. Then the obvious. On page 105? |
| 03:59:11 | 8 | MS. FLYNN: Everything remains, but Count Three is |
| 03:59:13 | 9 | out. |
| 03:59:14 | 10 | THE COURT: Okay. Three, and Count Four and |
| 03:59:17 | 11 | Count five; is that correct? |
| 03:59:19 | 12 | MS. FLYNN: Yes. |
| 03:59:27 | 13 | THE COURT: On page 107, down to line 6 is out. |
| 03:59:34 | 14 | And then Count Six, Count Seven remain on |
| 03:59:37 | 15 | page 107; on page 108, Count Eight remains? |
| 03:59:44 | 16 | MS. FLYNN: Yes. |
| 03:59:46 | 17 | And, Your Honor, actually, if we could go back to |
| 03:59:49 | 18 | 105. |
| 03:59:50 | 19 | THE COURT: 105. |
| 03:59:51 | 20 | MR. WHITE: Yeah. |
| 03:59:54 | 21 | MS. FLYNN: 105. |
| 03:59:56 | 22 | THE COURT: 105. Thank you. |
| 04:00:00 | 23 | MS. FLYNN: Lines 17 and 18, we need to delete |
| 04:00:03 | 24 | "Georgia," "Colorado," and "Missouri." |
| 04:00:07 | 25 | THE COURT: So it would end on line 16, "murder, |

CR 02-938 DOC - 1/3/2007 - Volume IV

20

| | | |
|---|---|---|
| 04:00:09 | 1 | extortion, and robbery," and strike "in violation of the |
| 04:00:13 | 2 | laws of Georgia." |
| 04:00:16 | 3 | MS. FLYNN:  Yeah. |
| 04:00:16 | 4 | THE COURT:  It would state -- it would remain, "in |
| 04:00:19 | 5 | violation of the laws of Illinois." |
| 04:00:21 | 6 | MS. FLYNN:  Yes. |
| 04:00:22 | 7 | THE COURT:  So we'll strike "Georgia." |
| 04:00:25 | 8 | "California?" |
| 04:00:26 | 9 | MS. FLYNN:  Yes. |
| 04:00:26 | 10 | THE COURT:  "Kansas"? |
| 04:00:28 | 11 | MS. FLYNN:  Yes. |
| 04:00:30 | 12 | Strike "Colorado." |
| 04:00:31 | 13 | THE COURT:  Strike "Colorado."  Thank you. |
| 04:00:32 | 14 | And "Pennsylvania" remains? |
| 04:00:34 | 15 | MS. FLYNN:  Yes. |
| 04:00:34 | 16 | THE COURT:  And "Missouri"? |
| 04:00:35 | 17 | MS. FLYNN:  Gets stricken. |
| 04:00:36 | 18 | THE COURT:  Stricken. |
| 04:00:37 | 19 | So it will read, "Illinois, California, Kansas, |
| 04:00:41 | 20 | and" -- well, we can just leave it -- "Pennsylvania, and |
| 04:00:47 | 21 | narcotics trafficking, in violation of" -- and then continue |
| 04:00:51 | 22 | reading until line 26. |
| 04:00:55 | 23 | And then back to page 108, starting at |
| 04:01:01 | 24 | Count Eight. |
| 04:01:03 | 25 | MS. FLYNN:  That is out. |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:01:05 | 1 | THE COURT:  Is Count Eight the count you |
| 04:01:07 | 2 | dismissed? |
| 04:01:08 | 3 | MS. FLYNN:  Yes. |
| 04:01:08 | 4 | THE COURT:  I got that turned around for some |
| 04:01:10 | 5 | reason.  Count Eight.  Well, thank you.  Obviously.  Terry |
| 04:01:17 | 6 | Walker. |
| 04:01:24 | 7 | And Count Nine remains; is that correct? |
| 04:01:27 | 8 | MS. FLYNN:  Yes. |
| 04:01:28 | 9 | THE COURT:  -- on page 109? |
| 04:01:31 | 10 | On page 110, Count Ten remains, correct? |
| 04:01:35 | 11 | MS. FLYNN:  Yes. |
| 04:01:55 | 12 | THE COURT:  Now, did we read in the Mills-Bingham |
| 04:01:57 | 13 | trial the "Notice of Special Findings"?  I don't believe we |
| 04:02:01 | 14 | did in the initial indictment. |
| 04:02:03 | 15 | Do you remember, Mr. Harris? |
| 04:02:04 | 16 | MR. HARRIS:  No, we did not. |
| 04:02:05 | 17 | THE COURT:  Mr. Fleming? |
| 04:02:06 | 18 | MR. FLEMING:  We did not. |
| 04:02:07 | 19 | THE COURT:  Ms. Flynn? |
| 04:02:08 | 20 | MS. FLYNN:  We did not. |
| 04:02:09 | 21 | THE COURT:  So is it in agreement:  We're not |
| 04:02:11 | 22 | going to read that? |
| 04:02:12 | 23 | MS. FLYNN:  Yes. |
| 04:02:13 | 24 | MR. FLEMING:  Yes. |
| 04:02:14 | 25 | MR. HARRIS:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

22

| | | |
|---|---|---|
| 04:02:15 | 1 | THE COURT: Okay. Ms. Flynn, I'm wondering if you |
| 04:02:17 | 2 | would, at your convenience, word process it, submit it to |
| 04:02:22 | 3 | the Court. And then I can send it out to counsel quickly |
| 04:02:25 | 4 | after I compare it to my notes. |
| 04:02:28 | 5 | Or do you want it sent directly to counsel from |
| 04:02:31 | 6 | Ms. Flynn? |
| 04:02:32 | 7 | No. Send it through me. That way its one source. |
| 04:02:36 | 8 | I get to check it against my notes. I'll send it out to you |
| 04:02:40 | 9 | immediately. |
| 04:02:41 | 10 | MS. FLYNN: Your Honor, would you like a courtesy |
| 04:02:42 | 11 | copy or do I have to figure out how to e-file it? |
| 04:02:47 | 12 | THE COURT: Oh, courtesy copy. |
| 04:02:50 | 13 | MR. DONATELLI: Judge, can we try to get Ms. Flynn |
| 04:02:54 | 14 | to cave on 363 and 364? |
| 04:02:58 | 15 | THE COURT: How would you suggest we do that? |
| 04:02:59 | 16 | She's going to consider that overnight and let us |
| 04:03:02 | 17 | know tomorrow. |
| 04:03:03 | 18 | All right. What remains to be done? |
| 04:03:08 | 19 | Discovery? |
| 04:03:12 | 20 | MR. WHITE: I think we're good on that. |
| 04:03:15 | 21 | THE COURT: Let's find out. *Giglio*? |
| 04:03:17 | 22 | MR. DONATELLI: I sent her an e-mail with what we |
| 04:03:20 | 23 | requested, Judge. |
| 04:03:21 | 24 | THE COURT: Is that sufficient as far as you two |
| 04:03:22 | 25 | are concerned? |

CR 02-938 DOC - 1/3/2007 - Volume IV

23

| | | |
|---|---|---|
| 04:03:23 | 1 | MS. FLYNN:  Yes. |
| 04:03:23 | 2 | THE COURT:  If there's a problem, notify me |
| 04:03:25 | 3 | immediately.  I'll reconvene the court and we'll resolve it. |
| 04:03:29 | 4 | What are we missing? |
| 04:03:29 | 5 | What else do we need to do? |
| 04:03:29 | 6 | Mr. Fleming? |
| 04:03:30 | 7 | MR. FLEMING:  We have a request, Your Honor.  Our |
| 04:03:31 | 8 | motions are due next Friday, the 12th.  And we spoke with |
| 04:03:34 | 9 | Ms. Flynn about this.  And the parties have no objection to |
| 04:03:37 | 10 | changing that slightly so that we could file our motions on |
| 04:03:41 | 11 | Monday, give us the weekend to finish them up.  And |
| 04:03:44 | 12 | Ms. Flynn would have an additional three days from the date |
| 04:03:47 | 13 | her motions were originally set. |
| 04:03:50 | 14 | THE COURT:  That's acceptable. |
| 04:03:51 | 15 | Agreeable amongst all of the parties? |
| 04:03:54 | 16 | MR. WHITE:  Yes. |
| 04:03:54 | 17 | THE COURT:  What days are we hearing those |
| 04:03:56 | 18 | motions?  I know we set forth a specific date. |
| 04:04:00 | 19 | MR. HARRIS:  February 5 was the hearing, I |
| 04:04:02 | 20 | believe.  February 5. |
| 04:04:08 | 21 | THE COURT:  Just a moment.  Let me get a calendar. |
| 04:05:26 | 22 | MR. FLEMING:  We set it for the 5th at 2:00 p.m., |
| 04:05:30 | 23 | Your Honor. |
| 04:05:30 | 24 | THE COURT:  A Monday at 2:00 p.m.? |
| 04:05:33 | 25 | MR. FLEMING:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

24

| | | |
|---|---|---|
| 04:05:34 | 1 | THE COURT:  That's right.  I asked you to be |
| 04:05:36 | 2 | patient with me in case we have a large calendar that day. |
| 04:07:24 | 3 | All right.  First of all, looking at the original |
| 04:07:26 | 4 | indictment on page 120, this Notice of Special Findings |
| 04:07:30 | 5 | concerning Ronald Boyd Slocum, those would obviously be |
| 04:07:35 | 6 | irrelevant at the present time.  Agreed? |
| 04:07:42 | 7 | MR. HARRIS:  Correct. |
| 04:07:37 | 8 | THE COURT:  Not seeking the death penalty, so not |
| 04:07:46 | 9 | relevant. |
| 04:07:47 | 10 | MS. FLYNN:  Correct. |
| 04:07:49 | 11 | THE COURT:  Okay.  Now, page 127 pertains to |
| 04:08:18 | 12 | Mr. Bridgewater. |
| 04:08:21 | 13 | "As to each of Counts Six, Seven" -- and no longer |
| 04:08:28 | 14 | Eight -- "Defendant Wayne Bridgewater:  One, was more than |
| 04:08:33 | 15 | 18 years old at the time of the offense; |
| 04:08:35 | 16 | "Second, intentionally killed the victim" -- I'm |
| 04:08:38 | 17 | not reading the code sections -- |
| 04:08:40 | 18 | "Third, intentionally inflicted serious bodily |
| 04:08:43 | 19 | injury that resulted in the death of the victim; |
| 04:08:46 | 20 | "Fourth, intentionally participated in an act |
| 04:08:49 | 21 | contemplating that the life of a person would be taken or |
| 04:09:00 | 22 | intending that lethal force would be used in connection with |
| 04:09:00 | 23 | a person other than a participant in the offense, and the |
| 04:09:00 | 24 | victim died as a direct result of the act; |
| 04:09:04 | 25 | "Intentionally and specifically engaged in an act |

CR 02-938 DOC - 1/3/2007 - Volume IV

25

| | | |
|---|---|---|
| 04:09:07 | 1 | of violence, knowing that the act created a grave risk of |
| 04:09:11 | 2 | death to a person other than one of the participants in the |
| 04:09:16 | 3 | offense, such that participation in the act constituted a |
| 04:09:20 | 4 | reckless disregard for human life, and the victim died as a |
| 04:09:24 | 5 | direct result of the act; |
| 04:09:25 | 6 | "Six, committed the offense after previously being |
| 04:09:29 | 7 | convicted of a federal or state offense punishable by a term |
| 04:09:32 | 8 | of imprisonment of more than one year, involving the use or |
| 04:09:37 | 9 | attempted or threatened use of a firearm, as defined in 18 |
| 04:09:39 | 10 | USC 921, against other person under 3592(c)(2)." |
| 04:09:48 | 11 | What was that offense? |
| 04:09:49 | 12 | MS. FLYNN:  It was, Your Honor, two counts of |
| 04:09:50 | 13 | armed bank robbery in the United States District Court for |
| 04:09:55 | 14 | the Western District of Washington in Case Number CR77-382M. |
| 04:10:02 | 15 | THE COURT:  The case Number again?  CR? |
| 04:10:04 | 16 | MS. FLYNN:  77-382M. |
| 04:10:12 | 17 | THE COURT:  And a firearm was used? |
| 04:10:14 | 18 | MS. FLYNN:  Yes. |
| 04:10:16 | 19 | THE COURT:  Okay. |
| 04:10:18 | 20 | "Seven, in committing the offense, knowingly |
| 04:10:19 | 21 | created a grave risk of death to one or more persons in |
| 04:10:23 | 22 | addition to the victim of the offense under 3592(c)(5); |
| 04:10:26 | 23 | "Eight, committed the offense in an especially |
| 04:10:30 | 24 | heinous, cruel, or depraved manner in that it involved |
| 04:10:34 | 25 | serious physical abuse to the victim, 3592(c)(6).  This |

CR 02-938 DOC - 1/3/2007 - Volume IV

26

| 04:10:38 | 1 | special finding only applies to Count Six." |

04:10:38  1   special finding only applies to Count Six."

