GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
STEPHEN G. WOLFE (Cal. Bar No. 116400)
Assistant United States Attorney
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-7408
Facsimile: (213) 894-3713
E-mail: Steve.Wolfe@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 02-938-CJC |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR TEMPORARY TRANSFER TO PELICAN BAY STATE PRISON; DECLARATION OF STEPHEN G. WOLFE |
| v. | ) | |
| GARY JOE LITTRELL, | ) | |
| Defendant. | ) | |

Plaintiff United States of America hereby opposes defendant's Ex Parte Application for an Order for Temporary Transfer to Pelican Bay State Prison, and its ex parte nature.

DATED: January _____, 2007      Respectfully submitted,

                                GEORGE S. CARDONA
                                Acting United States Attorney
                                THOMAS P. O'BRIEN
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____
                                STEPHEN G. WOLFE
                                Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

<u>DECLARATION OF STEPHEN G. WOLFE</u>

I, Stephen G. Wolfe, declare as follows:

1.  I am an Assistant United States Attorney for this district, and am assigned to the prosecution of <u>United States v. Gary Joe Littrell</u>, CR 02-938-CJC.  I have been assigned to this case since before the indictment was unsealed.  I make this declaration in opposition to defendant Littrell's Ex Parte Application for an Order for Temporary Transfer to Pelican Bay State Prison, and also in opposition to the <u>ex parte</u> nature of the application.

2.  Defendant's application will necessarily impose a burden of cost, consumption of scarce resources, and security risk on the government.  It is evident that maintaining the security of high-risk prisoners such as defendant (an inmate who has previously been convicted of voluntary manslaughter and attempted second degree murder, and who now faces a capital murder charge, and is a member of an extremely violent prison gang) is far more difficult and costly of resources and money during transportation between high security institutions than while in the institutions themselves.

3.  On January 4, 2007, I informed the United States Marshals Service in Santa Ana of defendant's application.  The Marshals Service responded that day: "The USMS would be opposed to this move.  It's much to[o] costly, and the transporting party would be at considerable risk.  Additionally, special housing arrangements would have to be made with the CDC [California Department of Corrections] officials at Pelican Bay.  As you know, we have no control over this."

1

4.   Later on January 4, 2007, I informed counsel for defendant Littrell of the Marshals Service' opposition. Counsel stated that he would inform the Court of the Marshals Service' position. Today I was informed by the court clerk that the Court had not yet been informed of the government's position on defendant's application. I apologize for not communicating the government's opposition to the Court earlier, as a result of the miscommunication about which party would inform the Court of the views of the Marshals Service.

5.   The government also opposes defendant's application on the basis that the application does not make a sufficient showing of the necessity of incurring the burden and risk which will follow from the granting of the application. Defendant states that he wishes to prepare a response to a government videotape provided in discovery which contains demonstrations of the feasibility of unauthorized communication by inmates at Pelican Bay prison, despite efforts by the prison authorities to prevent unauthorized communication.

6.   Of course, defendant may attack the government's proof on the communication of the order to him to kill Aaron Marsh just as he may attack any other aspect of the government's case, but, in view of the undoubted burden and risk of the transfer that defendant seeks, the government submits that defendant ought to be expected to state with some specificity why his personal presence at Pelican Bay is necessary to a fair opportunity to respond. Defendant's sole showing on the necessity of his visiting Pelican Bay is in the form of conclusory statements: "Mr. Littrell's assistance to the defense team in this endeavor

2

is crucial in that Mr. Littrell is uniquely suited to provide the defense team with information to respond fully and accurately to the government's evidence" (Def. App. at 2), "Mr. Littrell [can?] provide detailed information to his defense team regarding the accuracies and inaccuracies of the government's video.  He can also provide his defense team with the specific information regarding the layout and what to photograph and videotape while walking his defense team through the particular locations relevant to responding to the government's evidence".  (Def. App. at 7).

7.  Defendant's application does not address any of these relevant facts concerning whether no fair opportunity to respond can be had unless defendant Littrell is transported to Pelican Bay prison: (1) defendant Littrell has already been tried for the murder of Aaron Marsh in California state court (he was convicted of second degree murder, but the conviction was set aside on appeal, and defendant pleaded guilty to voluntary manslaughter and attempted second degree murder in an agreement with the state prosecution to avoid a retrial); (2) Elliot Grizzle, a co-defendant with defendant Littrell in the state prosecution was also separately tried for the murder of Aaron Marsh and was convicted of first degree murder; (3) John William Stinson, a co-defendant in this case, was recently convicted at his separate trial of ordering the murder of Aaron Marsh on behalf of the Aryan Brotherhood.  Transcripts of all three of these trials are available to defendant Littrell.

8.  The three prior trials mean that a great deal of prior attack on the government's assertions concerning the passing of

3

messages to kill Aaron Marsh is available to defendant Littrell, and defendant Littrell has been motivated for years to counter that evidence and has had defense attorneys and investigators available to him to prepare to counter that evidence for years. Moreover, the trial of John Stinson in this case also took place after the disclosure of the videotape which defendant Littrell states he wishes to counter.

9. In short, defendant Littrell has prepared for years to counter the government's evidence concerning message passing, and he has already had the benefit of a co-defendant's recent trial countermeasures to the videotape he wishes to counter. In view of this, the government submits that the discovery videotape is not a surprise to defendant Littrell, defendant Littrell and his co-defendants have been working on defending this issue for the past ten years and up to this very moment, and defendant Littrell has demonstrably had a fair opportunity to meet this videotape and each other aspect of the government's case without putting the Marshals Service to the burden and risk required by the granting of defendant's application.

10. For all these reasons, the government respectfully submits that the court should deny defendant Littrell's application on the merits, or at least decline to consider it on an _ex parte_ basis.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: January ___, 2007

_____
STEPHEN G. WOLFE

4