1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3              **WESTERN DIVISION AT RIVERSIDE**

4         HONORABLE VIRGINIA A. PHILLIPS, JUDGE PRESIDING

5

6
   UNITED STATES OF AMERICA,          )
7                                      )
                    PLAINTIFF,         )
8                                      )
             VS.                       ) CR NO. 02-938(A)-VAP
9                                      ) VOLUME II
   DAVID MICHAEL SAHAKIAN,            )
10                                     )
                    DEFENDANT.         )
11   _____)

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              RIVERSIDE, CALIFORNIA

16            WEDNESDAY, AUGUST 13, 2008

17                  1:30 P.M.

18

19
              **DEBORAH D. PARKER, CSR 10342**
20               **OFFICIAL COURT REPORTER**
              **UNITED STATES DISTRICT COURT**
21               **411 WEST FOURTH STREET**
                    **SUITE 1-053**
22            **SANTA ANA, CALIFORNIA 92701**
                  **(714) 542-8409**
23              **D.PARKER@IX.NETCOM.COM**

24

25

2

```
1    APPEARANCES OF COUNSEL:

2

3        FOR THE PLAINTIFF, UNITED STATES OF AMERICA:

4                            THOMAS P. O'BRIEN
                             UNITED STATES ATTORNEY
5
                             CHRISTINE C. EWELL
6                            ASSISTANT UNITED STATES ATTORNEY
                             CHIEF, CRIMINAL DIVISION
7

8                            STEPHEN G. WOLFE
                             JOSEPH N. AKROTIRIANAKIS
9                            ASSISTANT UNITED STATES ATTORNEYS
                             UNITED STATES DISTRICT COURT
10                           1500 UNITED STATES COURTHOUSE
                             312 NORTH SPRING STREET
11                           SUITE 1504
                             LOS ANGELES, CALIFORNIA 90012
12                           (213) 894-2467

13

14       FOR THE DEFENDANT, DAVID MICHAEL SAHAKIAN:

15                           JOSEPH L. GREEN
                             LERITZ PLUNKERT AND BRUNING
16                           ONE CITY CENTRE
                             SUITE 2001
17                           ST. LOUIS, MISSOURI 63101
                             (314) 231-9600
18
                             BURTON H. SHOSTAK
19                           MOLINE SHOSTAK AND MOHAN
                             8015 FORSYTH BOULEVARD
20                           ST. LOUIS, MISSOURI 63105
                             (314) 725-3200
21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
1    RIVERSIDE, CALIFORNIA; WEDNESDAY, AUGUST 13, 2008; 1:30 P.M.

2                              -OOO-

3       (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT

4        IN THE PRESENCE OF THE JURY:)

5             THE CLERK:  WOULD THE JURORS PLEASE RISE AND RAISE

6    YOUR RIGHT HAND.

7             (JURY SWORN.)

8             THE CLERK:  THANK YOU.

9             PLEASE BE SEATED.

10            THE COURT:  ALL RIGHT.  MEMBERS OF THE JURY -- AND

11   AGAIN, I THANK YOU FOR YOUR PATIENCE.

12            YOU'RE NOW THE JURY IN THIS CASE, AND I'M GOING TO

13   TAKE JUST A FEW MOMENTS BEFORE YOU'RE EXCUSED THIS AFTERNOON

14   TO TELL YOU A FEW THINGS ABOUT YOUR DUTIES AS JURORS AND TO

15   GIVE YOU SOME INSTRUCTIONS.  THESE ARE PRELIMINARY

16   INSTRUCTIONS, AND AT THE END OF THE TRIAL, I'LL GIVE YOU

17   MORE DETAILED INSTRUCTIONS AND THOSE WILL CONTROL YOUR

18   DELIBERATIONS.

19            TOMORROW WHEN YOU RETURN, YOU WILL HAVE A COPY --

20   YOU'LL HAVE -- YOU'LL AT LEAST GET A TRIAL NOTEBOOK THAT YOU

21   CAN -- YOU WILL USE DURING THE TRIAL TO TAKE NOTES AND SO

22   FORTH.  AND YOU'LL HAVE A COPY OF THESE INSTRUCTIONS, SO

23   THIS IS NOT A MEMORY TEST.

24            YOU SHOULD NOT TAKE ANYTHING THAT I MAY SAY OR DO

25   DURING THE TRIAL AS INDICATING WHAT I THINK OF THE EVIDENCE
```

1    OR WHAT YOUR VERDICT SHOULD BE.

2              THIS IS A CRIMINAL CASE, AS YOU KNOW, BROUGHT BY

3    THE UNITED STATES GOVERNMENT, SOMETIMES CALLED "THE

4    GOVERNMENT."  AND THE GOVERNMENT CHARGES THE DEFENDANT,

5    DAVID MICHAEL SAHAKIAN, AS FOLLOWS:  THIS IS A SUMMARY OF

6    THE CHARGES.

7              COUNT 1, THE RICO CHARGE:  BEGINNING ON A DATE

8    UNKNOWN UNTIL AT LEAST JANUARY 25, 2002, THE DEFENDANT DID

9    KNOWINGLY AND UNLAWFULLY CONDUCT AND PARTICIPATE DIRECTLY

10   AND INDIRECTLY IN THE CONDUCT OF THE AFFAIRS OF AN

11   ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY,

12   CONSISTING OF A NUMBER OF RACKETEERING ACTS ALLEGED IN

13   COUNT 1, AND THAT THE ENTERPRISE ENGAGED IN AND ITS

14   ACTIVITIES AFFECTED INTERSTATE COMMERCE IN VIOLATION OF

15   TITLE 18 UNITED STATES CODE SECTION 1962(C).

16             IN COUNT 2, THE CONSPIRACY CHARGE:  BEGINNING ON A

17   DATE UNKNOWN UNTIL AT LEAST JULY 25, 2002, WITHIN THE

18   CENTRAL DISTRICT OF CALIFORNIA AND ELSEWHERE, DEFENDANT

19   DAVID MICHAEL SAHAKIAN AND OTHERS UNLAWFULLY, WILLFULLY AND

20   KNOWINGLY COMBINED, CONSPIRED, CONFEDERATED AND AGREED

21   TOGETHER AND WITH EACH OTHER TO VIOLATE TITLE 18 UNITED

22   STATES CODE SECTION 1962(C), THAT IS, TO CONDUCT AND

23   PARTICIPATE DIRECTLY AND INDIRECTLY IN THE CONDUCT OF THE

24   AFFAIRS OF THE ARYAN BROTHERHOOD ENTERPRISE THROUGH A

25   PATTERN OF RACKETEERING ACTIVITY, CONSISTING OF MULTIPLE

1    ACTS INVOLVING MURDER IN VIOLATION OF VARIOUS STATE LAWS,

2    AND DISTRIBUTION OF CONTROLLED SUBSTANCES INCLUDING HEROIN,

3    METHAMPHETAMINE AND COCAINE.  THE DEFENDANT AGREED THAT A

4    CONSPIRATOR WOULD COMMIT AT LEAST TWO ACTS OF RACKETEERING

5    IN THE CONDUCT OF THE AFFAIRS OF THE ENTERPRISE.

6            COUNT 3, THE MURDER CHARGE:  ON OR ABOUT

7    AUGUST 25, 1995, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA

8    AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

9    UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

10   PREMEDITATION AND MALICE AFORETHOUGHT, DID AID, ABET,

11   ADVISE, ENCOURAGE AND OTHERWISE PARTICIPATE IN THE MURDER OF

12   CHARLES LEGER, IN VIOLATION OF TITLE 18 UNITED STATES CODE

13   SECTION 2(A) AND 1111 FOR THE PURPOSE OF GAINING ENTRANCE TO

14   OR MAINTAINING AND INCREASING HIS POSITION IN THE ARYAN

15   BROTHERHOOD, AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY

16   IN VIOLATION OF TITLE 18 UNITED STATES CODE

17   SECTION 1959(A)(1).

18           COUNT 6, MURDER CHARGE:  ON OR ABOUT AUGUST 28,

19   1997, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA, AND

20   ELSEWHERE, THE DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

21   UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

22   PREMEDITATION AND MALICE AFORETHOUGHT, DID AID, ABET,

23   ADVISE, ENCOURAGE AND OTHERWISE PARTICIPATE IN THE MURDER OF

24   FRANK JOYNER, IN VIOLATION OF TITLE 8 (SIC) UNITED STATES

25   CODE SECTIONS 2(A) AND 1111 FOR THE PURPOSE OF GAINING

1    ENTRANCE TO OR MAINTAINING AND INCREASING HIS POSITION IN

2    THE ARYAN BROTHERHOOD, AN ENTERPRISE ENGAGED IN RACKETEERING

3    ACTIVITY IN VIOLATION OF TITLE 18 UNITED STATES CODE

4    SECTION 1959(A)(1).

5         COUNT 7, MURDER CHARGE:  ON OR ABOUT AUGUST 28,

6    1997, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA AND

7    ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

8    UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

9    PREMEDITATION AND MALICE AFORETHOUGHT DID AID, ABET, ADVISE,

10   ENCOURAGE AND OTHERWISE PARTICIPATE IN THE MURDER OF ABDUL

11   SALAAM, IN VIOLATION OF TITLE 18 UNITED STATES CODE

12   SECTIONS 2(A) AND 1111 FOR THE PURPOSE OF GAINING ENTRANCE

13   TO OR MAINTAINING OR INCREASING HIS POSITION IN THE ARYAN

14   BROTHERHOOD, AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY

15   IN VIOLATION OF TITLE 18 UNITES STATES CODE

16   SECTION 1959(A)(1).

17        THE CHARGES AGAINST THE DEFENDANT ARE ALSO

18   CONTAINED IN THE FIRST SUPERSEDING INDICTMENT WHICH WAS READ

19   YESTERDAY.  THE INDICTMENT IS SIMPLY THE DESCRIPTION OF THE

20   CHARGES MADE BY THE GOVERNMENT AGAINST THE DEFENDANT.  IT IS

21   NOT EVIDENCE OF ANYTHING.

22        THE DEFENDANT HAS PLEADED NOT GUILTY TO THE

23   CHARGES AND IS PRESUMED INNOCENT UNLESS AND UNTIL PROVED

24   GUILTY BEYOND A REASONABLE DOUBT.

25        THE DEFENDANT HAS THE RIGHT TO REMAIN SILENT AND

1    NEVER HAS TO PROVE INNOCENCE OR PRESENT ANY EVIDENCE.

2         ALL RIGHT.  THE NEXT SEVERAL INSTRUCTIONS ARE

3    INSTRUCTIONS AS TO THE ELEMENTS OF EACH OF THE COUNTS, THAT

4    IS, THE REQUIREMENTS TO PROVE EACH OF THOSE COUNTS IN

5    GENERAL.

6         COUNT 1 OF THE INDICTMENT CHARGES THAT FROM A DATE

7    UNKNOWN UNTIL AT LEAST JULY 25, 2002, THE DEFENDANT DID

8    KNOWINGLY AND UNLAWFULLY CONDUCT AND PARTICIPATE DIRECTLY

9    AND INDIRECTLY IN THE CONDUCT OF THE AFFAIRS OF AN

10   ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY

11   CONSISTING OF A NUMBER OF RACKETEERING ACTS THAT ARE ALLEGED

12   IN COUNT 1, AND ALSO THAT THE ENTERPRISE ENGAGED IN AND ITS

13   ACTIVITIES AFFECTED INTERSTATE COMMERCE IN VIOLATION OF

14   18 UNITED STATES CODE SECTION 1962(C).

15        THE INDICTMENT FURTHER ALLEGES THAT THE ENTERPRISE

16   IS A CRIMINAL ORGANIZATION KNOWN AS THE ARYAN BROTHERHOOD,

17   INCLUDING ITS MEMBERS AND ASSOCIATES; THAT THE ARYAN

18   BROTHERHOOD ENGAGED IN RACKETEERING ACTIVITY INCLUDING

19   MURDER, ATTEMPTED MURDER, CONSPIRACY TO COMMIT MURDER,

20   EXTORTION, ROBBERY AND NARCOTICS TRAFFICKING; THAT THE ARYAN

21   BROTHERHOOD BEGAN ON AN UNKNOWN DATE AND CONTINUED UNTIL AT

22   LEAST JULY 25, 2002; THAT THE ARYAN BROTHERHOOD AND ITS

23   ACTIVITIES AFFECTED INTERSTATE COMMERCE; THAT THE DEFENDANT

24   WAS ASSOCIATED WITH THE ARYAN BROTHERHOOD; AND THAT THE

25   DEFENDANT WAS EITHER A LEADER WHO DIRECTED THE ACTIVITIES OF

1   OTHERS IN THE ARYAN BROTHERHOOD OR A MEMBER OF THE

2   ENTERPRISE WHO PARTICIPATED IN THOSE ACTIVITIES UNDER THE

3   DIRECTION OF THE LEADERS.

4           18 UNITED STATES CODE SECTION 1962 IS COMMONLY

5   REFERRED TO AS THE RICO STATUTE.  THE RELEVANT PROVISION OF

6   THE RICO STATUTE, 18 UNITED STATES CODE SECTION 1962(C),

7   PROVIDES AS FOLLOWS:  IT SHALL BE UNLAWFUL FOR ANY PERSON

8   EMPLOYED BY OR ASSOCIATED WITH ANY ENTERPRISE ENGAGED IN OR

9   THE ACTIVITIES OF WHICH AFFECT INTERSTATE COMMERCE TO

10  CONDUCT OR PARTICIPATE DIRECTLY OR INDIRECTLY IN THE CONDUCT

11  OF SUCH ENTERPRISE'S AFFAIRS THROUGH A PATTERN OF

12  RACKETEERING ACTIVITY OR A COLLECTION OF UNLAWFUL DEBT.

13          NOW I'M GOING TO INSTRUCT YOU ON THE ELEMENTS OF

14  THE RICO SUBSTANTIVE OFFENSES ALLEGED IN COUNT 1.

15          IN ORDER TO CONVICT A DEFENDANT OF THAT OFFENSE,

16  THE GOVERNMENT MUST PROVE ALL OF THE FOLLOWING FIVE ELEMENTS

17  BEYOND A REASONABLE DOUBT:

18          1.  AN ENTERPRISE, AS DESCRIBED IN THE INDICTMENT,

19  EXISTED AT OR ABOUT THE TIME ALLEGED IN THE INDICTMENT.  .

20          2.  THE ENTERPRISE OR ITS ACTIVITIES AFFECTED

21  INTERSTATE COMMERCE.

22          3.  THE DEFENDANT WAS ASSOCIATED WITH THE

23  ENTERPRISE.

24          4.  THE DEFENDANT KNOWINGLY CONDUCTED OR

25  PARTICIPATED EITHER DIRECTLY OR INDIRECTLY IN THE CONDUCT OF

1    THE AFFAIRS OF THE ENTERPRISE.

2         5.   THE DEFENDANT KNOWINGLY PARTICIPATED IN THE

3    CONDUCT OF THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN

4    OF RACKETEERING ACTIVITY AS DESCRIBED IN THE INDICTMENT,

5    THAT IS, THE COMMISSION AT LEAST TWO OF THE CHARGED

6    RACKETEERING ACTS WITHIN 10 YEARS OF EACH OTHER OR THROUGH

7    CAUSING OR AIDING AND ABETTING THE COMMISSION OF TWO SUCH

8    RACKETEERING ACTS.

9         ALL RIGHT.  NOW I'M GOING -- I READ YOU THOSE FIVE

10   ELEMENTS, AND NOW I'M GOING TO TELL YOU WHAT EACH OF THOSE

11   MEANS.

12        THE FIRST ELEMENT, ENTERPRISE:  FIRST, TO PROVE

13   THE RICO SUBSTANTIVE VIOLATION CHARGED IN COUNT 1, THE

14   GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THE

15   EXISTENCE OF AN ENTERPRISE.

16        AS USED IN THESE INSTRUCTIONS, THE TERM

17   "ENTERPRISE" INCLUDES ANY INDIVIDUAL PARTNERSHIP,

18   CORPORATION, ASSOCIATION OR OTHER LEGAL ENTITY, AND ANY

19   UNION OR PROOF OF INDIVIDUAL ASSOCIATED IN FACT ALTHOUGH NOT

20   A LEGAL ENTITY.

21        THE TERM "ENTERPRISE" AS USED IN THESE

22   INSTRUCTIONS THEREFORE MAY INCLUDE A GROUP OF PEOPLE

23   ASSOCIATED IN FACT EVEN THOUGH THIS ASSOCIATION IS NOT

24   RECOGNIZED AS A LEGAL ENTITY.

25        AN ENTERPRISE NEED NOT BE A FORMAL BUSINESS ENTITY

```
 1    SUCH AS A CORPORATION, BUT IT MAY BE MERELY AN INFORMAL

 2    ASSOCIATION OF INDIVIDUALS.  A GROUP OR ASSOCIATION OF

 3    PEOPLE CAN BE AN ENTERPRISE IF THESE INDIVIDUALS HAVE

 4    ASSOCIATED TOGETHER FOR A COMMON PURPOSE OF ENGAGING IN A

 5    COURSE OF CONDUCT.  SUCH AN ASSOCIATION OF PERSONS MAY BE

 6    ESTABLISHED BY EVIDENCE SHOWING AN ONGOING ORGANIZATION,

 7    FORMAL OR INFORMAL, AND BY EVIDENCE THAT THE PEOPLE MAKING

 8    UP THE ASSOCIATION FUNCTIONED AS A CONTINUING UNIT.

 9         THEREFORE, IN ORDER TO ESTABLISH THE EXISTENCE OF

10    SUCH AN ENTERPRISE, THE GOVERNMENT MUST PROVE THAT, ONE,

11    THERE IS AN ONGOING ORGANIZATION WITH SOME SORT OF FRAMEWORK

12    FOR MAKING OR CARRYING OUT DECISIONS; TWO, THE VARIOUS

13    MEMBERS AND ASSOCIATES OF THE ASSOCIATION FUNCTIONED AS A

14    CONTINUING UNIT TO ACHIEVE A COMMON PURPOSE; AND THREE, THE

15    ENTERPRISE IS SEPARATE AND APART FROM THE PATTERN OF

16    ACTIVITY IN WHICH IT ENGAGES, IN OTHER WORDS, IT HAS A

17    SEPARATE EXISTENCE FROM THE PATTERN OF RACKETEERING ACTS.

18         AND REGARDING ORGANIZATION, IT'S NOT NECESSARY

19    THAT THE ENTERPRISE HAVE ANY PARTICULAR OR FORMAL STRUCTURE,

20    BUT IT MUST HAVE SUFFICIENT ORGANIZATION THAT ITS MEMBERS

21    FUNCTIONED AND OPERATED IN A COORDINATED MANNER IN ORDER TO

22    CARRY OUT THE ALLEGED COMMON PURPOSE OR PURPOSES OF THE

23    ENTERPRISE.

24         CONTINUING MEMBERSHIP EXISTS EVEN WHERE THE

25    MEMBERSHIP CHANGES BY ADDING OR LOSING INDIVIDUALS DURING
```

