Joseph L. Green, Esq., Fed.#34850
Leritz, Plunkert & Bruning, P.C.
One City Centre, Suite 2001
St. Louis, Missouri 63101
Telephone: (314) 231-9600
Facsimile:  (314) 231-9480

Burton H. Shostak, Esq., Fed.#4359
Shostak & Shostak, LLC
8015 Forsyth Boulevard
St. Louis, Missouri 63105
Telephone: (314) 725-3200
Facsimile: (314) 725-3275

Attorneys for Defendant
David M. Sahakian

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **DAVID SAHAKIAN, ET AL**., <br><br> Defendants. | **DEFENDANT DAVID SAHAKIAN'S SECOND MOTION FOR MISTRIAL** <br><br> Case No.: CR-02-938-VAP-09 <br><br> Trial Date: 08/12/08 |

TO THE ASSISTANT UNITED STATES ATTORNEY STEPHEN WOLFE AND JOSEPH N. AKROTIRIANAKIS:

NOTICE IS HEREBY GIVEN THAT on October 23, 2008 at 8:30 a.m., or as soon thereafter as counsel may be heard in the Courtroom of the United States District Judge Honorable Virginia A. Phillips, Defendant David M. Sahakian ("Mr. Sahakian"), by and through his counsel of record in this case, Burton H. Shostak and Joseph L. Green, will bring on for hearing the following motion:

## MOTION

COMES NOW Defendant David Sahakian, by and through counsel, and pursuant to his Fifth and Sixth Amendment rights under the United States Constitution which guarantees the defendant the rights to due process, a fair trial and a fair and impartial jury moves the Court for an order discharging the jury and declaring a mistrial as to Counts 1, 3, 6 and 7 of the indictment against Defendant in the above-styled case. In support of this motion, the following is offered:

## FACTS

1. Jury selection began on August 12, 2008 at which time the Court emphasized to the jury the trial would be completed by October 10, 2008.

2. From time to time during the trial the Court reminded the jurors that the trial was on schedule and would be concluded by October 10, 2008.

3. The evidence in this case was closed on October 2, 2008 with closing arguments by the parties made on October 7 and 8, 2008.

4. The jury began deliberations in the afternoon of October 8, 2008.

5. The jury deliberated all day on October 9, 10, 14, 15 and 16.

6. On October 17, 2008, the foreperson presented a note to the Court regarding a potential problem that some jurors may have been communicating improperly outside of deliberations. Upon individual examination in chambers of five jurors, it was discovered that the situation was one of strong personalities conflicts, some

Second Motion for Mistrial  - 2

dissatisfaction of some jurors with the foreperson and some disagreement about the amount of evidence.  No improper communications outside of deliberations was revealed.

7. The jurors went back to deliberate for the rest of October 17, 2008, after the Court admonished the jurors and reminded them that all discussion and deliberations must take place in the jury room when they are all together and at no other time.

8. On Monday, October 20, 2008, another juror note came back requesting the Court reread the instructions with particular emphasis placed on instruction numbers 2, 3, 6, and 7, as well as those pertaining to the conspiracy count.

9. After consulting with counsel for both parties, the Court declined to reread the instructions and directed the jurors to Instruction # 3 regarding separate and distinct Counts.

10. At 3:00 p.m. on October 20, 2008, the jurors returned a note to the Court stating it was deadlocked on all Counts except Count 2, the conspiracy count.

11. At the request of the government and over objection of the defense, the Court told the jury it would accept its partial verdict, but before it did, it would inquire as to each juror if further deliberations could overcome the deadlock on the remaining counts.

12. Upon inquiry, all jurors responded no further deliberations would overcome their deadlock on the remaining counts.

13. The Court then instructed the jurors to return to the jury room and complete the verdict as to Count 2.

Second Motion for Mistrial  - 3

14.     The foreperson told the Court there was no need to return to the jury room as the verdict form was completed.

15.     The Court accepted the verdict which was guilty on Count 2, polled the jurors, who all responded in the affirmative that guilty on Count 2 was their verdict.

16.     After polling the jurors as to their verdict and in the presence of the jury, the Court asked if any party objected to discharging the jury to which the government said it did object.

17.     The Court told the jurors to return the next morning for further instructions.

18.     At the request of the government over the objection of the defense, on the morning of October 21, 2008, the Court gave the jurors additional Instruction No. 52, which was a modified *Allen* charge and included language with additional instructions similar to Instruction No. 3.  Instruction No. 3 had already been given to the jurors and emphasized by the Court on October 20, 2008.  Instruction No. 52 calls for the jury to continue deliberations without any assurance from the Court that it takes no position on the merits of either parties' case or the views of the individual jurors, creating an environment where not only will the jurors not be able to go home until there are verdicts on all counts, but that verdicts of guilt are the right result.

19.     The jurors, in witnessing the objection to their discharge made by the government, followed by the Court's charging Instruction No. 52 as written, created the impression that the Court agrees with the government that the jurors should continue to deliberate and that the verdicts of guilt are the right result.  Furthermore, the impression

Second Motion for Mistrial  - 4

has been created that deliberations shall continue until verdicts are returned on all counts regardless of time.

