UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| Case No. | CR02-00938 R | Date | February 20, 2024 |
|---|---|---|---|

| Present: | The Honorable Philip S. Gutierrez, Chief United States District Judge |
|---|---|

| Interpreter | n/a |
|---|---|

| Kelly Davis | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorney(s) for Defendant(s): | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Steve Loren Scott (12) | | not | | n/a | | | |

**Proceedings:  (In Chambers) Order DENYING Defendant Steve Loren Scott's Motion for Compassionate Release and Request for Appointment of Counsel**

 Before the Court is the motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and accompanying request for appointment of counsel filed by Defendant Steve Loren Scott ("Defendant"), who is appearing pro se. Dkts. # 7453 ("*Mot.*"), 7467 ("*Req.*"). The Government opposes the motion. Dkt. # 7469 ("*Opp.*"). Defendant has replied. Dkt. # 7479 ("*Reply*"). Having considered the moving, opposing, and reply papers, the Court **DENIES** the motion and request for appointment of counsel.

 I. <u>Background</u>

 In 2007, Defendant was "found guilty by a jury of one count of Racketeer Influenced and Corrupt Organizations (RICO) conspiracy, 18 U.S.C. § 1962(d), for participating in violent acts undertaken by the Aryan Brotherhood prison gang." *United States v. Scott*, 642 F.3d 791, 794–95 (9th Cir. 2011) (per curiam). In the early 1990s, Defendant, who was incarcerated at Leavenworth federal penitentiary at the time, became a member of the Aryan Brotherhood prison gang ("AB"). *Id.* Several years after Defendant became a member, AB, including Defendant, "entered into a violent and deadly war with the D.C. Blacks, another federal prison gang comprised of mostly black inmates." *Id.* During this time, Defendant "discussed with other members how to make and store weapons and passed around a 'hit list' of D.C. Black members to attack." *Id.* Defendant was promoted within the ranks of AB and

became a member of the AB council, which had authority over the day-to-day operations of a particular prison and reported to the 3-person commission that led AB. *Id.* "In 2000, during the ongoing war, [Defendant] stabbed Erving Bond, a black inmate, in the shower." *Id.*

After a seven-day jury trial, the jury returned its verdict of guilt, finding Defendant "conspired to murder Walter Johnson ('Butch' or 'Prince') and two unnamed D.C. Black inmates." *Id.* at 795. The Presentence Report calculated an adjusted offense level of 32, criminal history category of VI (because Defendant was deemed a career offender but, regardless, Defendant had a total of 18 criminal history points), and a resulting Guidelines range of 210–240 months due to the conviction's 20-year statutory maximum. *Id.* The Court adopted the Presentence Report and sentenced Defendant to 220 months' imprisonment, to be served consecutively to any other sentences Defendant may be serving. *Id.* at 795–96; *Judgment and Commitment*, Dkt. # 4354. Defendant's conviction and sentence were affirmed on appeal. *Scott*, 642 F.3d at 802.

Defendant has been in federal custody since 1989 due to serving multiple sentences, including the one in this case. *See Presentence Report*, Dkt. # 7335, ¶ 131. In 1990, Defendant received a 240-month sentence for an armed bank robbery conviction. *Id.* ¶¶ 88–91. In 1998, Defendant received a six-month sentence for a possession of contraband conviction. *Id.* ¶¶ 92–94. In 2003, Defendant received a total sentence of 125 months for assault with a dangerous weapon and possession of prohibited weapon convictions, to be served consecutively to his other sentences. *Id.* ¶¶ 95–99. According to Defendant's motion, he finished serving his other sentences and began serving his sentence in this case in 2017. *Mot.* 4. According to the Bureau of Prisons ("BOP") records, Defendant finished serving his 20-year sentence for the armed robbery conviction, and his remaining sentences, including the one in this case, have been aggregated for purposes of computing his time served. *See Declaration of Claire E. Kelly*, Dkt. # 7469 at 18–19 ("*Kelly Decl.*"), ¶ 3, Ex. 4, Dkt. # 7469-1 (BOP Inmate Data) at 4 (for Defendant's 20-year sentence that began in 1990, percentage of full term served is "88.8," percentage of statutory term served is "100.00," and actual satisfaction date is "05-13-2007"), 7 (listing Defendant's current computation for an aggregated sentence as 351 months and computation start date as "05-13-2007").[1] Defendant's projected release date is in August 2032. *Id.* at 7.

