CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
TERRA D. CASTILLO LAUGHTON (Bar No. 321683)
(E Mail: terra_laughton@fd.org)
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California  92701-4598
Telephone:  (714) 338-4500
Facsimile:  (714) 338-4520

Attorneys for Defendant
WAYNE BRIDGEWATER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE BRIDGEWATER.<br><br>Defendant. | Case No. 2:02-cr-00938-DOC-13<br><br>**DEFENDANT WAYNE BRIDGEWATER'S REPLY IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE** |

Defendant Wayne Bridgewater, by and through his counsel of record, Deputy Federal Public Defender Terra Castillo Laughton, hereby files his reply brief in support of his motion for compassionate release, ECF No. 7496.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 15, 2025        */s/ Terra D. Castillo Laughton*
                                 TERRA CASTILLO LAUGHTON

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................1

    A.    There is no categorical bar to compassionate release in this type of case. ..................................................................................................................1

    B.    Contrary to the government's position, Mr. Bridgewater has shown "extraordinary and compelling reasons."......................................................2

        1.    The government is attempting to hold Mr. Bridgewater to a burden that does not apply. ........................................................2

        2.    The medical records the government relies on do not undermine Mr. Bridgewater's claim for relief. .......................................3

        3.    The government misunderstands Mr. Bridgewater's argument regarding BOP's medical capacity. .......................................5

    C.    The government's analysis of the Section 3553(a) factors relies on unsupported generalizations...................................................................5

III. CONCLUSION .....................................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The government concedes that Mr. Bridgewater: (1) has exhausted his administrative remedies; (2) suffers from chronic medical conditions, including chronic back pain; and (3) his disciplinary incidents while in custody are "not severe."  ECF No. 7499 ("Gov't Resp.") at 6, 11, 16, 27.[1]  Nevertheless, the government argues that Mr. Bridgewater should be denied compassionate release and/or a reduction in sentence because he does not meet the requirements under 18 U.S.C. § 3582.  The government is incorrect and the Court should grant Mr. Bridgewater's requested relief.

### II. ARGUMENT

**A.    There is no categorical bar to compassionate release in this type of case.**

The government claims that Mr. Bridgewater is "the very type of offender for whom compassionate release is categorically inappropriate."  Gov't Resp. at 7; *see also id.* at 23 ("Murders committed in custody . . . should weigh decisively against compassionate release.").  But the compassionate release statute does not authorize courts "to deny a motion for compassionate release simply and solely because the defendant's offense of conviction is an egregious and dangerous crime."  *United States v. Greene*, 516 F. Supp. 3d 1, 27 (D.D.C. 2021).  To the contrary: compassionate release is available to modify "a term of imprisonment . . . in *any case*" so long as the listed requirements are met.  18 U.S.C. § 3582(c)(1) (emphasis added); *see also Greene*, 516 F. Supp. 3d at 26 ("In enacting section 3582(c)(1)(A), Congress clearly contemplated the possibility that defendants convicted of the most heinous crimes would seek—and, in appropriate cases, receive—compassionate release").

Indeed, courts have granted compassionate release and/or reductions in sentence in cases involving murder.  *See, e.g.*, *United States v. Van Putten*, 726 F. Supp. 3d 245

---

[1] Page numbers in filed documents refer to the ECF pagination in the top right header.

(S.D.N.Y. 2024) (reducing sentence from life to thirty years for 50-year old prisoner who was convicted of murder while engaged in narcotics conspiracy); *United States v. Rios*, No. 3:94-cr-112 (JBA), 2020 WL 7246440 (D. Conn. Dec. 8, 2020) (reducing sentence from three concurrent life sentences to 30 years for inmate convicted of RICO charges and VICAR murder related to Latin Kings gang activities); *Greene*, 516 F. Supp. 3d 1 (granting compassionate release to 72-year-old inmate convicted of felony murder and armed robbery in part due to medical issues such as hypertension, dermatitis, and urinary incontinence); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. Sept. 30, 2020) (reducing sentence from life to 30 years to 54-year-old inmate convicted of torturing and murdering government informant).