04:10:42  2          MS. FLYNN:  Your Honor, that's no longer in the

04:10:43  3   death notice that we filed on November 14th.

04:10:52  4          THE COURT:  Okay.  So number eight is stricken?

04:10:54  5          MS. FLYNN:  Yes.

04:10:58  6          THE COURT:  "Number nine, committed the offense

04:11:00  7   after substantial planning and premeditation to cause the

04:11:03  8   death of a person;

04:11:04  9          "And intentionally killed and attempted to kill

04:11:06  10  more than one person in a single criminal episode."

04:11:14  11          Okay.  On page 140, "As to Counts Six, Seven" --

04:11:44  12  and we'll strike Eight -- "Defendant Henry Michael Houston:

04:11:48  13          "One, was more than 18 years old at the time of

04:11:50  14  the offense, under 3591(a);

04:11:53  15          "Two, intentionally killed the victim, under

04:11:55  16  3591(a)(2)(A);

04:11:58  17          "Intentionally inflicted serious bodily injury

04:12:02  18  that resulted in the death of the victim, under

04:12:04  19  3591(a)(2)(B);

04:12:07  20          "Intentionally participated in an act

04:12:09  21  contemplating that the life of a person would be taken or

04:12:13  22  intending that lethal force would be used in connection with

04:12:16  23  a person other than a participant in the offense, and the

04:12:19  24  victim died as a direct result of the act, under

04:12:22  25  3591(a)(2)(C);

| | | |
|---|---|---|
| 04:12:25 | 1 | "Intentionally and specifically" -- number six -- |
| 04:12:28 | 2 | or number five -- "intentionally and specifically engaged in |
| 04:12:32 | 3 | an act of violence, knowing that the act created a grave |
| 04:12:35 | 4 | risk of death to a person other than one of the participants |
| 04:12:38 | 5 | in the offense, such that participation in the act |
| 04:12:41 | 6 | constituted a reckless disregard for human life, and the |
| 04:12:45 | 7 | victim died as a direct result of the act, under |
| 04:12:48 | 8 | 3591(a)(2)(D); |
| 04:12:52 | 9 | "Six, committed the offense after previously being |
| 04:12:54 | 10 | convicted of a federal or state offense punishable by a term |
| 04:12:58 | 11 | of imprisonment of more than one year, involving the use or |
| 04:13:01 | 12 | attempted or threatened use a firearm as defined in 18 USC |
| 04:13:04 | 13 | 921." |
| 04:13:07 | 14 | MS. FLYNN:  Your Honor, we've taken that one out. |
| 04:13:08 | 15 | THE COURT:  Number six is out? |
| 04:13:10 | 16 | MS. FLYNN:  Yes. |
| 04:13:10 | 17 | THE COURT:  Thank you. |
| 04:13:18 | 18 | "Seven, in committing the offense, knowingly |
| 04:13:21 | 19 | created a grave risk of death to one or more persons in |
| 04:13:23 | 20 | addition to the victim of the offense, under 3592(c)(5)." |
| 04:13:28 | 21 | So as to Mr. Houston, you don't have a prior |
| 04:13:30 | 22 | felony with a firearm? |
| 04:13:32 | 23 | MS. FLYNN:  No.  But -- oh, yeah, we'll get there. |
| 04:13:34 | 24 | Sorry. |
| 04:13:35 | 25 | THE COURT:  "Number Eight, committed the offense |

CR 02-938 DOC - 1/3/2007 - Volume IV

28

| 04:13:37 | 1 | in an especially heinous, cruel, or depraved manner in that |
| 04:13:40 | 2 | it involved serious physical abuse to the victim, under |
| 04:13:42 | 3 | 3592(c)(6)." |
| 04:13:45 | 4 | MS. FLYNN:  We took that one out, as well. |
| 04:13:47 | 5 | THE COURT:  Yeah.  Now, just a moment. |
| 04:14:34 | 6 | Now, this would involve -- originally, the way you |
| 04:14:38 | 7 | had this alleged, as the eighth, that would be serious |
| 04:14:42 | 8 | physical abuse as to Abdul Salaam, correct?  In other words, |
| 04:14:48 | 9 | what you were referring to on page 141, before you struck |
| 04:14:55 | 10 | the Paragraph 8, which was Count Seven, which applies to |
| 04:15:00 | 11 | Abdul Salaam, is Mr. Houston and Mr. Al Benton allegedly |
| 04:15:07 | 12 | murdering Salaam -- |
| 04:15:08 | 13 | MS. FLYNN:  Yes. |
| 04:15:08 | 14 | THE COURT:  -- is that you struck that this was |
| 04:15:10 | 15 | especially heinous, cruel or depraved. |
| 04:15:14 | 16 | MS. FLYNN:  Yes. |
| 04:15:14 | 17 | THE COURT:  But you didn't strike that as to |
| 04:15:16 | 18 | Mr. Bridgewater.  Let me go back and check. |
| 04:15:19 | 19 | MS. FLYNN:  Yes, we did. |
| 04:15:21 | 20 | THE COURT:  Yes, you did.  Okay.  Fine.  Thank |
| 04:15:23 | 21 | you. |
| 04:15:23 | 22 | "Nine, committed the offense after substantial |
| 04:15:27 | 23 | planning and premeditation to cause the death of a person |
| 04:15:29 | 24 | under 3592(c)(9); and |
| 04:15:32 | 25 | "Ten, committed the offense after previously being |

CR 02-938 DOC - 1/3/2007 - Volume IV

29

| | | |
|---|---|---|
| 04:15:35 | 1 | convicted of violating a provision of Title II -- or Title |
| 04:15:38 | 2 | III of the Comprehensive Drug Abuse Prevention and Control |
| 04:15:42 | 3 | Act, for which a sentence of five or more years may be |
| 04:15:45 | 4 | imposed" -- I understand -- under 3592(c)(12).  That's the |
| 04:15:50 | 5 | difference. |
| 04:15:50 | 6 | You're proceeding against Mr. Bridgewater with one |
| 04:16:01 | 7 | of the allegations involving use of a firearm; and here, |
| 04:16:01 | 8 | with Mr. Houston, the more than five years. |
| 04:16:01 | 9 | MS. FLYNN:  Yes, for the drug crime. |
| 04:16:03 | 10 | THE COURT:  All right. |
| 04:16:03 | 11 | MS. FLYNN:  We've also added for Mr. Bridgewater |
| 04:16:05 | 12 | in our notice, the multiple killings -- I'm sorry -- for |
| 04:16:09 | 13 | Mr. Houston, that we had for Mr. Bridgewater.  For some |
| 04:16:13 | 14 | reason, it's not on page 141, but it is in our notice. |
| 04:16:18 | 15 | THE COURT:  It's in your death notice? |
| 04:16:20 | 16 | MS. FLYNN:  Yes. |
| 04:16:20 | 17 | THE COURT:  I don't have it out on the bench with |
| 04:16:20 | 18 | me.  I'll go back and look this evening. |
| 04:16:21 | 19 | And so the multiple murders are set forth for both |
| 04:16:25 | 20 | defendants? |
| 04:16:26 | 21 | MS. FLYNN:  Yes. |
| 04:16:26 | 22 | THE COURT:  Okay.  Now, I'm assuming, 'cause I |
| 04:16:27 | 23 | don't have it in front of me, that you're probably alleging |
| 04:16:33 | 24 | nonstatutory aggravating factors. |
| 04:16:35 | 25 | MS. FLYNN:  Yes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

30

| | | |
|---|---|---|
| 04:16:36 | 1 | THE COURT:  Future dangerousness is |
| 04:16:38 | 2 | usually -- Okay. |
| 04:16:40 | 3 | MS. FLYNN:  Yes. |
| 04:16:41 | 4 | THE COURT:  Is there any reason for us to go |
| 04:16:42 | 5 | through that now?  In other words, there's no reason for us |
| 04:16:46 | 6 | to presume.  We've got months and months and months.  And |
| 04:16:50 | 7 | let's just put that off the table, if that's acceptable. |
| 04:16:54 | 8 | Mr. Donatelli? |
| 04:16:54 | 9 | MR. DONATELLI:  We're intending to file motions |
| 04:16:56 | 10 | addressing that, Judge.  There's no reason to address it |
| 04:16:59 | 11 | now. |
| 04:16:59 | 12 | THE COURT:  You can delay those motions, or you |
| 04:17:00 | 13 | can file them now.  My assumption is, though, that you're |
| 04:17:04 | 14 | going to file them now; although, we're never going to |
| 04:17:07 | 15 | address them until and if we get to phase II.  But file them |
| 04:17:12 | 16 | now.  Let the U.S. Attorney respond. |
| 04:17:15 | 17 | Do you want me to hand down rulings on some of |
| 04:17:20 | 18 | these motions as I did in -- strike that. |
| 04:17:25 | 19 | Did I delay the rulings on those?  I think I |
| 04:17:29 | 20 | handed them down right at the very beginning. |
| 04:17:32 | 21 | MR. HARRIS:  You did. |
| 04:17:32 | 22 | THE COURT:  Do you want those handed down at the |
| 04:17:34 | 23 | beginning or delay those? |
| 04:17:36 | 24 | MR. DONATELLI:  Judge, that's a practical issue. |
| 04:17:38 | 25 | One of the motions we're anticipating is a motion to strike |

CR 02-938 DOC - 1/3/2007 - Volume IV

31

| | | |
|---|---|---|
| 04:17:42 | 1 | the death penalty on disproportionality grounds, based on |
| 04:17:47 | 2 | the verdict in the prior case.  If you grant that, I can go |
| 04:17:50 | 3 | home to New Mexico.  So there's some issues that, if we |
| 04:17:55 | 4 | prevail, would affect the trial.  That's all. |
| 04:17:58 | 5 | THE COURT:  Of course, we'll resolve those.  What |
| 04:18:01 | 6 | I'm more interested in is if those motions aren't favorable |
| 04:18:06 | 7 | to the defense.  Well, I'll wait.  Let me see what's filed. |
| 04:18:11 | 8 | I'll ask you later on. |
| 04:18:13 | 9 | MR. HARRIS:  Your Honor, were you proposing to |
| 04:18:15 | 10 | read these special findings? |
| 04:18:18 | 11 | THE COURT:  No. |
| 04:18:20 | 12 | MR. HARRIS:  Okay. |
| 04:18:21 | 13 | THE COURT:  Not unless there is a request.  And |
| 04:18:23 | 14 | I'm assuming there is no request. |
| 04:18:26 | 15 | MR. HARRIS:  There is not. |
| 04:18:27 | 16 | THE COURT:  Then I'm not going to read them. |
| 04:18:29 | 17 | Okay.  Then before we meet again, are there any |
| 04:18:32 | 18 | discovery issues?  That's my greatest concern right now: |
| 04:18:36 | 19 | That I don't have the complete cooperation of CDC; that |
| 04:18:39 | 20 | there's something that's potentially, you know, going to |
| 04:18:39 | 21 | surprise us all. |
| 04:18:39 | 22 | MR. HARRIS:  I should say that I also will be |
| 04:18:42 | 23 | e-mailing Ms. Flynn a request for Mr. Bridgewater's complete |
| 04:18:46 | 24 | prison file. |
| 04:18:47 | 25 | THE COURT:  Okay. |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:18:47 | 1 | MR. HARRIS:  I haven't done that yet. |
| 04:18:49 | 2 | THE COURT:  Okay.  What else do we have to do |
| 04:18:51 | 3 | today, Mr. Harris?  Last time you wanted us to get through |
| 04:18:56 | 4 | the indictment. |
| 04:18:57 | 5 | MR. HARRIS:  I think that covers it. |
| 04:18:58 | 6 | THE COURT:  Okay.  I'll send out probably my |
| 04:19:00 | 7 | ruling either tomorrow concerning severance or |
| 04:19:04 | 8 | non-severance, or certainly by Friday. |
| 04:19:06 | 9 | MR. HARRIS:  Your Honor, we would like to address |
| 04:19:07 | 10 | the severance to make our record on that. |
| 04:19:11 | 11 | THE COURT:  Please. |
| 04:19:13 | 12 | MR. FLEMING:  Your Honor, I'll begin. |
| 04:19:14 | 13 | THE COURT:  All right.  This is Mr. Fleming on |
| 04:19:16 | 14 | behalf of Mr. Houston. |
| 04:19:22 | 15 | MR. FLEMING:  Your Honor, we'd like to clarify and |
| 04:19:27 | 16 | make sure that the record is complete.  The -- our position |
| 04:19:45 | 17 | is this:  That the defenses of Mr. Houston and |
| 04:19:48 | 18 | Mr. Bridgewater are mutually exclusive and antagonistic to |
| 04:19:53 | 19 | that of Mr. Slocum for this basic reason:  The jury cannot |
| 04:19:58 | 20 | accept both of these core positions when you look at the |
| 04:20:03 | 21 | defense that Mr. Houston and Mr. Bridgewater are going to |
| 04:20:07 | 22 | present.  That defense is reliant upon this fact:  That |
| 04:20:16 | 23 | Mr. Slocum sent in the message.  Now, Mr. Slocum's defense |
| 04:20:19 | 24 | is -- his core defense is that he never sent in the message |
| 04:20:24 | 25 | that set off the events of August the 28th.  The jury can't |