1    THE COURSE OF ITS EXISTENCE.  THEREFORE SUCH AN ASSOCIATION

2    OF INDIVIDUALS MAY RETAIN ITS STATUS AS AN ENTERPRISE EVEN

3    THOUGH THE MEMBERSHIP OF THE ASSOCIATION CHANGES BY ADDING

4    OR LOSING INDIVIDUALS DURING THE COURSE OF ITS EXISTENCE.

5         SEPARATE EXISTENCE MEANS THAT THE ENTERPRISE HAS

6    AN EXISTENCE BEYOND THAT WHICH IS NECESSARY MERELY TO COMMIT

7    EACH OF THE CHARGED RACKETEERING ACTS, THAT IS, THAT THE

8    ORGANIZATION CONTINUED TO EXIST IN THE INTERVALS BETWEEN THE

9    ALLEGED RACKETEERING ACTIVITIES.  IT'S NOT NECESSARY,

10   HOWEVER, TO FIND THAT THE ENTERPRISE HAD SOME FUNCTION

11   WHOLLY UNRELATED TO THE RACKETEERING ACTIVITY.

12        YOU MAY CONSIDER PROOF OF THE RACKETEERING ACTS TO

13   DETERMINE WHETHER THE EVIDENCE ESTABLISHES THE EXISTENCE OF

14   THE CHARGED ENTERPRISE.  THE GOVERNMENT IS NOT REQUIRED TO

15   PROVE EACH AND EVERY ALLEGATION ABOUT THE ENTERPRISE OR THE

16   MANNER IN WHICH THE ENTERPRISE OPERATED.

17        THE SECOND ELEMENT, THIS STILL GOES TO THE RICO

18   CHARGE, ENGAGING IN OR THE EFFECT ON INTERSTATE COMMERCE:

19   AS I STATED EARLIER, THE GOVERNMENT MUST PROVE BEYOND A

20   REASONABLE DOUBT THAT THE RICO ENTERPRISE ENGAGED IN OR ITS

21   ACTIVITIES AFFECTED INTERSTATE COMMERCE.

22        "INTERSTATE COMMERCE" MEANS TRADE OR CONDUCTING

23   BUSINESS OR TRAVEL BETWEEN ONE STATE AND ANOTHER STATE OR

24   THE DISTRICT OF COLUMBIA.  THEREFORE INTERSTATE COMMERCE MAY

25   INCLUDE THE MOVEMENT OF MONEY, GOODS, SERVICES OR PERSONS

1    FROM ONE STATE TO ANOTHER STATE OR THE DISTRICT OF COLUMBIA.

2    THIS MAY INCLUDE, AMONG OTHER MATTERS, THE PURCHASE OR SALE

3    OF GOODS OR SUPPLIES FROM OUTSIDE THE STATE IN WHICH THE

4    ENTERPRISE IS LOCATED, THE USE OF INTERSTATE MAIL OR WIRE

5    FACILITIES, OR THE CAUSING OF ANY OF THOSE THINGS.

6             AN ENTERPRISE IS GENERALLY ENGAGED IN COMMERCE

7    WHEN IT IS ITSELF DIRECTLY ENGAGED IN THE PRODUCTION,

8    DISTRIBUTION OR ACQUISITION OF GOODS OR SERVICES IN

9    INTERSTATE COMMERCE.

10            IF YOU FIND THAT THE EVIDENCE IS SUFFICIENT TO

11   PROVE THAT THE ENTERPRISE WAS ENGAGED IN INTERSTATE

12   COMMERCE, THE REQUIRED NEXUS OR CONNECTION TO INTERSTATE

13   COMMERCE IS ESTABLISHED, AND THEREFORE THE GOVERNMENT IS NOT

14   REQUIRED TO PROVE THE ALTERNATIVE, THAT THE ACTIVITIES OF

15   THE ENTERPRISE AFFECTED INTERSTATE COMMERCE.

16            REGARDING THAT ALTERNATIVE METHOD OF SATISFYING

17   THIS ELEMENT, TO ESTABLISH THE REQUISITE EFFECT ON

18   INTERSTATE COMMERCE, THE GOVERNMENT IS NOT REQUIRED TO PROVE

19   A SIGNIFICANT OR A SUBSTANTIAL EFFECT ON INTERSTATE

20   COMMERCE, RATHER A MINIMAL EFFECT ON INTERSTATE COMMERCE IS

21   SUFFICIENT.

22            IT'S NOT NECESSARY FOR THE GOVERNMENT TO PROVE

23   THAT THE INDIVIDUAL RACKETEERING ACTS THEMSELVES AFFECTED

24   INTERSTATE COMMERCE.  RATHER, IT'S THE ENTERPRISE AND ITS

25   ACTIVITIES CONSIDERED IN THEIR ENTIRETY AS A WHOLE THAT MUST

1    BE SHOWN TO HAVE THAT EFFECT.  ON THE OTHER HAND, THIS

2    EFFECT ON INTERSTATE COMMERCE MAY BE ESTABLISHED THROUGH THE

3    EFFECT CAUSED BY THE INDIVIDUAL RACKETEERING ACTS.

4            MOREOVER, IT'S NOT NECESSARY FOR THE GOVERNMENT TO

5    PROVE THAT THE DEFENDANT KNEW THAT THE ENTERPRISE WOULD

6    AFFECT INTERSTATE COMMERCE, THAT THE DEFENDANT INTENDED TO

7    AFFECT INTERSTATE COMMERCE, OR THAT THE DEFENDANT ENGAGED IN

8    OR HIS ACTIVITIES AFFECTED INTERSTATE COMMERCE.

9            THE GOVERNMENT CONTENDS THAT THE ENTERPRISE IN

10   THIS CASE WAS ENGAGED IN OR AFFECTED INTERSTATE COMMERCE IN

11   THE FOLLOWING WAYS, AMONG OTHERS:  ONE, INTERSTATE TELEPHONE

12   CALLS MADE BY MEMBERS AND ASSOCIATES OF THE ARYAN

13   BROTHERHOOD; TWO, INTERSTATE TELEPHONE CALLS MADE BY PRISON

14   OFFICIALS AND OTHER LAW ENFORCEMENT OFFICIALS AS A RESULT OF

15   THE ACTIVITIES OF THE ARYAN BROTHERHOOD; THREE, INTERSTATE

16   TRAVEL OF MEMBERS AND ASSOCIATES OF THE ARYAN BROTHERHOOD

17   WHILE IN CUSTODY OR OTHERWISE; FOUR, INTERSTATE TRAVEL OF

18   PRISON OFFICIALS AND OTHER LAW ENFORCEMENT OFFICIALS AS A

19   RESULT OF THE ACTIVITIES OF THE ARYAN BROTHERHOOD; FIVE,

20   INTERSTATE MAILINGS BY MEMBERS AND ASSOCIATES OF THE ARYAN

21   BROTHERHOOD; AND SIX, INTERSTATE MAILINGS BY PRISON

22   OFFICIALS OR OTHER LAW ENFORCEMENT OFFICIALS AS A RESULT OF

23   THE ACTIVITIES OF THE ARYAN BROTHERHOOD.

24            THE GOVERNMENT IS NOT REQUIRED TO PROVE ALL THE

25   CIRCUMSTANCES OUTLINED ABOVE.  TO SATISFY THIS ELEMENT, THE

1    GOVERNMENT NEED ONLY PROVE BEYOND A REASONABLE DOUBT THAT

2    THE ACTIVITIES OF THE ENTERPRISE CONSIDERED IN THEIR

3    ENTIRETY HAD SOME MINIMAL EFFECT ON INTERSTATE COMMERCE OR

4    THAT THE ENTERPRISE WAS ENGAGED IN INTERSTATE COMMERCE.

5            THE THIRD ELEMENT THAT THE DEFENDANT WAS EMPLOYED

6    BY OR ASSOCIATED WITH THE ENTERPRISE:  THE THIRD ELEMENT THE

7    GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT IS THAT THE

8    GOVERNMENT (SIC) WAS EMPLOYED BY OR ASSOCIATED WITH THE

9    ENTERPRISE ABOUT WHICH I'VE ALREADY INSTRUCTED YOU.  THE

10   GOVERNMENT NEED NOT PROVE BOTH, EITHER ONE IS SUFFICIENT TO

11   ESTABLISH THIS ELEMENT, THAT IS, "EMPLOYED BY" OR

12   "ASSOCIATED WITH."