## LAW

Any criminal defendant tried by a jury is entitled to the uncoerced verdict of that body.  Actions of the court, although not measureable or intentional still may severely influence the jury.  *Brasfield v. United States*, 272 U.S. 448 (1926).

The danger of the *Allen* charge is that jurors in the minority may have reason to believe that the charged is leveled against them or aimed at one side or the other.  *U.S. v. Easter*, 66 F.3d 1018 (9th Cir. 1995).

Inquiry about the numerical division of a jury before delivering the *Allen* charge is per se coercive and requires reversal.  *U.S. v. Ajiboge*, 961 F.2d 892 (9th Cir. 1992).

Even when the judge does not inquire but is inadvertently told of jurors division reversal is necessary if the holdout jurors could interpret the charge as directed specifically to them.  See *U.S. v. Sea-Chua*, 725 F.2d 530 (9th Cir. 1984) and *U.S. v. Seawell*, 550 F.2d 1159, 1162 n 7 (9th Cir. 1977).

Coercion of an already exhausted jury to continue deliberations may induce jurors to accommodate a verdict they may not otherwise support.  *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978).

Coerciveness is evaluated on the basis of (1) form of instruction; (2) period of deliberation following the *Allen* charge; (3) the total time of deliberation; and (4) indicia

of coerciveness or pressure on the jury.  *U.S. v. Wills*, 88 F.3d 704 (9th Cir. 1996) citing *U.S. v. Foster*, 711 F.2d 871, 874 (9th Cir. 1983), cert denied 465 U.S. 1103 (1984).

## **CONCLUSION**

In evaluating this case under *Wills* mentioned above, we find:

1.     The form of Instruction No. 52 is a modification of 7.7 9th Circuit Model Criminal Jury Instruction and has additional language that emphasizes Instruction No. 3 that had already been emphasized once before to the jury.  The language of the instruction together with the surrounding circumstances of the trial and deliberations create the impression deliberations will continue forever until a verdict is reached.  The additional language "You must decide each count separately," suggest verdicts must be reached on all counts no matter how long it takes.

2.     The jurors deliberated all day after the *Allen* charge without further notes or questions.  The Court told the jurors at the end of the day they would have Wednesday off.  Such a procedure does not take into account the disruptions of the jurors' private lives and what unintentional message may be sent. One such message that the jurors may interpret from these actions is that their deliberations will continue until verdicts are reached and on a time table that is convenient for the parties and the Court.  This creates unfair pressure for jurors in balancing any personal hardships

they may have with respect to home and employment against fear of not coming to a timely verdict.

3. The jurors have deliberated for 8+ days and through interviews of no less than five of the jurors, the Court is aware of the strong personality conflicts that are affecting the deliberations.

4. Taken as a whole:

    a. The interviews and notes of the jurors;

    b. The 8+ days of deliberation;

    c. The Court's inquiry of the jurors and their unanimous responses that further deliberations would not be fruitful in overcoming their deadlock;

    d. After such inquiry, the Court took the verdict of guilty on Count 2;

    e. Then the Court asked the parties after taking the verdict if there was any objection to discharging the jury;

    f. The government objected to the discharge of the jury;

    g. The Court gave the jury the *Allen* charge with modified Instruction No. 52 over the objection of the defense;

    h. No deliberation by the jury on Wednesday, October 22, 2008;

together with all the circumstances present in this case create pressure on the jurors to accommodate a verdict they would not otherwise support.

Inquiry of the jury about the numerical division before giving the *Allen* charge is per se coercive and requires reversal. Even when the Court is inadvertently told of the jurors divisions, reversal is necessary because of the danger of the holdout jurors interpreting the charge as directed towards them.

Surely giving the *Allen* charge after the Court has accepted a guilty verdict creates the same dangers expressed by the courts when the court is told of the jurors' division.

The risk is even greater when an *Allen* charge instruction is modified to include language that "You <u>must</u> decide each count separately," and "continue your deliberations" without any further comment from the Court. (emphasis added).

At best, a mixed message has been sent to the jurors. At worst, an impression has been created that the Court has formed an opinion that the majority of jurors favor conviction and that the *Allen* charge is directed towards those holding the minority view to change their views or else deliberate forever.

WHEREFORE, for all the above and foregoing reasons, the Defendant requests the Court grant his Second Motion for Mistrial as to Counts 1, 3, 6 and 7 in the above-styled case.

Dated this 23rd day of October, 2008.

/s/ Joseph L. Green
Joseph L. Green, Fed.#34850
Leritz, Plunkert & Bruning, P.C.
One City Centre, Suite 2001
St. Louis, Missouri 63101
Telephone: (314) 231-9600
Facsimile: (314) 231-9480
E-mail: jgreen@leritzlaw.com

/s/ Burton H. Shostak
Burton H. Shostak, Fed.#4359
Shostak & Shostak, LLC
8015 Forsyth Boulevard
St. Louis, MO 63105
Telephone: (314) 725-3200
Facsimile: (314) 725-3275
E-mail: bshostak@msmattorneys.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 23, 2008, a true and accurate copy of the foregoing was filed electronically with the Court to be served by operation of the Court's electronic filing system upon Stephen B. Wolfe, Esq. Joseph N. Akrotirianakis, Esq. of the United States Attorneys Office and all other parties of record.

/s/ Joseph L. Green