Defendant is 72 years old, he is currently serving his sentence at the United States Penitentiary, Administrative Maximum Facility, in Florence, Colorado, and his security classification is "high." *Kelly Decl.* ¶ 3, Ex. 5, Dkt. # 7469-2 (BOP Inmate Level History). Defendant has participated in many programs in prison. *See Mot.*, Exs. E–H, Dkt. # 7453 at 58–78 (BOP Individualized Needs Plan – Program Review; Certificates; Transcript; Siddha Yoga Meditation Prison Project Certificate and Letter). Defendant's most recent disciplinary infractions occurred in 2015 and 2011 for possessing a

---

[1] The Government's opposition incorrectly states that "Defendant has served approximately 88.8% of his sentence (just under 18 years)." *Opp.* 2:22–24. The basis for this assertion is not clear, but it appears the Government may be referring to the portion of the sentence that Defendant served for his armed bank robbery conviction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

weapon and assaulting another inmate on each occasion. *Kelly Decl.* ¶ 3, Ex. 6, Dkt. # 7469-3 (BOP Inmate Discipline Data).

II.     Legal Standard

The First Step Act established a three-step process by which courts may "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c)(1)(A). First, defendant must exhaust all administrative remedies. *Id*. Second, the district court must evaluate whether "extraordinary and compelling reasons warrant [] a reduction" in sentence and whether a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Third, the district court must "consider the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

As to the second threshold inquiry, the applicable policy statements issued by the Sentencing Commission through U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, which was most recently amended effective November 1, 2023, provide that extraordinary and compelling reasons include the following circumstances or combination thereof:

(1) Medical Circumstances of the Defendant.--

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is--
    (i) suffering from a serious physical or medical condition,
    (ii) suffering from a serious functional or cognitive impairment, or
    (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances--
    (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing

> public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> (iii) such risk cannot be adequately mitigated in a timely manner.
>
> (2) Age of the Defendant.--The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b). The policy statements in U.S.S.G. § 1B1.13 also provide the following may amount to extraordinary or compelling reasons: certain family circumstances; where defendant has been the victim of an assault in prison; other reasons of similar gravity; or defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment. *See id.*

The most recent amendments to the Sentencing Guidelines clarify that these policy statements apply to motions brought by both the BOP and defendants. *See* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A) . . . ."). Thus, "the policy statements are now binding for both types of motions." *United States v. Chavez*, No. 18-CR-5436-GPC, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024); *see also United States v. Garcia Nava*, No. 19-CR-2034-GPC, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024).[2]

---

[2] The Government asserts "there are no currently 'applicable policy statements' defining what reasons are 'extraordinary and compelling' where a defendant moves for compassionate release." *Opp.* 9:3–9 (quoting *United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021)). But *Aruda* pre-dates the recent amendments to the Sentencing Guidelines that expressly state upon motion brought by the BOP or defendant. Although the Government's opposition was filed after the recent amendments to U.S.S.G. § 1B1.13 took effect, the Government fails to address how *Aruda* can still be controlling in light of those amendments. Accordingly, the Government has failed to persuade the Court that U.S.S.G. § 1B1.13 is not an applicable policy statement for purposes of evaluating Defendant's motion. *See United States v. Brugnara*, No. CR 14-00306 WHA, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024) ("Applying the reasoning in *Aruda* to the present iteration of 1B1.13, this order finds that, as of November 1, it is an 'applicable policy statement' for motions filed by a defendant and, as a result, binds the district court's analysis.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

III.    <u>Discussion</u>

    A.    <u>Exhaustion of Administrative Remedies</u>

Defendant contends he has exhausted his administrative remedies, and the Government agrees. *See Mot.* 14; *Opp*. 3:20–4:2. Thus, any exhaustion argument by the Government is waived, and the Court assumes Defendant met his administrative exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).