**B.    Contrary to the government's position, Mr. Bridgewater has shown "extraordinary and compelling reasons."**

1.    <u>The government is attempting to hold Mr. Bridgewater to a burden that does not apply.</u>

The government's main response to Mr. Bridgewater's undisputed medical conditions is that they do not constitute a "serious functional breakdown." Gov't Resp. at 18. This appear to echo language in Section 1B1.13(b)(1)(ii), which refers to a "serious functional or cognitive impairment." *See* U.S.S.G. § 1B1.13(b)(1)(B)(ii). But that's only one way of satisfying Section 1B1.13(b)(1)—and critically, ***not*** the subpart Mr. Bridgewater relies on. *Compare* U.S.S.G. § 1B1.13(b)(1)(B)(ii) *with* Motion, ECF No. 7496 (relying on § 1B1.13(b)(1)(B)(i) & (iii)).[2] The government is correct that Section 1B1.13(b)(2), under which Mr. Bridgewater does move for relief, requires "serious deterioration in physical or mental health." Gov't Resp. at 14-15. But that is a distinct inquiry from a serious *functional* impairment.

---

[2] The government's statement that Mr. Bridgewater has not served the 30-year threshold for relief under the "unusually long sentence" provision of Section 1B1.13, Gov't Resp. at 7, is neither here nor there, as Mr. Bridgewater does not seek relief under that provision either. U.S.S.G. § 1B1.13(b)(6).

2

The government's cases regarding the standards set forth in Section 1B1.13—all non-binding, out-of-district cases—are readily distinguishable.  Gov't Resp. at 18-19. In *United States v. Wills*, 541 F. Supp. 3d 1185, 1191 (D. Or. 2021), the court denied compassionate release to an individual seeking COVID-related compassionate release "because he [was] fully vaccinated against COVID-19."  Similarly, in *United States v. Esparza*, No. 116CR00122DADBAM, 2020 WL 4805055, at *5 (E.D. Cal. Aug. 18, 2020), the court denied relief based on COVID-19 risk factors where there were no active COVID cases at the defendant's prison at the time.  In *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020), the court denied compassionate release/reduction in sentence where defendant's counsel filed a one-page document in support of his request, which the court noted was "minimal support for the motion."  *Id.* at **2-3.  Finally, in *United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019), the Court found that the defendant, who was sentenced to 84 months and had served less than two years, had not exhausted her administrative remedies and even if she had, was not entitled to relief.  *Id.* at **4-5.

In contrast, Mr. Bridgewater has spent decades in prison, submitted a fulsome brief with extensive documentation, has indisputably exhausted his administrative remedies, and his medical conditions are not something that can be vaccinated against. His situation is therefore distinguishable.

2. <u>The medical records the government relies on do not undermine Mr. Bridgewater's claim for relief.</u>

The government points to various portions of Mr. Bridgewater's BOP records to argue that he does not satisfy Section 1B1.13(b)(1) or (b)(2).  Gov't Resp. at 15-19. But the government fails to appreciate Mr. Bridgewater's age and overall health.

For example, the government relies on Mr. Bridgewater's "most recent medical review," completed on September 18, 2024.  *Id.* at 15.  But this assessment predated

3

Mr. Bridgewater's most recent back surgery and his ongoing chronic pain.  *See* ECF No. 7496 (hereinafter "Mot.") at 13.  Moreover, the form was largely left blank, with various questions answered neither "Yes" nor "No."  Ex. A to Gov't Resp.  Specifically, most of the "elderly medical condition" portion of the form appears to not have been filled out because, per question #1, the assessor determined that Mr. Bridgewater had not served at least 50% of his sentence.  *Id.*  But the Guidelines are clear that is not what's required.  Rather, the defendant must have served "at least ten years *or* 75% of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13(b)(2) (emphasis added).  In any event, this Court must make an independent determination of whether Mr. Bridgewater's medical conditions constitute an extraordinary and compelling reason.

The government also claims Mr. Bridgewater "remains alert" and "mobile."  Gov't Resp. at 16.  This ignores that in at least one appointment in 2025, he was released to his unit in a wheelchair.  *See* Ex. 3 to Mot. at 14.  Nor should the Court place any weight in the repeated references in Mr. Bridgewater's records to him being "alert."  Whether a patient is "alert and oriented" is a basic mental status screening; it has nothing to do with Mr. Bridgewater's ongoing medical issues and chronic pain.  *See generally*, Merk Manual, How to Assess Mental Status.[3]

Finally, the government claims that Mr. Bridgewater receives "regular and appropriate medical care."  Gov't Resp. at 17.  But occasional referrals for follow-up tests and treatment does not take away from the fact that he suffered from excruciating back pain for years without receiving surgery.  *See* Mot. at 12-14.