CR 02-938 DOC - 1/3/2007 - Volume IV

33

| | | |
|---|---|---|
| 04:20:30 | 1 | reconcile those two positions based on what the parties are |
| 04:20:34 | 2 | presenting. |
| 04:20:35 | 3 | Now, I think that you can always, as the |
| 04:20:36 | 4 | government points out in their response, think of a way for |
| 04:20:41 | 5 | a jury to reconcile facts, hypothetically. But it's the |
| 04:20:48 | 6 | position of the parties that creates this conflict. It's |
| 04:20:52 | 7 | not whether or not a jury could ignore the evidence that |
| 04:20:54 | 8 | they've heard and somehow come to a different result, even |
| 04:21:00 | 9 | though the facts don't support that verdict. Under the |
| 04:21:05 | 10 | *Throckmorton* case, both of these positions are core to the |
| 04:21:09 | 11 | respective defenses and are irreconcilable, which creates |
| 04:21:14 | 12 | the conflicts. |
| 04:21:15 | 13 | And with respect to the evidence that the jury is |
| 04:21:18 | 14 | going to hear -- myself and the other counsel are going to |
| 04:21:26 | 15 | serve as prosecutor's against Mr. Slocum. Mr. White, |
| 04:21:29 | 16 | Mr. Harris will also serve as third, fourth, and fifth |
| 04:21:35 | 17 | prosecutors, something that the *Tootick* court made clear, |
| 04:21:41 | 18 | that that is a serious problem when you're grappling with |
| 04:21:46 | 19 | this issue of mutually antagonistic defenses. |
| 04:21:51 | 20 | There are four events that we'd like to focus the |
| 04:21:54 | 21 | Court's attention on, which we, along with the government, |
| 04:21:56 | 22 | will be unified in presenting; that is, on the 28th of |
| 04:22:01 | 23 | August, there was a call in the morning between Mr. Slocum |
| 04:22:04 | 24 | and Mr. Benton, in which Mr -- |
| 04:22:16 | 25 | THE COURT: I'm sorry. On? |

CR 02-938 DOC - 1/3/2007 - Volume IV

34

| | | |
|---|---|---|
| 04:22:16 | 1 | MR. FLEMING:  On the morning of August the 28th, |
| 04:22:16 | 2 | at approximately 11:00 o'clock, there was a phone call that |
| 04:22:16 | 3 | came in that was recorded.  And this call took place between |
| 04:22:18 | 4 | Mr. Slocum and Mr. Benton, in which we believe -- and I |
| 04:22:21 | 5 | think the government believes as well -- that the call |
| 04:22:24 | 6 | confirmed the fact that Mr. Slocum sent in the message. |
| 04:22:31 | 7 | There was a discussion about whether -- "Is that |
| 04:22:34 | 8 | all there is?" is what Mr. Benton asked Mr. Slocum.  And |
| 04:22:38 | 9 | Mr. Slocum replied, "Yes.  Did you get the rest of it?" |
| 04:22:42 | 10 | Now, Mr. Slocum apparently is going to take a |
| 04:22:45 | 11 | contrary position and say that that did not have anything to |
| 04:22:48 | 12 | do with a message being sent in by himself to Mr. Benton |
| 04:22:52 | 13 | regarding this war with DC Blacks.  So we're, again, pitting |
| 04:22:58 | 14 | ourselves against Mr. Slocum in this case. |
| 04:23:00 | 15 | The next event occurred, I believe it was the |
| 04:23:02 | 16 | following day.  And that involved the phone call between |
| 04:23:05 | 17 | Mr. Abbamonte and Mr. Slocum, in which, once again, |
| 04:23:10 | 18 | Mr. Slocum is heard on the tape saying, "They were warned," |
| 04:23:15 | 19 | referring to the men at Lewisburg.  Again, further |
| 04:23:21 | 20 | corroboration that Mr. Slocum sent in the message. |
| 04:23:24 | 21 | Mr. Slocum is going to take a contrary position on |
| 04:23:28 | 22 | that and argue that that did not have anything to do with |
| 04:23:31 | 23 | any message sent in by him to Mr. Benton. |
| 04:23:36 | 24 | Within days of that call, there was another call |
| 04:23:39 | 25 | between Mr. Slocum and T.D. Bingham, in which -- |

CR 02-938 DOC - 1/3/2007 - Volume IV

35

| | | |
|---|---|---|
| 04:23:48 | 1 | THE COURT:  Do you know the date of that call?  I |
| 04:23:49 | 2 | think it was September 3rd, wasn't it? |
| 04:23:49 | 3 | MR. FLEMING:  I think it was.  I think that was |
| 04:23:50 | 4 | the call that took place on the 3rd.  And again, in that |
| 04:23:53 | 5 | call -- excuse me. |
| 04:24:06 | 6 | Excuse me.  That was actually a postcard that was |
| 04:24:09 | 7 | sent in, allegedly, by Mr. Slocum to T.D. Bingham, words to |
| 04:24:14 | 8 | the effect "Drama worldwide.  Shit happens."  And again, |
| 04:24:18 | 9 | that is further corroboration to our theory -- ours being |
| 04:24:23 | 10 | Mr. Houston and Mr. Bridgewater's theory -- that, indeed, |
| 04:24:27 | 11 | Mr. Slocum was sending his warning, war-call message in. |
| 04:24:34 | 12 | And once again, Mr. Slocum is going to attempt to |
| 04:24:37 | 13 | convince the jury that those facts are not true and do not |
| 04:24:41 | 14 | support that conclusion. |
| 04:24:47 | 15 | Finally, within days of that message, there was a |
| 04:24:50 | 16 | phone call intercepted and recorded between Mr. Abbamonte |
| 04:24:53 | 17 | and Mr. Slocum. |
| 04:24:56 | 18 | THE COURT:  The date?  I've heard all these phone |
| 04:24:58 | 19 | calls.  But for the record, it's a little... |
| 04:25:01 | 20 | MR. FLEMING:  Let me turn to Mr. White. |
| 04:25:03 | 21 | MR. WHITE:  Can I jump in for a second? |
| 04:25:05 | 22 | THE COURT:  Please. |
| 04:25:07 | 23 | MR. WHITE:  There was a second phone call on |
| 04:25:09 | 24 | August 29th between Mr. Slocum and Mr. Abbamonte.  During |
| 04:25:15 | 25 | the second phone call, Mr. Abbamonte gave the news to |

CR 02-938 DOC - 1/3/2007 - Volume IV

36

| | | |
|---|---|---|
| 04:25:18 | 1 | Mr. Slocum that it was not white guys that were killed at |
| 04:25:22 | 2 | Lewisburg but, rather, black guys. |
| 04:25:25 | 3 | THE COURT:  Let's go back, 'cause the record's |
| 04:25:27 | 4 | going to be confusing. |
| 04:25:29 | 5 | MR. WHITE:  Okay. |
| 04:25:30 | 6 | THE COURT:  There's an initial -- there's a phone |
| 04:25:32 | 7 | call by Abbamonte.  Abbamonte initially is spreading the |
| 04:25:36 | 8 | word there's been a bunch of people hurt.  And Abbamonte |
| 04:25:39 | 9 | thinks it's the "white guys," for want of a better word. |
| 04:25:44 | 10 | MR. WHITE:  Yes. |
| 04:25:45 | 11 | THE COURT:  And he's very concerned. |
| 04:25:46 | 12 | There's a second phone call that goes in the same |
| 04:25:49 | 13 | day, and that is that Abbamonte and Slocum get it |
| 04:25:52 | 14 | straightened out.  It was the black population that had been |
| 04:25:56 | 15 | hit.  And Abbamonte is expressing his great relief at that |
| 04:26:01 | 16 | point. |
| 04:26:01 | 17 | Now, I forget the exact exhibit numbers from the |
| 04:26:04 | 18 | first case.  That took place, I believe, on August 29th, |
| 04:26:07 | 19 | both those calls. |
| 04:26:08 | 20 | MR. WHITE:  Yes.  The first one in the morning; |
| 04:26:09 | 21 | the second one in the afternoon. |
| 04:26:10 | 22 | THE COURT:  Then on September 3rd, there's a |
| 04:26:13 | 23 | postcard that's what I call the "drama worldwide" postcard |
| 04:26:17 | 24 | that goes out.  That's a postcard from Slocum to Bingham. |
| 04:26:23 | 25 | MR. WHITE:  Right.  Where Slocum says, "I got word |

CR 02-938 DOC - 1/3/2007 - Volume IV

37

| | | |
|---|---|---|
| 04:26:25 | 1 | to that guy." |
| 04:26:26 | 2 | THE COURT:  Right. |
| 04:26:27 | 3 | MR. WHITE:  And it's our position that "word to |
| 04:26:28 | 4 | that guy" is the message that Bingham relayed through Slocum |
| 04:26:33 | 5 | to Benton. |
| 04:26:35 | 6 | THE COURT:  Okay. |
| 04:26:35 | 7 | MR. WHITE:  And in that postcard he says either |
| 04:26:39 | 8 | "shit happens" or "drama worldwide," one or the other. |
| 04:26:43 | 9 | THE COURT:  Drama worldwide. |
| 04:26:45 | 10 | MR. WHITE:  One or the other, which we believe |
| 04:26:48 | 11 | reference to the DC Blacks/AB war, which lays the foundation |
| 04:26:52 | 12 | for our self-defense. |
| 04:26:53 | 13 | THE COURT:  And that's what the expert's going to |
| 04:26:56 | 14 | testify to, also, in all likelihood. |
| 04:26:58 | 15 | MR. WHITE:  Yes. |
| 04:26:58 | 16 | And then there's another piece; and that is either |
| 04:27:00 | 17 | a postcard or a letter from Slocum to Mills, which is also |
| 04:27:05 | 18 | in that time period, where Slocum uses the language -- |
| 04:27:14 | 19 | again, it's either "drama worldwide" or "shit happens," |
| 04:27:18 | 20 | whichever he didn't use in the Slocum-Bingham communication. |
| 04:27:24 | 21 | And again, we believe that refers to the DC Black/AB war, |
| 04:27:31 | 22 | which again, is the foundation of our self-defense. |
| 04:27:53 | 23 | THE COURT:  All right. |
| 04:27:54 | 24 | MR. WHITE:  One more fact, Your Honor.  In the |
| 04:27:55 | 25 | second phone call between Abbamonte and Slocum, where |

| | | |
|---|---|---|
| 04:27:58 | 1 | Abbamonte clears up the fact that it's the black guys that |
| 04:28:01 | 2 | were killed, rather than the white guys -- Slocum, during |
| 04:28:05 | 3 | that phone call again makes reference -- this time I think |
| 04:28:09 | 4 | he uses the language, "and they were on point," referring to |
| 04:28:15 | 5 | Benton, Bridgewater, the AB guys at Lewisburg, which, again, |
| 04:28:22 | 6 | in our mind supports the foundation for our self-defense; |
| 04:28:39 | 7 | that what he's referring to is what he sent in to Al Benton |
| 04:28:39 | 8 | on August 27th, which put our guys on notice that there was |
| 04:28:41 | 9 | this war between the AB and the DC, which caused them |
| 04:28:49 | 10 | immediately, within hours, to organize this attack, |
| 04:28:56 | 11 | preemptive strike, however you want to describe and |
| 04:28:59 | 12 | characterize it, which, to us, lays the foundation for our |
| 04:29:02 | 13 | self-defense. |
| 04:29:04 | 14 | And it's because of that that we need to take the |
| 04:29:12 | 15 | position that it was Ronnie Slocum that sent in this message |
| 04:29:16 | 16 | to Al Benton.  We can't start from the place where Al Benton |
| 04:29:22 | 17 | received a piece of paper and showed it to Wayne |
| 04:29:26 | 18 | Bridgewater.  That's not good enough, because Slocum, by the |
| 04:29:29 | 19 | words that he writes and the words he speaks to Abbamonte, |
| 04:29:34 | 20 | lays the foundation, the danger element of self-defense. |
| 04:29:41 | 21 | And Mr. Donatelli would like to... |
| 04:29:44 | 22 | MR. DONATELLI:  Judge, on this issue of the |
| 04:29:47 | 23 | message, it's not the mere existence of the message, but the |
| 04:29:51 | 24 | timing is critical to the presentation of our defense.  You |
| 04:29:54 | 25 | have laid out this morning that the jury may be asked to |