13           THE TERM "EMPLOYED BY" SHOULD BE GIVEN ITS COMMON,

14   PLAIN MEANING.  THUS A PERSON IS EMPLOYED BY AN ENTERPRISE

15   WHEN, FOR EXAMPLE, HE'S ON THE PAYROLL OF THE ENTERPRISE AND

16   PERFORMS SERVICES FOR THE ENTERPRISE, HOLDS A POSITION IN

17   THE ENTERPRISE OR HAS AN OWNERSHIP INTEREST IN THE

18   ENTERPRISE.

19           "ASSOCIATED WITH" ALSO SHOULD BE GIVEN ITS PLAIN

20   MEANING, THAT IS, TO JOIN OFTEN IN A LOOSE RELATIONSHIP AS A

21   PARTNER, FELLOW WORKER, COLLEAGUE, FRIEND, COMPANION OR ALLY

22   TO JOIN OR CONNECT WITH ONE ANOTHER.  THEREFORE A PERSON IS

23   ASSOCIATED WITH AN ENTERPRISE WHEN, FOR EXAMPLE, HE JOINS

24   WITH OTHER MEMBERS OF THE ENTERPRISE AND HE KNOWINGLY AIDS

25   OR FURTHERS THE ACTIVITY OF THE ENTERPRISE OR HE CONDUCTS

1    BUSINESS WITH OR THROUGH THE ENTERPRISE.  IT'S NOT REQUIRED

2    THAT THE DEFENDANT HAVE BEEN EMPLOYED BY OR ASSOCIATED WITH

3    THE ENTERPRISE FOR THE ENTIRE TIME THE ENTERPRISE EXISTED.

4            THE GOVERNMENT ALSO IS NOT REQUIRED TO PROVE THAT

5    THE DEFENDANT HAD A FORMAL POSITION IN THE ENTERPRISE OR

6    PARTICIPATED IN ALL THE ACTIVITIES OF THE ENTERPRISE OR HAD

7    FULL KNOWLEDGE OF ALL THE ACTIVITIES OF THE ENTERPRISE OR

8    KNEW ABOUT THE PARTICIPATION OF ALL THE OTHER MEMBERS OF THE

9    ENTERPRISE.  RATHER, IT'S SUFFICIENT THAT THE GOVERNMENT

10   PROVE BEYOND A REASONABLE DOUBT THAT AT SOME TIME DURING THE

11   EXISTENCE OF THE ENTERPRISE, AS ALLEGED IN THE INDICTMENT,

12   THE DEFENDANT WAS EMPLOYED BY OR ASSOCIATED WITH THE

13   ENTERPRISE WITHIN THE MEANING OF THOSE TERMS AS I HAVE JUST

14   EXPLAINED, AND THAT HE KNEW OF THE GENERAL NATURE OF THE

15   ENTERPRISE AND THAT THE ENTERPRISE EXTENDED BEYOND HIS OWN

16   ROLE IN THE ENTERPRISE.

17           THE FOURTH ELEMENT, CONDUCT OR PARTICIPATE IN THE

18   CONDUCT OF THE AFFAIRS OF THE ENTERPRISE:  THE FOURTH

19   ELEMENT THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT

20   IS THAT THE DEFENDANT CONDUCTED OR PARTICIPATED DIRECTLY OR

21   INDIRECTLY IN THE CONDUCT OF THE AFFAIRS OF THE ENTERPRISE.

22   SUCH PROOF MAY INCLUDE EVIDENCE THAT THE DEFENDANT

23   INTENTIONALLY PERFORMED ACTS, FUNCTIONS OR DUTIES WHICH ARE

24   NECESSARY TO OR HELPFUL IN THE OPERATION OF THE ENTERPRISE.

25           THUS THE GOVERNMENT MUST PROVE THAT THE DEFENDANT

1    PARTICIPATED IN THE OPERATION OR MANAGEMENT OF THE

2    ENTERPRISE ITSELF OR THAT HE HAD SOME PART IN DIRECTING THE

3    ENTERPRISE'S AFFAIRS.

4           HOWEVER, THE GOVERNMENT NEED NOT PROVE THAT THE

5    DEFENDANT EXERCISED SIGNIFICANT CONTROL OVER OR WITHIN THE

6    ENTERPRISE OR THAT HE HAD A FORMAL POSITION IN THE

7    ENTERPRISE, OR THAT HE HAD PRIMARY RESPONSIBILITY FOR THE

8    ENTERPRISE'S AFFAIRS.  RATHER, AN ENTERPRISE IS OPERATED NOT

9    JUST BY UPPER MANAGEMENT, BUT ALSO BY LOWER-RUNG

10   PARTICIPANTS IN THE ENTERPRISE WHO ARE UNDER THE DIRECTION

11   OF UPPER MANAGEMENT OR CARRY OUT UPPER MANAGEMENT'S ORDERS.

12          THEREFORE YOU MAY FIND GUILTY ALL WHO PARTICIPATED

13   IN THE CONDUCT OF THE ENTERPRISE WHETHER THEY ARE GENERALS

14   OR FOOT SOLDIERS.  AN ENTERPRISE ALSO MIGHT BE OPERATED OR

15   MANAGED BY ONE WHO EXERTS CONTROL OVER THE ENTERPRISE.

16          AND THE FIFTH ELEMENT, A PATTERN OF RACKETEERING

17   ACTIVITY:  THE FIFTH ELEMENT THE GOVERNMENT MUST PROVE

18   BEYOND A REASONABLE DOUBT IS THAT THE DEFENDANT ENGAGED IN A

19   PATTERN OF RACKETEERING ACTIVITY.  AS I'VE ALREADY STATED,

20   THE INDICTMENT ALLEGES THAT THE DEFENDANT AND OTHERS IN THE

21   ARYAN BROTHERHOOD ENTERPRISE COMMITTED NUMEROUS

22   MURDER-RELATED RACKETEERING ACTS INCLUDING MURDER, ATTEMPTED

23   MURDER, AIDING AND ABETTING MURDER AND ATTEMPTED MURDER AND

24   CONSPIRACY TO COMMIT MURDER.

25          TO ESTABLISH A PATTERN OF RACKETEERING ACTIVITY AS

1    ALLEGED IN COUNT 1 OF THE INDICTMENT, THE GOVERNMENT MUST

2    PROVE THREE ELEMENTS BEYOND A REASONABLE DOUBT:  ONE, THE

3    DEFENDANT INTENTIONALLY COMMITTED OR CAUSED OR AIDED AND

4    ABETTED THE COMMISSION OF TWO OR MORE OF THE RACKETEERING

5    ACTS ALLEGED IN THE INDICTMENT.  THESE TWO OR MORE

6    RACKETEERING ACTS MUST HAVE BEEN COMMITTED WITHIN 10 YEARS

7    OF EACH OTHER.

8         YOUR VERDICT MUST BE UNANIMOUS AS TO WHICH

9    SPECIFIC RACKETEERING ACTS YOU FIND THE DEFENDANT COMMITTED,

10   CAUSED OR AIDED AND ABETTED.

11        SHORTLY I'LL INSTRUCT YOU ON THE ELEMENTS

12   REGARDING EACH OF THE CHARGED RACKETEERING ACTS.

13        TWO, THE RACKETEERING ACTS ARE RELATED, THAT IS,

14   THEY HAVE THE SAME OR RELATED PURPOSES, RESULTS,

15   PARTICIPANTS, VICTIMS OR METHODS OF COMMISSION OR ARE

16   OTHERWISE INTERRELATED BY DISTINGUISHING CHARACTERISTICS AND

17   ARE NOT MERELY ISOLATED EVENTS.

18        TWO RACKETEERING ACTS MAY BE RELATED EVEN THOUGH

19   THEY ARE DISSIMILAR OR NOT DIRECTLY RELATED TO EACH OTHER,

20   PROVIDED THAT THE RACKETEERING ACTS ARE RELATED TO THE SAME

21   ENTERPRISE.  FOR EXAMPLE, THE REQUISITE RELATIONSHIP BETWEEN

22   THE RICO ENTERPRISE AND THE PREDICATE RACKETEERING ACT MAY

23   BE ESTABLISHED BY EVIDENCE THAT THE DEFENDANT WAS ENABLED TO

24   COMMIT THE RACKETEERING ACT SOLELY BY VIRTUE OF HIS POSITION

25   IN THE ENTERPRISE OR INVOLVEMENT IN OR CONTROL OVER ITS

1    AFFAIRS OR BY EVIDENCE THAT THE RACKETEERING ACT BENEFITED

2    THE ENTERPRISE OR BY EVIDENCE THE RACKETEERING ACT PROMOTED

3    OR FURTHERED THE PURPOSES OF THE ENTERPRISE.

4            THIRD, THE RACKETEERING ACTS THEMSELVES EITHER

5    EXTENDED OVER A SUBSTANTIAL PERIOD OF TIME OR THEY POSE A

6    THREAT OF CONTINUED CRIMINAL ACTIVITY.  THE GOVERNMENT NEED

7    NOT PROVE SUCH A THREAT OF CONTINUITY BY ANY MATHEMATICAL

8    FORMULA OR BY ANY PARTICULAR METHOD OF PROOF, BUT RATHER MAY

9    PROVE IT IN A VARIETY OF WAYS.

10           FOR EXAMPLE, THE THREAT OF CONTINUED UNLAWFUL

11   ACTIVITY MAY BE ESTABLISHED WHEN THE EVIDENCE SHOWS THAT THE

12   RACKETEERING ACTS ARE PART OF THE LONG-TERM ASSOCIATION THAT

13   EXISTS FOR CRIMINAL PURPOSES OR WHEN THE RACKETEERING ACTS

14   ARE SHOWN TO BE THE REGULAR WAY OF CONDUCTING THE AFFAIRS OF

15   THE ENTERPRISE.

16           MOREOVER, IN DETERMINING WHETHER THE GOVERNMENT

17   HAS PROVEN THE THREAT OF CONTINUED UNLAWFUL ACTIVITY, YOU

18   ARE NOT LIMITED TO CONSIDERATION OF THE SPECIFIC

19   RACKETEERING ACTS CHARGED AGAINST THE DEFENDANT.  RATHER, IN

20   ADDITION TO CONSIDERING SUCH ACTS, YOU ALSO MAY CONSIDER THE

21   NATURE OF THE ENTERPRISE AND OTHER UNLAWFUL ACTIVITIES OF

22   THE ENTERPRISE AND ITS MEMBERS VIEWED IN THEIR ENTIRETY

23   INCLUDING BOTH CHARGED AND UNCHARGED UNLAWFUL ACTIVITIES.

24           AS I JUST INSTRUCTED YOU, TO CONVICT THE DEFENDANT

25   OF THE RICO CHARGE, YOU MUST FIND THAT THE DEFENDANT

1    COMMITTED TWO RACKETEERING ACTS WITHIN 10 YEARS AS PART OF A

2    PATTERN OF RACKETEERING ACTIVITY.

3              AND SHORTLY I'LL GIVE YOU -- PROVIDE YOU WITH

4    INSTRUCTIONS REGARDING THOSE RACKETEERING ACTS, BUT LET ME

5    FIRST PROVIDE YOU WITH SOME PRELIMINARY INSTRUCTIONS.

6              FIRST, YOU'LL NOTICE FROM THE NUMBER OF

7    RACKETEERING ACTS IN THE INDICTMENT THAT A NUMBER OF

8    RACKETEERING ACTS HAVE BEEN ALLEGED.  BUT IN THIS TRIAL,

9    ONLY SIX OF THOSE RACKETEERING ACTS ARE BEFORE YOU.  THESE

10   ALLEGATIONS, THEREFORE, RELATE TO ONLY THOSE SIX

11   RACKETEERING ACTS.

12             SECOND, FIVE OF THE SIX RACKETEERING ACTS CHARGED

13   IN COUNT 1 THAT ARE BEFORE YOU INVOLVE MURDER, AIDING AND

14   ABETTING MURDER, ATTEMPTED MURDER AND CONSPIRACY TO COMMIT

15   MURDER.  BECAUSE RICO REQUIRES THAT THE RACKETEERING ACTS OF

16   MURDER BE CHARGEABLE UNDER STATE LAW, THE ELEMENTS OF THOSE

17   RACKETEERING ACTS ARE DEFINED BY STATE LAW.

18             IN THIS CASE, THE LAWS OF THREE DIFFERENT STATES

19   ARE INVOLVED:  KANSAS, ILLINOIS, AND PENNSYLVANIA.  ALTHOUGH

20   THE ELEMENTS OF THE VARIOUS MURDER-RELATED CRIMES CHARGED IN

21   THE RACKETEERING ACTS ARE QUITE SIMILAR FROM STATE TO STATE,

22   THE INSTRUCTIONS MUST BE FAITHFUL TO THE LAWS OF EACH STATE

23   IN QUESTION.

24             THE OTHER RACKETEERING ACT BEFORE YOU WHICH DOES

25   NOT INVOLVE MURDER INVOLVES CONSPIRACY UNDER FEDERAL LAW TO

1   DISTRIBUTE A CONTROLLED SUBSTANCE.  AND THE ELEMENTS OF THIS

2   ALLEGED RACKETEERING ACT WILL ALSO BE GIVEN TO YOU.

3            THIRD, YOU'LL NOTICE THAT SOME OF THE RACKETEERING

4   ACTS HAVE TWO SUBPARTS, (A) AND (B), AND THAT EACH SUBPART

5   ALLEGES A SEPARATE CRIME.  FOR EXAMPLE, IN RACKETEERING

6   ACT 10, SUBPART (A) ALLEGES THAT THE DEFENDANT PARTICIPATED

7   IN A CONSPIRACY TO MURDER JOEL BURKETT, AND SUBPART (B)

8   ALLEGES THAT THE DEFENDANT ATTEMPTED TO MURDER JOEL BURKETT.

9            THIS TWO-PART CHARGING METHOD IS FOUND IN THREE OF

10  THE SIX RACKETEERING ACTS THAT ARE BEFORE YOU.  IN EACH OF

11  THOSE, SUBPART (A) ALLEGES THE CRIME OF CONSPIRACY TO COMMIT

12  MURDER AND SUBPART (B) ALLEGES THE SUBSTANTIVE

13  MURDER-RELATED OFFENSE SUCH AS MURDER OR ATTEMPTED MURDER.

14           ALTHOUGH EACH OF THESE TWO-PART RACKETEERING ACTS

15  ALLEGED ALLEGES TWO SEPARATE CRIMES, THE TWO CRIMES

16  COMMIT -- CONSTITUTE ONLY ONE RACKETEERING ACT, NOT TWO.

17           SO TO PROVE A RACKETEERING ACT THAT INVOLVES

18  SUBPARTS (A) AND (B), THE GOVERNMENT NEED ONLY ESTABLISH

19  ONLY ONE OF THOSE, ONE OF THE CRIMES ALLEGED IS THAT

20  RACKETEERING ACT, EITHER SUBPART (A) OR (B), BUT NOT BOTH.

21           THIRD, ALTHOUGH TO CONVICT A DEFENDANT, YOU MUST

22  FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT COMMITTED

23  TWO RACKETEERING ACTS WITHIN 10 YEARS AS PART OF A PATTERN

24  OF RACKETEERING, YOU DO NOT HAVE TO FIND THAT THE DEFENDANT

25  COMMITTED THOSE RACKETEERING ACTS PERSONALLY OR DIRECTLY.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1              AS I'LL EXPLAIN, A DEFENDANT MAY BE HELD

2     RESPONSIBLE FOR THE COMMISSION OF A CRIMINAL ACT IF HE HAS

3     COMMITTED THE ACT PERSONALLY AND DIRECTLY OR IF HE HAS

4     CAUSED, AIDED, ABETTED, COUNSELED, COMMANDED, INDUCED OR

5     PROCURED THE COMMISSION OF THE CRIMINAL ACT.  THIS IS

6     SOMETIMES CALLED AIDING AND ABETTING LIABILITY.

7              THERE ARE ALSO CIRCUMSTANCES WHERE A DEFENDANT CAN

8     BE HELD CRIMINALLY RESPONSIBLE FOR A CRIME COMMITTED

9     PURSUANT TO A CONSPIRACY OF WHICH HE'S A MEMBER.  THIS IS

10    SOMETIMES CALLED CO-CONSPIRATOR LIABILITY.

11             I'LL PROVIDE YOU WITH FURTHER INSTRUCTIONS ON

12    THOSE LEGAL PRINCIPLES, BUT IT'S USEFUL FOR YOU TO BE

13    FAMILIAR WITH THOSE CONCEPTS PRELIMINARILY.

14             AND WITH THOSE PRINCIPLES IN MIND, LET'S TURN TO

15    THE ELEMENTS OF THE RACKETEERING ACTS THEMSELVES.

16    EVENTUALLY -- I'M NOT GOING TO TALK ABOUT THIS TODAY, BUT AT

17    THE END OF THE CASE, AS PART OF THE SPECIAL VERDICT FORM,

18    YOU'LL BE ASKED TO COMPLETE -- YOU'LL BE PROVIDED WITH A

19    LISTING OF THE RACKETEERING ACTS, THE VICTIMS AND THE

20    CHARGES.

21             SO NOW I'M GOING TO INSTRUCT YOU ON THE ELEMENTS

22    OF THE RACKETEERING ACT 10.  RACKETEERING ACT 10 HAS TWO

23    SUBPARTS, (A) AND (B).  AND AS I SAID EARLIER, TO FIND A

24    DEFENDANT COMMITTED A RACKETEERING ACT, THE GOVERNMENT MUST

25    PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT COMMITTED

1    EITHER THE CRIME ALLEGED IN SUBPART (A) OR THE CRIME CHARGED

2    IN SUBPART (B), BUT NOT BOTH.

3           SO SUBPART (A) OF RACKETEERING ACT 10:  SUBPART

4    (A) OF RACKETEERING ACT 10 ALLEGES THAT BEGINNING ON A DATE

5    UNKNOWN TO THE GRAND JURY AND CONTINUING UNTIL MARCH 1,

6    1992, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA AND

7    ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

8    CONSPIRED TO MURDER JOEL BURKETT, AND A CO-CONSPIRATOR

9    COMMITTED AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY IN

10   VIOLATION OF ILLINOIS CRIMINAL CODE SECTIONS 8-2 AND 9-1.

11          ILLINOIS CRIMINAL CODE SECTION 8-2 PROVIDES A

12   PERSON COMMITS CONSPIRACY WHEN, WITH THE INTENT THAT AN

13   OFFENSE BE COMMITTED, HE AGREES WITH ANOTHER TO THE

14   COMMISSION OF THAT OFFENSE.  NO PERSON MAY BE CONVICTED OF

15   CONSPIRACY TO COMMIT AN OFFENSE UNLESS AN ACT IN FURTHERANCE

16   OF SUCH AN AGREEMENT IS ALLEGED AND PROVED TO HAVE BEEN

17   COMMITTED BY HIM OR BY A CO-CONSPIRATOR.

18          ILLINOIS CRIMINAL CODE SECTION 9-1 PROVIDES THAT A

19   PERSON WHO KILLS ANOTHER INDIVIDUAL WITHOUT LAWFUL

20   JUSTIFICATION COMMITS FIRST DEGREE MURDER.  IF IN PERFORMING

21   THE ACT WHICH CAUSED THE DEATH, ONE, HE EITHER INTENDS TO

22   KILL OR DO GREAT BODILY HARM TO THAT INDIVIDUAL OR ANOTHER,

23   OR KNOWS THAT SUCH ACTS WILL CAUSE DEATH TO THAT INDIVIDUAL

24   OR ANOTHER.

25          IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

1    SUBPART (A) OF RACKETEERING ACT 10, THE GOVERNMENT MUST

2    PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:

3    ONE, ON OR ABOUT THE DATES IN THE INDICTMENT, TWO, DEFENDANT

4    SAHAKIAN AGREED WITH OTHERS TO COMMIT THE FIRST DEGREE

5    MURDER OF JOEL BURKETT, THREE, DEFENDANT SAHAKIAN MADE THAT

6    AGREEMENT WITH THE INTENT OF COMMITTING THE FIRST DEGREE

7    MURDER OF JOEL BURKETT, AND FOUR, AN ACT IN FURTHERANCE OF

8    THE AGREEMENT WAS PERFORMED IN THE STATE OF ILLINOIS BY ANY

9    PARTY TO THE AGREEMENT.

10           A PERSON COMMITS THE OFFENSE OF FIRST DEGREE

11    MURDER WHEN HE KILLS AN INDIVIDUAL IF IN PERFORMING THE ACTS

12    WHICH CAUSED THE DEATH HE INTENDS TO KILL OR CAUSE GREAT

13    BODILY HARM TO THAT INDIVIDUAL.

14           AN AGREEMENT MAY BE IMPLIED FROM THE CONDUCT OF

15    THE PARTIES ALTHOUGH THEY ACTED SEPARATELY OR BY DIFFERENT

16    MEANS AND DID NOT COME TOGETHER OR ENTER INTO AN EXPRESS

17    AGREEMENT.

18           SUBPART (B) OF RACKETEERING ACT 10:  SUBPART (B)

19    OF RACKETEERING ACT 10 ALLEGES THAT ON OR ABOUT

20    MARCH 1 1992, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA AND

21    ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

22    UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

23    PREMEDITATION AND MALICE AFORETHOUGHT, DID AID, ABET,

24    ADVISE, ENCOURAGE AND OTHERWISE WILLFULLY PARTICIPATE IN THE

25    ATTEMPTED MURDER OF JOEL BURKETT IN VIOLATION OF ILLINOIS

24

CRIMINAL CODE SECTION 5-2, 8-4 AND 9-1.

ILLINOIS CRIMINAL CODE SECTION 9-1 PROVIDES THAT A PERSON WHO KILLS ANOTHER INDIVIDUAL WITHOUT LAWFUL JUSTIFICATION COMMITS FIRST DEGREE MURDER IF, IN PERFORMING THE ACTS WHICH CAUSED THE DEATH, ONE, HE EITHER INTENDS TO KILL OR DO GREAT BODILY HARM TO THAT INDIVIDUAL OR ANOTHER OR KNOWS THAT SUCH ACTS WILL CAUSE DEATH TO THAT INDIVIDUAL OR ANOTHER.

ILLINOIS CRIMINAL CODE SECTION 5-2 PROVIDES THAT A PERSON IS LEGALLY ACCOUNTABLE FOR THE CONDUCT OF ANOTHER WHEN EITHER BEFORE OR DURING THE COMMISSION OF AN OFFENSE AND WITH THE INTENT TO PROMOTE OR FACILITATE SUCH COMMISSION, HE SOLICITS, AIDS, ABETS, AGREES OR ATTEMPTS TO AID SUCH OTHER IN THE PLANNING OR COMMISSION OF THE OFFENSE.