    B.    <u>Extraordinary and Compelling Reasons</u>

Defendant contends the following factors amount to extraordinary and compelling reasons that warrant a sentence reduction and his release: (i) the more than 28 years he spent in solitary confinement; (ii) the length of time he has been incarcerated (more than 34 years, which includes sentences served for other convictions); (iii) his advanced age; (iv) his deteriorating mental health, including early symptoms of dementia; (v) his deteriorating physical health; (vi) his rehabilitation; and (vii) his post-release plans, which involve living with his fiancé in a small Wisconsin town. *Mot.* 12–27; *see also Reply*. Much of Defendant's motion focuses on the time he spent in solitary confinement and the studies, reports, and caselaw concerning the harmful effects of solitary confinement. *Id.* at 2–3, 5–12, 15, 17–25. As to his rehabilitation, Defendant states he accepts responsibility for his past actions, expresses remorse for those actions, recognizes the pain he has caused, and does his best to make amends for his past wrongdoing. *Id.* at 30–31.

The Government argues Defendant has failed to establish extraordinary and compelling reasons. *Opp*. 6–9. To start, the Government contends Defendant's BOP records, which the Government has submitted under seal, show Defendant is not experiencing a serious deterioration in mental or physical health. *Id.* Next, as to Defendant's arguments concerning his time in solitary confinement, the Government contends Defendant's claims concerning lack of adequate medical or mental health care in prison are more properly raised through an Eighth Amendment challenge, not a motion for compassionate release. *Opp*. 6–9.

Here, looking to the applicable policy statements U.S.S.G. § 1B1.13, Defendant has not provided sufficient evidence of extraordinary and compelling reasons to justify a sentence reduction. First, Defendant has not shown he is experiencing a serious deterioration in his mental health because of the aging process or otherwise. As the Government correctly asserts, Defendant's claims of deteriorating mental health are belied by his BOP medical records. According to Defendant's May 2023 mental health report, he "reported no history of mental health issues, diagnoses, or treatment." *Kelly Decl.* ¶ 2, Ex. 2, Dkt. # 7474 (BOP Psychology Services Records). The report notes Defendant "consistently presents as emotionally stable," "consistently presents with logical thought processes and goal-oriented thought content," "has not appeared in distress," and "staff have observed him to complete activities of daily living without issue." *Id.* Further, Defendant's May 2023 medical exam records describe

Defendant's appearance as "alert and oriented" and classifies Defendant's "thought content" as "normal." *Kelly Decl.* ¶ 2, Ex. 3, Dkt. # 7475 (BOP Health Services Records ("*BOP Health Records*")).

Further, Defendant is currently designated Care Level 1 for both medical and mental health. *Kelly Decl.* ¶ 3, Ex. 7, Dkt. # 7469-4 (BOP Inmate History Care Level). According to BOP's program statement, an individual meets Care Level 1 mental health criteria if he:

- Shows no significant level of functional impairment associated with a mental illness and demonstrates no need for regular mental health interventions; and
- Has no history of serious functional impairment due to mental illness or if a history of mental illness is present, the inmate has consistently demonstrated appropriate help-seeking behavior in response to any reemergence of symptoms.

BOP Program Statement 5310.16, Treatment and Care of Inmates with Mental Illness (May 1, 2014), https://www.bop.gov/policy/progstat/5310_16.pdf [https://perma.cc/VF52-EPWS]. Thus, the Court cannot credit Defendant's claim he has dementia or otherwise deteriorating mental health because he has presented no evidence of such, and the evidence presented by the Government directly contradicts such a claim. *See United States v. Salazar-Valenzuela*, No. cr-1102310002, 2022 WL 16635330, at *2 (D. Ariz. Nov. 2, 2022) (concluding defendant's health conditions cannot be deemed extraordinary and compelling reasons without supporting medical records and collecting cases holding the same).