---

[3] Available at https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-mental-status

3. <u>The government misunderstands Mr. Bridgewater's argument regarding BOP's medical capacity.</u>

In response to Mr. Bridgewater's discussion of BOP's limited capacity to provide services to inmates with significant medical needs, the government argues that "generalized policy critiques . . . are not extraordinary and compelling reasons." Gov't Resp. at 21. The government misunderstands Mr. Bridgewater's point. Mr. Bridgewater is not asserting that BOP's inability to provide medical services is itself an extraordinary and compelling reason. Rather, he suffers from medical issues that constitute extraordinary and compelling reasons; this is an individualized claim based on his particular circumstances. The fact that BOP's own former officials have recently opined on the Bureau's challenges in providing medical services to aging inmates simply confirms that there is reason to question whether elderly inmates like Mr. Bridgewater get the care that they need before their conditions are exacerbated. *See* Mot. at 9-10.

**C.    The government's analysis of the Section 3553(a) factors relies on unsupported generalizations.**

Mr. Bridgewater does not dispute the serious and grave nature of his crime. At the same time, "the nature and circumstances of a defendant's offense of conviction is just one factor in the section 3553(a) analysis." *Greene*, 516 F. Supp. 3d at 26. As to the remaining factors, the government relies on generalizations made without citations and without addressing the many years that have passed since Mr. Bridgewater committed his offense.

Regarding Mr. Bridgewater's history and characteristics, the government baldly claims that his crimes "depend[] on worldview, allegiance, and willingness—not youth." Gov't Resp. at 25. But the government does not cite any source, factual or legal, for this assertion. It also ignores the significant fact that Mr. Bridgewater was in his 50s when he committed the instant offense in 2005, but is now 73 years old and

5

weak due to his health issues.  If the government were correct that someone like Mr. Bridgewater "does not suddenly became safe" in his seventies, *id.*, there would be some evidence of continued violence in recent years.  But there is not, as the government concedes.  *Id.* at 27 ("his disciplinary violations in the past 15 years are not severe" and "do not establish violent behavior").

Regarding deterrence, the government relies entirely on the need for general deterrence.  Specifically, the government makes the blanket assertion that such deterrence is "particularly critical in gang cases."  *Id.* at 25.  Even assuming this unsupported claim is true, general deterrence will not be undermined by granting relief for extraordinary and compelling reasons.  The entire premise of compassionate release and/or reduction in sentence is that there is some extraordinary reason that warrants an exception to the general need to deter even violent crimes.

As for protection of the public, as discussed above, the government agrees that Mr. Bridgewater's disciplinary incidents are "not severe" and "do not establish violent behavior."  *Id.* at 27.  Nevertheless, the government claims that the nature of two violations in May of 2015—more than 10 years ago—are concerning because they reflect that Mr. Bridgewater's "institutional profile remained active."  *Id.* at 28.  It is unclear what the government means by this.  The possession of more stamps than is permitted under Supermax policy, *id.* at 27, does not suggest that Mr. Bridgewater poses any risk to fellow inmates or the public.  Indeed, as the government's own brief makes clear, Mr. Bridgewater is classified in the "Low Risk Recidivism Level," and has been for years.  *Id.* at 20 & Ex. F to Gov't Resp.

Finally, the government's concern about sentencing disparities, Gov't Resp. at 23-24, is addressed by various examples of courts granting compassionate release even where the offense involved murder.  *See* Part II.A above.

Overall, the government's Section 3553(a) analysis is shallow.  It relies almost exclusively on the nature of Mr. Bridgewater's crime.  It does not take into account the

6

decades that have passed since Mr. Bridgewater committed the offense and entirely ignores the significant rehabilitation he has completed in the meantime.  *See* Mot. at 16-17.  The Section 3553(a) factors pose no bar to relief and support Mr. Bridgewater's request.

### III. CONCLUSION

For the foregoing reasons and those in his opening brief, Mr. Bridgewater respectfully requests that the Court grant his motion for compassionate release and/or a reduction in sentence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 15, 2025          By  */s/  Terra Castillo Laughton*
                                                   TERRA CASTILLO LAUGHTON
                                                   Deputy Federal Public Defender
                                                   Attorney for Wayne Bridgewater

7