CR 02-938 DOC - 1/3/2007 - Volume IV

39

| | | |
|---|---|---|
| 04:29:57 | 1 | decide whether this was a stealth killing or whether it was |
| 04:30:02 | 2 | a reaction to conditions at Lewisburg -- a situation at |
| 04:30:07 | 3 | Lewisburg. |
| 04:30:07 | 4 | We think that the timing established by the |
| 04:30:10 | 5 | 11:00 a.m. call augers in favor of the latter. We want to |
| 04:30:16 | 6 | stress that when the California -- when the information is |
| 04:30:19 | 7 | confirmed at 11:00 o'clock, it's not days and weeks that |
| 04:30:24 | 8 | this is planned out. This is minutes, within minutes of |
| 04:30:26 | 9 | confirmation. Mr. Benton solicits other people, prepares |
| 04:30:32 | 10 | weapons within minutes of 11:00 o'clock on that morning. |
| 04:30:36 | 11 | He's in action in response to that information. |
| 04:30:41 | 12 | We think that that information circumstantially |
| 04:30:44 | 13 | shows a lack of premeditation on the part of the people who |
| 04:30:47 | 14 | were involved in it. It shows that they're acting under the |
| 04:30:52 | 15 | influence of that particular message. It shows the urgency |
| 04:30:55 | 16 | of the necessity for action, the short time frame between |
| 04:31:00 | 17 | the 11:00 o'clock call. |
| 04:31:01 | 18 | It shows the rapidity with which they act. It |
| 04:31:07 | 19 | shows they believed they faced imminent death or great |
| 04:31:11 | 20 | bodily harm. They didn't sleep on it. They got into action |
| 04:31:14 | 21 | within minutes of getting that call. |
| 04:31:17 | 22 | THE COURT: Just a minute. |
| 04:31:17 | 23 | If I severed Mr. Slocum based upon that argument, |
| 04:31:21 | 24 | is it then your further argument that this evidence |
| 04:31:25 | 25 | shouldn't be presented to the jury? |

CR 02-938 DOC - 1/3/2007 - Volume IV

40

| | | |
|---|---|---|
| 04:31:26 | 1 | MR. DONATELLI: Not at all. No. Quite -- no. |
| 04:31:28 | 2 | We're saying -- absolutely. The point is that there's -- |
| 04:31:31 | 3 | that lynch pin of our defense is undercut by Mr. Slocum and |
| 04:31:37 | 4 | his attorney in the courtroom saying "that message had |
| 04:31:40 | 5 | nothing to do with what happened at Lewisburg. That was an |
| 04:31:43 | 6 | ongoing situation that there was no urgency to. We didn't |
| 04:31:48 | 7 | trigger that." And we're saying, "Yes, it did." That's why |
| 04:31:51 | 8 | we're at complete loggerheads as far as serving as |
| 04:31:55 | 9 | prosecutors against Mr. Slocum, and Mr. Slocum prosecuting |
| 04:31:59 | 10 | us. |
| 04:32:00 | 11 | Just like the government said, these guys were |
| 04:32:03 | 12 | planning this for a long time. This was a lie-in-wait |
| 04:32:06 | 13 | stealth killing. This had nothing to do with the immediate |
| 04:32:09 | 14 | apprehension of immediate death or great bodily harm. |
| 04:32:14 | 15 | That's why we think we serve as prosecutors against each |
| 04:32:18 | 16 | other. |
| 04:32:18 | 17 | This wasn't Christopher Risk or Mike Wagner, or |
| 04:32:20 | 18 | one of the knuckleheads, as Al Benton would say, who passed |
| 04:32:23 | 19 | the message. This was Ron Slocum. When Ron Slocum calls at |
| 04:32:27 | 20 | 11:00 o'clock and says what he says, that's the air raid |
| 04:32:31 | 21 | siren. That's the tornado warning going off. If you will, |
| 04:32:32 | 22 | that's the lieutenant screaming, "Incoming." And these guys |
| 04:32:36 | 23 | jump into action when Slocum says what he says in the call. |
| 04:32:40 | 24 | And that's -- that's the initiating event that's so critical |
| 04:32:45 | 25 | to us. From that point on, nobody sleeps. Everybody's into |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:32:49 | 1 | action.  And it happens in -- Benton says, "Mike -- we can't |
| 04:32:54 | 2 | leave Mike over in "B" Block.  Can't leave him over in |
| 04:32:57 | 3 | "B" Block.  We got to get him out of there."  And he comes |
| 04:33:01 | 4 | over to "A" Block. |
| 04:33:02 | 5 | And I think that when you look, from our |
| 04:33:07 | 6 | perspective with Mr. Houston -- just to briefly go through |
| 04:33:11 | 7 | the prejudice to him -- he's not a member at that point. |
| 04:33:15 | 8 | He's an associate.  And he's perceived to be aligned with |
| 04:33:19 | 9 | these people.  He's in danger.  But the fact of the matter |
| 04:33:21 | 10 | is, Judge, that at that point he has no violence in his |
| 04:33:24 | 11 | record. |
| 04:33:25 | 12 | The government alleges a pattern of violence.  He |
| 04:33:27 | 13 | wasn't involved.  He has no misconduct -- institutional in |
| 04:33:32 | 14 | state or federal custody -- involving violence.  Now, the |
| 04:33:35 | 15 | '97 incident is the only violence he's involved in.  In the |
| 04:33:39 | 16 | nine years after that, at ADX, he has a perfectly clean |
| 04:33:42 | 17 | record.  He's assessed by the Bureau of Prisons' |
| 04:33:44 | 18 | psychologist some 40 times as presenting a low risk to other |
| 04:33:50 | 19 | prisoners and to staff. |
| 04:33:51 | 20 | So someone with that background -- with that kind |
| 04:33:53 | 21 | of information that may come in with Mr. Slocum, I think |
| 04:33:58 | 22 | severely prejudices him in combination of undercutting the |
| 04:34:03 | 23 | defense that he has, and obviously, is indicating that this |
| 04:34:05 | 24 | was done quickly, without substantial planning, as most |
| 04:34:10 | 25 | murders are.  And it's because of that 11:00 o'clock call |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:34:13 | 1 | that he had to act to get out of "B" Block, come over, as |
| 04:34:16 | 2 | Benton requested him to -- to protect themselves. |
| 04:34:26 | 3 | Whether it was a reasonably or unreasonably -- |
| 04:34:26 | 4 | which would support a voluntary instruction under |
| 04:34:26 | 5 | Pennsylvania law -- that's for the jury to sort out after |
| 04:34:29 | 6 | they look at this time frame from Mr. Slocum's call. |
| 04:34:34 | 7 | THE COURT:  Mr. Fleming? |
| 04:34:36 | 8 | MR. FLEMING:  Your Honor, the jury is going to be |
| 04:34:38 | 9 | looking at the defense at some point and throw up their |
| 04:34:41 | 10 | hands and say, "They're all over the place.  If we believe |
| 04:34:45 | 11 | these attorneys, then we have to disbelieve Mr. Slocum's |
| 04:34:50 | 12 | attorney."  Okay.  It's that simple.  We can't reconcile |
| 04:34:53 | 13 | these two positions. |
| 04:34:55 | 14 | And the Ninth Circuit addresses this in a number |
| 04:34:57 | 15 | of the cases cited in our briefs.  And they said what |
| 04:35:00 | 16 | happens, the result of that, is the only unified |
| 04:35:04 | 17 | presentation is that which is given by the government.  And |
| 04:35:08 | 18 | the result of that is that the jury reconciles the |
| 04:35:11 | 19 | inconsistent defenses by simply convicting all of the |
| 04:35:15 | 20 | defendants. |
| 04:35:17 | 21 | The only unified consistent theme, theory, set of |
| 04:35:23 | 22 | facts that they will hear will be from the government.  We |
| 04:35:27 | 23 | are going to be pointing guns at each other.  And by the end |
| 04:35:31 | 24 | of the case, we're going to lose this jury.  That is a fear |
| 04:35:36 | 25 | that each and every one of us strongly believes. |

CR 02-938 DOC - 1/3/2007 - Volume IV

43

| | | |
|---|---|---|
| 04:35:40 | 1 | And we're put in an extremely difficult position |
| 04:35:43 | 2 | because, having to represent Mr. Houston and having to |
| 04:35:47 | 3 | represent Mr. Bridgewater, we have to attack Mr. Slocum.  We |
| 04:35:52 | 4 | don't want to do that.  And we don't need to do that.  If we |
| 04:35:55 | 5 | had a separate trial, there's no need to do that.  In a |
| 04:35:58 | 6 | joint trial, Mr. Slocum needs to present his case, which is |
| 04:36:01 | 7 | at odds with ours.  And that core point of contention is why |
| 04:36:09 | 8 | we need a severance in this matter. |
| 04:36:11 | 9 | And if we're granted a severance, we're prepared |
| 04:36:16 | 10 | to go before Mr. Slocum.  We're happy to go after |
| 04:36:19 | 11 | Mr. Slocum.  We believe that the case against |
| 04:36:22 | 12 | Mr. Bridgewater and Mr. Houston will be dramatically |
| 04:36:27 | 13 | shortened in a separate trial, and at the end of the day, |
| 04:36:30 | 14 | may, in fact, save judicial resources. |
| 04:36:33 | 15 | But really, the reason for the severance is this |
| 04:36:38 | 16 | absolutely irreconcilable set of facts that we are |
| 04:36:42 | 17 | presenting. |
| 04:38:14 | 18 | THE COURT:  All right. |
| 04:38:15 | 19 | Ms. Flynn -- oh, I'm sorry.  Mr. Belter, did you |
| 04:38:19 | 20 | have something you wanted to add? |
| 04:38:24 | 21 | MR. BELTER:  Could I have 30 seconds? |
| 04:38:27 | 22 | THE COURT:  Certainly. |
| 04:38:31 | 23 | MR. BELTER:  Your Honor, I sat through some of |
| 04:38:35 | 24 | Mr. Benton's testimony.  I read his transcript from the |
| 04:38:39 | 25 | Mills trial, and I'm aware of all the intercepted telephone |

CR 02-938 DOC - 1/3/2007 - Volume IV

44

| 04:38:42 | 1 | conversations and intercepted correspondence. |
| 04:38:50 | 2 | The first is, there's been reference that |
| 04:38:52 | 3 | Mr. Slocum called Mr. Benton.  And that's not what happened. |
| 04:38:55 | 4 | Mr. Benton called Mr. Slocum on the 28th of August '97.  And |
| 04:39:01 | 5 | Mr. Benton's testimony is that, in essence, Mr. Slocum |
| 04:39:05 | 6 | didn't seem to know what was going on, in either a narrow |
| 04:39:09 | 7 | sense or in a broader sense, in the institutions, as well as |
| 04:39:17 | 8 | what was happening in Lewisburg, and did not seem to -- or |
| 04:39:20 | 9 | did not, in Mr. Benton's opinion and his testimony, have any |
| 04:39:26 | 10 | knowledge of the contents of a letter. |
| 04:39:29 | 11 | THE COURT:  Just a moment.  You said Mr. Slocum |
| 04:39:31 | 12 | called Mr. Benton? |
| 04:39:33 | 13 | MR. BELTER:  No.  I think there's been reference |
| 04:39:35 | 14 | by other counsel that Mr. Slocum called Mr. Benton.  But, in |
| 04:39:39 | 15 | fact, Benton called Slocum. |
| 04:39:45 | 16 | THE COURT:  That's correct.  Benton did call |
| 04:39:47 | 17 | Slocum. |
| 04:39:48 | 18 | MR. BELTER:  That's correct. |
| 04:39:48 | 19 | THE COURT:  That's my memory also. |
| 04:39:50 | 20 | MR. BELTER:  Yes. |
| 04:39:50 | 21 | And from Mr. Benton's testimony, Mr. Benton -- he |
| 04:39:55 | 22 | testified in the Mills trial that Slocum did not have an |
| 04:39:59 | 23 | appreciation of either the contents of any kind of a |
| 04:40:02 | 24 | hit-or-miss or any kind of a note, and did not have any |
| 04:40:06 | 25 | further -- either appreciation or knowledge of what was |

CR 02-938 DOC - 1/3/2007 - Volume IV

45

| | | |
|---|---|---|
| 04:40:09 | 1 | going on in other institutions throughout the BOP. |
| 04:40:16 | 2 | And therefore, Your Honor, there is no -- from our |
| 04:40:20 | 3 | perspective, there is no physical correspondence that |
| 04:40:23 | 4 | anybody has intercepted or has possession of that, in |
| 04:40:26 | 5 | essence, comes back to Mr. Slocum and the actual note -- |
| 04:40:30 | 6 | this hit-and-miss note.  And Mr. Benton's testimony is that |
| 04:40:34 | 7 | Mr. Slocum is not aware of what's going on. |
| 04:41:04 | 8 | THE COURT:  Let me interject that while Mr. Benton |
| 04:41:10 | 9 | testified to that, that's the same conversation in which |
| 04:41:22 | 10 | Slocum says that there's only one message.  In other words, |
| 04:41:26 | 11 | whatever that message is, there's just one -- because Benton |
| 04:41:30 | 12 | is checking to make certain that this hasn't been called |
| 04:41:35 | 13 | off. |
| 04:41:38 | 14 | MR. BELTER:  Well, Benton is certainly calling to |
| 04:41:40 | 15 | try to find out what's going on.  And his testimony -- |
| 04:41:42 | 16 | Benton's testimony is he'd been attempting to try to find |
| 04:41:45 | 17 | out what's going on, on prior occasions. |
| 04:41:49 | 18 | THE COURT:  Right. |
| 04:41:50 | 19 | MR. BELTER:  The calls from Mr. Abbamonte to |
| 04:41:54 | 20 | Mr. Slocum on the 29th -- there's two calls there.  One is |
| 04:42:00 | 21 | where Mr. Abbamonte is informing Mr. Slocum that some |
| 04:42:05 | 22 | violence has occurred over at Lewisburg, from what he knows. |
| 04:42:09 | 23 | Now, Mr. Abbamonte's over at Allenwood, down the street. |
| 04:42:13 | 24 | He's not in Lewisburg.  So he's getting it secondhand.  So |
| 04:42:16 | 25 | he's passing on information to Mr. Slocum. |