ILLINOIS CRIMINAL CODE SECTION 8-4 PROVIDES THAT A PERSON COMMITS AN ATTEMPT WHEN, WITH INTENT TO COMMIT A SPECIFIC OFFENSE, HE DOES ANY ACT WHICH CONSTITUTES A SUBSTANTIAL STEP TOWARDS THE COMMISSION OF THAT OFFENSE.

IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF SUBPART (B) OF RACKETEERING ACT 10, THE GOVERNMENT MUST PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT: ONE, ON OR ABOUT THE DATE ALLEGED IN THE INDICTMENT IN THE STATE OF ILLINOIS, TWO, SOMEONE ATTEMPTED TO COMMIT THE FIRST DEGREE MURDER OF JOEL BURKETT, THAT IS, SOMEONE WHO INTENDED TO KILL OR DO GREAT BODILY HARM TO JOEL BURKETT DID

1    AN ACT WHICH CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE

2    KILLING OF JOEL BURKETT.  THE KILLING NEED NOT HAVE BEEN

3    ACCOMPLISHED; THREE, BEFORE THE ATTEMPTED FIRST DEGREE

4    MURDER OF JOEL BURKETT, DEFENDANT SAHAKIAN KNOWINGLY

5    SOLICITED OR AIDED AND ABETTED THE PLANNING OR COMMISSION OF

6    THAT OFFENSE OR ATTEMPTED TO DO TO SO; FOUR, DEFENDANT

7    SAHAKIAN ACTED BEFORE THE COMMISSION OF THAT OFFENSE WITH

8    THE INTENT TO PROMOTE OR FACILITATE THE COMMISSION OF THAT

9    OFFENSE.

10          ACTUAL PHYSICAL PRESENCE AT THE COMMISSION OF A

11   CRIME IS NOT A REQUIREMENT FOR A LEGAL RESPONSIBILITY.

12   INTENT TO PROMOTE OR FACILITATE THE COMMISSION OF AN OFFENSE

13   MAY BE SHOWN BY EVIDENCE THAT THE DEFENDANT SHARED A

14   CRIMINAL INTENT OF THE PRINCIPAL OR EVIDENCE THAT THERE WAS

15   A COMMON CRIMINAL DESIGN.

16          ALL RIGHT.  NOW I'M GOING TO INSTRUCT YOU ON THE

17   ELEMENTS OF RACKETEERING ACT 20.  RACKETEERING ACT 20 HAS

18   TWO SUBPARTS, (A) AND (B).  AND AS I SAID EARLIER, TO FIND

19   THAT A DEFENDANT COMMITTED A RACKETEERING ACT, THE

20   GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT THE

21   DEFENDANT COMMITTED EITHER THE CRIME CHARGED IN SUBPART (A)

22   OR THE CRIME CHARGED IN SUBPART (B), BUT NOT BOTH.

23          SUBPART (A) OF RACKETEERING ACT 20:  SUBPART (A)

24   OF RACKETEERING ACT 20 ALLEGES THAT BEGINNING ON A DATE

25   UNKNOWN TO THE GRAND JURY AND CONTINUING UNTIL AT LEAST

1    SEPTEMBER 30, 1993, WITHIN THE CENTRAL DISTRICT OF

2    CALIFORNIA AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN

3    AND OTHERS CONSPIRED TO MURDER JIMMY LEE INMAN, AND A

4    CO-CONSPIRATOR COMMITTED AN OVERT ACT IN FURTHERANCE OF THE

5    CONSPIRACY IN VIOLATION OF ILLINOIS CRIMINAL CODE

6    SECTIONS 8-2 AND 9-1.

7           ILLINOIS CRIMINAL CODE SECTION 8-2 PROVIDES THAT A

8    PERSON WHO KILLS ANOTHER INDIVIDUAL WITHOUT LAWFUL

9    JUSTIFICATION COMMITS FIRST DEGREE MURDER IF, IN PERFORMING

10   THE ACTS WHICH CAUSED THE DEATH, HE EITHER INTENDS TO KILL

11   OR DO GREAT BODILY HARM TO THAT INDIVIDUAL OR ANOTHER OR

12   KNOWS THAT SUCH ACTS WILL CAUSE DEATH TO THAT INDIVIDUAL OR

13   ANOTHER.

14          IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

15   SUBPART (A) OF RACKETEERING ACT 20, THE GOVERNMENT MUST

16   PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:

17   ONE, ON OR ABOUT THE DATES IN THE INDICTMENT, TWO, DEFENDANT

18   SAHAKIAN AGREED WITH OTHERS TO COMMIT THE FIRST DEGREE

19   MURDER OF JIMMY LEE INMAN; THREE, DEFENDANT SAHAKIAN MADE

20   THAT AGREEMENT WITH THE INTENT OF COMMITTING THE FIRST

21   DEGREE MURDER OF JIMMY LEE INMAN; AND FOUR, AN ACT IN

22   FURTHERANCE OF THE AGREEMENT WAS PERFORMED IN THE STATE OF

23   ILLINOIS BY ANY PARTY TO THE AGREEMENT.

24          A PERSON COMMITS THE OFFENSE OF FIRST DEGREE

25   MURDER WHEN HE KILLS AN INDIVIDUAL IF, IN PERFORMING THE

1  ACTS WHICH CAUSED THE DEATH, HE INTENDS TO KILL OR CAUSE

2  GREAT BODILY HARM TO THAT INDIVIDUAL.  AN AGREEMENT MAY BE

3  IMPLIED FROM THE CONDUCT OF THE PARTIES ALTHOUGH THEY ACTED

4  SEPARATELY BY DIFFERENT MEANS AND DID NOT COME TOGETHER TO

5  ENTER INTO AN EXPRESS AGREEMENT.

6           SUBPART (B) OF RACKETEERING ACT 20 ALLEGES THAT ON

7  OR ABOUT SEPTEMBER 30, 1993, WITHIN THE CENTRAL DISTRICT OF

8  CALIFORNIA AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN

9  AND OTHERS UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY

10  AND WITH PREMEDITATION AND MALICE AFORETHOUGHT, DID AID,

11  ABET, ADVISE, ENCOURAGE AND OTHERWISE WILLFULLY PARTICIPATE

12  IN THE ATTEMPTED MURDER OF JIMMY LEE INMAN IN VIOLATION OF

13  ILLINOIS CRIMINAL CODE SECTIONS 5-2, 8-4 AND 9-1.

14           ILLINOIS CRIMINAL CODE SECTION 9-1 PROVIDES THAT A

15  PERSON WHO KILLS ANOTHER INDIVIDUAL WITHOUT LAWFUL

16  JUSTIFICATION COMMITS FIRST DEGREE MURDER IF, IN PERFORMING

17  THE ACTS WHICH CAUSED THE DEATH, HE EITHER INTENDS TO KILL

18  OR DO GREAT BODILY HARM TO THAT INDIVIDUAL OR ANOTHER OR

19  KNOWS THAT HIS ACTS WILL CAUSE DEATH TO THAT INDIVIDUAL OR

20  ANOTHER.

21           ILLINOIS CRIMINAL CODE SECTION 5-2 PROVIDES THAT A

22  PERSON IS LEGALLY ACCOUNTABLE FOR THE CONDUCT OF ANOTHER

23  WHEN, EITHER BEFORE OR DURING THE COMMISSION OF OFFENSE AND

24  WITH THE INTENT TO PROMOTE OR FACILITATE SUCH COMMISSION, HE

25  SOLICITS, AIDS, ABETS, AGREES OR ATTEMPTS TO AID SUCH OTHER

1    IN THE PLANNING OR COMMISSION OF THE OFFENSE.

2          ILLINOIS CRIMINAL CODE SECTION 8-4 PROVIDES THAT A

3    PERSON COMMITS AN ATTEMPT WHEN, WITH INTENT TO COMMIT A

4    SPECIFIC OFFENSE, HE DOES ANY ACT WHICH CONSTITUTES A

5    SUBSTANTIAL STEP TOWARDS THE COMMISSION OF THAT OFFENSE.

6          IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

7    SUBPART (B) OF RACKETEERING ACT 20, THE GOVERNMENT MUST

8    PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:

9    ONE, ON OR ABOUT THE DATE ALLEGED IN THE INDICTMENT IN THE

10   STATE OF ILLINOIS, TWO, SOMEONE ATTEMPTED TO COMMIT THE

11   FIRST DEGREE MURDER OF JIMMY LEE INMAN, THAT IS, SOMEONE WHO

12   INTENDED TO KILL OR DO GREAT BODILY HARM TO JIMMY LEE INMAN

13   DID AN ACT WHICH CONSTITUTED A SUBSTANTIAL STEP TOWARDS THE

14   KILLING OF JIMMY LEE INMAN.  THE KILLING NEED NOT HAVE BEEN

15   ACCOMPLISHED.  THREE, BEFORE THE ATTEMPTED FIRST DEGREE

16   MURDER OF JIMMY LEE INMAN, DEFENDANT SAHAKIAN KNOWINGLY

17   SOLICITED OR AIDED AND ABETTED THE PLANNING OR COMMISSION OF

18   THAT OFFENSE, OR ATTEMPTED TO DO SO.  FOUR, DEFENDANT

19   SAHAKIAN ACTED BEFORE THE COMMISSION OF THAT OFFENSE WITH

20   THE INTENT TO PROMOTE OR FACILITATE THE COMMISSION OF THAT

21   OFFENSE.

22          ACTUAL PHYSICAL PRESENCE OF THE COMMISSION OF A

23   CRIME IS NOT A REQUIREMENT FOR LEGAL RESPONSIBILITY.  INTENT

24   TO PROMOTE OR FACILITATE THE COMMISSION OF AN OFFENSE MAY BE

25   SHOWN BY EVIDENCE THAT THE DEFENDANT SHARED A CRIMINAL

1    INTENT OF THE PRINCIPAL OR EVIDENCE THAT THERE WAS A COMMON

2    CRIMINAL DESIGN.

3            RACKETEERING ACT 29.  THAT RACKETEERING ACT HAS

4    TWO SUBPARTS, (A) AND (B).  AND AS I TOLD YOU EARLIER, THE

5    GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT THE

6    DEFENDANT COMMITTED EITHER THE CRIME CHARGED IN SUBPART (A)

7    OR THE CRIME CHARGED IN SUBPART (B), BUT NOT BOTH.

8            SUBPART (A) OF RACKETEERING ACT 29 ALLEGES THAT

9    BEGINNING ON A DATE UNKNOWN TO THE GRAND JURY AND CONTINUING

10   TO AUGUST 25, 1995, WITHIN THE CENTRAL DISTRICT OF

11   CALIFORNIA AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN

12   AND OTHERS CONSPIRED TO MURDER CHARLES LEGER, AND A

13   CO-CONSPIRATOR COMMITTED AN OVERT ACT IN FURTHERANCE OF THE

14   CONSPIRACY IN VIOLATION OF KANSAS CRIMINAL CODE

15   SECTIONS 21-3302 AND 21-3401.

16           KANSAS CRIMINAL CODE SECTION 21-3302 PROVIDES THAT

17   A CONSPIRACY IS AN AGREEMENT WITH ANOTHER PERSON TO COMMIT A

18   CRIME OR TO ASSIST ANOTHER TO COMMIT A CRIME.  NO PERSON MAY

19   BE CONVICTED OF A CONSPIRACY UNLESS AN OVERT ACT IN

20   FURTHERANCE OF SUCH CONSPIRACY ALLEGED AND PROVED TO HAVE

21   BEEN COMMITTED BY HIM OR BY A CO-CONSPIRATOR.

22           KANSAS CRIMINAL CODE SECTION 21-3401 PROVIDES THAT

23   MURDER IN THE FIRST DEGREE IS THE KILLING OF A HUMAN BEING

24   COMMITTED INTENTIONALLY AND WITH PREMEDITATION.

25           IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

1    SUBPART (A) OF RACKETEERING ACT 29, THE GOVERNMENT MUST

2    PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:

3    ONE, ON OR ABOUT THE DATE ALLEGED IN THE INDICTMENT, TWO,

4    DEFENDANT SAHAKIAN AGREED WITH OTHERS TO COMMIT THE FIRST

5    DEGREE MURDER OF CHARLES LEGER, THAT IS, THEY AGREED TO KILL

6    LEGER INTENTIONALLY AND WITH PREMEDITATION; THREE, DEFENDANT

7    SAHAKIAN INTEND THAT THE FIRST DEGREE MURDER OF CHARLES

8    LEGER BE COMMITTED; AND FOUR, A CONSPIRATOR COMMITTED AN

9    OVERT ACT IN THE STATE OF KANSAS IN FURTHERANCE OF THE

10   AGREEMENT.

11        A CONSPIRACY IS AN AGREEMENT WITH OTHER PERSONS TO

12   COMMIT A CRIME OR TO ASSIST IN COMMITTING A CRIME

13   FOLLOWING -- FOLLOWED BY AN ACT IN FURTHERANCE OF THE

14   AGREEMENT.  THE AGREEMENT MAY BE ESTABLISHED IN ANY MANNER

15   SUFFICIENT TO SHOW UNDERSTANDING.  IT MAY BE ORAL OR WRITTEN

16   OR INFERRED FROM ALL THE FACTS AND CIRCUMSTANCES.

17        AN ACT IN FURTHERANCE OF THE AGREEMENT IS ANY ACT

18   KNOWINGLY COMMITTED BY A MEMBER OF THE CONSPIRACY IN AN

19   EFFORT TO EFFECT OR ACCOMPLISH THE OBJECT OF THE CONSPIRACY.

20   THE ACT ITSELF NEED NOT BE CRIMINAL IN NATURE.  IT MUST,

21   HOWEVER, BE AN ACT WHICH FOLLOWS AND TENDS TOWARDS THE

22   ACCOMPLISHMENT OF THE OBJECT OF THE CONSPIRACY.

23        THE ACT MAY BE COMMITTED BY A CONSPIRATOR ALONE.

24   IT'S NOT NECESSARY THAT OTHER CO-CONSPIRATORS BE PRESENT

25   WHEN THE ACT IS COMMITTED.  PROOF OF ONLY ONE SUCH ACT IS

1    SUFFICIENT.

2          MURDER IN THE FIRST DEGREE IS A KILLING DONE

3    INTENTIONALLY, MALICIOUSLY, DELIBERATELY AND WITH

4    PREMEDITATION.

5          SUBPART (B) OF RACKETEERING ACT 29:  SUBPART (B)

6    OF RACKETEERING ACT 29 ALLEGES THAT ON OR ABOUT

7    AUGUST 25, 1995, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

8    UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

9    PREMEDITATION AND MALICE AFORETHOUGHT, DID AID, ABET,

10    ADVISE, ENCOURAGE AND OTHERWISE WILLFULLY PARTICIPATE IN THE

11    MURDER OF CHARLES LEGER IN VIOLATION OF KANSAS CRIMINAL CODE

12    SECTIONS 21-3205 AND 21-3401.

13          KANSAS CRIMINAL CODE SECTION 21-3401 PROVIDES THAT

14    MURDER IN THE FIRST DEGREE IS THE KILLING OF A HUMAN BEING

15    COMMITTED INTENTIONALLY AND WITH PREMEDITATION.

16          KANSAS CRIMINAL CODE 21-3205 PROVIDES THAT A

17    PERSON IS CRIMINALLY RESPONSIBLE FOR A CRIME COMMITTED BY

18    ANOTHER IF HE INTENTIONALLY AIDS, ABETS, ADVISES, HIRES,

19    COUNSELS OR PROCURES THE OTHER TO COMMIT THE CRIME.

20          IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

21    SUBPART (B) OF RACKETEERING ACT 29, THE GOVERNMENT MUST

22    PROVE THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:

23    ONE, ON OR ABOUT THE DATE ALLEGED IN THE INDICTMENT IN THE

24    STATE OF KANSAS, TWO, SOMEONE COMMITTED THE FIRST DEGREE

25    MURDER OF CHARLES LEGER, THAT IS, SOMEONE KILLED LEGER

1    MALICIOUSLY, DELIBERATELY AND WITH PREMEDITATION.

2    "PREMEDITATION" MEANS THEY HAVE THOUGHT OVER THE MATTER

3    BEFOREHAND; THREE, BEFORE OR DURING THE FIRST DEGREE MURDER

4    OF CHARLES LEGER, DEFENDANT SAHAKIAN INTENTIONALLY AIDED,

5    ABETTED, HIRED, COUNSELED OR PROCURED THE COMMISSION OF THE

6    FIRST DEGREE MURDER OF CHARLES LEGER WITH THE INTENT TO

7    PROMOTE OR ASSIST IN ITS COMMISSION.

8         A PERSON WHO INTENTIONALLY AIDS AND ABETS THE

9    COMMISSION OF A CRIME WITH THE INTENT TO PROMOTE OR ASSIST

10   ITS COMMISSION MAY BE HELD CRIMINALLY RESPONSIBLE FOR THE

11   CRIME COMMITTED REGARDLESS OF THE EXTENT OF THE DEFENDANT'S

12   PARTICIPATION IN THE ACTUAL COMMISSION OF THE CRIMES.

13        LET ME NOW INSTRUCT YOU ON THE ELEMENTS OF

14   RACKETEERING ACT 30, WHICH ALLEGES THAT BEGINNING ON A DATE

15   UNKNOWN TO THE GRAND JURY AND CONTINUING TO AT LEAST

16   SEPTEMBER 21, 1995, WITHIN THE CENTRAL DISTRICT OF

17   CALIFORNIA, AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN

18   AND OTHERS KNOWINGLY AND WILLFULLY CONSPIRED AND AGREED WITH

19   EACH OTHER TO COMMIT AN OFFENSE AGAINST THE UNITED STATES,

20   NAMELY TO DISTRIBUTE CONTROLLED SUBSTANCES INCLUDING HEROIN,

21   METHAMPHETAMINE AND COCAINE IN VIOLATION OF TITLE 21 UNITED

22   STATES CODE SECTIONS 841(A)(1) AND 846.

23        TITLE 21 UNITED STATES CODE SECTIONS 841(A)(1) AND

24   846 PROVIDE THAT IT SHALL BE UNLAWFUL FOR ANY PERSON TO

25   CONSPIRE, KNOWINGLY OR INTENTIONALLY, TO MANUFACTURE,

1   DISTRIBUTE OR DISPENSE OR POSSESS WITH THE INTENT TO

2   MANUFACTURE, DISTRIBUTE OR DISPENSE A CONTROLLED SUBSTANCE.

3            IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

4   RACKETEERING ACT 30, THE GOVERNMENT MUST PROVE EACH OF THE

5   FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:  ONE,

6   BEGINNING ON A DATE UNKNOWN AND CONTINUING TO -- AND ENDING

7   ON OR ABOUT SEPTEMBER 21, 1995, THERE WAS AN AGREEMENT

8   BETWEEN TWO OR MORE PERSONS TO COMMIT -- EXCUSE ME.  THERE

9   IS AN AGREEMENT BETWEEN TWO OR MORE PERSONS TO KNOWINGLY OR

10  INTENTIONALLY DISTRIBUTE A CONTROLLED SUBSTANCE INCLUDING

11  HEROIN, METHAMPHETAMINE OR COCAINE; TWO, SAHAKIAN BECAME A

12  MEMBER OF THE CONSPIRACY KNOWING THAT AT LEAST ONE OF ITS

13  OBJECTS AND INTENDING TO HELP ACCOMPLISH IT.

14           A CONSPIRACY IS A KIND OF CRIMINAL PARTNERSHIP, AN

15  AGREEMENT OF TWO OR MORE PERSONS TO COMMIT ONE OR MORE

16  CRIMES.  THE CRIME OF CONSPIRACY IS THE AGREEMENT TO DO

17  SOMETHING UNLAWFUL.  IT DOES NOT MATTER WHETHER THE CRIME

18  AGREED UPON WAS COMMITTED.

19           FOR A CONSPIRACY TO HAVE EXISTED, IT'S NOT

20  NECESSARY THAT THE CONSPIRATORS MADE A FORMAL AGREEMENT OR

21  THAT THEY AGREED ON EVERY DETAIL OF THE CONSPIRACY.  IT'S

22  NOT ENOUGH, HOWEVER, THAT THEY SIMPLY MET, DISCUSSED MATTERS

23  OF COMMON INTEREST, ACTED IN SIMILAR WAYS OR PERHAPS HELPED

24  ONE ANOTHER.  YOU MUST FIND THAT THERE WAS A PLAN TO COMMIT

25  THE CRIME ALLEGED IN THE INDICTMENT AS AN OBJECT OF THE

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    CONSPIRACY.