Additionally, none of Defendant's claims about the state of his physical health amount to extraordinary and compelling reasons. Defendant's medical records support his claims that he has an enlarged prostate, requires intermittent self-catheterization, and has contracted COVID-19, Hepatitis C, and shingles. *See Reply*; *BOP Health Records*; *see also Kelly Decl.* ¶ 2, Ex. 1 (BOP Immunizations Records (showing Defendant has received the COVID-19 vaccine)). However, these conditions are treatable by the BOP and, thus, do not amount to extraordinary and compelling reasons. *See, e.g.*, *United Staes v. Velasco*, No. 1:11-CR-00186-JLT, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) (concluding "diagnoses for chronic conditions that are treatable by the BOP do not establish extraordinary and compelling reasons that merit compassionate release"); *United States v. Maxwell*, No. CR 04-732-RSWL-1, 2021 WL 310970, at *3 (C.D. Cal. Jan. 28, 2021) (finding hypertension did not amount to an extraordinary and compelling reason where defendant did not show BOP was unable to monitor or treat his condition). Defendant's medical conditions also do not impact Defendant's ability to care for himself as evidenced by his Care Level 1 medical designation. *See* BOP, Care Level Classification for Medical and Mental Health Conditions or Disabilities (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf [https://perma.cc/A9BL-YYAF] (explaining BOP's care level classifications). Therefore, Defendant has not shown he is experiencing a serious deterioration in physical or mental health because of the aging process or has a physical or mental health condition that fits within any of the medical circumstances outlined in U.S.S.G. § 1B1.13 that would amount to extraordinary and compelling reasons.

Even considering all the reasons provided by Defendant together, those reasons do not amount to "other reasons of similar gravity" that constitute extraordinary and compelling reasons. Defendant's claims concerning his time in solitary confinement may be the subject of a civil rights suit but are not appropriate grounds for compassionate release and do not amount to extraordinary and compelling reasons as such claims are not unique to defendant. *See United States v. Shabazz*, No. CR12-0033JLR, 2022 WL 5247196, at *4 (W.D. Wash. Oct. 6, 2022), *appeal dismissed*, No. 22-30174, 2023 WL 245005 (9th Cir. Jan. 11, 2023) (holding defendant's arguments concerning his time in solitary confinement were not appropriate grounds for compassionate release and were not unique to defendant as every defendant incarcerated at the same institution was subject to those conditions). Consideration of Defendant's age and rehabilitation also do not amount to other reasons of similar gravity to those listed in U.S.S.G. § 1B1.13. Additionally, Defendant's sentence in this case cannot be considered "unusually long" given it was within the Guidelines range and the serious and violent nature of the conduct underlying his conviction. Moreover, Defendant has not served at least 10 years of his term of imprisonment in this case.

For these reasons, Defendant has failed to establish an extraordinary and compelling reason justifying a sentence reduction and release.

C.      Section 3553(a) Factors

Even if Defendant had established extraordinary and compelling reasons, the Court agrees with the Government that the § 3553(a) factors do not support a reduced sentence for the reasons provided in the Government's opposition. *Opp.* 10:1–12:12.

In particular, the § 3553(a) factors concerning the nature of the offense and the need to reflect the seriousness of the offense and provide just punishment weigh heavily against a sentence reduction. Although Defendant now expresses remorse for the actions leading to his conviction, those actions were incredibly serious, violent, and harmful. Defendant was a leader of AB and, in that role, he orchestrated and carried out violent attacks against other inmates. As such, for this reason and those stated in the Government's opposition, the Court concludes the § 3553(a) sentencing factors weigh against Defendant's release.

D.      Appointment of Counsel

Defendant also requests appointment of counsel in connection with his motion for compassionate release. *Req.* There is no Sixth Amendment right to counsel when bringing a motion under 18 U.S.C. § 3582(c). *United States v. Townsend*, 98 F.3d 510, 512–13 (9th Cir. 1996). "Nor is there any statutory right to counsel in connection with a motion brought under 18 U.S.C. § 3582(c)." *United States v. Bond*, No. LA CR94-00563 JAK, 2020 WL 4340257, at *1 (C.D. Cal. Feb. 25, 2020). Accordingly, because Defendant is not entitled to appointed counsel and Defendant has not shown good cause to appoint counsel, Defendant's request for appointment of counsel is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

IV.     Conclusion

    For the foregoing reasons, the Court **DENIES** Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and request for appointment of counsel.

    **IT IS SO ORDERED.**