CR 02-938 DOC - 1/3/2007 - Volume IV

46

| 04:42:19 | 1 | There's -- later in the day, much later in the |
| 04:42:20 | 2 | afternoon, there's a second call from Abbamonte to Slocum |
| 04:42:23 | 3 | where he advises that, in fact, white inmates have not been |
| 04:42:28 | 4 | injured or killed but, in fact, black inmates have been |
| 04:42:31 | 5 | killed. |
| 04:42:41 | 6 | What's interesting -- I think what is significant |
| 04:42:41 | 7 | is that, in between those two calls, Mr. Slocum has written |
| 04:42:41 | 8 | correspondence to Al Benton inquiring as to his status:  Did |
| 04:42:45 | 9 | he get hurt.  And I think that that correspondence, you need |
| 04:42:51 | 10 | to consider that in context of the phone call or the pretext |
| 04:42:55 | 11 | call of September 3rd, because they appear to be talking |
| 04:43:01 | 12 | about two separate things. |
| 04:43:02 | 13 | Mr. Benton is clearly making a pretext call.  But |
| 04:43:06 | 14 | Mr. Slocum is talking as if they're referring to this |
| 04:43:10 | 15 | correspondence that he sent in after the first Abbamonte |
| 04:43:14 | 16 | phone call.  He's making inquiry of whether or not |
| 04:43:18 | 17 | Mr. Benton is safe or he's been injured. |
| 04:43:23 | 18 | The bottom line, Your Honor -- |
| 04:43:25 | 19 | THE COURT:  Let me retrace that.  I didn't |
| 04:43:27 | 20 | understand something. |
| 04:43:29 | 21 | That correspondence by Mr. Slocum, between the |
| 04:43:34 | 22 | first and second phone call that you referred to, didn't |
| 04:43:38 | 23 | reach Mr. Abbamonte. |
| 04:43:42 | 24 | MR. BELTER:  No.  It went to Mr. Benton. |
| 04:43:44 | 25 | THE COURT:  It didn't reach Mr. Benton. |

CR 02-938 DOC - 1/3/2007 - Volume IV

47

| | | |
|---|---|---|
| 04:43:46 | 1 | MR. BELTER:  It did, Your Honor. |
| 04:43:47 | 2 | THE COURT:  How did that correspondence reach him? |
| 04:43:50 | 3 | MR. BELTER:  Well, Your Honor, Mr. Benton is |
| 04:43:52 | 4 | making the call on the 3rd of September. |
| 04:43:57 | 5 | THE COURT:  Well, just a moment.  I'm confused |
| 04:44:06 | 6 | about what you said. |
| 04:44:08 | 7 | It's not the first and second phone call on |
| 04:44:11 | 8 | August 29th you're referencing.  It's August 29th to |
| 04:44:16 | 9 | September 3rd? |
| 04:44:18 | 10 | MR. BELTER:  Correct. |
| 04:44:19 | 11 | THE COURT:  Okay.  It sounded like you had just |
| 04:44:21 | 12 | argued to me that, between the first phone call on |
| 04:44:24 | 13 | August 29th and the second phone call on August 29th, that |
| 04:44:28 | 14 | the correspondence somehow got from Allenburg -- |
| 04:44:32 | 15 | MR. BELTER:  No. |
| 04:44:32 | 16 | THE COURT:  -- or Allenwood to Lewisburg. |
| 04:44:35 | 17 | MR. BELTER:  I misspoke. |
| 04:44:37 | 18 | THE COURT:  What you really mean is that on |
| 04:44:39 | 19 | August 29th, between the first phone call and the second |
| 04:44:42 | 20 | phone call, he enters into some correspondence and sends it |
| 04:44:48 | 21 | out. |
| 04:44:49 | 22 | MR. BELTER:  Yes. |
| 04:44:49 | 23 | THE COURT:  And then he gets the second phone |
| 04:44:52 | 24 | call, but the correspondence has already left. |
| 04:44:54 | 25 | MR. BELTER:  Correct. |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:44:55 | 1 | THE COURT:  And then by September 3rd -- |
| 04:44:57 | 2 | MR. BELTER:  Now, he's talking with Mr. Benton. |
| 04:44:59 | 3 | THE COURT:  Thank you. |
| 04:44:59 | 4 | MR. BELTER:  Your Honor, I think that that -- the |
| 04:45:00 | 5 | contact of Abbamonte to Mr. Slocum, when that's considered, |
| 04:45:05 | 6 | it puts the subsequent correspondences to Bingham and Mills |
| 04:45:13 | 7 | into much different light or context, because he's writing |
| 04:45:16 | 8 | off correspondence where he now is aware that there's been |
| 04:45:24 | 9 | this violence at Lewisburg.  In other words, it's being -- |
| 04:45:31 | 10 | one view is it's a confirmation that he's followed through |
| 04:45:35 | 11 | with what was expected of him, and another is that he's |
| 04:45:39 | 12 | reporting back that this has occurred at Lewisburg. |
| 04:45:44 | 13 | THE COURT:  Okay.  We may come back to that in |
| 04:45:49 | 14 | just a moment. |
| 04:45:51 | 15 | Anything else by any counsel before I turn to |
| 04:45:53 | 16 | Ms. Flynn? |
| 04:45:55 | 17 | Okay.  Ms. Flynn. |
| 04:45:57 | 18 | MS. FLYNN:  Your Honor, I think what's happening |
| 04:45:59 | 19 | here is there are inconsistent defenses here.  There's no |
| 04:46:03 | 20 | question. |
| 04:46:03 | 21 | THE COURT:  Sure. |
| 04:46:04 | 22 | MS. FLYNN:  But I don't think it rises to the |
| 04:46:06 | 23 | level of a severance.  What I'm hearing at least |
| 04:46:08 | 24 | Bridgewater's and Houston's counsel argue is, well, they are |
| 04:46:12 | 25 | vigorously going to blame a co-defendant.  So, because |

CR 02-938 DOC - 1/3/2007 - Volume IV

49

| | | |
|---|---|---|
| 04:46:15 | 1 | they're vigorously going to blame the co-defendant, then |
| 04:46:18 | 2 | that means they get a severance.  But case law says, even |
| 04:46:22 | 3 | when one defendant blames another co-defendant, that does |
| 04:46:25 | 4 | not warrant a severance.  That happens all the time. |
| 04:46:28 | 5 | This is not the case of Tootick, which the defense |
| 04:46:32 | 6 | relies on, and I cite that in my papers -- that there was |
| 04:46:36 | 7 | literally only two people present at the scene of the crime, |
| 04:46:40 | 8 | and each defendant pointed at the other one.  That's not |
| 04:46:45 | 9 | necessarily the case here.  The jury here can accept or |
| 04:46:48 | 10 | reject one of the defenses.  And by accepting one, doesn't |
| 04:46:51 | 11 | mean they have to acquit or convict the other. |
| 04:46:54 | 12 | They can easily find that these men, Bridgewater |
| 04:46:58 | 13 | and Houston, committed self-defense, but Slocum had nothing |
| 04:47:02 | 14 | to do with the message; that it was in self-defense; there |
| 04:47:06 | 15 | was this message that came in, but they don't believe the |
| 04:47:09 | 16 | government's theory that Slocum was the one who actually |
| 04:47:13 | 17 | passed it in.  And they can acquit Slocum based on that.  Or |
| 04:47:16 | 18 | they can convict Slocum, and then acquit Bridgewater and |
| 04:47:20 | 19 | Houston and still find that they did act in self-defense, |
| 04:47:23 | 20 | even if he did pass a message in. |
| 04:47:27 | 21 | So I don't think it rises to what it needs to be. |
| 04:47:30 | 22 | It's similar to the case of *Throckmorton*, which is talked |
| 04:47:35 | 23 | about in my papers, which, in that case, the defendants did |
| 04:47:38 | 24 | blame each other.  It was a case where, I believe, one |
| 04:47:41 | 25 | defendant was claiming he had nothing to do with it, there |

CR 02-938 DOC - 1/3/2007 - Volume IV

50

| 04:47:44 | 1 | was no conspiracy.  And another defendant was claiming, "Oh, |
| 04:47:47 | 2 | yes, there was a conspiracy, but I was a DEA informant." |
| 04:47:50 | 3 | And so that defendant was admitting the existence of the |
| 04:47:54 | 4 | conspiracy, which is similar to what is going on here.  Two |
| 04:47:58 | 5 | defendants are admitting this message; one is claiming it's |
| 04:48:01 | 6 | not there. |
| 04:48:01 | 7 | I just think if you look at the case law, it |
| 04:48:03 | 8 | doesn't -- just because one defendant blames another, |
| 04:48:05 | 9 | doesn't warrant a severance.  Just because it's |
| 04:48:10 | 10 | inconsistent, doesn't warrant a severance. |
| 04:48:13 | 11 | And what I hear these defendants arguing is, well, |
| 04:48:15 | 12 | they're not just going to blame each other; they're going to |
| 04:48:19 | 13 | vigorously blame each other.  They're really going to hammer |
| 04:48:23 | 14 | it home, and that's not fair, so a severance is warranted. |
| 04:48:26 | 15 | But that's, frankly, just not the law. |
| 04:48:37 | 16 | I don't think these are mutually antagonistic such |
| 04:48:37 | 17 | that jury instructions couldn't cure anything.  I think all |
| 04:48:37 | 18 | three defendants can get a fair trial if tried together. |
| 04:48:39 | 19 | They will each interpret letters differently, as was seen by |
| 04:48:43 | 20 | the discussion had here.  That doesn't mean it's mutually |
| 04:48:46 | 21 | inconsistent.  I think that -- well, it doesn't mean it's |
| 04:48:49 | 22 | antagonistic such to warrant a severance.  They're taking |
| 04:48:54 | 23 | different positions, which happens a lot in multi-defendant |
| 04:48:57 | 24 | trials. |
| 04:48:58 | 25 | Additionally, I just want to address, briefly, the |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 04:49:01 | 1 | judicial economy point that Mr. Fleming raised.  I do not |
| 04:49:04 | 2 | believe that this is going to, in any way, create judicial |
| 04:49:08 | 3 | economy.  I think it's going to create two, similar length |
| 04:49:14 | 4 | trials. |
| 04:49:15 | 5 | As I put forth several times, Lewisburg, in my |
| 04:49:19 | 6 | opinion, only makes sense in the context of the AB as an |
| 04:49:23 | 7 | enterprise. |
| 04:49:25 | 8 | THE COURT:  You said Lewisburg only makes sense |
| 04:49:25 | 9 | in -- |
| 04:49:25 | 10 | MS. FLYNN:  -- in the context of the AB as an |
| 04:49:25 | 11 | enterprise. |
| 04:49:25 | 12 | And once the jury understands the Aryan |
| 04:49:28 | 13 | Brotherhood -- what it stands for, how it operates -- then |
| 04:49:32 | 14 | it makes sense.  If not, it's a prison killing, and it's not |
| 04:49:36 | 15 | a VICAR killing.  And that does not rise to the level of the |
| 04:49:40 | 16 | charges against these three men.  So to do that, the |
| 04:49:43 | 17 | government has to go back and explain the Aryan Brotherhood: |
| 04:49:46 | 18 | How it operates, the roles of these men in the Aryan |
| 04:49:50 | 19 | Brotherhood. |
| 04:49:50 | 20 | And even if just Mr. Bridgewater and Mr. Houston |
| 04:49:54 | 21 | are at trial, the government's going to have to go back and |
| 04:49:57 | 22 | lay almost the identical foundation it's going to have to |
| 04:50:00 | 23 | lay for Mr. Slocum.  And then if the government were then |
| 04:50:04 | 24 | forced to then try Mr. Slocum, it's going to be the exact |
| 04:50:08 | 25 | same parade of witnesses that will be coming in, in the |

CR 02-938 DOC – 1/3/2007 – Volume IV

04:50:12  1    exact same format, to prove up the exact same charges.  So,

04:50:16  2    if anything, I think it creates waste.  It gives the defense

04:50:21  3    attorneys another shot at the witnesses, which is already a

04:50:24  4    problem in this case that has been severed several times

04:50:27  5    because of the multi-defendants tried together and with the

04:50:31  6    security involved.