2           ONE BECOMES A MEMBER OF A CONSPIRACY BY WILLFULLY

3    PARTICIPATING IN THE UNLAWFUL PLAN WITH THE INTENT TO

4    ADVANCE OR FURTHER SOME OBJECT OR PURPOSE OF THE CONSPIRACY

5    EVEN THOUGH THE -- A PERSON DOES NOT HAVE FULL KNOWLEDGE OF

6    ALL THE DETAILS OF THE CONSPIRACY.  FURTHERMORE, ONE WHO

7    WILLFULLY JOINS AN EXISTING CONSPIRACY IS AS RESPONSIBLE FOR

8    IT AS THE ORIGINATORS.

9           ON THE OTHER HAND, ONE WHO HAS NO KNOWLEDGE OF A

10   CONSPIRACY BUT HAPPENS TO ACT IN THE WAY WHICH FURTHERS SOME

11   OBJECT OR PURPOSE OF THE CONSPIRACY DOES NOT THEREFORE

12   BECOME A CONSPIRATOR.  AND SIMILARLY, A PERSON DOES NOT

13   BECOME A CONSPIRATOR SIMPLY BY ASSOCIATING WITH ONE OR MORE

14   PERSONS WHO ARE CONSPIRATORS NOR MERELY BY KNOWING THAT A

15   CONSPIRACY EXISTS.

16          AS I'VE ALREADY EXPLAINED TO YOU, CERTAIN OF THE

17   OTHER CONSPIRACIES CHARGED AS RACKETEERING ACTS IN COUNT 1

18   ALSO REQUIRE PROOF OF AN OVERT ACT.  THAT REQUIREMENT FOR AN

19   OVERT ACT DOES NOT APPLY TO THE CONSPIRACY CHARGED IN

20   RACKETEERING ACT 30.

21          ALL RIGHT.  LET ME INSTRUCT YOU ON THE ELEMENTS OF

22   RACKETEERING ACT 34.  IT DOES NOT HAVE TWO SUBPARTS.

23   RACKETEERING ACT 34 ALLEGES THAT BEGINNING ON A DATE UNKNOWN

24   TO THE GRAND JURY AND CONTINUING TO AT LEAST SEPTEMBER 1997,

25   DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS CONSPIRED TO

1    MURDER WALTER JOHNSON, AND A CO-CONSPIRATOR COMMITTED AN

2    OVERT ACT IN FURTHERANCE OF THE CONSPIRACY IN VIOLATION OF

3    ILLINOIS CRIMINAL CODE SECTIONS 8-2 AND 9-1.

4            I'M NOT GOING TO READ TO YOU AGAIN THE DEFINITIONS

5    OF THOSE TWO STATUTES BECAUSE I READ THAT IN THE EARLIER

6    INSTRUCTIONS, BUT THEY'RE REPEATED HERE IN WRITING FOR YOU.

7            IN ORDER TO FIND DEFENDANT SAHAKIAN GUILTY OF

8    RACKETEERING ACT 34, THE GOVERNMENT MUST PROVE THE FOLLOWING

9    ELEMENTS BEYOND A REASONABLE DOUBT:  ON OR ABOUT THE DATES

10   IN THE INDICTMENT, TWO, DEFENDANT SAHAKIAN AGREED WITH

11   OTHERS TO COMMIT THE FIRST DEGREE MURDER OF WALTER JOHNSON;

12   THREE, DEFENDANT SAHAKIAN MADE THAT AGREEMENT WITH THE

13   INTENT OF COMMITTING THE FIRST DEGREE MURDER OF WALTER

14   JOHNSON; AND FOUR, AN ACT IN FURTHERANCE OF THE CONSPIRACY

15   WAS PERFORMED IN THE STATE OF ILLINOIS BY ANY PARTY TO THE

16   AGREEMENT.

17           A PERSON COMMITS THE OFFENSE OF FIRST DEGREE

18   MURDER WHEN HE KILLS AN INDIVIDUAL IF, IN PERFORMING THE

19   ACTS WHICH CAUSED THE DEATH, HE INTENDS TO KILL OR CAUSE

20   GREAT BODILY HARM TO THAT INDIVIDUAL.

21           AN AGREEMENT MAY BE IMPLIED FROM THE CONDUCT OF

22   THE PARTIES ALTHOUGH THEY ACTED SEPARATELY OR BY DIFFERENT

23   MEANS AND DID NOT COME TOGETHER OR ENTER INTO AN EXPRESS

24   TREATMENT.

25           ALL RIGHT.  THE ELEMENTS OF RACKETEERING ACT 37,

1    WHICH ALSO DOES NOT HAVE TWO SUBPARTS:  RACKETEERING ACT 37

2    ALLEGES THAT BEGINNING ON A DATE UNKNOWN TO THE GRAND JURY

3    AND CONTINUING TO AT LEAST NOVEMBER 24, 2000, WITHIN THE

4    CENTRAL DISTRICT OF CALIFORNIA AND ELSEWHERE, DEFENDANT

5    DAVID MICHAEL SAHAKIAN AND OTHERS CONSPIRED TO MURDER BLACK

6    INMATES IN THE INSTITUTIONS OF THE FEDERAL BUREAU OF

7    PRISONS, AND A CO-CONSPIRATOR COMMITTED AN OVERT ACT IN

8    FURTHERANCE OF THE CONSPIRACY IN VIOLATION OF CALIFORNIA

9    PENAL CODE SECTIONS 182 AND 187.

10         CALIFORNIA PENAL CODE SECTION 182 MAKES IT A CRIME

11   FOR TWO OR MORE PERSONS TO CONSPIRE TO COMMIT ANY CRIMES.

12   AND CALIFORNIA PENAL CODE SECTION 185 FURTHER PROVIDES THAT

13   NO AGREEMENT AMOUNTS TO A CONSPIRACY UNLESS SOME ACT BESIDES

14   SUCH AGREEMENT BE DONE WITHIN THIS STATE TO EFFECT THE

15   OBJECT THEREOF BY ONE OR MORE PARTIES TO SUCH AGREEMENT.

16         CALIFORNIA PENAL CODE SECTION 187 PROVIDES THAT

17   MURDER IS THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE

18   AFORETHOUGHT.

19         CALIFORNIA PENAL CODE SECTION 189 FURTHER PROVIDES

20   THAT ALL MURDER WHICH IS PERPETRATED BY ANY KIND OF WILLFUL,

21   DELIBERATE AND PREMEDITATED KILLING IS MURDER OF THE FIRST

22   DEGREE.

23         IN ORDER TO FIND DEFENDANT GUILTY OF RACKETEERING

24   ACT 37, THE GOVERNMENT MUST PROVE THE FOLLOWING ELEMENTS

25   BEYOND A REASONABLE DOUBT:  ONE, ON OR ABOUT THE DATES

1    ALLEGED IN THE INDICTMENT, TWO, DEFENDANT AND AT LEAST ONE

2    OTHER PERSON ENTERED INTO AN AGREEMENT TO KILL BLACK INMATES

3    UNLAWFULLY; THREE, DEFENDANT AND AT LEAST ONE OTHER

4    CONSPIRATOR SPECIFICALLY INTENDED TO ENTER INTO AN AGREEMENT

5    WITH ONE OR MORE PERSONS FOR THE PURPOSE OF KILLING SUCH

6    BLACK INMATES UNLAWFULLY; FOUR, DEFENDANT AND AT LEAST ONE

7    OTHER CO-CONSPIRATOR HARBOR EXPRESS MALICE AFORETHOUGHT;

8    NAMELY, A SPECIFIC INTENT TO KILL SUCH BLACK INMATES

9    UNLAWFULLY; FIVE, AN OVERT ACT WAS COMMITTED IN CALIFORNIA

10   BY AT LEAST ONE OF THE CONSPIRATORS WHO HAD AGREED AND

11   INTENDED TO COMMIT THE MURDERS UNLAWFULLY.

12           THE TERM "OVERT ACT" MEANS ANY STEP TAKEN OR ACT

13   COMMITTED BY ONE OF THE CONSPIRATORS WHICH GOES BEYOND MERE

14   PLANNING OR AGREEMENT TO COMMIT THE CRIME, AND WHICH

15   SEPARATE ACT IS DONE IN FURTHERANCE OF THE ACCOMPLISHMENT OF

16   THE OBJECT OF THE CONSPIRACY.

17           TO BE AN OVERT ACT, THE STEP TAKEN OR THE ACT

18   COMMITTED NEED NOT IN AND OF ITSELF CONSTITUTE THE CRIME OR

19   EVEN AN ATTEMPT TO COMMIT THE CRIME, NOR IS IT REQUIRED THAT

20   THE STEP OR ACT BE A CRIMINAL OR UNLAWFUL ACT.  IT IS NOT

21   NECESSARY TO THE GUILT OF A PARTICULAR DEFENDANT THAT THE

22   DEFENDANT PERSONALLY COMMITTED AN OVERT ACT SO LONG AS HE

23   WAS ONE OF THE CONSPIRATORS WHEN THE OVERT ACT WAS

24   COMMITTED.

25           THE FORMATION AND EXISTENCE OF A CONSPIRACY MAY BE

1    INFERRED FROM ALL THE CIRCUMSTANCES TENDING TO SHOW THE

2    COMMON INTENT AND MAY BE PROVED IN THE SAME WAY AS ANY OTHER

3    FACT MAY BE PROVED, EITHER BY DIRECT TESTIMONY OF THE FACT

4    OR BY CIRCUMSTANTIAL EVIDENCE OR BY BOTH DIRECT AND

5    CIRCUMSTANTIAL EVIDENCE.  IT'S NOT NECESSARY TO SHOW A

6    MEETING OF THE ALLEGED CONSPIRATORS OR THE MAKING OF AN

7    EXPRESS OR FORMAL AGREEMENT.

8          IT'S NOT A DEFENSE TO THE CRIME OF CONSPIRACY THAT

9    THE ALLEGED -- THAT AN ALLEGED CONSPIRATOR DID NOT KNOW ALL

10   THE OTHER CONSPIRATORS.  THE MEMBERS OF A CONSPIRACY MAY BE

11   WIDELY SEPARATED GEOGRAPHICALLY AND YET MAY BE IN AGREEMENT

12   ON A CRIMINAL DESIGN AND CRIMINAL INTENT ENTERTAINING COMMON

13   BY OTHERS AND OF ITS OBJECTS AND PURPOSE -- AND OF ITS

14   OBJECTS AND PURPOSES IS ALL THAT IT IS NECESSARY TO MAKE

15   THAT PERSON A CO-CONSPIRATOR WHEN THE REQUIRED ELEMENTS OF A

16   CONSPIRACY ARE PRESENT.

17         ALL RIGHT.  NOW THE RICO CONSPIRACY OFFENSE

18   ALLEGED IN COUNT 2 OF THE INDICTMENT, THAT CHARGES FROM A

19   DATE -- FROM AN UNKNOWN DATE AND CONTINUING TO AT LEAST

20   JULY 25, 2002, WITHIN THE CENTRAL DISTRICT AND ELSEWHERE,

21   DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS UNLAWFULLY,

22   WILLFULLY AND KNOWINGLY COMBINED, CONSPIRED, CONFEDERATED

23   AND AGREED TOGETHER AND WITH EACH OTHER TO VIOLATE TITLE 18

24   UNITED STATES CODE SECTION 1962(C), THAT IS, TO CONDUCT AND

25   PARTICIPATE DIRECTLY AND INDIRECTLY IN THE CONDUCT OF THE

1    AFFAIRS OF THE ARYAN BROTHERHOOD ENTERPRISE THROUGH A

2    PATTERN OF RACKETEERING ACTIVITY, CONSISTING OF MULTIPLE

3    ACTS INVOLVING MURDER IN VIOLATION OF VARIOUS STATE LAWS AND

4    DISTRIBUTION OF CONTROLLED SUBSTANCES INCLUDING HEROIN,

5    METHAMPHETAMINE AND COCAINE.

6          COUNT 2 ALSO ALLEGES THAT THE DEFENDANT WAS

7    ASSOCIATED WITH THE ARYAN BROTHERHOOD CRIMINAL ENTERPRISE,

8    THAT THE ACTIVITIES OF THE ARYAN BROTHERHOOD ENTERPRISE

9    AFFECTED INTERSTATE COMMERCE, AND THAT THE DEFENDANT AGREED

10   THAT A CONSPIRATOR WOULD COMMIT AT LEAST TWO ACTS OF

11   RACKETEERING IN THE CONDUCT OF THE AFFAIRS OF THE

12   ENTERPRISE.

13         TITLE 18 UNITED STATES CODE SECTION 1962(D) MAKES

14   IT UNLAWFUL FOR ANY PERSON TO CONSPIRE TO VIOLATE ANY OF THE

15   PROVISIONS OF SECTIONS (A), (B) OR (C) OF THE SECTION.

16         IN ORDER TO CONVICT A DEFENDANT ON THE RICO

17   CONSPIRACY OFFENSE CHARGED IN COUNT 2, THE GOVERNMENT MUST

18   PROVE ALL OF THE FOLLOWING FOUR ELEMENTS BEYOND A REASONABLE

19   DOUBT:  ONE, FIRST, THAT THE DEFENDANT KNOWINGLY AGREED TO

20   CONDUCT OR PARTICIPATE DIRECTLY OR INDIRECTLY IN THE CONDUCT

21   OF THE AFFAIRS OF THE CHARGED ENTERPRISES THROUGH A PATTERN

22   OF RACKETEERING ACTIVITY; TWO, SECOND, THAT AN ENTERPRISE

23   WOULD BE ESTABLISHED -- WOULD BE ESTABLISHED AS ALLEGED IN

24   THE INDICTMENT; THIRD, THAT THE ENTERPRISE OR ITS ACTIVITIES

25   WOULD AFFECT INTERSTATE COMMERCE; AND FOURTH, THAT THE

1    DEFENDANT WOULD BE ASSOCIATED WITH THE ENTERPRISE.

2          THE MEANING OF THE TERMS "ENTERPRISE" AND

3    "AFFECTING INTERSTATE COMMERCE" AND "PATTERN OF

4    RACKETEERING" AND "ASSOCIATED WITH THE ENTERPRISE" IS THE

5    SAME AS I'VE INSTRUCTED YOU REGARDING THE COUNT 1, THE

6    SUBSTANTIVE RICO OFFENSE.

7          HOWEVER, THE RICO CONSPIRACY OFFENSE CHARGED IN

8    COUNT 2 IS A DISTINCT DIFFERENT OFFENSE FROM THAT CHARGED IN

9    COUNT 1.  HOWEVER, THE RICO CONSPIRACY OFFENSE CHARGED IN

10   COUNT 2 IS A DISTINCT OFFENSE FROM THE RICO SUBSTANTIVE

11   COUNT CHARGED IN COUNT 1, AND THERE ARE SEVERAL SIGNIFICANT

12   DIFFERENCES.

13         FIRST, AS I'VE PREVIOUSLY INSTRUCTED YOU, TO

14   CONVICT THE DEFENDANT ON A RICO SUBSTANTIVE OFFENSE AS