04:50:32  7            And with that, I just don't think the defenses are

04:50:35  8    antagonistic enough to warrant a severance.

04:50:38  9            THE COURT:  I'm going to go back to one point you

04:50:41  10   made and ask you how can instructions cure the problem?

04:50:46  11           In other words, what instruction would the Court

04:50:48  12   give that cures the problem being raised from the defense's

04:50:52  13   perspective under Tootick?

04:50:55  14           That's the second time I've heard that argument.

04:50:57  15   And I was a little baffled by what limiting instruction a

04:51:01  16   Court would give.  Aren't we simply struck with the fact

04:51:05  17   that -- I may agree with you.  I don't know yet -- but that

04:51:09  18   antagonistic defenses really don't have a cure in special

04:51:12  19   instructions, do they?

04:51:14  20           MS. FLYNN:  Well, in a lot of the cases -- and

04:51:14  21   unfortunately I can't remember.  I believe they're cited in

04:51:14  22   my paper.

04:51:14  23           Opening statements, for example, if Mr. Fleming

04:51:18  24   gets up and gives an impassioned opening statement about how

04:51:22  25   Mr. Slocum did this all and he sent the message, and poor

CR 02-938 DOC - 1/3/2007 - Volume IV

53

| | | |
|---|---|---|
| 04:51:26 | 1 | Mr. Houston just had to follow it because it came in, the |
| 04:51:30 | 2 | Court can, immediately after that, instruct the jury that |
| 04:51:32 | 3 | opening statements are not evidence, they are simply |
| 04:51:35 | 4 | argument and they are not to be considered as such. |
| 04:51:37 | 5 | THE COURT:  I'm not worried about opening |
| 04:51:39 | 6 | statements.  I'm worried about the state of the evidence |
| 04:51:43 | 7 | later as it comes in, and is there any curative instruction. |
| 04:51:47 | 8 | I don't think that there is.  I think we're just left with |
| 04:51:49 | 9 | the evidence. |
| 04:51:50 | 10 | MS. FLYNN:  Well, the second prosecutor argument, |
| 04:51:52 | 11 | I think, really comes up when you look at opening statement |
| 04:51:55 | 12 | and closing arguments, and that can be cured. |
| 04:51:58 | 13 | When it comes to vigorous cross-examination, |
| 04:52:00 | 14 | that's going to occur.  And I don't know if there are |
| 04:52:03 | 15 | necessarily any instructions.  I mean, there's the standard |
| 04:52:06 | 16 | one that "You must consider each charge and each count |
| 04:52:10 | 17 | against each defendant separately," and then the jury has to |
| 04:52:13 | 18 | weigh that.  But I don't know if that necessarily cures it. |
| 04:52:19 | 19 | But again, I don't think it is such that you have |
| 04:52:22 | 20 | to have a perfect jury instruction to fix this.  There are |
| 04:52:28 | 21 | inconsistent defenses, but it's not such that rises to a |
| 04:52:32 | 22 | severance.  I don't think it's the prejudice that the Ninth |
| 04:52:35 | 23 | Circuit and Supreme Court looks at when granting and |
| 04:52:38 | 24 | upholding severances granted by district courts. |
| 04:52:47 | 25 | MR. HARRIS:  Could I respond to the economy point, |

CR 02-938 DOC - 1/3/2007 - Volume IV

54

| | | |
|---|---|---|
| 04:52:48 | 1 | Your Honor? |
| 04:52:49 | 2 | THE COURT:  Certainly. |
| 04:52:50 | 3 | MR. HARRIS:  Basically, Ms. Flynn seems to be |
| 04:52:53 | 4 | saying it's going to be the same presentation whether Slocum |
| 04:52:56 | 5 | is here or Slocum is not here.  And I would submit that |
| 04:53:00 | 6 | there's no way that that's going to happen.  If Slocum is |
| 04:53:03 | 7 | not here, the focus is going to be on Six and Seven, and the |
| 04:53:10 | 8 | prosecution is going to hit the elements of VICAR to make |
| 04:53:14 | 9 | VICAR work.  They're going to hit the elements of |
| 04:53:18 | 10 | enterprise, the association-in-fact, affecting interstate |
| 04:53:23 | 11 | commerce, the pattern, and -- 'cause that's what they need |
| 04:53:28 | 12 | to win on Six and Seven, on the VICAR.  All the embroidery |
| 04:53:34 | 13 | is not going to be there.  They're going to do it with an |
| 04:53:38 | 14 | overview witness, with a fly-over witness like Danine Adams |
| 04:53:43 | 15 | or somebody, 'cause that's all they need. |
| 04:53:46 | 16 | And so to say it's going to be the same |
| 04:53:49 | 17 | presentation whether Slocum is here or is not here, that |
| 04:53:54 | 18 | just defies common sense.  Everybody knows that this thing |
| 04:53:58 | 19 | is going to be totally streamlined if Slocum is out the door |
| 04:54:04 | 20 | here. |
| 04:54:04 | 21 | And that ties in, also -- the point of your |
| 04:54:07 | 22 | tentative ruling was that, in a death case, you got to take |
| 04:54:17 | 23 | some special precautions against all the baggage that Slocum |
| 04:54:17 | 24 | brings with him.  Well, in addition to the judicial economy, |
| 04:54:23 | 25 | that streamlining largely mitigates that prejudice.  It |

CR 02-938 DOC - 1/3/2007 - Volume IV

55

| | | |
|---|---|---|
| 04:54:28 | 1 | takes into account the fact that this is a death case. |
| 04:54:31 | 2 | Death is different.  And so you kill two birds with one |
| 04:54:35 | 3 | stone.  You get a shorter trial.  You get a more focused |
| 04:54:40 | 4 | trial on what really counts, which is Six and Seven.  They |
| 04:54:45 | 5 | hit the elements, which they have a right to do.  And they |
| 04:54:48 | 6 | can still show that Mr. Slocum is a conduit.  But everybody |
| 04:54:52 | 7 | knows that a lot of the embroidery and a lot of the detail |
| 04:54:57 | 8 | is not -- is just not going to be presented.  It doesn't |
| 04:55:02 | 9 | need to be presented for them to win, so they're not going |
| 04:55:04 | 10 | to do that.  They're not going to over-try the case when |
| 04:55:07 | 11 | they don't have to. |
| 04:55:09 | 12 | So by sticking either to your tentative ruling or |
| 04:55:13 | 13 | getting rid of Mr. Slocum completely, you solve both of |
| 04:55:16 | 14 | those problems. |
| 04:55:17 | 15 | THE COURT:  And when the government moves to |
| 04:55:19 | 16 | introduce evidence about the Andreasen murder in |
| 04:55:22 | 17 | Racketeering Act Five and to show the enterprise and to show |
| 04:55:30 | 18 | Slocum's involvement to prove to the jury, regardless of the |
| 04:55:36 | 19 | statement that you're going to accept that the evidence, or |
| 04:55:39 | 20 | that the message came in, 'cause they still have to prove |
| 04:55:44 | 21 | that up, are you going to object? |
| 04:55:48 | 22 | MR. HARRIS:  Well, they've got -- |
| 04:55:50 | 23 | THE COURT:  Certainly, you are.  Let me help you |
| 04:55:51 | 24 | with that.  Of course, you are. |
| 04:55:53 | 25 | MR. HARRIS:  They're entitled -- |

CR 02-938 DOC - 1/3/2007 - Volume IV

56

| | | |
|---|---|---|
| 04:55:54 | 1 | THE COURT: You'll object under 403. Okay. And |
| 04:55:57 | 2 | when we get to Racketeering Act Six -- because Mr. Slocum is |
| 04:56:00 | 3 | involved in every one of these. I can find no exception to |
| 04:56:04 | 4 | it. I spent almost six days looking at this again -- and we |
| 04:56:10 | 5 | get to Thomas Lamb, and Slocum's the message carrier, of |
| 04:56:16 | 6 | course, you're going to object under 403. You're going to |
| 04:56:18 | 7 | make the same argument about streamlining and tell the Court |
| 04:56:22 | 8 | that this isn't relevant. And I've tentatively decided that |
| 04:56:26 | 9 | that's probably coming into evidence. |
| 04:56:28 | 10 | I'm going to listen to the arguments if I severe |
| 04:56:31 | 11 | Mr. Slocum, but we're going to be at loggerheads about that. |
| 04:56:35 | 12 | And if that same evidence is coming in, then your position's |
| 04:56:39 | 13 | substantially weakened. |
| 04:56:41 | 14 | MR. HARRIS: But I think, if Mr. Slocum is not |
| 04:56:44 | 15 | here, at some point we're gonna -- the Court is going to |
| 04:56:46 | 16 | reach the conclusion that they have made the element that |
| 04:56:50 | 17 | they have to make. |
| 04:56:51 | 18 | THE COURT: And just cut them off? |
| 04:56:53 | 19 | MR. HARRIS: Yeah. Because they don't have to -- |
| 04:56:54 | 20 | that's what 403 is about. At some point it seems that |
| 04:56:59 | 21 | you've got to bring all that in if Mr. Slocum is here. |
| 04:57:03 | 22 | There's some difference if he's here or not here. |
| 04:57:06 | 23 | And I think that at some point they should be cut off if |
| 04:57:10 | 24 | they've made the elements that they need to make at that |
| 04:57:14 | 25 | point. |

CR 02-938 DOC - 1/3/2007 - Volume IV

57

| | | |
|---|---|---|
| 04:57:15 | 1 | THE COURT: Would I do the same to the defense as |
| 04:57:17 | 2 | you were attempting to go back through the history of the |
| 04:57:21 | 3 | Aryan Brotherhood? In other words, would I say under 403, |
| 04:57:22 | 4 | "Gee, that's enough defense." I'll just cut that off also? |
| 04:57:28 | 5 | MR. HARRIS: I think you have a lot more latitude |
| 04:57:30 | 6 | to do that in the guilt phase, than the penalty phase. In |
| 04:57:33 | 7 | the penalty phase, there's some constitutional issues. But |
| 04:57:33 | 8 | in the guilt phase, yes. |
| 04:57:37 | 9 | THE COURT: I can't imagine starting to make those |
| 04:57:39 | 10 | decisions, after listening to Mills and Bingham, and telling |
| 04:57:42 | 11 | the government when enough is enough in terms of proving a |
| 04:57:45 | 12 | criminal enterprise, nor could I imagine cutting the defense |
| 04:57:49 | 13 | off as you go back through the history. I mean, the oddity |
| 04:57:52 | 14 | of this case has always been that you both need the same |
| 04:57:55 | 15 | thing. The government needs to show the enterprise, which |
| 04:57:59 | 16 | involves a lot of historical perspective about the AB, and |
| 04:58:02 | 17 | you need that same historical perspective in a little bit |
| 04:58:06 | 18 | different light, and that is to show why the AB acted; that |
| 04:58:10 | 19 | they weren't a racist organization in that regard, and they |
| 04:58:15 | 20 | reacted because of the past history of the demographics at |
| 04:58:18 | 21 | Lewisburg being significantly against them, and a whole |
| 04:58:21 | 22 | series of actions that have been carried out by the black |
| 04:58:25 | 23 | population causing death. |
| 04:58:26 | 24 | Now, that doesn't have anything to do with |
| 04:58:28 | 25 | Mr. Slocum, though. That has a lot to do with |

CR 02-938 DOC - 1/3/2007 - Volume IV

58

| | | |
|---|---|---|
| 04:58:31 | 1 | Mr. Bridgewater and Mr. Houston. |
| 04:58:33 | 2 | Now, just a moment.  Mr. Donatelli probably |
| 04:58:35 | 3 | doesn't think you did well.  He has his hand up in the air. |
| 04:58:38 | 4 | I want to make sure, Mr. Harris, that you're done.  Okay. |
| 04:58:41 | 5 | Thank you.  Mr. Donatelli has a plane to catch. |
| 04:58:46 | 6 | MR. DONATELLI:  No, Your Honor. |
| 04:58:47 | 7 | THE COURT:  But we have all evening. |
| 04:58:47 | 8 | Now, Mr. Harris, why don't you continue. |
| 04:58:49 | 9 | MR. HARRIS:  My only point is, Your Honor, a lot |
| 04:58:52 | 10 | of these issues are going to be covered more with overview |
| 04:58:55 | 11 | witnesses, expert witnesses, summary witnesses if Mr. Slocum |
| 04:59:02 | 12 | is not here.  I just think that that's the forensics of the |
| 04:59:06 | 13 | case; that's the way it's going to play out.  And that |
| 04:59:09 | 14 | streamlines the case, and it mitigates the prejudice. |
| 04:59:13 | 15 | THE COURT:  Okay. |
| 04:59:14 | 16 | Now, Mr. White? |
| 04:59:16 | 17 | MR. WHITE:  Nothing. |
| 04:59:16 | 18 | THE COURT:  Mr. Donatelli? |
| 04:59:18 | 19 | MR. DONATELLI:  Mr. Harris did a fine job. |
| 04:59:20 | 20 | I wanted to go back to the point that you made |
| 04:59:22 | 21 | about evidence that will come in from which there could be |
| 04:59:26 | 22 | no curative instruction. |
| 04:59:27 | 23 | THE COURT:  Yeah. |
| 04:59:27 | 24 | MR. DONATELLI:  When Al Benton gets on the stand |
| 04:59:29 | 25 | and says that Ron Slocum didn't know what the contents of |