15   CHARGED IN COUNT 1, THE GOVERNMENT, AS TO THAT OFFENSE, MUST

16   PROVE THAT THE DEFENDANT PERSONALLY COMMITTED, CAUSED OR

17   AIDED AND ABETTED AT LEAST TWO OF THE CHARGED RACKETEERING

18   ACTS.

19         BY CONTRAST, TO CONVICT THE DEFENDANT ON THE RICO

20   CONSPIRACY OFFENSE CHARGED IN COUNT 2, THE GOVERNMENT'S NOT

21   REQUIRED TO PROVE THAT THE DEFENDANT OR ANY CONSPIRATOR

22   ACTUALLY COMMITTED, CAUSED OR AIDED AND ABETTED ANY

23   RACKETEERING ACT.

24         MOREOVER, IT'S NOT NECESSARY IN ORDER TO CONVICT A

25   DEFENDANT OF A CHARGE OF CONSPIRACY THAT THE OBJECTIVES OR

```
 1    PURPOSES OF THE CONSPIRACY, WHATEVER THEY MAY BE, HAVE BEEN

 2    ACHIEVED OR ACCOMPLISHED.  THE ULTIMATE SUCCESS OR FAILURE

 3    OF THE CONSPIRACY IS IRRELEVANT BECAUSE, RATHER, THE

 4    CONSPIRATORIAL AGREEMENT TO COMMIT A RICO OFFENSE IS THE

 5    ESSENTIAL ASPECT OF A RICO CONSPIRACY OFFENSE, AND I'LL

 6    EXPLAIN THAT TO YOU IN MORE DETAIL.

 7            ANOTHER IMPORTANT DIFFERENCE IS THAT, UNLIKE THE

 8    REQUIREMENTS TO CONVICT A DEFENDANT ON A RICO SUBSTANTIVE

 9    OFFENSE AS ALLEGED IN COUNT 1, THE GOVERNMENT'S NOT REQUIRED

10    TO PROVE THAT THE ALLEGED ENTERPRISE WAS ACTUALLY

11    ESTABLISHED OR THAT THE DEFENDANT WAS ACTUALLY ASSOCIATED

12    WITH THE ENTERPRISE OR THAT THE ENTERPRISE OR ITS ACTIVITIES

13    ACTUALLY AFFECTED INTERSTATE COMMERCE.  RATHER, BECAUSE THE

14    AGREEMENT, PARTICULARLY THE RICO OFFENSE, IS THE ESSENCE OF

15    A RICO CONSPIRACY OFFENSE, THE GOVERNMENT NEED ONLY PROVE

16    THAT IF THE CONSPIRACY OFFENSE WERE TO BE COMPLETED AS

17    CONTEMPLATED, THE ENTERPRISE WOULD BE ESTABLISHED, THAT THE

18    DEFENDANT WOULD BE ASSOCIATED WITH THE ENTERPRISE, AND THAT

19    THE ENTERPRISE OR ITS ACTIVITIES WOULD AFFECT INTERSTATE

20    COMMERCE.

21            AND, FINALLY, ANOTHER IMPORTANT DISTINGUISH --

22    DISTINGUISHING -- OR DISTINCTION BETWEEN THE TWO IS THAT AS

23    I'VE PREVIOUSLY INSTRUCTED YOU, TO CONVICT A DEFENDANT OF A

24    SUBSTANTIVE RICO OFFENSE, THE GOVERNMENT MUST PROVE THAT THE

25    DEFENDANT PERSONALLY PARTICIPATED IN THE OPERATION OR
```

1    MANAGEMENT OF THE ENTERPRISE.

2            HOWEVER, SUCH PROOF IS NOT REQUIRED TO CONVICT A

3    DEFENDANT OF A RICO CONSPIRACY OFFENSE AS CHARGED IN

4    COUNT 2.  RATHER, THE DEFENDANT MAY BE CONVICTED OF A RICO

5    CONSPIRACY OFFENSE EVEN IF HE DID NOT PERSONALLY PARTICIPATE

6    IN THE OPERATION OR MANAGEMENT OF THE ENTERPRISE WHEN THE

7    EVIDENCE ESTABLISHED THAT THE DEFENDANT KNOWINGLY AGREED TO

8    FACILITATE A SCHEME WHICH, IF COMPLETED, WOULD CONSTITUTE A

9    RICO SUBSTANTIVE VIOLATION INVOLVING AT LEAST ONE

10   CONSPIRATOR WHO WOULD PARTICIPATE IN THE OPERATION OR

11   MANAGEMENT OF THE ENTERPRISE.

12           AS I PREVIOUSLY INSTRUCTED YOU, THAT AGREEMENT TO

13   COMMIT A RICO OFFENSE IS THE ESSENTIAL ASPECT OF A RICO

14   CONSPIRACY OFFENSE.

15           THE JURY MAY FIND THAT THE DEFENDANT HAS ENTERED

16   INTO THE REQUIRED AGREEMENT TO VIOLATE RICO WHEN THE

17   GOVERNMENT HAS PROVEN BEYOND A REASONABLE DOUBT THAT THE

18   DEFENDANT AGREED WITH AT LEAST ONE OTHER CONSPIRATOR THAT AT

19   LEAST TWO RACKETEERING ACTS WOULD BE COMMITTED BY A MEMBER

20   OF THE CONSPIRACY IN THE CONDUCT OF THE AFFAIRS OF THE

21   ENTERPRISE.

22           THE GOVERNMENT'S NOT REQUIRED TO PROVE THAT THE

23   DEFENDANT PERSONALLY COMMITTED TWO RACKETEERING ACTS OR THAT

24   HE AGREED TO PERSONALLY COMMIT TWO RACKETEERING ACTS.

25   RATHER, THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT

1   THAT THE DEFENDANT AGREED TO PARTICIPATE IN THE ENTERPRISE

2   WITH THE KNOWLEDGE AND INTENT THAT AT LEAST ONE MEMBER OF

3   THE RICO CONSPIRACY, WHICH COULD BE THE DEFENDANT HIMSELF,

4   WOULD COMMIT AT LEAST TWO PREDICATE RACKETEERING ACTS IN THE

5   CONDUCT OF THE AFFAIRS OF THE ENTERPRISE.

6            MOREOVER, THE INDICTMENT NEED NOT SPECIFY THAT

7   PREDICATE RACKETEERING ACT THAT THE DEFENDANT AGREED WOULD

8   BE COMMITTED BY SOME MEMBER OF THE CONSPIRACY IN THE CONDUCT

9   OF THE AFFAIRS OF THE ENTERPRISE.  RATHER, WHERE IT'S

10  ALLEGED AS IN COUNT 2 OF THIS INDICTMENT, THAT IT WAS AGREED

11  THAT MULTIPLE ACTS, INDICTABLE UNDER THE APPLICABLE LAWS,

12  WOULD BE COMMITTED, THE JURY IS NOT LIMITED TO CONSIDERING

13  ONLY THE SPECIFIC RACKETEERING ACTS ALLEGED IN COUNT 1 OF

14  THIS INDICTMENT, THE RICO SUBSTANTIVE COUNT.  RATHER, THE

15  JURY MAY ALSO CONSIDER EVIDENCE PRESENTED OF OTHER

16  RACKETEERING ACTS COMMITTED OR AGREED TO BE COMMITTED BY ANY

17  CO-CONSPIRATORS IN FURTHERANCE OF THE ENTERPRISE'S AFFAIRS,

18  INCLUDING RACKETEERING ACTS IN WHICH THE DEFENDANT IS NOT

19  NAMED IN THE INDICTMENT TO DETERMINE WHETHER THE DEFENDANT

20  AGREED THAT AT LEAST ONE MEMBER OF THE CONSPIRACY WOULD

21  COMMIT TWO OR MORE RACKETEERING ACTS.

22            MOREOVER, IN ORDER TO CONVICT THE DEFENDANT OF THE

23  RICO CONSPIRACY OFFENSE, THE JURY'S VERDICT MUST BE

24  UNANIMOUS AS TO WHICH TYPE OR TYPES OF RACKETEERING

25  ACTIVITIES THE DEFENDANT AGREED WOULD BE COMMITTED.  FOR

EXAMPLE, AT LEAST TWO ACTS OF MURDER, ATTEMPTED MURDER,

AIDING AND ABETTING MURDER, OR ATTEMPTED MURDER, CONSPIRACY

TO COMMIT MURDER OR DRUG TRAFFICKING OR ANY COMBINATION OF

THOSE.

FURTHERMORE, TO ESTABLISH THE REQUIRED

CONSPIRATORIAL AGREEMENT, THE GOVERNMENT'S NOT REQUIRED TO

PROVE THAT EACH CO-CONSPIRATOR EXPLICITLY AGREED WITH EVERY

OTHER CO-CONSPIRATOR TO COMMIT THE SUBSTANTIVE RICO OFFENSE

OR KNEW ALL HIS FELLOW CONSPIRATORS WAS AWARE OF ALL THE

DETAILS OF THE CONSPIRACY.  RATHER, TO ESTABLISH SUFFICIENT

KNOWLEDGE, IT'S ONLY REQUIRED THAT THE DEFENDANT KNOW THE

GENERAL NATURE AND COMMON PURPOSE OF THE CONSPIRACY AND THAT

THE CONSPIRACY EXTENDS BEYOND HIS INDIVIDUAL ROLE.

MOREOVER, THE ELEMENTS OF A RICO CONSPIRACY, SUCH

AS THE CONSPIRATORIAL AGREEMENT, THE DEFENDANT'S KNOWLEDGE

OF IT AND THE DEFENDANT'S PARTICIPATION IN THE CONSPIRACY

MAY BE INFERRED FROM CIRCUMSTANTIAL EVIDENCE.  FOR EXAMPLE,

WHEN THE EVIDENCE ESTABLISHES THAT THE DEFENDANT AND AT

LEAST ONE OTHER CONSPIRATOR COMMITTED SEVERAL RACKETEERING

ACTS IN FURTHERANCE OF THE CHARGED ENTERPRISE'S AFFAIRS, THE

JURY MAY INFER THE EXISTENCE OF THE REQUISITE AGREEMENT TO

COMMIT A RICO OFFENSE.  HOWEVER, IT'S FOR THE JURY TO

DETERMINE WHETHER, BASED ON THE ENTIRETY OF THE EVIDENCE,

THE GOVERNMENT HAS PROVEN THAT THE DEFENDANT ENTERED INTO

THE REQUIRED CONSPIRATORIAL AGREEMENT.

1          FURTHERMORE, IT'S NOT NECESSARY THAT THE

2     GOVERNMENT PROVE THAT THE DEFENDANT WAS A MEMBER OF THE

3     CONSPIRACY FROM ITS BEGINNING.  DIFFERENT PERSONS MAY BECOME

4     MEMBERS OF THE CONSPIRACY AT DIFFERENT TIMES.  IF YOU FIND

5     THAT THERE IS A CONSPIRACY, YOU MAY CONSIDER THE ACTS AND

6     STATEMENTS OF ANY OTHER MEMBER OF A CONSPIRACY DURING AND IN

7     FURTHERANCE OF THE CONSPIRACY AS EVIDENCE AGAINST THE

8     DEFENDANT WHOM YOU HAVE FOUND TO BE A MEMBER OF IT.

9          WHEN PERSONS ENTER INTO A CONSPIRACY, THEY BECOME

10    AGENTS FOR EACH OTHER, SO THAT THE ACT OR STATEMENT OF ONE

11    CONSPIRATOR DURING THE EXISTENCE OF AND IN FURTHERANCE OF

12    THE CONSPIRACY IS CONSIDERED THE ACT OR STATEMENT OF ALL THE

13    OTHER CONSPIRATORS AND IS EVIDENCE AGAINST THEM ALL.

14         MOREOVER, THE DEFENDANT MAY BE CONVICTED AS A

15    CONSPIRATOR EVEN THOUGH HE PLAYS A MINOR ROLE IN THE

16    CONSPIRACY PROVIDED THAT YOU FIND BEYOND A REASONABLE DOUBT

17    THAT THE CONSPIRACY EXISTED AND THAT THE DEFENDANT KNOWINGLY

18    PARTICIPATED IN THE CONSPIRACY WITH THE INTENT TO ASSIST

19    OTHER CONSPIRATORS IN ACCOMPLISHING ITS OBJECTIVES -- ITS

20    OBJECTIVES.

21         AND NOW I'M GOING TO INSTRUCT YOU REGARDING THE

22    CRIMES CHARGED IN COUNTS 3, 6 AND 7 OF THE INDICTMENT, WHICH

23    I WILL REFER TO AS THE VICAR COUNTS.  I'M GOING TO INSTRUCT

24    YOU ON THOSE COUNTS JOINTLY BECAUSE THEY'RE VIRTUALLY

25    IDENTICAL.  SO I'LL START WITH THE LANGUAGE OF THE

1    INDICTMENT AND THEN TURN TO THE PERTINENT STATUTES AND THEN

2    EXPLAIN THE ELEMENTS.

3           COUNTS 3, 6 AND 7 CONTAIN ALLEGATIONS ABOUT THE

4    ARYAN BROTHERHOOD ENTERPRISE AND ITS MEMBERS AND ASSOCIATES.

5    THE COUNTS ALLEGE THAT THE ARYAN BROTHERHOOD ENTERPRISE

6    EXISTED AS A GROUP OF INDIVIDUALS ASSOCIATED IN FACT, THAT

7    THE ENTERPRISE AND ITS MEMBERS ENGAGED IN RACKETEERING

8    ACTIVITY INCLUDING ACTS INVOLVING MURDER IN VIOLATION OF

9    VARIOUS STATE LAWS AND NARCOTICS TRAFFICKING IN VIOLATION OF

10   FEDERAL LAW, AND THAT THE ENTERPRISE AND ITS ACTIVITIES

11   AFFECTED INTERSTATE COMMERCE.

12          COUNT 3 FURTHER ALLEGES THAT ON OR ABOUT

13   AUGUST 25, 1985, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA

14   AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

15   UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

16   PREMEDITATION AND MALICE AFORETHOUGHT DID AID, ABET, ADVISE,

17   ENCOURAGE AND OTHERWISE PARTICIPATE IN THE MURDER OF CHARLES

18   LEGER IN VIOLATION OF TITLE 18 UNITED STATES CODE

19   SECTIONS 2(A) AND 1111.

20          COUNTS 6 AND 7 FURTHER ALLEGE THAT ON OR ABOUT

21   AUGUST 28, 1997, WITHIN THE CENTRAL DISTRICT OF CALIFORNIA

22   AND ELSEWHERE, DEFENDANT DAVID MICHAEL SAHAKIAN AND OTHERS

23   UNLAWFULLY, WILLFULLY, DELIBERATELY, MALICIOUSLY AND WITH

24   PREMEDITATION AND MALICE AFORETHOUGHT, DID AID, ABET,

25   ADVISE, ENCOURAGE AND OTHERWISE PARTICIPATE IN THE MURDER OF

FRANK JOYNER FOR COUNT 6 AND ABDUL SALAAM FOR COUNT 7, IN VIOLATION OF TITLE 18 UNITED STATES CODE SECTIONS 2(A) AND 1111.