CR 02-938 DOC - 1/3/2007 - Volume IV

59

| | | |
|---|---|---|
| 04:59:33 | 1 | the message were, couldn't understand the import, couldn't |
| 04:59:36 | 2 | know the details, we're going to cross-examine him |
| 04:59:46 | 3 | vigorously about his conversation with Mr. Slocum where he |
| 04:59:46 | 4 | specifically asks him if there was anything after the "T.D." |
| 04:59:46 | 5 | part. |
| 04:59:46 | 6 | "T.D." is part of the message that supposedly was |
| 04:59:50 | 7 | heated up.  Now, how could he be asking Mr. Slocum |
| 04:59:53 | 8 | specifically about the two letters, "T.D.," unless Benton |
| 04:59:58 | 9 | thought at that time that Slocum knew the contents of the |
| 05:00:00 | 10 | message?  That's the whole point.  He's asking him was there |
| 05:00:03 | 11 | anything after the T.D. part, and Slocum says, no, there |
| 05:00:08 | 12 | wasn't. |
| 05:00:08 | 13 | "Al, you're lying.  You are picking and choosing |
| 05:00:12 | 14 | who you're covering -- who you're covering for, and who |
| 05:00:14 | 15 | you're implicating.  And you're covering your old friend |
| 05:00:17 | 16 | Ronnie Slocum, and lying to the jury about everything else." |
| 05:00:20 | 17 | And that's a line of cross-examination that we |
| 05:00:22 | 18 | would like to engage in with Mr. Benton, for which there's |
| 05:00:26 | 19 | really no curative instruction to say, "You know damn well |
| 05:00:30 | 20 | that Slocum called and knew what the contents of that |
| 05:00:35 | 21 | message were when you called him on the phone."  That's why |
| 05:00:37 | 22 | he answered negatively when he said, "No, there wasn't |
| 05:00:41 | 23 | anything else there."  And I think it's pretty devastating |
| 05:00:43 | 24 | to Benton's credibility to point out that he's lying about |
| 05:00:46 | 25 | what he clearly on the phone got caught doing. |

CR 02-938 DOC – 1/3/2007 – Volume IV

60

| | | |
|---|---|---|
| 05:00:49 | 1 | THE COURT:  You may have a point.  I want to |
| 05:00:51 | 2 | consider that. |
| 05:00:52 | 3 | Mr. Fleming? |
| 05:01:03 | 4 | MR. FLEMING:  I wanted to go back to something |
| 05:01:05 | 5 | that Ms. Flynn argued, and that is that during the opening |
| 05:01:10 | 6 | statement -- assuming that I was to give an opening |
| 05:01:14 | 7 | statement -- in which we went after Mr. Slocum, then the |
| 05:01:16 | 8 | cure for that is to call a timeout during my opening |
| 05:01:21 | 9 | statement and advise the jury that what I'm saying is not |
| 05:01:24 | 10 | evidence; it's just argument, and then move on.  That's |
| 05:01:28 | 11 | unfair.  That emphasizes the fact that my argument, if I |
| 05:01:34 | 12 | were to give the argument, is just that:  It's an argument. |
| 05:01:39 | 13 | That's a small example of what we're going to be |
| 05:01:41 | 14 | dealing with throughout the case, starting with the opening |
| 05:01:44 | 15 | statement, moving through all of the government witnesses, |
| 05:01:47 | 16 | and then concluding with the closing argument.  There simply |
| 05:01:51 | 17 | isn't a curative that I don't think any of us can come up |
| 05:01:54 | 18 | with to cure what would take place during the trial. |
| 05:01:58 | 19 | Finally, the cases -- *Throckmorton* and the |
| 05:02:03 | 20 | others -- obviously, those cases are looked at under a |
| 05:02:06 | 21 | different standard of review -- under a clearly erroneous |
| 05:02:10 | 22 | standard of review.  The trial judge is given a good deal of |
| 05:02:13 | 23 | discretion in making these types of call, as Your Honor is |
| 05:02:16 | 24 | well-aware.  And we strongly believe that the right call is |
| 05:02:19 | 25 | to grant the severance. |

CR 02-938 DOC - 1/3/2007 - Volume IV

61

| | | |
|---|---|---|
| 05:02:21 | 1 | THE COURT:  Okay.  Now, for any of you -- |
| 05:02:23 | 2 | Mr. Belter? |
| 05:02:26 | 3 | MR. BELTER:  No, Your Honor.  Thank you. |
| 05:02:35 | 4 | THE COURT:  You recall my, not only one time, but |
| 05:02:39 | 5 | repeatedly asking if Mr. Slocum was willing to join us in |
| 05:02:43 | 6 | the first trial?  Anybody have any lapse of memory regarding |
| 05:02:47 | 7 | that? |
| 05:02:49 | 8 | MS. FLYNN:  No, Your Honor. |
| 05:02:50 | 9 | THE COURT:  Okay.  Mr. Slocum declined to join us |
| 05:02:56 | 10 | with Mills and Bingham. |
| 05:02:57 | 11 | MR. BELTER:  Your Honor -- |
| 05:02:58 | 12 | THE COURT:  Just a moment.  I just asked you.  And |
| 05:03:00 | 13 | now give me my opportunity. |
| 05:03:01 | 14 | MR. BELTER:  Yes. |
| 05:03:02 | 15 | THE COURT:  We have all evening.  You're not going |
| 05:03:05 | 16 | to be rushed for time. |
| 05:03:11 | 17 | Would Mr. Mills and Bingham have been in exactly |
| 05:03:15 | 18 | the same position if Mr. Slocum had been joined? |
| 05:03:20 | 19 | That requires an answer. |
| 05:03:23 | 20 | MR. FLEMING:  In terms of asking for a severance? |
| 05:03:26 | 21 | THE COURT:  Absolutely. |
| 05:03:27 | 22 | MR. WHITE:  Was the question would we have been in |
| 05:03:29 | 23 | the same position? |
| 05:03:30 | 24 | THE COURT:  Yes. |
| 05:03:30 | 25 | MR. WHITE:  No, no. |

CR 02-938 DOC - 1/3/2007 - Volume IV

| | | |
|---|---|---|
| 05:03:33 | 1 | THE COURT:  You would be in exactly the same |
| 05:03:35 | 2 | position, in my humble opinion, awaiting your argument.  I |
| 05:03:39 | 3 | mean, in all candidness, I would have heard this same |
| 05:03:43 | 4 | argument for Mills and Bingham.  And it's a good argument |
| 05:03:47 | 5 | for both sides, for the government and the defense.  This is |
| 05:03:49 | 6 | a difficult call. |
| 05:03:50 | 7 | Now, without forcing you into that position on the |
| 05:03:53 | 8 | record, would you be -- it seems to me, as long as |
| 05:03:56 | 9 | Mr. Slocum is maintaining this position that there's no |
| 05:03:58 | 10 | group of defendants, regardless of what Mr. Harris is |
| 05:04:02 | 11 | stating, that Mr. Slocum's joined with.  Mr. Slocum has to |
| 05:04:08 | 12 | be tried by himself.  In other words, if I follow your |
| 05:04:11 | 13 | conclusion here, Mr. Slocum should be tried in his own |
| 05:04:15 | 14 | separate trial. |
| 05:04:16 | 15 | MR. DONATELLI:  Judge, we're simply saying is the |
| 05:04:18 | 16 | death-eligible defendants -- |
| 05:04:22 | 17 | THE COURT:  I understand that.  That's not my |
| 05:04:23 | 18 | question.  I'm going to ignore you for a moment, |
| 05:04:24 | 19 | Mr. Donatelli.  I respect you greatly, but you haven't |
| 05:04:25 | 20 | answered my question. |
| 05:04:27 | 21 | MR. WHITE:  Your Honor -- are you asking me for an |
| 05:04:29 | 22 | answer?  Or are you done? |
| 05:04:32 | 23 | THE COURT:  I don't want to put you in that box on |
| 05:04:34 | 24 | the record.  But that's what I spent a significant time |
| 05:04:37 | 25 | examining.  It really leads me to the conclusion that, as |

CR 02-938 DOC - 1/3/2007 - Volume IV

63

| | | |
|---|---|---|
| 05:04:42 | 1 | long as Mr. Slocum maintains this position, which is |
| 05:04:45 | 2 | credible and truthful from his perspective -- I'm not |
| 05:04:49 | 3 | affronted by that -- Mr. Slocum is really saying, and any |
| 05:04:54 | 4 | defendant who is tried with Mr. Slocum, that these are |
| 05:04:57 | 5 | contradictory defenses and he should be severed, and he |
| 05:05:00 | 6 | should have his own separate trial -- Mr. Slocum. |
| 05:05:06 | 7 | Now, take a moment and have a conference.  And if |
| 05:05:08 | 8 | you care to respond to it, that's fine; and if you don't, |
| 05:05:11 | 9 | that's fine.  But that's the conclusion I've reached over |
| 05:05:15 | 10 | the weekend. |
| 05:05:18 | 11 | MS. FLYNN:  Your Honor, in fact, Mr. Gibson's |
| 05:05:20 | 12 | counsel did make that argument. |
| 05:05:22 | 13 | THE COURT:  I recall. |
| 05:05:23 | 14 | Mr. Reed did. |
| 05:05:49 | 15 | MR. FLEMING:  Your Honor, one clear difference |
| 05:05:51 | 16 | here, which moves this situation to mutually exclusive and |
| 05:06:02 | 17 | antagonistic, rather than merely inconsistent, which is what |
| 05:06:02 | 18 | it would be with perhaps any other grouping of defendants. |
| 05:06:03 | 19 | The difference is this:  Mr. Houston and Mr. Bridgewater |
| 05:06:08 | 20 | were at Lewisburg, and their defense is self-defense.  And |
| 05:06:13 | 21 | that message is what laid the foundation for that |
| 05:06:18 | 22 | self-defense claim -- unlike any other defendant that is |
| 05:06:21 | 23 | involved in the case, with the exception of Mr. Schwyhart. |
| 05:06:28 | 24 | THE COURT:  Restate that to me. |
| 05:06:30 | 25 | MR. FLEMING:  The difference is this:  Rather than |

CR 02-938 DOC - 1/3/2007 - Volume IV

64

| | | |
|---|---|---|
| 05:06:32 | 1 | it being simply, merely inconsistent positions, and why we |
| 05:06:36 | 2 | believe it's moved into the mutually exclusive and |
| 05:06:40 | 3 | antagonistic positions, is because these defendants, |
| 05:06:43 | 4 | Mr. Houston and Mr. Bridgewater, were at Lewisburg, |
| 05:06:47 | 5 | unlike -- with the exception of Mr. Campbell, who was |
| 05:06:50 | 6 | deceased, and Mr. Schwyhart who may end up being in the same |
| 05:06:56 | 7 | situation if his case goes to trial -- they're there. |
| 05:06:58 | 8 | They're at Lewisburg.  They're the only ones who have a |
| 05:07:02 | 9 | legitimate self-defense case, unlike Mr. Mills and |
| 05:07:05 | 10 | Mr. Bingham, who were 1700 miles away at the time, unlike |
| 05:07:09 | 11 | all the other defendants who were not present there at |
| 05:07:12 | 12 | Lewisburg and who could not, even if they wanted to, run a |
| 05:07:16 | 13 | self-defense case.  Because they certainly could not ever |
| 05:07:20 | 14 | show immediate danger, as we believe Mr. Houston and |
| 05:07:24 | 15 | Mr. Bridgewater can. |
| 05:07:27 | 16 | So that's the core difference. |
| 05:07:29 | 17 | THE COURT:  And I never instructed on imperfect |
| 05:07:32 | 18 | self-defense. |
| 05:07:34 | 19 | MR. FLEMING:  I'm sorry? |
| 05:07:35 | 20 | THE COURT:  In Mills or Bingham. |
| 05:07:38 | 21 | MR. FLEMING:  No.  Nor did we ask for it. |
| 05:07:39 | 22 | THE COURT:  Right. |
| 05:07:40 | 23 | MS. FLYNN:  Your Honor, there were self-defense |
| 05:07:42 | 24 | instructions given in that case. |
| 05:07:44 | 25 | MR. WHITE:  That was the Bingham-Elmore -- |