FINALLY, COUNTS 3, 6 AND 7 ALLEGE THAT THE DEFENDANT COMMITTED THE ABOVE-DESCRIBED VIOLENT CRIMES FOR THE PURPOSE OF GAINING ENTRANCE TO OR MAINTAINING AND INCREASING HIS POSITION IN THE ARYAN BROTHERHOOD, AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY IN VIOLATION OF TITLE 18 UNITED STATES CODE SECTION 1959(A)(1).

SECTION 1959(A)(1) MAKES IT A FEDERAL OFFENSE TO COMMIT MURDER AGAINST ANY INDIVIDUAL IN VIOLATION OF THE LAWS OF ANY STATE OR THE UNITED STATES FOR THE PURPOSE OF GAINING ENTRANCE TO OR MAINTAINING OR INCREASING POSITION IN AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY.

IN COUNTS 3, 6 AND 7 OF THE INDICTMENT RESPECTIVELY, THE INDICTMENT ALLEGES THAT THE MURDERS OF FRANK LEGER -- CHARLES LEGER, FRANK JOYNER AND ABDUL SALAAM WERE COMMITTED IN VIOLATION OF FEDERAL LAW, NAMELY 18 UNITED STATES CODE SECTION 1111.

SECTION 1111 MAKES IT A FEDERAL OFFENSE TO COMMIT A MURDER WITHIN THE TERRITORIAL JURISDICTION OF THE UNITED STATES.  THAT SECTION DEFINES MURDER AS THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE AFORETHOUGHT. THE SECTION FURTHER DEFINES FIRST DEGREE MURDER TO INCLUDE ANY WILLFUL, DELIBERATE, MALICIOUS AND PREMEDITATED KILLING.

1          THE ELEMENTS OF THE VICAR COUNTS CHARGED IN

2     COUNTS 3, 6 AND 7, I'LL FIRST STATE THE ELEMENTS AND THEN

3     INSTRUCT YOU ON THEM.

4          TO CONVICT A DEFENDANT OF THE VICAR OFFENSES, YOU

5     MUST FIND THAT THE GOVERNMENT HAS ESTABLISHED EACH OF THE

6     FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:  ONE, THE

7     ARYAN BROTHERHOOD ENTERPRISE EXISTED; TWO, THE ARYAN

8     BROTHERHOOD ENTERPRISE ENGAGED IN RACKETEERING ACTIVITIES;

9     THREE, THE DEFENDANT WAS A MEMBER OF THE ARYAN BROTHERHOOD

10    ENTERPRISE; FOUR, THE ARYAN BROTHERHOOD ENTERPRISE AND ITS

11    ACTIVITIES AFFECTED INTERSTATE COMMERCE; FIVE, SOMEONE

12    COMMITTED THE FIRST DEGREE MURDER OF CHARLES LEGER FOR

13    COUNT 3, FRANK JOYNER FOR COUNT 6, OR ABDUL SALAAM FOR

14    COUNT 7; SIX, THE FIRST DEGREE MURDERS OCCURRED AT THE

15    UNITED STATES PENITENTIARY AT LEAVENWORTH, KANSAS, FOR

16    COUNT 3, AND LEWISBURG, PENNSYLVANIA, FOR COUNTS 6 AND 7;

17    SEVEN, THE DEFENDANT AIDED AND ABETTED THE FIRST DEGREE

18    MURDER OF CHARLES LEGER FOR COUNT 3, FRANK JOYNER FOR

19    COUNT 6, OR ABDUL SALAAM FOR COUNT 7; AND EIGHT, THE

20    DEFENDANT DID SO FOR THE PURPOSE OF GAINING ENTRANCE TO OR

21    INCREASING OR MAINTAINING HIS POSITION IN THE ENTERPRISE.

22          A FEW FURTHER INSTRUCTIONS REGARDING THE ELEMENTS

23    OF THE VICAR OFFENSES CHARGED IN COUNTS 3, 6 AND 7.

24          THE FIRST ELEMENT IS THAT THE ARYAN BROTHERHOOD

25    ENTERPRISE EXISTED.  IN COUNT 1 I INSTRUCTED YOU ON THE

1    DEFINITION OF AN ENTERPRISE AND YOU SHOULD APPLY THOSE

2    INSTRUCTIONS HERE.

3              THE SECOND ELEMENT IS THAT THE ARYAN BROTHERHOOD

4    ENTERPRISE ENGAGED IN RACKETEERING ACTIVITIES, AND I

5    INSTRUCTED YOU ON THE MEANING OF THAT PHRASE, "RACKETEERING

6    ACTIVITY," AND YOU SHOULD APPLY THOSE INSTRUCTIONS HERE.

7              BRIEFLY, RACKETEERING ACTIVITY INCLUDES NARCOTIC

8    TRAFFICKING AND ANY ACT OR THREAT INVOLVING MURDER.  YOU'LL

9    RECALL THAT IN COUNT 1, THE GOVERNMENT WAS REQUIRED TO PROVE

10   THE DEFENDANT'S INVOLVEMENT IN A PATTERN OF RACKETEERING

11   ACTIVITY INCLUDING TWO SPECIFIED RACKETEERING ACTS.  FOR

12   THESE FOUR VICAR COUNTS, HOWEVER, YOU DO NOT NEED TO FIND A

13   PATTERN OF RACKETEERING ACTIVITY OR ANY PARTICULAR

14   RACKETEERING ACTS.  INSTEAD, THE GOVERNMENT MUST PROVE ONLY

15   THAT THE DEFENDANT WAS ENGAGED IN RACKETEERING ACTS

16   GENERALLY, INCLUDING THE TYPE OF CRIMINAL ACTS MENTIONED

17   ABOVE.

18             THE THIRD ELEMENT IS THAT THE DEFENDANT WAS A

19   MEMBER OF THE ARYAN BROTHERHOOD ENTERPRISE, WHICH INCLUDES

20   BOTH MEMBERS AND ASSOCIATES OF THE ARYAN BROTHERHOOD.

21             THE FOURTH ELEMENT IS THAT THE ARYAN BROTHERHOOD

22   OR ITS ACTIVITIES AFFECTED INTERSTATE COMMERCE.  IN COUNT 1,

23   I INSTRUCTED YOU ON THAT REQUIREMENT AND YOU SHOULD APPLY

24   THOSE INSTRUCTIONS HERE.

25             THE FIFTH ELEMENT IS THAT SOMEONE COMMITTED THE

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    FIRST DEGREE MURDERS OF FRANK LEGER -- OR CHARLES LEGER FOR

2    COUNT 3; FRANK JOYNER FOR COUNT 6; OR ABDUL SALAAM FOR

3    COUNT 7, THAT IS, THE KILLINGS WERE UNLAWFUL, PREMEDITATED

4    AND DONE WITH MALICE AFORETHOUGHT.  TO KILL WITH MALICE

5    AFORETHOUGHT MEANS TO KILL EITHER DELIBERATELY AND

6    INTENTIONALLY OR RECKLESSLY WITH EXTREME DISREGARD FOR HUMAN

7    LIFE.

8          PREMEDITATION MEANS WITH PLANNING OR DELIBERATION.

9    THE AMOUNT OF TIME NEEDED FOR PREMEDITATION OF THE KILLING

10   DEPENDS ON THE PERSON AND CIRCUMSTANCES.  IT MUST BE LONG

11   ENOUGH AFTER FORMING THE INTENT TO KILL FOR THE KILLER TO

12   HAVE BEEN FULLY CONSCIOUS OF THE INTENT AND TO HAVE

13   CONSIDERED THE KILLING.

14         THE SIXTH ELEMENT IS THAT THE KILLING OCCURRED AT

15   THE UNITED STATES PENITENTIARY AT LEAVENWORTH, KANSAS, FOR

16   COUNT 3, OR LEWIS, PENNSYLVANIA, FOR COUNTS 6 AND 7.  IF YOU

17   SO FIND, THEN I WILL MAKE THE FURTHER FINDING THAT THE

18   UNITED STATES PENITENTIARY AT LEAVENWORTH, KANSAS OR

19   LEWISBURG, PENNSYLVANIA OR MARION, ILLINOIS -- OR, EXCUSE

20   ME, NOT MARION -- IS WITHIN THE TERRITORIAL JURISDICTION OF

21   THE UNITED STATES AS REQUIRED BY TITLE 18 UNITED STATES CODE

22   SECTION 1111.

23         THE SEVENTH ELEMENT IS THAT THE DEFENDANT

24   PARTICIPATED IN THE MURDERS OF CHARLES LEGER FOR COUNT 3,

25   FRANK JOYNER FOR COUNT 6, OR ABDUL SALAAM FOR COUNT 7, THAT

IS, THE GOVERNMENT MUST PROVE THAT THE DEFENDANT EITHER,

(A), COMMITTED THE UNLAWFUL, PREMEDITATED MURDER ALLEGED

WITH MALICE AFORETHOUGHT; OR (B), KNOWINGLY AND

INTENTIONALLY AIDED, ABETTED, COUNSELED, COMMANDED, INDUCED

OR PROCURED THE COMMISSION OF SUCH CRIMES AND ACTED BEFORE

THE CRIMES WERE COMPLETED.

        IT'S NOT ENOUGH THAT THE DEFENDANT MERELY

ASSOCIATED WITH THE PERSON COMMITTING THE CRIME OR

UNKNOWINGLY OR UNINTENTIONALLY DID THINGS THAT WERE HELPFUL

TO THAT PERSON OR WAS PRESENT AT THE SCENE OF THE CRIME.

THE EVIDENCE MUST SHOW BEYOND A REASONABLE DOUBT THAT THE

DEFENDANT ACTED WITH THE KNOWLEDGE AND INTENTION OF HELPING

THE COMMISSION OF THE FIRST DEGREE MURDER.