CR 02-938 DOC - 1/3/2007 - Volume IV

65

| | | |
|---|---|---|
| 05:07:49 | 1 | THE COURT:  Okay.  Now, Mr. Donatelli? |
| 05:07:51 | 2 | MR. DONATELLI:  I have nothing to add, Your Honor. |
| 05:07:52 | 3 | THE COURT:  Mr. White? |
| 05:07:53 | 4 | MR. WHITE:  Well, I guess what comes to mind, for |
| 05:07:56 | 5 | me, Your Honor, is that Mr. Bingham and Mr. Mills -- our |
| 05:08:01 | 6 | defense was that it was a warning that was sent into |
| 05:08:04 | 7 | Lewisburg.  And if Mr. Slocum, in fact, sent a warning into |
| 05:08:09 | 8 | Lewisburg, then Mr. Slocum would have been on the same |
| 05:08:14 | 9 | footing as Mr. Mills and Mr. Bingham, and the jury could |
| 05:08:19 | 10 | have acquitted all three if they believed that what was sent |
| 05:08:23 | 11 | into Lewisburg was a warning.  So Mills and Bingham would |
| 05:08:32 | 12 | not have necessarily been arguing that we couldn't have |
| 05:08:39 | 13 | peacefully coexisted with Mr. Slocum and run a defense which |
| 05:08:44 | 14 | was not a mutually antagonistic defense. |
| 05:08:49 | 15 | THE COURT:  Mr. Harris? |
| 05:08:51 | 16 | MR. HARRIS:  Nothing further. |
| 05:08:51 | 17 | THE COURT:  Mr. Belter? |
| 05:08:53 | 18 | MR. BELTER:  No.  Thank you, Your Honor. |
| 05:08:54 | 19 | THE COURT:  Ms. Flynn? |
| 05:08:55 | 20 | MS. FLYNN:  The only thing I'd like to say -- and |
| 05:08:58 | 21 | it's set forth in my papers -- is the argument that |
| 05:09:00 | 22 | "warning, war call" -- to me, what Mr. Bridgewater and |
| 05:09:03 | 23 | Mr. Houston are doing is essentially arguing "warning" but |
| 05:09:07 | 24 | in a bit of a different way.  They're saying they went out |
| 05:09:11 | 25 | and did a preemptive strike when they got a message saying |

CR 02-938 DOC - 1/3/2007 - Volume IV

66

| | | |
|---|---|---|
| 05:09:13 | 1 | "We're at war."  To me, that is a war call.  "We're at war," |
| 05:09:17 | 2 | in the Aryan Brotherhood means one thing; and that means, |
| 05:09:18 | 3 | "Go out and kill," which is what they did.  I don't think |
| 05:09:20 | 4 | that's self-defense, and that will be the government's |
| 05:09:23 | 5 | position at trial. |
| 05:09:24 | 6 | I think that's fairly similar to what Mills and |
| 05:09:28 | 7 | Bingham argued -- with a warning.  The message went in to |
| 05:09:32 | 8 | say "We're at war."  Mills and Bingham's position was "Just |
| 05:09:36 | 9 | letting the guys know.  No big deal."  And the government, |
| 05:09:40 | 10 | in the Mills and Bingham case, argued, well, what "We're at |
| 05:09:44 | 11 | war" means is "Go out and kill." |
| 05:09:47 | 12 | It's the same argument, just couched differently, |
| 05:09:51 | 13 | so the jury can actually believe that Slocum sent in a |
| 05:09:55 | 14 | message; that he was just sending a warning, "Hey, buddies, |
| 05:09:56 | 15 | we're at war."  These guys then went out and killed based on |
| 05:10:01 | 16 | that, and they can be convicted because the jury doesn't buy |
| 05:10:04 | 17 | that it was a preemptive strike; they were doing what they |
| 05:10:06 | 18 | had to do in prison.  And they can believe that these men |
| 05:10:09 | 19 | murdered people based on that war call, or the jury can |
| 05:10:13 | 20 | believe it was just a warning sent in, wasn't meant to be a |
| 05:10:18 | 21 | war call, acquit Slocum, and then acquit both defendants by |
| 05:10:22 | 22 | saying, "Well, it was just a warning.  They were acting in |
| 05:10:25 | 23 | self-defense based on what happened." |
| 05:10:27 | 24 | I don't think there is just these black-and-white, |
| 05:10:29 | 25 | either/or choices that the defendant attorneys keep setting |

CR 02-938 DOC - 1/3/2007 - Volume IV

67

| | |
|---|---|
| 05:10:32 | 1 |
| 05:10:36 | 2 |
| 05:10:37 | 3 |
| 05:10:39 | 4 |
| 05:10:43 | 5 |
| 05:10:52 | 6 |
| 05:10:54 | 7 |
| 05:10:57 | 8 |
| 05:11:00 | 9 |
| 05:11:02 | 10 |
| 05:11:03 | 11 |
| 05:11:07 | 12 |
| 05:11:11 | 13 |
| 05:11:12 | 14 |
| 05:11:18 | 15 |
| 05:11:21 | 16 |
| 05:11:25 | 17 |
| 05:11:29 | 18 |
| 05:11:33 | 19 |
| 05:11:35 | 20 |
| 05:11:37 | 21 |
| 05:11:38 | 22 |
| 05:11:42 | 23 |
| 05:11:45 | 24 |
| 05:11:48 | 25 |

it out to be.  There are several ways the jury can believe this.

They can just, you know, reject one and believe the other.  It's not, in order to convict one, they must acquit the other, which is the precise case in Tootick.

THE COURT:  Excellent arguments on both sides.

I'll come back to the question I asked ten minutes ago.  Where does Mr. Slocum belong?

MR. HARRIS:  Where does he belong?

THE COURT:  Yes.  In other words, I came back -- nobody's answered it yet, so I want to come back to it again; and that is, it seems to me, that Mr. Slocum with this argument stands with the trial, just as Mr. Reed had argued, who represented Mr. Gibson.

MR. HARRIS:  He could go with Mr. McElhiney in front of Judge King.  Would be a good fit.

THE COURT:  How does that fit?  McElhiney is not sending out the war message.  In other words, that has no relevance to Lewisburg.

MR. HARRIS:  It wouldn't fit with Lewisburg.

THE COURT:  Lewisburg is where Mr. Slocum is primarily involved.

So that's not a good fit.  The state side is not a good fit.  Mr. Slocum, either appears to me -- and I won't put you in the box again -- but he does appear to me to be a

CR 02-938 DOC - 1/3/2007 - Volume IV

68

| | | |
|---|---|---|
| 05:11:51 | 1 | separate trial, by himself, or I have the same antagonistic |
| 05:11:59 | 2 | or inconsistent, or however you want to phrase it, |
| 05:12:03 | 3 | possibilities with any group he's joined with. |
| 05:12:11 | 4 | MR. HARRIS:  Well, if Mr. Schwyhart does not get |
| 05:12:11 | 5 | out on his motion -- which he might -- but if he doesn't, it |
| 05:12:15 | 6 | certainly would fit with Schwyhart. |
| 05:12:17 | 7 | MR. FLEMING:  They would probably have the same |
| 05:12:19 | 8 | problem. |
| 05:12:21 | 9 | MS. FLYNN:  Yeah. |
| 05:12:22 | 10 | MR. FLEMING:  Mr. Slocum may be on his own.  That |
| 05:12:25 | 11 | may be the answer. |
| 05:12:26 | 12 | THE COURT:  I think that -- well, regardless. |
| 05:12:29 | 13 | That's what I've been -- there's no answer.  You |
| 05:12:32 | 14 | can't help me with it.  I've been struggling with it for |
| 05:12:37 | 15 | three or four days.  Either Mr. Slocum's going to get tried |
| 05:12:41 | 16 | by himself with no one else around him or he joins this |
| 05:12:45 | 17 | group, or could have joined Mills and Bingham -- which there |
| 05:12:48 | 18 | would have been the same issue, the same problem. |
| 05:12:51 | 19 | All right.  Mr. Donatelli? |
| 05:12:55 | 20 | MR. DONATELLI:  Only this thought:  That perhaps |
| 05:12:56 | 21 | the government decides, "Well, we don't need to try Slocum |
| 05:13:00 | 22 | on Lewisburg.  We don't have to try him for Lewisburg.  We |
| 05:13:04 | 23 | got enough on that other stuff to put him away for" -- |
| 05:13:08 | 24 | that's all. |
| 05:13:09 | 25 | THE COURT:  I'm going to kick you a little bit. |

CR 02-938 DOC - 1/3/2007 - Volume IV

69

| | | |
|---|---|---|
| 05:13:10 | 1 | I'll wait until you talk to Ms. Flynn. And I'm sure she'll |
| 05:13:15 | 2 | help us with that decision by waiving Lewisburg. I'm just |
| 05:13:18 | 3 | being facetious. I don't think she's going to waive |
| 05:13:21 | 4 | Lewisburg with Mr. Slocum. |
| 05:13:25 | 5 | Okay. What else would you like to accomplish? |
| 05:13:27 | 6 | I mean, you can't help me any further. I've |
| 05:13:27 | 7 | listened to your arguments. If there's anything else, I |
| 05:13:27 | 8 | certainly want to be courteous for both sides. |
| 05:13:27 | 9 | Ms. Flynn, if there's anything that you want to |
| 05:13:27 | 10 | add -- |
| 05:13:28 | 11 | MS. FLYNN: Nothing further. Thank you. |
| 05:13:29 | 12 | THE COURT: -- I'd be more than happy to hear it. |
| 05:13:29 | 13 | Mr. Harris, if there's anything you'd like to add? |
| 05:13:31 | 14 | MR. HARRIS: No, Your Honor. |
| 05:13:32 | 15 | THE COURT: Mr. White? |
| 05:13:32 | 16 | MR. WHITE: No, Your Honor. |
| 05:13:33 | 17 | THE COURT: Mr. Donatelli? |
| 05:13:35 | 18 | MR. DONATELLI: No, Your Honor. Thank you. |
| 05:13:36 | 19 | THE COURT: Mr. Fleming? |
| 05:13:37 | 20 | MR. FLEMING: No, Your Honor. |
| 05:13:38 | 21 | THE COURT: Mr. Belter? |
| 05:13:39 | 22 | MR. BELTER: No, Your honor. |
| 05:13:39 | 23 | THE COURT: Okay. What else would you like to do |
| 05:13:41 | 24 | this evening? What are we missing today? |
| 05:13:56 | 25 | MR. FLEMING: Notre Dame is what we're missing. |

CR 02-938 DOC - 1/3/2007 - Volume IV

70

| | | |
|---|---|---|
| 05:13:58 | 1 | THE COURT:  There's a life outside the Court.  I |
| 05:14:01 | 2 | forgot.  We'll have the TV brought in to you, and we'll |
| 05:14:01 | 3 | watch the game.  I'm just kidding you. |
| 05:14:02 | 4 | I can't think of anything.  So instead of |
| 05:14:04 | 5 | reconvening tomorrow, which I was originally going to do, I |
| 05:14:07 | 6 | think I'm going to send you on your way.  There's no reason |
| 05:14:10 | 7 | to bring you back. |
| 05:14:11 | 8 | Mr. Harris? |
| 05:14:12 | 9 | MR. HARRIS:  That's acceptable, Your Honor. |
| 05:14:13 | 10 | THE COURT:  Anything that you can think of? |
| 05:14:16 | 11 | MR. HARRIS:  No, Your Honor. |
| 05:14:17 | 12 | THE COURT:  Okay.  If there is, we'll do it. |
| 05:14:19 | 13 | Mr. White? |
| 05:14:20 | 14 | MR. WHITE:  No, Your Honor. |
| 05:14:20 | 15 | THE COURT:  Any reason to reconvene tomorrow |
| 05:14:22 | 16 | afternoon? |
| 05:14:23 | 17 | MR. WHITE:  No. |
| 05:14:23 | 18 | THE COURT:  Mr. Donatelli? |
| 05:14:25 | 19 | MR. DONATELLI:  No, sir. |
| 05:14:25 | 20 | THE COURT:  Mr. Fleming? |
| 05:14:26 | 21 | MR. FLEMING:  No, sir. |
| 05:14:26 | 22 | THE COURT:  Mr. Belter? |
| 05:14:27 | 23 | MR. BELTER:  No, Your Honor. |
| 05:14:28 | 24 | THE COURT:  Ms. Flynn? |
| 05:14:29 | 25 | MS. FLYNN:  Nothing, Your Honor. |

CR 02-938 DOC - 1/3/2007 - Volume IV

71

| | | |
|---|---|---|
| 05:14:30 | 1 | THE COURT:  Then we're in recess until -- what |
| 05:14:32 | 2 | date? |
| 05:14:33 | 3 | MR. DONATELLI:  February 5th. |
| 05:14:34 | 4 | THE COURT:  February 5th at 2:00 o'clock. |
| 05:14:36 | 5 | Okay.  Thank you very much for your courtesy. |
| 05:14:38 | 6 | Appreciate it. |
| 05:14:39 | 7 | *(Proceedings adjourned at 5:14 p.m.)* |
| 05:14:42 | 8 | -oOo- |
| 05:14:42 | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

CR 02-938 DOC - 1/3/2007 - Volume IV

72

-oOo-


CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  January 4, 2006


_____
DEBBIE GALE, U.S. COURT REPORTER
CSR NO. 9472, RPR