        THE EIGHTH ELEMENT IS THAT THE DEFENDANT MUST HAVE

ACTED FOR THE PURPOSE OF GAINING ENTRANCE TO, INCREASING OR

MAINTAINING HIS POSITION IN THE ENTERPRISE.  THAT ELEMENT IS

SATISFIED IF THE GOVERNMENT PROVES BEYOND A REASONABLE DOUBT

THAT THE DEFENDANT COMMITTED THE CRIME BECAUSE HE KNEW IT

WAS EXPECTED OF HIM BY REASON OF HIS ASSOCIATION WITH THE

ENTERPRISE OR BECAUSE IT WAS CONSISTENT WITH AND IN

FURTHERANCE OF THAT ASSOCIATION OR BECAUSE IT WOULD MAINTAIN

OR ENHANCE HIS POSITION OR PRESTIGE WITHIN THE ENTERPRISE OR

BECAUSE OF HIS INTEGRAL ASPECT OF MEMBERSHIP IN THE

ENTERPRISE OR BECAUSE HE WAS EXPECTED TO ACT, AND ANY

FAILURE TO ACT WOULD HAVE UNDERMINED HIS POSITION IN THE

1    ENTERPRISE.  SUCH MOTIVE NEED NOT BE THE SOLE OR PRINCIPAL

2    MOTIVE FOR THE DEFENDANT'S ACTION.

3            THE DEFENDANT ALSO MAY BE FOUND GUILTY OF THE

4    VICAR OFFENSES ALLEGED IN COUNTS 3, 6 AND 7 BASED ON THE LAW

5    OF CO-CONSPIRATOR LIABILITY.  I'VE DISCUSSED THAT CONCEPT

6    WITH YOU EARLIER IN THE CONTEXT OF THE RACKETEERING ACTS,

7    AND I'VE GIVEN YOU THE DEFINITION OF A CONSPIRACY, SO I

8    WON'T REPEAT THAT EITHER.

9            THEREFORE YOU MAY FIND THE DEFENDANT GUILTY OF THE

10   VICAR CHARGES ALLEGED IN COUNTS 3, 6, AND 7 OF THE

11   INDICTMENT IF THE GOVERNMENT HAS PROVED EACH OF THE

12   FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT:  ONE, SOMEONE

13   COMMITTED THE FIRST DEGREE MURDERS OF CHARLES LEGER FOR

14   COUNT 3, FRANK JOYNER FOR COUNT 6 AND ABDUL SALAAM FOR

15   COUNT 7, THAT IS, THE KILLINGS WERE UNLAWFUL, PREMEDITATED

16   AND DONE WITH MALICE AFORETHOUGHT, AS I HAVE INSTRUCTED YOU

17   ON THOSE TERMS EARLIER; TWO, THE PERSONS WHO COMMITTED THOSE

18   FIRST DEGREE MEMBERS WERE MEMBERS OF THE CONSPIRACY; THREE,

19   THE FIRST DEGREE MURDERS WERE COMMITTED BY THOSE PERSONS

20   PURSUANT TO THAT CONSPIRACY; FOUR, THE PERSONS WHO COMMITTED

21   THOSE FIRST DEGREE MURDERS DID SO FOR THE PURPOSE OF GAINING

22   ENTRANCE TO, MAINTAINING, OR INCREASING THEIR POSITION IN

23   THE ENTERPRISE, AS I HAVE EXPLAINED THAT REQUIREMENT TO YOU

24   EARLIER; THE DEFENDANT WAS A MEMBER OF THE SAME CONSPIRACY

25   AT THE TIME THE FIRST DEGREE MURDER WAS COMMITTED; THE

1    MURDER FELL WITHIN THE SCOPE OF THE UNLAWFUL AGREEMENT AND

2    COULD REASONABLY HAVE BEEN FORESEEN TO BE A NECESSARY OR

3    NATURAL CONSEQUENCE OF THE UNLAWFUL AGREEMENT.

4            LET ME EXPLAIN CO-CONSPIRATOR LIABILITY FURTHER BY

5    CONTRASTING THE CRIMINAL LIABILITY THROUGH THE COMMISSION OR

6    AIDING AND ABETTING THE COMMISSION OF THE UNDERLYING CRIME.

7            TO FIND A DEFENDANT GUILTY BASED ON CO-CONSPIRATOR

8    LIABILITY, IT'S NOT NECESSARY TO FIND THAT THE DEFENDANT

9    PERSONALLY ACTED FOR THE PURPOSE OF GAINING ENTRANCE TO OR

10   MAINTAINING OR INCREASING HIS POSITION IN THE ENTERPRISE, AS

11   IT WOULD BE FOR GUILT BASED ON AIDING AND ABETTING

12   LIABILITY.

13           FOR CO-CONSPIRATOR LIABILITY, IT'S SUFFICIENT IF

14   THE KILLER ACTED WITH THAT PURPOSE.  FOR CO-CONSPIRATOR

15   LIABILITY, IT'S NOT NECESSARY THAT THE DEFENDANT KNOWINGLY

16   AND INTENTIONALLY AIDED, ABETTED, COUNSELED, COMMANDED,

17   PROCURED OR INDUCED THE COMMISSION OF THE MURDER, AS IT

18   WOULD BE FOR AIDING AND ABETTING LIABILITY.  IT'S SUFFICIENT

19   IF THE CRIME COULD REASONABLY HAVE BEEN FORESEEN TO BE A

20   NECESSARY OR NATURAL CONSEQUENCE OF THE UNLAWFUL AGREEMENT,

21   SO LONG AS THE DEFENDANT AND THE PERPETRATOR WERE MEMBERS OF

22   THE SAME CONSPIRACY AND THE MURDER WAS COMMITTED PURSUANT TO

23   THAT CONSPIRACY.

24           THOSE ARE THE ELEMENTS -- THOSE ARE THE

25   INSTRUCTIONS REGARDING THE ELEMENTS OF ALL OF THE CHARGES.

1    THERE'S JUST A FEW LEFT.

2              THE EVIDENCE THAT YOU'RE TO CONSIDER IN DECIDING

3    WHAT THE FACTS ARE IN THIS CASE CONSISTS OF, ONE, THE SWORN

4    TESTIMONY OF ANY WITNESS, THE EXHIBITS WHICH ARE RECEIVED

5    INTO EVIDENCE, AND ANY FACTS TO WHICH ALL THE LAWYERS

6    STIPULATE OR AGREE.  IF THAT LAST THING HAPPENS, I'LL CALL

7    YOUR ATTENTION TO IT AT THE TIME.

8              THE FOLLOWING THINGS ARE NOT EVIDENCE AND YOU MUST

9    NOT CONSIDER THEM AS EVIDENCE IN DECIDING THE FACTS OF THIS

10   CASE:  ONE, STATEMENTS AND ARGUMENTS OF THE ATTORNEYS; TWO,

11   QUESTIONS AND OBJECTIONS BY THE ATTORNEYS; THREE, ANY

12   TESTIMONY THAT I MAY INSTRUCT YOU TO DISREGARD; AND FOUR,

13   ANYTHING THAT YOU MAY SEE OR HEAR WHEN THE COURT IS NOT IN

14   SESSION EVEN IF WHAT YOU SEE OR HEAR IS DONE OR SAID BY ONE

15   OF THE PARTIES OR BY ONE OF THE WITNESSES.

16             SOMETIMES EVIDENCE MAY BE ADMITTED FOR A LIMITED

17   PURPOSE ONLY.  AND WHEN I INSTRUCT YOU THAT AN ITEM OF

18   EVIDENCE HAS BEEN ADMITTED FOR A LIMITED PURPOSE, YOU MUST

19   CONSIDER IT ONLY FOR THAT LIMITED PURPOSE AND NO OTHER.

20             EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL.  DIRECT

21   EVIDENCE IS DIRECT PROOF OF A FACT, SUCH AS TESTIMONY BY A

22   WITNESS ON THE WITNESS STAND ABOUT WHAT THAT WITNESS

23   PERSONALLY SAW OR HEARD OR DID.  BUT CIRCUMSTANTIAL EVIDENCE

24   IS INDIRECT EVIDENCE, THAT IS, IT IS PROOF OF ONE OR MORE

25   FACTS FROM WHICH ONE CAN FIND ANOTHER FACT.

1          YOU ARE TO CONSIDER BOTH DIRECT AND CIRCUMSTANTIAL

2   EVIDENCE, AND THE LAW PERMITS YOU TO GIVE EQUAL WEIGHT TO

3   BOTH.  BUT IT IS FOR YOU TO DECIDE HOW MUCH WEIGHT TO GIVE

4   TO ANY EVIDENCE.

5          THERE ARE RULES OF EVIDENCE WHICH CONTROL WHAT CAN

6   BE RECEIVED INTO EVIDENCE DURING A TRIAL.  SO WHEN A LAWYER

7   ASKS A QUESTION OR OFFERS AN EXHIBIT INTO EVIDENCE AND THE

8   LAWYER ON THE OTHER SIDE THINKS THAT THAT IS NOT PERMITTED

9   UNDER THE RULES OF EVIDENCE, THEN THE SECOND LAWYER MAY

10  OBJECT.

11         AND IF I OVERRULE THE OBJECTION, THAT MEANS THAT

12  THE WITNESS MAY ANSWER THE QUESTION OR THE EXHIBIT MAY BE

13  RECEIVED INTO EVIDENCE.  ON THE OTHER HAND, IF I SUSTAIN THE

14  OBJECTION, THAT MEANS THAT THE WITNESS CANNOT ANSWER THE

15  QUESTION.  THE QUESTION CAN'T BE ANSWERED AND THE EXHIBIT

16  CAN'T BE RECEIVED.

17         WHENEVER I SUSTAIN AN OBJECTION TO A QUESTION, YOU

18  MUST IGNORE THE QUESTION AND YOU MUST NOT GUESS WHAT THE

19  ANSWER WOULD HAVE BEEN.  LET ME GIVE YOU AN EXAMPLE OF WHAT

20  I MEAN BY THAT.

21         FIRST OF ALL, AS I SAID A MOMENT AGO, WHAT A

22  LAWYER SAYS IS NOT EVIDENCE.  SO THE QUESTION ITSELF IS NOT

23  EVIDENCE.  NOW, THIS WOULDN'T HAPPEN WITH THESE LAWYERS.

24  ALL RIGHT?  SO THIS IS JUST AN EXAMPLE.  BUT LET'S SAY WE

25  HAVE A WITNESS ON THE STAND AND A LAWYER ASKS THE WITNESS,

1    "WHEN DID YOU STOP CHEATING ON YOUR TAXES?"

2           ALL RIGHT, AND THERE'S GOING TO BE AN OBJECTION

3    FROM THE OTHER SIDE, AND I'M GOING TO SUSTAIN THE OBJECTION

4    AND THERE IS NOT GOING TO BE ANY ANSWER TO THE QUESTION.

5           SO THE FACT THAT THAT QUESTION -- YOU HEARD THAT

6    QUESTION, THERE'S NO EVIDENCE THAT ANYBODY EVER CHEATED ON

7    THEIR TAXES BECAUSE THERE IS NO ANSWER.  YOU ONLY CONSIDER A

8    QUESTION AS FAR AS IT'S NEEDED TO GET TO THE ANSWER.

9           SOMETIMES I MAY ORDER THAT EVIDENCE BE STRICKEN

10   FROM THE RECORD.  SOMETIMES A WITNESS ANSWERS BEFORE I RULE

11   ON THE OBJECTION, OR FOR SOME OTHER REASON, AND IN THAT CASE

12   I MAY INSTRUCT YOU TO DISREGARD EVIDENCE OR IGNORE IT.  AND

13   THAT MEANS THAT WHEN YOU ARE DECIDING THE CASE, YOU MUST NOT

14   CONSIDER ANY EVIDENCE THAT I TOLD YOU TO DISREGARD.

15          IN DECIDING THE FACTS IN THIS CASE, YOU MAY HAVE

16   TO DECIDE WHICH TESTIMONY TO BELIEVE AND WHICH TESTIMONY NOT

17   TO BELIEVE.  YOU MAY BELIEVE EVERYTHING A WITNESS SAYS OR

18   PART OF THE TESTIMONY OR NONE OF IT.

19          IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU

20   MAY TAKE INTO ACCOUNT THE OPPORTUNITY AND ABILITY OF THE

21   WITNESS TO SEE OR HEAR OR KNOW THE THINGS TESTIFIED TO, TO

22   THE WITNESS' MEMORY, THE WITNESS' MANNER WHILE TESTIFYING,

23   THE WITNESS' INTEREST IN THE OUTCOME OF THE CASE AND ANY

24   BIAS OR PREJUDICE, WHETHER OTHER EVIDENCE CONTRADICTED THE

25   WITNESS' TESTIMONY, THE REASONABLENESS OF THE WITNESS'

1    TESTIMONY IN LIGHT OF ALL THE EVIDENCE, AND ANY OTHER

2    FACTORS THAT BEAR ON BELIEVABILITY.

3            THE WEIGHT OF THE EVIDENCE AS TO A FACT DOESN'T

4    NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY.

5            ALL RIGHT.  A FEW WORDS ABOUT YOUR CONDUCT AS

6    JURORS.  AS I'VE ALREADY TOLD YOU, YOU'RE NOT TO DISCUSS THE

7    CASE WITH ANYONE INCLUDING YOUR FELLOW JURORS, MEMBERS OF

8    YOUR FAMILY, ANYONE ELSE YOU SHARE YOUR HOUSEHOLD WITH,

9    PEOPLE INVOLVED IN THE TRIAL, OR ANYONE ELSE, NOR ARE YOU

10   ALLOWED TO PERMIT OTHERS TO DISCUSS THE CASE WITH YOU.  SO

11   IF ANYONE APPROACHES YOU AND TRIES TO TALK TO YOU ABOUT THE

12   CASE, YOU MUST LET ME KNOW ABOUT THAT RIGHT AWAY.

13           DO NOT READ ANY NEWS ARTICLES OR STORIES, IF THERE

14   ARE ANY, OR LISTEN TO ANY RADIO OR TELEVISION REPORTS, IF

15   THERE ARE ANY, ABOUT THIS CASE OR ABOUT ANYONE WHO HAS

16   ANYTHING TO DO WITH IT.

17           THIRD, DO NOT DO ANY RESEARCH.  THAT MEANS

18   CONSULTING ANY DICTIONARIES, SEARCHING THE INTERNET, USING

19   ANY OTHER TYPE OF REFERENCE MATERIAL.  DO NOT MAKE ANY

20   INVESTIGATION ABOUT THE CASE ON YOUR OWN.

21           IF YOU NEED TO COMMUNICATE WITH ME, YOU MAY GIVE A

22   SIGNED NOTE TO ANY OF THE PEOPLE I HAVE INTRODUCED YOU TO IN

23   THE COURTROOM.

24           DO NOT MAKE UP YOUR MIND ABOUT WHAT THE VERDICT

25   SHOULD BE UNTIL AFTER YOU HAVE HEARD ALL OF THE EVIDENCE IN

58

THE CASE, LISTENED TO CLOSING ARGUMENTS, AND GONE TO THE

JURY ROOM TO DECIDE THE CASE AND YOU AND YOUR FELLOW JURORS

HAVE DISCUSSED THE EVIDENCE.  YOU MUST KEEP AN OPEN MIND

UNTIL THEN.

        AT THE END OF THE TRIAL, YOU'LL HAVE TO MAKE YOUR

DECISION BASED ON WHAT YOU RECALL OF THE EVIDENCE.  YOU

WON'T HAVE A WRITTEN TRANSCRIPT OF THE TRIAL.  SO PAY CLOSE

ATTENTION TO THE TESTIMONY AS IT IS GIVEN.

        IF YOU WISH, YOU MAY TAKE NOTES TO HELP YOU

REMEMBER WHAT WITNESSES SAID.  AND AS I MENTIONED A MOMENT

AGO, YOU WILL GET A NOTEBOOK TOMORROW FOR YOU TO KEEP YOUR

NOTES IN.  IF YOU DO TAKE NOTES, KEEP THEM TO YOURSELF.  YOU

DON'T HAVE TO KEEP THE NOTEBOOKS.  THEY ALWAYS HAVE TO

REMAIN HERE IN THE COURTROOM.  YOU CAN'T DISCUSS THE NOTES

UNTIL YOU AND YOUR FELLOW JURORS GO TO THE JURY ROOM TO

DISCUSS THE CASE AT THE VERY END.

        DO NOT LET NOTE-TAKING DISTRACT YOU SO THAT YOU

DON'T HEAR OTHER ANSWERS BY THE WITNESS OR MISS THE WITNESS'

DEMEANOR WHILE TESTIFYING.  AND EVERY TIME YOU LEAVE THE

COURTROOM, YOUR NOTES SHOULD BE LEFT IN THE COURTROOM.

        WHETHER OR NOT YOU TAKE NOTES, YOU SHOULD RELY ON

YOUR OWN MEMORY OF WHAT WAS SAID.  NOTES ARE ONLY TO ASSIST

YOUR MEMORY, AND YOU SHOULD NOT BE OVERLY INFLUENCED BY

NOTES.

        TOMORROW MORNING WHEN YOU RETURN, WE WILL BEGIN

1    WITH TRIAL.  LET ME EXPLAIN HOW THAT OCCURS, OR THE ORDER OF

2    THINGS DURING A TRIAL.

3              IT BEGINS WITH EACH SIDE HAVING THE OPPORTUNITY TO

4    MAKE AN OPENING STATEMENT.  THE DEFENSE, IF IT WISHES, CAN

5    RESERVE ITS OPENING STATEMENT UNTIL ITS CASE IN CHIEF, OR IT

6    CAN MAKE IT AT THE BEGINNING OF THE CASE.

7              AN OPENING STATEMENT IS NOT EVIDENCE.  RATHER,

8    IT'S AN OUTLINE TO HELP YOU UNDERSTAND WHAT THAT PARTY

9    EXPECTS THE EVIDENCE WILL SHOW.  AS I SAID, A PARTY IS NOT

10   REQUIRED TO MAKE AN OPENING STATEMENT.

11             AFTER OPENING STATEMENTS, THEN THE GOVERNMENT WILL

12   PRESENT EVIDENCE BY CALLING WITNESSES, AND COUNSEL FOR THE

13   DEFENDANT MAY CROSS-EXAMINE.  AND THEN IF IT CHOOSES, THE

14   DEFENSE MAY PRESENT EVIDENCE.  AND IF SO, THE COUNSEL FOR

15   GOVERNMENT MAY CROSS-EXAMINE ITS WITNESSES.

16             AFTER ALL THE EVIDENCE HAS BEEN PRESENTED, I'LL

17   INSTRUCT YOU ON ALL THE LAW THAT APPLIES TO THIS CASE, AND

18   THE ATTORNEYS WILL MAKE THEIR CLOSING ARGUMENTS, AND AFTER

19   THAT YOU GO TO THE JURY ROOM TO DELIBERATE ON YOUR VERDICT.

20             THANK YOU SO MUCH FOR YOUR PATIENCE AND ATTENTION

21   THIS AFTERNOON.

22             MISS DILLARD IS GOING TO TAKE YOU BACK AND SHOW

23   YOU THE JURY ROOM THAT YOU WILL HAVE ACCESS TO AND EXPLAIN

24   TO YOU HOW YOU GAIN ACCESS TO IT THROUGH THE SECURED HALLWAY

25   IN THE MORNING.

```
 1          WE START TOMORROW MORNING WITH THE JURY AT

 2  9:00 O'CLOCK, BUT FRESH COFFEE IS SERVED STARTING AT 8:30.

 3  SO FEEL FREE TO COME EARLY.

 4          WE'LL BE IN SESSION, AS I SAID TO YOU, WITH THE

 5  JURY FROM 9:00 UNTIL ABOUT 4:30 IN THE AFTERNOON.  WE TAKE A

 6  REGULAR LUNCH BREAK, USUALLY ONE BREAK IN THE MORNING AND

 7  ONE IN THE AFTERNOON.  SO IT'S NOT AN ENDURANCE CONTEST LIKE

 8  IT HAS BEEN THIS AFTERNOON, USUALLY.

 9          THANK YOU, LADIES AND GENTLEMEN, YOU ARE EXCUSED.

10  WE WILL SEE YOU TOMORROW MORNING.

11          YOU NEED TO FOLLOW MISS DILLARD OUT THIS TIME IN

12  THIS DIRECTION, AND FROM NOW ON YOU'LL BE GOING THIS WAY.

13      (JURY OUT.)

14      (THE FOLLOWING PROCEEDINGS WERE HAD OUTSIDE THE

15       PRESENCE OF THE JURY.)

16          THE COURT:  YOU MAY BE SEATED.  WE ARE ON THE

17  RECORD OUTSIDE THE PRESENCE OF THE MEMBERS OF THE JURY.

18          DO COUNSEL NEED TO TAKE ANYTHING UP WITH ME BEFORE

19  WE BREAK?

20          MR. AKRONTIRIANAKIS:  I DO, YOUR HONOR.

21          THE COURT:  DO YOU NEED TO GET MR. ESTRADA UP

22  HERE?

23          MR. AKRONTIRIANAKIS:  IT WORKED -- OH, IT DIDN'T

24  WORK.  I DON'T KNOW IF IT'S BECAUSE HE RESET IT.  I WILL

25  TEST IT AGAIN.
```

1        THE COURT:  WE'LL TEST IT FIRST THING IN THE

2    MORNING.

3        MR. AKRONTIRIANAKIS:  THERE IS ONE THING I SHOULD

4    MENTION.

5        WE GAVE AN EXHIBIT LIST TO MISS DILLARD, TOGETHER

6    WITH OUR WITNESS LIST.  THERE ARE -- I HAVEN'T GIVEN HER YET

7    A SET OF THE EXHIBIT BOOKS.  I'LL HAVE THAT FIRST THING IN

8    THE MORNING.

9        ON THE LIST THERE IS A FEW EXHIBITS THAT NEED TO

10   JUST BE ADDED TO THE LIST.  IF IT'S POSSIBLE TO DO IT, I'LL

11   JUST ADD IT ON TO THOSE PARTICULAR PAGES.

12       THE COURT:  THAT SHOULD BE FINE.

13       ALL RIGHT.  THANK YOU VERY MUCH.  SEE YOU AT 8:30

14   TOMORROW MORNING.

15       *(AT 5:38 P.M., PROCEEDINGS WERE ADJOURNED.)*

16

17                          -OOO-

18

19                        CERTIFICATE

20       I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

21   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

22   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

23   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

24   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

25   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

62

DATE:  AUGUST 13, 2008


_____

DEBORAH D. PARKER, OFFICIAL REPORTER